# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| BANK OF AMERICA, N.A., | : | |
| Plaintiff, | : | CIVIL ACTION NO: |
| | : | |
| v. | : | **310CV00987** |
| | : | |
| SAMUEL KLEIN, | : | |
| | : | |
| Defendant. | : | JUNE 23, 2010 |

## COMPLAINT

Plaintiff, Bank of America, N.A. ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendant, Samuel Klein ("Defendant"), avers as follows:

## I.   THE PARTIES

1.     Plaintiff is a national banking association having its main office in the city of Charlotte and state of North Carolina.

2.     Defendant is an individual and is a resident of the state of Connecticut.

## II.   JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as a result of the diversity of citizenship existing between the Plaintiff and Defendant.  The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional sum of $75,000.00.

4.     Venue is proper in this district pursuant to 28 U.S.C. §1391 (a) (1) because Defendant resides within this judicial district.

HFD 212264.1

## III.   COUNT I – BREACH OF A PERSONAL GUARANTY

5.    On or about May 23, 2006, Agrippa LLC ("Agrippa") became indebted to United States Trust Company, National Association ("US Trust") in the principal amount of $3,200,000.00 (the "Agrippa Loan"), which loan is evidenced by a Promissory Note of even date therewith (the "Agrippa Note"). Plaintiff is now the owner and holder of the Agrippa Note, a copy of which is attached hereto as **Exhibit A**.

6.    On or about May 23, 2006, Defendant, in consideration for the Agrippa Loan, executed a Consumer Guaranty ("Guaranty") in favor of US Trust, whereby he unconditionally guaranteed to US Trust the full, prompt and punctual payment of all liabilities owed in connection with the Agrippa Loan. Plaintiff is now the owner, holder, and lawful assignee of the Guaranty, a copy of which is attached hereto as **Exhibit B.**

7.    On or about February 26, 2007, Defendant executed a Commercial Guaranty in favor of US Trust (the "Commercial Guaranty") in connection with another loan made by US Trust to PLC Partners, LLC (the "PLC Loan"), whereby he unconditionally guaranteed to US Trust the full, prompt and punctual payment of all liabilities owed in connection with the PLC Loan. Plaintiff is now the owner, holder, and lawful assignee of the Commercial Guaranty, a copy of which is attached hereto as **Exhibit C**.

8.    On or about June 4, 2010, PLC Partners, LLC was informed that the PLC Loan was in default, and that the same had been accelerated in accordance with its terms. A demand for payment in full of the PLC Loan was made upon PLC Partners, LLC and, in his capacity as

HFD 212264.1

guarantor under the Commercial Guaranty, upon Defendant. A copy of that demand is attached hereto as **Exhibit D**.

9. Defendant's failure, as a guarantor thereof, to timely pay and satisfy the PLC Loan also constitutes a default under the Agrippa Note. Consequently, on or about June 4, 2010, Agrippa was informed that the Agrippa Loan was in default, and that the same had been accelerated in accordance with its terms. A demand for payment in full of the Agrippa Loan was made upon Agrippa and, in his capacity as guarantor under the Guaranty, upon Defendant. A copy of that demand is attached hereto as **Exhibit E**.

10. The Guaranty provides for the payment of all costs and expenses incurred in collecting the Agrippa Loan including, but not limited to, reasonable attorneys' fees.

11. The Guaranty also provides as follows:

> **Waive Jury. Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

12. Pursuant to the Guaranty, Defendant is liable to Plaintiff for all amounts due and owing under the Agrippa Note and, despite demand, he has failed and refused to pay the same.

**WHEREFORE**, Plaintiff requests the following relief;

1. A judgment for all sums due and owing under the Agrippa Note against Defendant pursuant to the terms of the Guaranty;

2. Interest, costs and attorneys' fees; and

3. Such other and further relief as at law and/or in equity may pertain.

- 3 -

Dated at Hartford, Connecticut this 23rd day of June, 2010.

