## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO: |
| | : | 3:10-cv-987 (MRK) |
| v. | : | |
| | : | |
| SAMUEL KLEIN, | : | |
| | : | |
| Defendant. | : | AUGUST 24, 2010 |

### FIRST AMENDED COMPLAINT

Plaintiff, Bank of America, N.A. ("Plaintiff"), by and through its undersigned counsel, for its first amended complaint against defendant, Samuel Klein ("Defendant"), avers as follows:

### I.      THE PARTIES

1.      Plaintiff is a national banking association having its main office in the city of Charlotte and state of North Carolina.

2.      Defendant is an individual and is a resident of the state of Connecticut.

### II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as a result of the diversity of citizenship existing between the Plaintiff and Defendant.  The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional sum of $75,000.00.

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391 (a) (1) because Defendant resides within this judicial district.

HFD 212264.2

### III.   COUNT I – BREACH OF A PERSONAL GUARANTY

5.      On or about May 23, 2006, Agrippa, LLC ("Agrippa") became indebted to United States Trust Company, National Association ("US Trust") in the principal amount of $3,200,000.00 (the "Agrippa Loan"), which loan is evidenced by a Promissory Note of even date therewith (the "Agrippa Note").  Plaintiff is now the owner and holder of the Agrippa Note, a copy of which is attached hereto as **Exhibit A**.

6.      On or about May 23, 2006, Defendant, in consideration for the Agrippa Loan, executed a Consumer Guaranty (the "Agrippa Guaranty") in favor of US Trust, whereby he unconditionally guaranteed to US Trust the full, prompt and punctual payment of all liabilities owed in connection with the Agrippa Loan.  Plaintiff is now the owner and holder of the Agrippa Guaranty, a copy of which is attached hereto as **Exhibit B**.

7.      On or about February 26, 2007, PLC Partners, LLC ("PLC") became indebted to United States Trust Company, National Association ("US Trust") in the principal amount of $1,350,000 (the "PLC Loan"), which loan is evidenced by a Promissory Note of even date therewith (the "PLC Note").  Plaintiff is now the owner and holder of the PLC Note, a copy of which is attached hereto as **Exhibit C**.

8.      The PLC Note was secured by a mortgage of even date therewith (the "PLC Mortgage") encumbering certain real property commonly referred to as 2480 North Harvest Drive, Jackson, Wyoming (the "Property"). Plaintiff is now the owner and holder of the PLC Mortgage, a copy of which is attached hereto as **Exhibit D**.

HFD 212264.2

9.    Defendant also executed a Commercial Guaranty in favor of US Trust (the "PLC Guaranty") in connection with the PLC Loan, whereby he unconditionally guaranteed to US Trust the full, prompt and punctual payment of all liabilities owed in connection with the PLC Loan.  Plaintiff is now the owner and holder of the PLC Guaranty, a copy of which is attached hereto as **Exhibit E**.

10.    The PLC Guaranty also obligated Defendant to perform and discharge all of PLC's obligations under, *inter alia*, the PLC Note and the PLC Mortgage.

11.    Pursuant to the PLC Mortgage, PLC was required to pay, when due, all real property taxes assessed with respect to the Property (the "Taxes").

12.    PLC failed, however, to pay the Taxes.  Similarly, and despite the terms of the PLC Guaranty, Defendant likewise failed to pay the Taxes.

13.    On or about June 4, 2010, PLC Partners, LLC was formally notified that the PLC Loan was in default, and that the same had been accelerated in accordance with its terms.  A demand for payment in full of the PLC Loan was made upon PLC Partners, LLC and, in his capacity as guarantor under the PLC Guaranty, upon Defendant.  A copy of that demand is attached hereto as **Exhibit F**.

HFD 212264.2

14.    As a result of PLC's failure to comply with the terms of the PLC Note and the PLC Mortgage, and given Defendant's failure to remediate those failures pursuant to the terms of the PLC Guaranty, Plaintiff also sought to foreclose upon the Property.

15.    On August 10, 2010, a statutory foreclosure sale of the Property was conducted pursuant to Wyoming law.  Plaintiff was the only bidder at the sale, and no person, as of the date hereof, has sought to redeem the Property.

16.    Defendant's failure to pay the PLC Note in furtherance of his obligations under the PLC Guaranty, as well as Defendant's failure to pay the Taxes, evidences that Defendant is not paying his debts as they become due and, as such, that he is insolvent.

17.    Defendant's failure, as a guarantor thereof, to timely pay and satisfy the PLC Loan, and to otherwise comply with its terms and conditions including, *inter alia*, with respect to the payment of the Taxes, also constitutes a default under the Agrippa Note.  Consequently, on or about June 4, 2010, Agrippa was informed that the Agrippa Loan was in default, and that the same had been accelerated in accordance with its terms.  A demand for payment in full of the Agrippa Loan was made upon Agrippa and, in his capacity as guarantor under the Agrippa Guaranty, upon Defendant.  A copy of that demand is attached hereto as **Exhibit G**.