**PLAINTIFF,**
**BANK OF AMERICA, N.A.**

By _____
Donald E. Frechette (ct08930)
Edwards, Angell, Palmer & Dodge LLP
20 Church Street
Hartford, CT  06103
Phone:(860) 525-5065
Facsimile: (860) 527-4198

Its Attorneys

- 4 -

# EXHIBIT A



*480001613300000001055*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,200,000.00 | 05-23-2006 | 06-01-2036 | 48000161330 | 12 | 00000068944 | 05008 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Agrippa LLC, A New York Limited Liability Company<br>20 E 46th Street Penthouse<br>New York, NY 10017 | Lender: | United States Trust Company, National Association<br>Mortgage Lending<br>114 West 47th Street<br>New York, NY 10036 |
|---|---|---|---|

**Principal Amount: $3,200,000.00**                                    **Date of Note: May 23, 2006**

**PROMISE TO PAY.** To repay my loan, I ("Borrower") promise to pay to United States Trust Company, National Association ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Two Hundred Thousand & 00/100 Dollars ($3,200,000.00), together with interest on the unpaid principal balance from May 23, 2006, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, I will pay this loan in accordance with the following payment schedule: 36 monthly consecutive interest payments, beginning July 1, 2006, with interest calculated on the unpaid principal balances at an interest rate of 6.150% per annum; 323 monthly consecutive interest and interest payments in the initial amount of $22,802.44 each, beginning July 1, 2009, with interest calculated on the unpaid principal balances at an interest rate based on the ONE YEAR LONDON INTERBANK OFFERED RATE (LIBOR) AS PUBLISHED TUESDAY IN THE MONEY RATES SECTION OF THE WALL STREET JOURNAL, EASTERN EDITION, TRUNCATED TO THE THOUSANDTH DECIMAL PLACE. (currently 5.127%), plus a margin of 2.250 percentage points, resulting in an initial interest rate of 7.377%; and one principal and interest payment of $22,806.78 on June 1, 2036, with interest calculated on the unpaid principal balances at an interest rate based on the ONE YEAR LONDON INTERBANK OFFERED RATE (LIBOR) AS PUBLISHED TUESDAY IN THE MONEY RATES SECTION OF THE WALL STREET JOURNAL, EASTERN EDITION, TRUNCATED TO THE THOUSANDTH DECIMAL PLACE. (currently 5.127%), plus a margin of 2.250 percentage points, resulting in an initial interest rate of 7.377%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the ONE YEAR LONDON INTERBANK OFFERED RATE (LIBOR) AS PUBLISHED TUESDAY IN THE MONEY RATES SECTION OF THE WALL STREET JOURNAL, EASTERN EDITION, TRUNCATED TO THE THOUSANDTH DECIMAL PLACE. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying me. Lender will tell me the current Index rate upon my request. The interest rate change will not occur more often than each YEAR. THE INTEREST RATE MAY CHANGE ON THE FIRST DAY OF THE TWELFTH (12TH) OR THIRTEENTH (13TH) MONTH FOLLOWING THE FUNDING DATE OF THE LOAN,** AND ON THAT DAY EVERY TWELVE (12) MONTHS THEREAFTER, THE "CHANGE DATE". THE NEW INTEREST RATE, BASED ON THE INDEX WILL BECOME EFFECTIVE ON EACH CHANGE DATE. THE INDEX WILL BE DETERMINED FIVE (5) CALENDAR DAYS BEFORE EACH CHANGE DATE. (THE "INDEX DETERMINATION DATE"). IF SUCH DAY IS NOT A BUSINESS DAY, THE INDEX WILL BE THE MOST RECENT INDEX FIGURE AVAILABLE PRECEDING THE INDEX DETERMINATION DATE. **The TWELFTH (12th) month if the loan funds on a day other than the first of the month, the THIRTEENTH (13th) month if the loan funds on the first. I understand that Lender may make loans based on other rates as well. The Index currently is 5.127% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be less than 2.250% per annum or more than (except for any higher default rate shown below) the lesser of 12.150% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 2.000 percentage points. Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments.

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: United States Trust Company, National Association; Mortgage Lending; 114 West 47th Street; New York, NY 10036.

**LATE CHARGE.** If a payment is 16 days or more late, I will be charged 2.000% of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 4.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. After maturity, or after this Note would have matured had there been no default, the Default Rate Margin will continue to apply to the final interest rate described in this Note. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**Default in Favor of Third Parties.** I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dissolves (regardless of whether election to continue is made), any member withdraws from me, any member dies, or any of the members become insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** I agree to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New York.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $10.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein: a Consumer Mortgage - Plain Language dated May 23, 2006, to Lender on real property located in New York County, State of New York. If there is any inconsistency between the terms and conditions of this Note and the terms and conditions of the collateral documents, the terms and conditions of this Note shall prevail.