18.    Defendant's insolvency is likewise a default under the Agrippa Note and, again, Defendant is thus liable pursuant to the terms of the Agrippa Guaranty.

19.    Additionally, because Defendant is a guarantor of both the PLC Loan and the Agrippa Loan, and because Defendant: (1) has defaulted under his obligations with respect to the

- 4 -

HFD 212264.2

PLC Loan; (2) has failed to pay the Taxes; (3) is thus insolvent; and (4) has failed and refused to comply with other contractual obligations owed to the Plaintiff, Plaintiff believes in good faith that it is insecure as regards the Agrippa Loan.  Plaintiff's good faith belief as to its insecurity also constitutes a default under the Agrippa Note and, again, Defendant is thus liable pursuant to the terms of the Agrippa Guaranty.

20.     The Agrippa Guaranty provides for the payment of all costs and expenses incurred in collecting the Agrippa Loan including, but not limited to, reasonable attorneys' fees.

21.     The Agrippa Guaranty also provides as follows:

> **Waive Jury.   Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

22.     Pursuant to the Agrippa Guaranty, Defendant is liable to Plaintiff for all amounts due and owing under the Agrippa Note and, despite demand, he has failed and refused to pay the same.

HFD 212264.2

**WHEREFORE**, Plaintiff requests the following relief;

1.      A judgment for all sums due and owing under the Agrippa Note against Defendant

        pursuant to the terms of the Agrippa Guaranty;

2.      Interest, costs and attorneys' fees; and

3.      Such other and further relief as at law and/or in equity may pertain.


Dated at Hartford, Connecticut this 24th day of August, 2010.

                                        **PLAINTIFF,**
                                        **BANK OF AMERICA, N.A.**


                                        By /s/ Donald E. Frechette
                                            Donald E. Frechette (ct08930)
                                            Edwards, Angell, Palmer & Dodge LLP
                                            20 Church Street
                                            Hartford, CT  06103
                                            Phone:(860) 525-5065
                                            Facsimile: (860) 527-4198

                                            Its Attorneys

HFD 212264.2

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2010, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.

/s/ Donald E. Frechette
Donald E. Frechette (ct08930)

HFD 212264.2

# EXHIBIT A

*480001613300000001056*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,200,000.00 | 05-23-2006 | 08-01-2036 | 4800016133... | 12 | 00000088844 | 05008 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Agrippa LLC, A New York Limited Liability
Company
20 E 46th Street Penthouse
New York, NY 10017

**Lender:**  United States Trust Company, National Association
Mortgage Lending
114 West 47th Street
New York, NY 10036

**Principal Amount:  $3,200,000.00**                       **Date of Note:  May 23, 2006**

**PROMISE TO PAY.**  To repay my loan, I ("Borrower") promise to pay to United States Trust Company, National Association ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Two Hundred Thousand & 00/100 Dollars ($3,200,000.00), together with interest on the unpaid principal balance from May 23, 2006, until paid in full.