**FINANCIAL STATEMENTS.** I shall furnish my true and complete financial statement on the Lender's standard form to the Lender within thirty (30) days after a request by the Lender. Also, I shall provide supplemental information immediately upon request by Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 48000161330

Page 3

'PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

AGRIPPA LLC, A NEW YORK LIMITED LIABILITY COMPANY

By: _____

Agrippa, LLC, A New York Limited Liability
Company by: Judy Berland, as authorized agent

LASER PRO Lending, Ver. 5.51.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - NY  K:\CFI\WIN\CFI\LPL\D20.FC  TR-4818

# EXHIBIT B



*48000161330000000260*

# CONSUMER GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 12 | | 06008 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Agrippa LLC, A New York Limited Liability Company
20 E 46th Street Penthouse
New York, NY 10017

**Lender:** United States Trust Company, National Association
Mortgage Lending
114 West 47th Street
New York, NY 10036

**Guarantor:** Sam Klein
20 E 46th Street Penthouse
New York, NY 10017

**GUARANTOR'S REPRESENTATIONS.** I know that Lender, from time to time, has loaned or may loan money to Borrower. I am making this Guaranty at the request of Borrower and not at Lender's request. I am making this guaranty of payment so that Lender will loan money to Borrower or agree to other requests of Borrower. I agree that Lender's willingness to make the loan to Borrower is enough consideration for my giving of this Guaranty. No representations or agreements of any kind have been made to me which would limit or qualify in any way the terms of this Guaranty.

**GUARANTEE OF PAYMENT.** For good and valuable consideration, I absolutely and unconditionally guarantee full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender. This is a guaranty of payment and not of collection, so Lender can enforce this Guaranty against me even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. I will make any payments to Lender or order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means $3,200,000.00.

**NATURE OF GUARANTY.** Lender does not have to accept this Guaranty to make it effective. It will be effective when I sign below and will continue in effect until all amounts I have guaranteed or otherwise have agreed to pay under this Guaranty have been paid in full.

**GUARANTOR'S AUTHORIZATION TO LENDER.** I agree that Lender may do any or all of the following things, **without telling me and without in any way lessening my promise to pay Lender:** **(A) Extensions to Pay.** Lender may repeatedly grant Borrower more time to pay, and extensions may be for longer than the original loan term. **(B) Renewals.** Lender may renew any notes or agreements with Borrower. **(C) Releases.** Lender may release any property or guaranty that secures any amounts due from Borrower. **(D) Other Actions.** Lender may take any other action under the terms of any agreement Lender has with Borrower or with any other guarantor. **(E) Increase Interest Rate.** Lender may increase or otherwise change the interest rate on any amounts owed to Lender. **(F) Change Loan Terms.** Lender may otherwise alter or amend the terms of Borrower's debt to Lender. **(G) Sell the Loan.** Lender may sell, transfer or grant participations in all or any part of the Indebtedness, and this Guaranty may be transferred in whole or in part to the purchaser. **(H) Loan More Money.** Lender may loan more money to Borrower and make new advances to Borrower.

**GUARANTOR'S WAIVERS.** I agree that Lender will have the following rights, and that I am giving up the following rights: **(A) Information about Borrower.** Lender does not have to tell me about any defaults of Borrower or any other information it now knows or later learns about Borrower's financial condition. I am responsible for being and keeping myself informed about Borrower's financial condition and about all other matters which may affect the risk that Borrower will not be able to pay the amounts I am guaranteeing under this Guaranty. **(B) Direct Guaranty.** If Borrower is in default under any agreement between Borrower and Lender, Lender may collect the amounts owed by Borrower directly from me. I will have to pay such amounts even if Lender does not try to collect from Borrower or from any other guarantor or even if Lender does not foreclose on any security. Any delay of Lender in collecting from Borrower or pursuing any other remedy will not change my responsibility to pay Lender under this Guaranty. This will be true even if I cannot legally pursue the remedy myself. **(C) Lender Paid First.** If Borrower owes me money, I agree Lender will be paid before I am. In legal terms, this means Borrower's debts to me are subordinated to Borrower's debts to Lender. **(D) Continuing Liability.** I waive any defense that arises because of any disability or any other defense of Borrower or because Borrower is no longer liable to Lender for any reason. I specifically waive any rights or defenses under any law, including any "one action" and "anti-deficiency" law which may prevent Lender from bringing a deficiency action against me after bringing any foreclosure action, either judicially or by exercise of a power of sale. **(E) Counterclaims.** I further waive and, to the extent not prohibited by law, agree not to assert or claim at any time any deduction to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, or similar right, whether such claim or right may be asserted by Borrower, by me, or by both of us. **(F) Impairment of Collateral.** I also waive any right to claim a discharge of my Guaranty on the basis of unjustifiable impairment of any Collateral securing any amounts due from Borrower. This includes without limitation waiver of any right to require Lender to perfect or maintain perfection of any security interest in any such Collateral. **(G) Other Waivers.** I understand Lender will not give up any of its rights under this Guaranty unless it does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of its rights, that does not mean I will not have to comply with the other provisions of this Guaranty. I also understand that if Lender does consent to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