**PAYMENT.**  Subject to any payment changes resulting from changes in the index, I will pay this loan in accordance with the following payment schedule: 36 monthly consecutive interest payments, beginning July 1, 2006, with interest calculated on the unpaid principal balances at an interest rate of 6.150% per annum; 323 monthly consecutive principal and interest payments in the initial amount of $22,802.44 each, beginning July 1, 2009, with interest calculated on the unpaid principal balances at an interest rate based on the ONE YEAR LONDON INTERBANK OFFERED RATE (LIBOR) AS PUBLISHED TUESDAY IN THE MONEY RATES SECTION OF THE WALL STREET JOURNAL, EASTERN EDITION, TRUNCATED TO THE THOUSANDTH DECIMAL PLACE, (currently 5.127%), plus a margin of 2.250 percentage points, resulting in an initial interest rate of 7.377%; and one principal and interest payment of $22,806.76 on June 1, 2036, with interest calculated on the unpaid principal balances at an interest rate based on the ONE YEAR LONDON INTERBANK OFFERED RATE (LIBOR) AS PUBLISHED TUESDAY IN THE MONEY RATES SECTION OF THE WALL STREET JOURNAL, EASTERN EDITION, TRUNCATED TO THE THOUSANDTH DECIMAL PLACE, (currently 5.127%), plus a margin of 2.250 percentage points, resulting in an initial interest rate of 7.377%.  This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.  Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days.  Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year.  I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.**  The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the ONE YEAR LONDON INTERBANK OFFERED RATE (LIBOR) AS PUBLISHED TUESDAY IN THE MONEY RATES SECTION OF THE WALL STREET JOURNAL, EASTERN EDITION, TRUNCATED TO THE THOUSANDTH DECIMAL PLACE, (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying me.  Lender will tell me the current Index rate upon my request.  The interest rate change will not occur more often than each YEAR.  THE INTEREST RATE MAY CHANGE ON THE FIRST DAY OF THE TWELFTH (12TH) OR THIRTEENTH (13TH) MONTH FOLLOWING THE FUNDING DATE OF THE LOAN,** AND ON THAT DAY EVERY TWELVE (12) MONTHS THEREAFTER, THE "CHANGE DATE".  The NEW INTEREST RATE, BASED ON THE INDEX WILL BECOME EFFECTIVE ON EACH CHANGE DATE.  THE INDEX WILL BE DETERMINED FIVE (5) CALENDAR DAYS BEFORE EACH CHANGE DATE.  THE "INDEX DETERMINATION DATE").  IF SUCH DAY IS NOT A BUSINESS DAY, THE INDEX WILL BE THE MOST RECENT INDEX FIGURE AVAILABLE PRECEDING THE INDEX DETERMINATION DATE. **The TWELFTH (12th) month if the loan funds on a day other than the first of the month, the THIRTEENTH (13th) month if the loan funds on the first of the month.  I understand that Lender may make loans based on other rates as well.  The Index currently is 5.127% per annum.  The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section.  Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream.  NOTICE:  Under no circumstances will the interest rate on this Note be less than 2.250% per annum or more than (except for any higher default rate shown below) the lesser of 12.150% per annum or the maximum rate allowed by applicable law.  Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 2.000 percentage points.  Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments.

**PREPAYMENT.**  I agree that all loan fees and other prepaid finance charges are earned fully as of the date of this loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in my making fewer payments.  I agree not to send Lender payments marked "paid in full", "without recourse", or similar language.  If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  United States Trust Company, National Association; Mortgage Lending; 114 West 47th Street; New York, NY 10036.

**LATE CHARGE.**  If a payment is 16 days or more late, I will be charged 2.000% of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.**  Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 4.000 percentage point margin ("Default Rate Margin").  The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.  After maturity, or after this Note would have matured had there been no default, the Default Rate Margin will continue to apply to the final interest rate described in this Note.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.**  I will be in default under this Note if any of the following happen:

# PROMISSORY NOTE
## (Continued)

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**Default in Favor of Third Parties.** I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dissolves (regardless of whether election to continue is made), any member withdraws from me, any member dies, or any of the members become insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** I agree to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New York.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $10.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein: a Consumer Mortgage - Plain Language dated May 23, 2006, to Lender on real property located in New York County, State of New York. If there is any inconsistency between the terms and conditions of this Note and the terms and conditions of the collateral documents, the terms and conditions of this Note shall prevail.

**FINANCIAL STATEMENTS.** I shall furnish my true and complete financial statement on the Lender's standard form to the Lender within thirty (30) days after a request by the Lender. Also, I shall provide supplemental information immediately upon request by Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

Loan No: 48000161330

**PROMISSORY NOTE**
**(Continued)**

Page 3

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

AGRIPPA LLC, A NEW YORK LIMITED LIABILITY COMPANY

By: _____

Agrippa, LLC, A New York Limited Liability
Company by: Judy Berland, as authorized agent

LASER PRO Lending, Ver. 5.31.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - NY  E:\CFI\WIN\CFI\LPL\D20.FC  TR-4018

# EXHIBIT B




*48000161330000000260*

## CONSUMER GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| | | | | 12 | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Agippa LLC, A New York Limited Liability Company
20 E 46th Street Penthouse
New York, NY 10017

**Lender:** United States Trust Company, National Association
Mortgage Lending
114 West 47th Street
New York, NY 10036

**Guarantor:** Sam Klein
20 E 46th Street Penthouse
New York, NY 10017

**GUARANTOR'S REPRESENTATIONS.** I know that Lender, from time to time, has loaned or may loan money to Borrower. I am making this Guaranty at the request of Borrower and not at Lender's request. I am making this guaranty of payment so that Lender will loan money to Borrower or agree to other requests of Borrower. I agree that Lender's willingness to make the loan to Borrower is enough consideration for my giving of this Guaranty. No representations or agreements of any kind have been made to me which would limit or qualify in any way the terms of this Guaranty.

**GUARANTEE OF PAYMENT.** For good and valuable consideration, I absolutely and unconditionally guarantee full and punctual payment and satisfaction of the indebtedness of Borrower to Lender. This is a guaranty of payment and not of collection, so Lender can enforce this Guaranty against me even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the indebtedness or against any collateral securing the indebtedness, this Guaranty or any other guaranty of the indebtedness. I will make any payments to Lender or order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means $3,200,000.00.