**GUARANTOR'S FINANCIAL STATEMENTS.** I represent and promise Lender that (A) the most recent financial statements I have given to Lender are true and correct in all respects, (B) they fairly present my financial condition as of the date shown on the statements, and (C) no material adverse change has occurred in my financial condition since that date.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments and Interpretation.** (1) What is written in this Guaranty is my entire agreement with Lender. This Guaranty may not be changed except by another written agreement between us. (2) If more than one person signs below, our obligations are joint and several. This means that the words "I," "me," and "my" mean each and every person or entity signing this Guaranty, and that, if Lender brings a lawsuit, Lender may sue any one or more of us. I also understand Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Guaranty are for convenience purposes only. They are not to

Loan No: 48000161330                                                                                                              Page 2

be used to interpret or define the provisions of this Guaranty. (4) I agree that this Guaranty is the best evidence of my agreements with Lender. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of New York.

**Attorneys' Fees; Expenses.** I agree to pay all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and I shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. I also shall pay all court costs, in addition to all other sums provided by law. This Guaranty also secures all of these amounts.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**No Waiver by Lender.** I understand Lender will not give up any of Lender's rights under this Guaranty unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean I will not have to comply with the other provisions of this Guaranty. I also understand that if Lender does consent to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any person may change his or her address for notices under this Guaranty by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, I agree to keep Lender informed at all times of my current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors. It will be my responsibility to tell the others of the notice from Lender.

**Waive Jury.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

**Borrower.** The word "Borrower" means Agrippa LLC, A New York Limited Liability Company and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of my right, title and interest in and to all the Collateral as described in the Collateral Description section of this Guaranty.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Sam Klein, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from me to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means United States Trust Company, National Association, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the note or credit agreement dated May 23, 2006, in the principal amount of $3,200,000.00 from Agrippa LLC, A New York Limited Liability Company to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**PRIOR TO SIGNING THIS GUARANTY, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS GUARANTY. IN ADDITION, I UNDERSTAND THAT THIS GUARANTY IS EFFECTIVE UPON MY SIGNING THIS AGREEMENT AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED AS SET FORTH IN THE SECTION TITLED "NATURE OF GUARANTY". I AGREE TO ALL THE TERMS AND CONDITIONS OF THIS GUARANTY. THIS GUARANTY IS DATED MAY 23, 2006.**

**GUARANTOR:**

X _____
Sam Klein

# EXHIBIT C



*780001678200000000226*

## COMMERCIAL GUARANTY

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** PLC Partners, LLC, a Wyoming Limited Liability
Company
20 E 46th Street Penthouse
New York, NY 10017-2461

**Lender:** United States Trust Company, National Association
Mortgage Lending
114 West 47th Street
New York, NY 10036

**Guarantor:** Samuel Klein
131 Ferncliff Rd
Greenwich, CT 06831

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty will not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all of the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of any Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that: (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter

## COMMERCIAL GUARANTY
### (Continued)

**Loan No: 78000157820**

whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of New York.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of New York County, State of New York.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses

**COMMERCIAL GUARANTY**
(Continued)

Loan No: 78000167620

Page 3

shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrowers against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means PLC Partners, LLC, a Wyoming Limited Liability Company and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Samuel Klein, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means United States Trust Company, National Association, its successors and assigns.