**NATURE OF GUARANTY.** Lender does not have to accept this Guaranty to make it effective. It will be effective when I sign below and will continue in effect until all amounts I have guaranteed or otherwise have agreed to pay under this Guaranty have been paid in full.

**GUARANTOR'S AUTHORIZATION TO LENDER.** I agree that Lender may do any or all of the following things, without telling me and without in any way lessening my promise to pay Lender: (A) Extensions to Pay. Lender may repeatedly grant Borrower more time to pay, and extensions may be for longer than the original loan term. (B) Renewals. Lender may renew any notes or agreements with Borrower. (C) Releases. Lender may release any property or guaranty that secures any amounts due from Borrower. (D) Other Actions. Lender may take any other action under the terms of any agreement between Lender has with Borrower or with any other guarantor. (E) Increase Interest Rate. Lender may increase or otherwise change the interest rate on any amounts owed to Lender. (F) Change Loan Terms. Lender may otherwise alter or amend the terms of Borrower's debt to Lender. (G). Sell the Loan. Lender may sell, transfer or grant participations in all or any part of the Indebtedness, and this Guaranty may be transferred in whole or in part to the purchaser. (H) Loan More Money. Lender may loan more money to Borrower and make new advances to Borrower.

**GUARANTOR'S WAIVERS.** I agree that Lender will have the following rights, and that I am giving up the following rights: (A) Information about Borrower. Lender does not have to tell me about any defaults of Borrower or any other information it now knows or later learns about Borrower's financial condition. I am responsible for being and keeping myself informed about Borrower's financial condition and about all other matters which may affect the risk that Borrower will not be able to pay the amounts I am guaranteeing under this Guaranty. (B) Direct Collection. If Borrower is in default under any agreement between Borrower and Lender, Lender may collect the amounts owed by Borrower directly from me. I will have to pay such amounts even if Lender does not try to collect from Borrower or from any other guarantor or even if Lender does not foreclose on any security. Any delay of Lender in collecting from Borrower or pursuing any other remedy will not change my responsibility to pay Lender under this Guaranty. This will be true even if I cannot legally pursue the remedy myself. (C) Lender Paid First. If Borrower owes me money, I agree Lender will be paid before I am. In legal terms, this means Borrower's debts to me are subordinated to Borrower's debts to Lender. (D) Continuing Liability. I waive any defense that arises because of any disability or any other defense of Borrower or because Borrower is no longer liable to Lender for any reason. I specifically waive any rights or defenses under any law, including any "one action" and "anti-deficiency" law which may prevent Lender from bringing a deficiency action against me after bringing any foreclosure action, either judicially or by exercise of a power of sale. (E) Counterclaims. I further waive and, to the extent not prohibited by law, agree not to assert or claim at any time any deduction to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, or similar right, whether such claim or right may be asserted by Borrower, by me, or by both of us, (F) Impairment of Collateral. I also waive any right to claim a discharge of my Guaranty on the basis of unjustifiable impairment of any Collateral securing any amounts due from Borrower. This includes without limitation waiver of any right to require Lender to perfect or maintain perfection of any security interest in any such Collateral. (G) Other Waivers. I understand Lender will not give up any of its rights under this Guaranty unless it does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of its rights, that does not mean I will not have to comply with the other provisions of this Guaranty. I also understand that if Lender does consent to a request, that does not mean I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

**GUARANTOR'S FINANCIAL STATEMENTS.** I represent and promise Lender that (A) the most recent financial statements I have given to Lender are true and correct in all respects, (B) they fairly present my financial condition as of the date shown on the statements, and (C) no material adverse change has occurred in my financial condition since that date.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

Amendments and Interpretation. (1) What is written in this Guaranty is my entire agreement with Lender. This Guaranty may not be changed except by another written agreement between us. (2) If more than one person signs below, our obligations are joint and several. This means that the words "I," "me," and "my" mean each and every person or entity signing this Guaranty, and that, if Lender brings a lawsuit, Lender may sue any one or more of us. I also understand Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Guaranty are for convenience purposes only. They are not to



**CONSUMER GUARANTY**
**(Continued)**

be used to interpret or define the provisions of this Guaranty. (4) I agree that this Guaranty is the best evidence of my agreements with Lender. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of New York.

**Attorneys' Fees; Expenses.** I agree to pay all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and I shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. I also shall pay all court costs, in addition to all other sums provided by law. This Guaranty also secures all of these amounts.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**No Waiver by Lender.** I understand Lender will not give up any of Lender's rights under this Guaranty unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean I will not have to comply with the other provisions of this Guaranty. I also understand that if Lender does consent to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any person may change his or her address for notices under this Guaranty by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, I agree to keep Lender informed at all times of my current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors. It will be my responsibility to tell the others of the notice from Lender.