**Note.** The word "Note" means the promissory note dated February 26, 2007, in the original principal amount of $1,380,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED FEBRUARY 26, 2007.

GUARANTOR:

X _____
Samuel Klein

# EXHIBIT D



Andrew J. Maidman
Senior Vice President

June 4, 2010

**Via Certified Mail # 70042890000070768965, United States First Class Mail**
**& FEDEX #793605256345**
PLC Partners LLC
20 East 46th Street, Penthouse
New York, NY 10017-2481

**Via Certified Mail # 70042890000070768972, United States First Class Mail**
**& FEDEX #798727859144**
Mr. Samuel Klein
20 East 46th Street, Penthouse
New York, NY 10017-2481

**Via Certified Mail # 70042890000070768927, United States First Class Mail**
**& FEDEX #798727863684**

Mr. Samuel Klein
131 Pecksland Road
Greenwich, CT 06831

RE:    Promissory Note executed by PLC Partners LLC ("PLC") in the original principal
       amount of $1,350,000.00 (the "Wyoming Note"), secured by Mortgage dated
       February 26, 2007 (the "Wyoming Mortgage") and guaranteed by Commercial
       Guaranty executed by Samuel Klein (the "Wyoming Guaranty")

Dear Sirs:

        This letter is written on behalf of Bank of America, N.A. (the "Bank"), the owner
and holder of that certain loan (the "Loan") evidenced by the above-referenced note,
mortgage and guaranty. The Wyoming Note, Wyoming Mortgage and the Wyoming
Guaranty, as well as all other documents or instruments executed in connection with the
Loan or pursuant thereto are hereinafter referred to collectively as the "Loan
Documents."

Tel: 860.952.6771 · Fax: 860.952.6774
andrew.j.maidman@bankofamerica.com

Bank of America, CT2-102-19-01
777 Main Street, Hartford, CT

HFD 211648.1

Recycled Paper

PLC Partners LLC
Mr. Samuel Klein
June 4, 2010
Page 2



Please be advised that an Event of Default (as defined in the Loan Documents) has occurred by reason of, among other things, your failure to make payments of principal and interest when due. Based upon the aforementioned default(s), the Bank has exercised its right to accelerate repayment of the Loan. The amounts now due include principal, accrued and accruing interest (which, as of June 4, 2010, is accruing at the default rate established pursuant to the terms of the Wyoming Note), and all other fees and costs assessable under the Wyoming Note, Wyoming Mortgage and/or any of the remaining Loan Documents." **The amount due as of June 1, 2010, exclusive of attorneys' fees and costs of collection, is $1,371,093.75, which amount can be broken down as follows:**

| | |
|---|---|
| **Principal Balance** | **$1,350,000.00** |
| **Interest (through June 1, 2010)** | **$21,093.75** |
| **Total** | **$1,371,093.75** |

**The Loan is now immediately due and payable, and demand is hereby made by the Bank for payment in full of the Loan. Demand is hereby also made upon you for payment in full as guarantor of the Loan pursuant to the Wyoming Guaranty.**

Unless the Loan is paid in full or PLC and Mr. Klein, as guarantor, agree upon alternative arrangements for satisfying their obligations to the Bank within ten calendar days of the date of this letter, which alternative arrangements must be satisfactory to the Bank in all respects, in its sole and absolute discretion, the Bank intends to pursue such legal action as may be necessary to recover from you all of your respective obligations.

Any partial payment(s) which may be made on account of the Loan and/or the Wyoming Guaranty shall not operate to reinstate the Loan; nor shall the Bank's acceptance of any such payment(s) be deemed to constitute the Bank's consent to reinstate the Loan or the Bank's promise to waive demand for full payment of the amounts for which you are obligated under the Loan and/or the Wyoming Guaranty.

Recycled Paper

PLC Partners LLC
Mr. Samuel Klein
June 4, 2010
Page 3



Nothing contained herein constitutes nor shall be deemed to constitute an agreement to forbear from exercising any and all rights and remedies the Bank may have under the Loan Documents, or a waiver of any such rights. The Bank expressly reserves all of its rights and remedies under such Loan Documents, at law and in equity.