**Waive Jury.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

**Borrower.** The word "Borrower" means Agrippa LLC, A New York Limited Liability Company and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of my right, title and interest in and to all the Collateral as described in the Collateral Description section of this Guaranty.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Sam Klein, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from me to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means United States Trust Company, National Association, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the note or credit agreement dated May 23, 2006, in the principal amount of $3,200,000.00 from Agrippa LLC, A New York Limited Liability Company to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

PRIOR TO SIGNING THIS GUARANTY, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS GUARANTY.  IN ADDITION, I UNDERSTAND THAT THIS GUARANTY IS EFFECTIVE UPON MY SIGNING THIS AGREEMENT AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED AS SET FORTH IN THE SECTION TITLED "NATURE OF GUARANTY". I AGREE TO ALL THE TERMS AND CONDITIONS OF THIS GUARANTY. THIS GUARANTY IS DATED MAY 23, 2006.

GUARANTOR:

X _____
Sam Klein

# EXHIBIT C

*780001676200000001055*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,350,000.00 | 02-26-2007 | 03-01-2037 | 78000167620 | 34 | 00000024918X | 05008 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** PLG Partners, LLC, a Wyoming Limited Liability
Company
20 E 46th Street Penthouse
New York, NY 10017-2481

**Lender:** United States Trust Company, National Association
Mortgage Lending
114 West 47th Street
New York, NY 10036

**Principal Amount: $1,350,000.00**                                      **Date of Note: February 26, 2007**

**PROMISE TO PAY.** To repay Borrower's loan, PLG Partners, LLC, a Wyoming Limited Liability Company ("Borrower") promises to pay to United States Trust Company, National Association ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Three Hundred Fifty Thousand & 00/100 Dollars ($1,350,000.00), together with interest on the unpaid principal balance from February 26, 2007, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the index, Borrower will pay this loan in accordance with the following payment schedule: 60 monthly consecutive interest payments, beginning April 1, 2007, with interest calculated on the unpaid principal balances at an interest rate of 6.250% per annum; 299 monthly consecutive principal and interest payments, beginning April 1, 2012, with interest calculated on the unpaid principal balances at an interest rate based on the index described below, plus a margin of 2.250 percentage points; and one principal and interest payment on March 1, 2037, with interest calculated on the unpaid principal balances at an interest rate based on the index described below, plus a margin of 2.250 percentage points. The final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the ONE YEAR LONDON INTERBANK OFFERED RATE (LIBOR) AS PUBLISHED TUESDAY IN THE MONEY RATES SECTION OF THE WALL STREET JOURNAL, EASTERN EDITION, TRUNCATED TO THE THOUSANDTH DECIMAL PLACE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each YEAR. THE INTEREST RATE MAY CHANGE ON THE FIRST DAY OF THE TWELFTH (12TH) OR THIRTEENTH (13TH) MONTH FOLLOWING THE FUNDING DATE OF THE LOAN,** AND ON THAT DAY EVERY TWELVE (12) MONTHS THEREAFTER, THE "CHANGE DATE". THE NEW INTEREST RATE, BASED ON THE INDEX, WILL BECOME EFFECTIVE ON EACH CHANGE DATE. THE INDEX WILL BE DETERMINED FIVE (5) CALENDAR DAYS BEFORE EACH CHANGE DATE, (THE "INDEX DETERMINATION DATE"). IF SUCH DAY IS NOT A BUSINESS DAY, THE INDEX WILL BE THE MOST RECENT INDEX FIGURE AVAILABLE PRECEDING THE INDEX DETERMINATION DATE. **The TWELFTH (12th) month if the loan funds on a day other than the first of the month, the THIRTEENTH (13th) month if the loan funds on the first. Borrower understands that Lender may make loans based on other rates as well. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be less than 2.250% per annum or more than (except for any higher default rate shown below) the lesser of 12.250% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 2.000 percentage points. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: If I make a full prepayment or a partial prepayment within one (1) year from today, I will pay Lender a prepayment charge equal to two percent (2%) of the amount of the prepayment representing Lender's estimate of it's damages as a result of prepayment. After the first year, I may make full or partial prepayment without having to pay any prepayment charge. . Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: United States Trust Company, National Association; Mortgage Lending; 114 West 47th Street; New York, NY 10036.