Very truly yours,

Andrew Maidman

Recycled Paper

# EXHIBIT E



Andrew J. Maidman
Senior Vice President

June 4, 2010

**Via Certified Mail #70042890000070768996, United States First Class Mail**
**& FEDEX #793605278020**
Agrippa LLC
20 East 46ᵗʰ Street, Penthouse
New York, NY 10017-2481

**Via Certified Mail #70042890000070769009, United States First Class Mail**
**& FEDEX #793605283246**
Mr. Samuel Klein
20 East 46ᵗʰ Street, Penthouse
New York, NY 10017-2481

**Via Certified Mail #70042890000070769016, United States First Class Mail**
**& FEDEX #793605287995**
Mr. Samuel Klein
131 Pecksland Road
Greenwich, CT 06831

RE:    Promissory Note executed by Agrippa LLC and dated May 23, 2006 in the
       original principal amount of $3,200,000.00 (the "New York Note"), secured by
       Security Agreement dated May 23, 2006 (the "New York Security Agreement"),
       and guaranteed by Consumer Guaranty dated May 23, 2006 (the "New York
       Guaranty") executed by Samuel Klein (the "Guarantor")

Dear Sirs:

       This letter is written on behalf of Bank of America, N.A. (the "Bank"), the owner
and holder of that certain loan (the "Loan") evidenced by the above-referenced note,
security agreement and guaranty. The New York Note, New York Security Agreement
and the New York Guaranty, as well as all other documents or instruments executed in
connection with the Loan or pursuant thereto are hereinafter referred to collectively as the
"Loan Documents."

Tel: 860.952.6771 · Fax: 860.952.6774
andrew.j.maidman@bankofamerica.com

Bank of America, CT2-102-19-01
777 Main Street, Hartford, CT

HFD 211656.1

Recycled Paper

Agrippa LLC
Mr. Samuel Klein
June 4, 2010
Page 2



The terms of the New York Note provide as follows:

> **DEFAULT.** I will be in default under this Note if any of the following happen:
>
> *               *               *
>
> **Break Other Promises.** I break any promise made to [Bank] or fail to provide promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with [Bank].     *     *                    *
>
> **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness . . . .

Please be advised that a Default (as defined in the Loan Documents) has occurred by reason of the Guarantor's failure to promptly satisfy his obligations as guarantor of a certain promissory note executed by PLC Partners LLC and dated February 26, 2007 in the original principal amount of $1,350,000.00, as secured by a certain mortgage of even date therewith.

Based upon the aforementioned default(s), the Bank has exercised its right to accelerate repayment of the Loan. The amounts now due include principal, accrued and accruing interest (which, as of June 1, 2010, will accrue at the default rate established pursuant to the terms of the New York Note), and all other fees and costs assessable under the New York Note, New York Security Agreement and/or any of the remaining Loan Documents." **The amount due as of June 1, 2010, exclusive of attorneys' fees and costs of collection, is $3,113,686.41, which amount can be broken down as follows:**

| | |
|---|---|
| **Principal Balance·** | **$3,102,956.77** |
| **Interest (through June 1, 2010)** | **$10,729.64** |
| **Total** | **$3,113,686.41** |

     **The Loan is now immediately due and payable, and demand is hereby made by the Bank for payment in full of the Loan. Demand is hereby also made upon you for payment in full as guarantor of the Loan pursuant to the New York Guaranty.**

Recycled Paper

Agrippa LLC
Mr. Samuel Klein
June 4, 2010
Page 3

**Bank of America** 

Unless the Loan is paid in full or Agrippa and Mr. Klein, as guarantor, agree upon alternative arrangements for satisfying their obligations to the Bank within ten calendar days of the date of this letter, which alternative arrangements must be satisfactory to the Bank in all respects, in its sole and absolute discretion, the Bank intends to pursue such legal action as may be necessary to recover from you all of your respective obligations.

Any partial payment(s) which may be made on account of the Loan and/or the New York Guaranty shall not operate to reinstate the Loan; nor shall the Bank's

acceptance of any such payment(s) be deemed to constitute the Bank's consent to reinstate the Loan or the Bank's promise to waive demand for full payment of the amounts for which you are obligated under the Loan and/or the New York Guaranty.

Nothing contained herein constitutes nor shall be deemed to constitute an agreement to forbear from exercising any and all rights and remedies the Bank may have under the Loan Documents, or a waiver of any such rights. The Bank expressly reserves all of its rights and remedies under such Loan Documents, at law and in equity.

Very truly yours,

Andrew Maidman

HFD 211656.1

Recycled Paper