**LATE CHARGE.** If a payment is 16 days or more late, Borrower will be charged 2.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 2.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. After maturity, or after this Note would have matured had there been no default, the Default Rate Margin will continue to apply to the final interest rate described in this Note. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

# PROMISSORY NOTE
## (Continued)

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Borrower agrees to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New York.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of New York County, State of New York.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $10.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account) and whether evidenced by a certificate of deposit. This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**FINANCIAL STATEMENTS.** I shall furnish my true and complete financial statement on the Lender's standard form to the Lender within thirty (30) days after a request by the Lender. Also, I shall provide supplemental information immediately upon request by Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

## PROMISSORY NOTE
### (Continued)

Loan No: 78000167620                                                          Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

PLC PARTNERS, LLC, A WYOMING LIMITED LIABILITY COMPANY

By: _____
Samuel Klein, Member of PLC Partners, LLC, a
Wyoming Limited Liability Company

LASER PRO Lending, Ver. 5.37.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - WY  K:\HARLAND\CFI\LPL\D20.FC  TR-2548  PR-20F

# EXHIBIT D

RECORDATION REQUESTED BY:
United States Trust Company, National Association
Mortgage Lending
114 West 47th Street
New York, NY 10036

WHEN RECORDED MAIL TO:
UST Mortgage Company
4601 Touchton Road East, Suite 3220
Jacksonville, FL 32246

SEND TAX NOTICES TO:
PLC Partners, LLC, a Wyoming Limited Liability Company
20 E 46th Street Penthouse
New York, NY 10017-2481                              SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY.

## MORTGAGE

**MAXIMUM LIEN.** The lien of this Mortgage shall not exceed at any one time $1,350,000.00.

**THIS MORTGAGE** dated February 26, 2007, is made and executed between PLC Partners, LLC, a Wyoming Limited Liability Company (referred to below as "Grantor") and United States Trust Company, National Association, whose address is 114 West 47th Street, New York, NY 10036 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages and conveys to Lender all of Grantor's right, title, and interest in and to this following described real property together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Teton County, State of Wyoming:

**See Exhibit "A", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.**

The Real Property or its address is commonly known as 2480 North Harvest Dance Road, Jackson, WY 83001.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to

# MORTGAGE
## (Continued)

the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Wyoming law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of

## MORTGAGE
### (Continued)

such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Grantor's Report on Insurance. Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes, with the exception of insurance premiums paid by Lender with respect to motor vehicles, but including the payment of attorneys' fees and expenses, will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

Current Taxes, Fees and Charges. Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and

# MORTGAGE
## (Continued)

Loan No: 78000167620                Page 4

Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any related document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or

performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property, including during the pendency of foreclosure, whether judicial or non-judicial, and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** Lender may foreclose Grantor's interest in all or in any part of the Property by non-judicial sale, and specifically by "power of sale" or "advertisement and sale" foreclosure as provided by statute.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as

Loan No: 78000167620                                                                                      Page 6

---

to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Wyoming. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of New York.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of New York County, State of New York.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Wyoming as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means PLC Partners, LLC, a Wyoming Limited Liability Company and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means PLC Partners, LLC, a Wyoming Limited Liability Company.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous

Loan No: 78000167620

## MORTGAGE
### (Continued)

Page 7

---

Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means United States Trust Company, National Association, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated February 28, 2007, **in the original principal amount of $1,350,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is March 1, 2037. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

PLC PARTNERS, LLC, A WYOMING LIMITED LIABILITY COMPANY

By: _____
Samuel Klein, Manager of PLC Partners, LLC, a
Wyoming Limited Liability Company

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _____ )
                                    ) ss
COUNTY OF _____ )

*See attached*

On this _____ day of _____, 20____ before me, the undersigned Notary Public, personally appeared Samuel Klein, Manager of PLC Partners, LLC, a Wyoming Limited Liability Company, and known to me to be a member or designated agent of the limited liability company that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the limited liability company.

By _____          Residing at _____

Notary Public in and for the State of _____   My commission expires _____

---

LASER PRO Lending, Ver. 5.22.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2001.  All Rights Reserved.  - WI/TX  E:\ACFILANDOC\PREPLS33.FC  TR-1646  PR-78B

# EXHIBIT A

Lot 54 of The Ridge at Spring Creek Ranch, a subdivision of Teton County, Wyoming according to that plat recorded October 3, 2000 as Plat No. 998.

PIN #22-41-16-21-1-16-008

# EXHIBIT E



*7B0001678200000002226*

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: PLC Partners, LLC, a Wyoming Limited Liability
Company
2B E 45th Street Penthouse
New York, NY 10017-2481

Lender: United States Trust Company, National Association
Mortgage Lending
114 West 47th Street
New York, NY 10036

Guarantor: Samuel Klein
131 Fieldstone Rd
Greenwich, CT 06831

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that: (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender: (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter

**COMMERCIAL GUARANTY**
(Continued)

Loan No: 78000187820                                                                 Page 2

Whatsoever,

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

*Amendments.* This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

*Attorneys' Fees; Expenses.* Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

*Caption Headings.* Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

*Governing Law.* This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of New York.

*Choice of Venue.* If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of New York County, State of New York.

*Integration.* Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty. Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty. This Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

*Interpretation.* In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

*Notices.* Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses

# COMMERCIAL GUARANTY
## (Continued)

shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code.

Borrower. The word "Borrower" means PLC Partners, LLC, a Wyoming Limited Liability Company and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation Samuel Klein, and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means United States Trust Company, National Association, its successors and assigns.

Note. The word "Note" means the promissory note dated February 28, 2007, in the original principal amount of $1,350,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Related Documents. The word "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED FEBRUARY 28, 2007.

GUARANTOR:

X _____
Samuel Klein

# EXHIBIT F



Andrew J. Maidman
Senior Vice President

June 4, 2010

**Via Certified Mail # 70042890000070768965, United States First Class Mail**
**& FEDEX #793605256345**
PLC Partners LLC
20 East 46th Street, Penthouse
New York, NY 10017-2481

**Via Certified Mail # 70042890000070768972, United States First Class Mail**
**& FEDEX #798727859144**
Mr. Samuel Klein
20 East 46th Street, Penthouse
New York, NY 10017-2481

**Via Certified Mail # 70042890000070768927, United States First Class Mail**
**& FEDEX #798727863684**

Mr. Samuel Klein
131 Pecksland Road
Greenwich, CT 06831

RE:    Promissory Note executed by PLC Partners LLC ("PLC") in the original principal
       amount of $1,350,000.00 (the "Wyoming Note"), secured by Mortgage dated
       February 26, 2007 (the "Wyoming Mortgage") and guaranteed by Commercial
       Guaranty executed by Samuel Klein (the "Wyoming Guaranty")

Dear Sirs:

       This letter is written on behalf of Bank of America, N.A. (the "Bank"), the owner
and holder of that certain loan (the "Loan") evidenced by the above-referenced note,
mortgage and guaranty.  The Wyoming Note, Wyoming Mortgage and the Wyoming
Guaranty, as well as all other documents or instruments executed in connection with the
Loan or pursuant thereto are hereinafter referred to collectively as the "Loan
Documents."

Tel: 860.952.6771 • Fax: 860.952.6774
andrew.j.maidman@bankofamerica.com

Bank of America, CT2-105-13-01
777 Main Street, Hartford, CT

Recycled Paper

HFD 211648.1

PLC Partners LLC
Mr. Samuel Klein
June 4, 2010
Page 2



Please be advised that an Event of Default (as defined in the Loan Documents) has occurred by reason of, among other things, your failure to make payments of principal and interest when due. Based upon the aforementioned default(s), the Bank has exercised its right to accelerate repayment of the Loan. The amounts now due include principal, accrued and accruing interest (which, as of June 4, 2010, is accruing at the default rate established pursuant to the terms of the Wyoming Note), and all other fees and costs assessable under the Wyoming Note, Wyoming Mortgage and/or any of the remaining Loan Documents." The amount due as of June 1, 2010, exclusive of attorneys' fees and costs of collection, is $1,371,093.75, which amount can be broken down as follows:

| | |
|---|---|
| Principal Balance | $1,350,000.00 |
| Interest (through June 1, 2010) | $21,093.75 |
| Total | $1,371,093.75 |

The Loan is now immediately due and payable, and demand is hereby made by the Bank for payment in full of the Loan. Demand is hereby also made upon you for payment in full as guarantor of the Loan pursuant to the Wyoming Guaranty.

Unless the Loan is paid in full or PLC and Mr. Klein, as guarantor, agree upon alternative arrangements for satisfying their obligations to the Bank within ten calendar days of the date of this letter, which alternative arrangements must be satisfactory to the Bank in all respects, in its sole and absolute discretion, the Bank intends to pursue such legal action as may be necessary to recover from you all of your respective obligations.

Any partial payment(s) which may be made on account of the Loan and/or the Wyoming Guaranty shall not operate to reinstate the Loan; nor shall the Bank's acceptance of any such payment(s) be deemed to constitute the Bank's consent to reinstate the Loan or the Bank's promise to waive demand for full payment of the amounts for which you are obligated under the Loan and/or the Wyoming Guaranty.

HFD 211648.1

Recycled Paper

PLC Partners LLC
Mr. Samuel Klein
June 4, 2010
Page 3



Nothing contained herein constitutes nor shall be deemed to constitute an agreement to forbear from exercising any and all rights and remedies the Bank may have under the Loan Documents, or a waiver of any such rights.  The Bank expressly reserves all of its rights and remedies under such Loan Documents, at law and in equity.

Very truly yours,

Andrew Maidman

HFD 211648.1

Recycled Paper

# EXHIBIT G



Andrew J. Maidman
Senior Vice President

June 4, 2010

**Via Certified Mail #70042890000070768996, United States First Class Mail**
**& FEDEX #793605278020**
Agrippa LLC
20 East 46th Street, Penthouse
New York, NY 10017-2481

**Via Certified Mail #70042890000070769009, United States First Class Mail**
**& FEDEX #793605283246**
Mr. Samuel Klein
20 East 46th Street, Penthouse
New York, NY 10017-2481

**Via Certified Mail #70042890000070769016, United States First Class Mail**
**& FEDEX #793605287995**
Mr. Samuel Klein
131 Pecksland Road
Greenwich, CT 06831

RE:     Promissory Note executed by Agrippa LLC and dated May 23, 2006 in the
        original principal amount of $3,200,000.00 (the "New York Note"), secured by
        Security Agreement dated May 23, 2006 (the "New York Security Agreement"),
        and guaranteed by Consumer Guaranty dated May 23, 2006 (the "New York
        Guaranty") executed by Samuel Klein (the "Guarantor")

Dear Sirs:

        This letter is written on behalf of Bank of America, N.A. (the "Bank"), the owner
and holder of that certain loan (the "Loan") evidenced by the above-referenced note,
security agreement and guaranty.  The New York Note, New York Security Agreement
and the New York Guaranty, as well as all other documents or instruments executed in
connection with the Loan or pursuant thereto are hereinafter referred to collectively as the
"Loan Documents."

Tel: 860.952.6771 · Fax: 860.952.6774
andrew.j.maidman@bankofamerica.com

Bank of America, CT2-102-19-01
777 Main Street, Hartford, CT

Recycled Paper

HFD 211656.1

Agrippa LLC
Mr. Samuel Klein
June 4, 2010
Page 2

 Bank of America

The terms of the New York Note provide as follows:

> **DEFAULT.** I will be in default under this Note if any of the following happen:
>
> \*                    \*                    \*
>
> **Break Other Promises.** I break any promise made to [Bank] or fail to provide promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with [Bank].   \*   \*            \*
>
> **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness . . . .

Please be advised that a Default (as defined in the Loan Documents) has occurred by reason of the Guarantor's failure to promptly satisfy his obligations as guarantor of a certain promissory note executed by PLC Partners LLC and dated February 26, 2007 in the original principal amount of $1,350,000.00, as secured by a certain mortgage of even date therewith.

Based upon the aforementioned default(s), the Bank has exercised its right to accelerate repayment of the Loan. The amounts now due include principal, accrued and accruing interest (which, as of June 1, 2010, will accrue at the default rate established pursuant to the terms of the New York Note), and all other fees and costs assessable under the New York Note, New York Security Agreement and/or any of the remaining Loan Documents." The amount due as of June 1, 2010, exclusive of attorneys' fees and costs of collection, is $3,113,686.41, which amount can be broken down as follows:

| | |
|---|---|
| Principal Balance | $3,102,956.77 |
| Interest (through June 1, 2010) | $10,729.64 |
| Total | $3,113,686.41 |

The Loan is now immediately due and payable, and demand is hereby made by the Bank for payment in full of the Loan. Demand is hereby also made upon you for payment in full as guarantor of the Loan pursuant to the New York Guaranty.

HFD 211656.1

Recycled Paper

Agrippa LLC
Mr. Samuel Klein
June 4, 2010
Page 3

 **Bank of America**

Unless the Loan is paid in full or Agrippa and Mr. Klein, as guarantor, agree upon alternative arrangements for satisfying their obligations to the Bank within ten calendar days of the date of this letter, which alternative arrangements must be satisfactory to the Bank in all respects, in its sole and absolute discretion, the Bank intends to pursue such legal action as may be necessary to recover from you all of your respective obligations.

Any partial payment(s) which may be made on account of the Loan and/or the New York Guaranty shall not operate to reinstate the Loan; nor shall the Bank's

acceptance of any such payment(s) be deemed to constitute the Bank's consent to reinstate the Loan or the Bank's promise to waive demand for full payment of the amounts for which you are obligated under the Loan and/or the New York Guaranty.

Nothing contained herein constitutes nor shall be deemed to constitute an agreement to forbear from exercising any and all rights and remedies the Bank may have under the Loan Documents, or a waiver of any such rights. The Bank expressly reserves all of its rights and remedies under such Loan Documents, at law and in equity.

Very truly yours,

Andrew Maidman

HFD 211656.1

Recycled Paper