**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO: |
| | : | 3:10-cv-987 (MRK) |
| v. | : | |
| | : | |
| SAMUEL KLEIN, | : | |
| | : | |
| Defendant. | : | NOVEMBER 12, 2010 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS PURSUANT TO *FED. R. CIV. P.* 12 (b) (6)**

Plaintiff, Bank of America, N.A., ("BOA" or "Plaintiff") respectfully submits this memorandum of law in support of its accompanying motion to dismiss defendant's counterclaims.  In particular, defendant, Samuel Klein ("Klein" or "Defendant"), expressly waived his right to assert such claims.  In addition, all of Klein's counterclaims are, for the various reasons herein set forth, legally deficient in any event.

**I.     FACTS**[1]

BOA holds three loans involving Klein; two where he acts as a guarantor, and a third where he is the maker.  *See Complaint,* ¶¶ 5-8 (and accompanying Exhibits A through C); *Defendant's Answer, Affirmative Defenses and Counterclaims* (hereinafter "*Answer*"), ¶¶ 5-8; *id.*, *First Counterclaim – Breach of Contract* (hereinafter, "*First Counterclaim*"), ¶¶ 5-9.

---

[1]   As hereinafter discussed, *see* Section II, *Standards Applicable To A Motion To Dismiss*, *infra*, for purposes of this motion, Klein's "well-pleaded" allegations ***of fact*** must be accepted as true.  Conclusory allegations ***of law***, however, are entitled to no such presumption.  BOA also respectfully reserves its right to challenge Defendant's "facts" in further proceedings to the extent the same may be necessary.

The first such loan was made to Agrippa, LLC ("Agrippa"), a New York limited liability company.  *Answer, First Counterclaim*, ¶ 5.  That loan is evidenced by a $3,200,000.00 promissory note dated May 23, 2006 (the "New York Note").  *Id.*  Klein guaranteed the New York Note pursuant to a guaranty dated May 23, 2006 (the "New York Guaranty").  *Id.*, ¶ 6.[2]

Klein also guaranteed a loan made to PLC Partners, LLC ("PLC"), a Wyoming limited liability company.  *Id.*, ¶¶ 7, 8.  The loan to PLC was made on February 23, 2007, as evidenced by a $1,350,000.00 promissory note (the "Wyoming Note").  *Id.*, ¶ 7.  Klein guaranteed this loan by virtue of a guaranty dated February 23, 2007 (the "Wyoming Guaranty").  *Id.*, ¶ 8.[3]

Finally, Klein is the maker of a $5,800,000.00 promissory note dated April 28, 2008 (the "Connecticut Note"), which note is secured by a mortgage on Klein's home (the "Connecticut Mortgage").[4]  *Id.*, ¶ 10.

Klein alleges that the New York Note had an adjustable rate, and that BOA "failed and refused" to timely adjust it in accordance with its terms.  *Answer, First Counterclaim*, ¶¶ 11-13.  Klein also asserts that, in January 2010, he made payments with respect to both the Wyoming

---

[2]  Copies of the New York Note and New York Guaranty are attached to the *Complaint* as <u>Exhibits A</u> and <u>B</u>, respectively, and their authenticity has been admitted.  *See Answer*, ¶¶ 5-6.  For ease of reference, they are also attached hereto as <u>Exhibits A</u> and <u>B</u>, respectively.  (This loan transaction is hereinafter referred to as the "New York Loan.")

[3]  A copy of the Wyoming Guaranty is attached to the *Complaint* but, for ease of reference, is also attached hereto as <u>Exhibit C</u>.  A true and accurate copy of the Wyoming Note (which, because it was referenced in Klein's counterclaims (*see Answer, First Counterclaim – Breach of Contract*, ¶ 7) may properly be considered in the procedural context of this motion, *Schnall v. Marine Midland,Bank*, 225 F.3d 263, 266 (2d Cir. 2000)) is attached hereto as <u>Exhibit D</u>.  (This loan transaction is hereinafter referred to as the "Wyoming Loan.")

[4]  Because the Connecticut Note and Connecticut Mortgage were likewise referenced in Klein's counterclaims (*see Answer, First Counterclaim – Breach of Contract*, ¶ 9), they also may be considered in deciding this motion.  *See Schnall*, 225 F.3d at 263.  The Connecticut Note and Connecticut Mortgage are attached hereto as <u>Exhibits E</u> and <u>F</u>, respectively.  (This loan transaction is hereinafter referred to as the "Connecticut Loan.").

HFD 216390.3

Note and the New York Note and that, even though his account was debited, "neither payment was credited toward the appropriate [n]ote, and the [n]otes were erroneously declared to be in default." *Id.*, ¶ 14.

As regards the Connecticut Note, Klein claims that BOA has improperly "attempted" to declare the same in default by asserting that Klein failed to timely pay property taxes or maintain insurance in violation of the Connecticut Mortgage when, in actuality, Klein had fulfilled those legal obligations. *Id.*, ¶¶ 15-17. Klein also avers that BOA has improperly "attempted" to declare the Connecticut Note in default "due to the alleged failure by [Klein] to provide financial information and grant [BOA] access to the property secured by the [Connecticut] Mortgage, even though the [Connecticut] Note is fully performing." *Id.*, ¶ 18.

Based on these allegations, Klein has interposed thirteen counterclaims against BOA: breach of contract (First Counterclaim); breach of fiduciary duty (Second Counterclaim); negligence (Third Counterclaim); tortious interference with business relations (Fourth Counterclaim); interference with prospective economic advantage (Fifth Counterclaim); defamation (Sixth Counterclaim); conversion (Seventh Counterclaim); unjust enrichment (Eighth Counterclaim); statutory theft (Ninth Counterclaim); misappropriation (Tenth Counterclaim); negligent infliction of emotional distress (Eleventh Counterclaim); intentional infliction of emotional distress (Twelfth Counterclaim); and violation of the *Connecticut Unfair Trade Practices Act*, *Conn. Gen. Stat.* §§ 42-110a, et seq. ("*CUTPA*") (Thirteenth Counterclaim).

## II.    STANDARDS APPLICABLE TO A MOTION TO DISMISS

A Rule 12 (b) (6) motion is designed "to assess the legal feasibility of the complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (citation

omitted).  "When considering a motion to dismiss . . . , the Court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *Wilson v. Midway Games, Inc.*, 198 F.Supp.2d 167, 170 (D. Conn. 2002).  "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *see also K-Mart Corp. v. Midcon Realty Group of Conn., Ltd.*, 489 F. Supp. 813, 814 (D. Conn. 1980) (court "need not accept averments which are legal conclusions unsupported by the facts alleged elsewhere in the complaint").

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), also provide guidance in assessing Klein's counterclaims. As *Iqbal* made clear, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950 (citing *Twombly*, 550 U.S. at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12 (b) (6) motion . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pled allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570; *see also Iqbal,* 129 S.Ct. at 1950-51.  Put another way, "a complaint must do more than ***allege*** the

plaintiff's entitlement to relief.  A complaint has to '***show***' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (emphases added); *see also Fed. R. Civ. P.* 8 (a) (2) (pleading must contain a "short and plain statement . . . *showing* that the pleader is entitled to relief" (emphasis added)).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Jaundoo v. Clarke,* 690 F.Supp.2d 20, 33 (D. Mass. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Iqbal*, 129 S.Ct. at 1950 (quoting *Fed. R. Civ. P.* 8 (a) (2)).  A complaint cannot survive where a court can only infer that a claim is merely *possible* rather than *plausible*. *See id.*

## III.    ARGUMENT

### A.      Klein Waived His Right To Interpose Any Counterclaims.

At the outset, it is important to note that this action was commenced by BOA in an attempt to recover sums due and owing from Klein under the New York Guaranty.  *See Complaint*, ¶ 12.  Under the New York Guaranty, Klein specifically acknowledged that he had certain important rights, and Klein then proceeded to ***waive those rights***.  In particular, the New York Guaranty explicitly provides as follows:

> **GUARANTOR'S WAIVERS.**  I agree that [BOA] will have the following rights, and that I am giving up the following rights: . . . (E) **Counterclaims.**   I further waive and, to the extent not prohibited by law, agree not to assert or claim at any time any deduction to the amount guaranteed under this Guaranty for any

> claim of setoff, counterclaim, or similar right, whether such claim
> or right may be asserted by Borrower, by me, or by both of us.

*Id.*, p. 1 (emphasis in original).

Under New York law,[5] waivers of this type are fully enforceable, and do <u>not</u> violate public policy. *North Fork Bank v. Computerized Quality Separation Corp.*, 879 N.Y.S.2d 575, 577 (N.Y. App. Div. 2009), citing *Fleet Bank v. Petri Mech. Co.*, 664 N.Y.S.2d 462 (N.Y. App. Div. 2007), *European Am. Bank v. Mr. Wemmick, Ltd.*, 554 N.Y.S.2d 628 (N.Y. App. Div. 1990), and *Federal Deposit Ins. Co. v. Marino Corp.*, 425 N.Y.S.2d 34 (N.Y. App. Div. 1980).

Based on the clear, unequivocal, and legally enforceable language of the New York Guaranty itself, all of Klein's counterclaims should be dismissed.

### B. All Of The Counterclaims Should Be Dismissed Because They Fail To Adequately Plead Damage.

Damages are an essential element of a claim at law for monetary loss. *Kopperl v. Bain*, 2010 WL 3490980, at *4 (D. Conn. Aug. 30, 2010) (attached hereto as <u>Exhibit G</u>). As such, a defendant must plead and prove "(1) that plaintiff's conduct caused him damage (the *causation* element) and (2) the amount of the damage with reasonable certainty, not left to surmise or speculation (the *quantum* element)." *Id.* (emphases in original).

"At the pleading stage, governed by Rule 12 (b) (6), a plaintiff's demand for money damages must satisfy the *Twombly* and *Iqbal* requirement of factual, non-conclusory allegations stating a plausible claim that defendant's conduct caused specific economic harm in a quantifiable amount." *Id.* (citing *Fink v. Time Warner Cable,* No. 08 Civ. 9628, 2009 WL

---

[5]   The New York Guaranty contains a New York choice of law provision. *See* <u>Exhibit B</u>, p. 2 (emphasis in original).

2207920 at *4 (S.D.N.Y. July 23, 2009)), which cited *Iqbal*, and held that "where plaintiff claimed defendant's violation of Computer Fraud and Abuse Act 'causes damage by impairing the integrity or availability of data and information, as well as certain communications and protocols,' complaint should be dismissed because '[t]his allegation merely parrots the statutory language and is thus insufficiently factual to frame plausibly the damages element of plaintiff's CFAA claim.'").

Klein's "formulaic repetitions in each counterclaim of the mantra that [he] 'suffered damages' as the result of [BOA's] conduct do[ ] not satisfy the pleading requirements of *Twombly* and *Iqbal*." *Id.* Instead, in order to <u>plausibly</u> plead this element, Klein must "state separately as to each counterclaim the nature of the injury or damages claimed and the amount as can best be calculated or estimated, coupled with factual allegations sufficient to state a plausible claim that Plaintiff's alleged conduct giving rise to the particular counterclaim caused the complained-of injury." *Id.* Because all of Klein's counterclaims fail to properly plead damages, they should be dismissed.

### C. Klein Lacks Standing To Claim A Breach Of Contract As Regards The New York Note And The Wyoming Note, And The First Counterclaim Should Thus Be Dismissed With Respect Thereto.

As the face of the New York Note quickly discloses, its maker was Agrippa. *See* <u>Exhibit A</u>, p. 3. Similarly, the Wyoming Note was made by PLC. *See* <u>Exhibit D</u>, p. 3. Quite simply, Klein is attempting to assert claims that simply don't belong to him since, as a general principle, guarantors do not have standing to assert affirmative defenses that belong to the primary obligor. *Sterling Fin. Serv. Co., Inc. v. Franklin*, 259 Fed.Appx. 367, 369 (2d Cir. 2008) (citing *Cinema N. Corp. v. Plaza at Latham Assocs.*, 867 F.2d 135, 139 (2d Cir. 1989)). Accordingly, Klein's

*First Counterclaim* should be dismissed to the extent it is predicated upon a breach of the New York Note or the Wyoming Note.

> **D.**      **Klein Has Not Alleged A Breach Of The Connecticut Note, So The First Counterclaim Should Be Dismissed With Respect Thereto.**

Curiously, Klein seeks to impose breach of contract liability on BOA for its supposed "attempts" to declare the Connecticut Note in default.  *First Counterclaim*, ¶¶ 17, 18.  Notably, the *First Counterclaim* does <u>not</u> allege that BOA ever *has* declared the Connecticut Note in default, and Klein's efforts to rewrite hornbook law as regards a breach of contract must fail from the outset.  *See Pelletier v. Galske*, 105 Conn.App. 77, 81 (2007) (breach of contract claim requires a showing of non-performance). [6]

> **E.**      **BOA Does Not Owe A Fiduciary Duty to Klein, And The Second Counterclaim Should Thus Be Dismissed.**

"The legal relationship between a borrower and a bank is a contractual one and does not give rise to a fiduciary relationship."  *Dobroshi v. Bank of America, N. A.*, 886 N.Y.S.2d 106, 109 (N.Y. 2009); *see also Southbridge Assoc., LLC v. Garofalo*, 53 Conn.App. 11, 19 (1999) ("Generally there exists no fiduciary relationship merely by virtue of a borrower lender relationship between a bank and its customer."). [7]

---

[6]  The Connecticut Note, unlike the Wyoming Note and the New York Note, is governed by Connecticut law.  *See* <u>Exhibit E</u>, p. 4.

[7]  Because BOA had no obligation to collect ***anything*** from Agrippa or PLC before turning to Klein for payment, *see* <u>Exhibit B</u>, p. 1; <u>Exhibit C</u>, p. 1, how could BOA be liable to Klein for failing to properly ***apply*** payments to the New York Note or the Wyoming Note?  Since Klein was directly and fully liable under the New York Guaranty and the Wyoming Guaranty, and because BOA had no obligation to first attempt to collect from Agrippa or PLC, *see* <u>Exhibit B</u>, p. 1; <u>Exhibit C</u>, p. 1, Klein can't logically assert that BOA had any duty to him, much less as a fiduciary, to properly account for payments received in connection with the New York Note or the Wyoming Note.  Those two notes represent legal obligations wholly separate and distinct from the guaranties given to support them.  *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Robert Christopher Assoc.*, 691 N.Y.S.2d 35, 40 (N.Y. App. Div. 1999).  As such, BOA's alleged failure to properly apply funds to those notes

**F.      The Economic Loss Doctrine Bars Klein's Negligence Claim, And The Third Counterclaim Should Be Dismissed.**

"The economic loss doctrine is a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic."  *Aliki Foods, LLC v. Otter Valley Foods, Inc.*, 2010 WL 2985030, at *4 (D. Conn. July 7, 2010) (attached hereto as Exhibit H).  The doctrine essentially "holds the aggrieved party to the bargain it struck in its contract by preventing it from bringing a tort action for what is really the breach of a contractual duty."  *Id.*[8]

Klein's negligence claim – founded, as it is, on his assertions of contractual breach – alleges no independent injury other than contractual damages.  For that reason, the economic loss doctrine applies, and Klein's negligence claim should be dismissed.[9]

---

does not implicate any obligations it might be said to have had to Klein under his legally distinct guaranties.

[8]   Again, New York law is to similar effect.  *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 521 N.Y.S.2d 653, 656-67 (N.Y. 1987) ("simple breach of contract is not to be considered a tort"); *17 Vista Fee Assocs. v. Teachers Ins. & Annuity Assoc. of Am.*, 693 N.Y.S.2d 554, 559 (N.Y. App. Div. 1999).

[9]   BOA acknowledges that certain of Klein's *other* counterclaims do allege tort damages including, for example, his claims for negligent and intentional infliction of emotional distress.  Klein's negligence claim does not, however, incorporate any of the allegations of those other causes of action and, of course, BOA alleges that those other causes of action suffer from their own legal deficiencies as well (*see* Section III.B., *All Of The Counterclaims Should Be Dismissed Because They Fail To Adequately Plead Damage*, *supra*).

Of course, if the Court determines that Klein's tort claims can survive, BOA recognizes that Klein can potentially remedy any existing pleading deficiencies associated with his negligence counterclaim by incorporating allegations of independent injury from his other tort causes of action.  On the face of the existing pleadings, however, Klein has not done so, and his negligence claim is thus, for the reasons argued above, deficient.

HFD 216390.3

**G.    Klein Has Failed To "Show" His Entitlement To Relief In Connection With BOA's Alleged Tortious Interference With Business Relationships And Interference With Prospective Economic Advantage And, Accordingly, The Fourth And Fifth Counterclaims Should Be Dismissed.**[10]

> "[I]n order to recover for a claim of tortious interference with business expectancies, the claimant must plead and prove that: (1) a business relationship existed between the plaintiff and another party; (2) the defendant intentionally interfered with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffered actual loss." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,* 255 Conn. 20, 32-33, 761 A.2d 1268 (2000). Similarly, "[a] claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct." (Internal quotation marks omitted.) *Appleton v. Board of Education,* 254 Conn. 205, 212-13, 757 A.2d 1059 (2000).

*Wolf Colorprint, Inc. v. Marino*, 2010 WL 3328322, at *4 (Conn. Super. Aug. 2, 2010) (attached hereto as Exhibit I.[11]

As discussed above, *see* Section II, *STANDARDS APPLICABLE TO A MOTION TO DISMISS*, *supra,* the Supreme Court has made clear, "labels and conclusions" are simply insufficient to satisfy the pleading requirements of *Fed. R. Civ. P.* 8. *Twombly*, 550 U.S. at 555.

---

[10]    Because these tort-based claims are independent of the contracts at issue, and because the choice of law provisions in those contracts did not purport to govern **any** claims that Klein might bring against BOA, BOA respectfully submits that Connecticut law controls their outcome.  *See* Exhibit A, p. 2 ("***This Note*** will be governed by . . . the laws of the State [*sic*] of New York (emphasis added)."); Exhibit D, p. 2 (same).

[11]    New York law is to like effect.  *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003) (elements for tortious interference with prospective economic advantage); *Astra Media Group, LLC v. Clear Channel Taxi Media, LLC*, 679 F.Supp.2d 413, 431 (S.D.N.Y. 2009) (elements for tortious interference with contract).

Nor will "formulaic recitation[s] of the elements of a cause of action" suffice. *Id.* And, "[w]here a viable claim is comprised of several necessary elements, a claimant must allege facts sufficient under *Twombly* and *Iqbal* to satisfy each element. *Kopperl*, *supra*, 2010 WL 3490980, at *3.

Klein's interference claims are conclusory and formulaic in nature. To begin with, Klein does nothing to identify the contracts or relationships that were supposedly interfered with. Nor does he in any way attempt to describe the alleged results of any such interference. Has Klein been denied credit, or have any of his loans with other banks been called because of BOA's actions? Have his interest rates been increased, or has he been asked to post additional collateral because other lenders have deemed themselves insecure? No one knows, because Klein has failed to reveal this information. In so doing, Klein has he effectively denied BOA the right to understand and meaningfully respond to his claims.

Indeed, it is worth noting that Klein alleges, in threadbare fashion, that BOA knew of his relationships "with various lenders and potential lenders." *Answer, Fourth Counterclaim*, ¶ 22, But Klein himself then fails to identify ***even one person or entity*** that has allegedly been the subject of BOA's supposedly tortious conduct. Certainly if BOA "knew" who it was interfering with, Klein must also know, and it is not too much to ask – indeed, *Iqbal **requires*** Klein to reveal – the identity of the affected person or entity. *See KEMA, Inc. v. Koperwhats*, 2010 WL 3464708, at *8 (N.D. Cal. Sept. 1, 2010) (attached hereto as <u>Exhibit J</u>) (citing *Iqbal* and concluding that pleading that contained only a "generic assertion" that "current and prospective customers" had been interfered with, failed to state a claim); *M-I LLC v. Stelly*, 2010 WL 3257972, at *6 (S.D. Tex. Aug. 17, 2010) (attached hereto as <u>Exhibit K</u>) (dismissing complaint for failure to specifically identify a contract that was interfered with); *Wilco AG v. Packaging*

*Tech. & Inspection LLC*, 615 F.Supp.2d 320, 326 (D. Del. 2009) (dismissing complaint where it failed to "specifically identify" any person with whom plaintiff's business relationship was altered); *Koger, Inc. v. Klco*, 2009 WL 905061, at *5 (D.N.J. March 9, 2009) (attached hereto as Exhibit L) (dismissal where complaint failed to identify business relationships interfered with).

Additionally, Klein has wholly failed to plead – under ***any*** standard, much less the one enunciated in *Iqbal* and *Twombly* – that BOA's actions were tortious.

> '[Our Supreme Court] has long recognized a cause of action for tortious interference with contract rights . . . . The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss . . . . [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. ***This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously.***' (Internal quotation marks omitted.) *Rossman v. Morasco,* 115 Conn.App. 234, 244, 974 A.2d 1, cert. denied, 293 Conn. 923, 980 A.2d 912 (2009). '***The burden is on the plaintiff to plead and prove at least some improper motive or improper means . . . on the part of the [defendant].***' (Citation omitted; internal quotation marks omitted.) *Solomon v. Aberman,* 196 Conn. 359, 365, 493 A.2d 193 (1985). 'The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification.' (Internal quotation marks omitted.) *Daley v. Aetna Life & Casualty Co.,* 249 Conn. 766, 806, 734 A.2d 112 (1999).

*Stancuna v. Schaffer*, 122 Conn.App. 484, 489 (2010) (emphases added).  Klein's interference counterclaims are wholly silent with respect to these elements.

Even if Klein is given the benefit of the doubt because he alleged that BOA acted "knowingly, intentionally and ***improperly***," *Answer*, *Fourth Counterclaim*, ¶ 22 (emphasis

added), his interference counterclaims still fail when viewed through the prism of *Iqbal* and *Twombly*. *See Wolf Concept S.A.R.L. v. Eber Bros. Wine and Liquor Corp.*, 2010 WL 3258389, at *6 (W.D.N.Y. Aug. 17, 2010) (attached hereto as <u>Exhibit M</u>) (citing *Iqbal* and *Twombly*, and finding that allegation that defendant "intentionally and maliciously procured" a breach was "nothing more that 'a formulaic recitation of the elements of [the] cause of action'"); *Maiberger v. City of Livonia*, 2010 WL 2772490, at *17 (E.D. MI. July 13, 2010) (attached hereto as <u>Exhibit N</u>) (allegations that defendant "acted improperly, with malice, and intentionally interfered" with potential contract were "mere conclusions" and, as such, insufficient under *Iqbal* and *Twombly*); *Architects Collective v. Gardner Tanenbaum Group, LLC*, 2010 WL 2721401, at *4 (W.D. Okla. July 6, 2010) (attached hereto as <u>Exhibit O</u>) (allegations that defendant "'maliciously and wrongfully undertook to interfere . . . ,' and that such actions were not justified, privileged, or excusable," found to be "conclusory recitations of the elements of the claim" and "insufficient as a matter of law to state a plausible claim for relief," citing *Iqbal*; plaintiff "has failed to plead *facts* showing that [defendant] knew its conduct would interfere with [plaintiff's] contractual obligations and *facts* which could support malice") (emphasis in original); *Fen-Phen Series 2005-01 v. Farrin*, 2010 WL 1740521, at *4 (M.D.N.C. Apr. 28, 2010) (attached hereto as <u>Exhibit P</u>) (allegation that defendant acted "with fraud, malice, or oppression, or with a conscious disregard of" plaintiff's rights held to be a "formulaic recitation" that could not survive *Twombly* scrutiny; plaintiff called upon to "plead factual content that allows the court to draw the reasonable inference that [d]efendant acted with malice, rather than just alleging" the same).

**H.      Klein Has Failed To Properly Plead A Claim For Defamation, And The Sixth Counterclaim Should Be Dismissed.[12]**

**1.      Klein's Allegation Of Publication Is A Self-Evident "Conclusion", Not An Assertion Of Fact As Required By *Iqbal*.**

No citation is needed to support the proposition that, in order to make out a cause of action for defamation, a plaintiff must plead that the allegedly defamatory remarks were "published" to third parties.  Of course, and as argued above, *Iqbal* and *Twombly* require that Klein plead sufficient **facts** to justify a "reasonable inference" the defendant is liable.  *Iqbal*, 129 S. Ct. at 1949, (citing *Twombly*, 550 U.S. at 556).

Klein's "allegation" as regards the issue of publication showcases his unwillingness to plead, and be held to, specific factual averments.  Specifically, Klein asserts "on information and belief" that BOA "notified various credit agencies" about certain allegedly non-existent defaults.  But, and as this Court again can take judicial notice of, Klein would have every right to access **his own** credit report and could have done so in a matter of moments over the internet.  While it might be of some interest to posit why Klein failed to do so (or, if he did do so, why he failed to plead the results of his inquiry), the simple fact remains that, by declining to explicitly plead information that he is particularly suited to have at his disposal, Klein relegates *per force* his allegations to the category of speculation and conjecture.  Those allegations are, therefore, inadequate under *Iqbal* and *Twombly*.

---

[12] Connecticut law would, for the reasons described above, *see* footnote 10, *supra*, control as regards the disposition of Klein's defamation claim.

2.      **Klein Has Failed To Plead Publication With The Requisite Degree Of Particularity.**

Klein's allegations of publication are also devoid of specifics, a deficiency that becomes glaring when, as argued above, the information needed to properly plead the same is peculiarly within Klein's own grasp.  Common sense dictates that Klein could easily have pulled a credit report on himself in order to determine whether BOA had, in fact, disseminated credit information to any third parties.  Indeed, if Klein really could ***show***, as opposed to merely ***allege***, that credit information was published to a third party, why does his defamation counterclaim fail to identify even one such individual or entity with specificity?  The answer is obvious, and Klein's threadbare allegations of wrongdoing are thus revealed to be precisely the type of conclusory pleading that *Iqbal* and *Twombly* have determined is insufficient to satisfy the requirements of *Fed. R. Civ. P.* 8 (a) (2).  Klein's allegations are the quintessence of ***alleging possibility***, not ***showing plausibility***.

Even under common law pleading standards, Klein's defamation counterclaim fails to pass muster.  A plaintiff must, in order to adequately plead a defamation claim, set forth the general content of the alleged communications, when they were made, the context in which they were made, and "***by and to whom they were made***."  *United States v. Yale Univ.*, 415 F.Supp.2d 58, 109 (D. Conn. 2006) (emphasis added).  By failing to specify which statements were made and to whom, Klein again has made it virtually "impossible for [BOA] to identify and present, and for the court to evaluate, specific defenses which might be available for each particular statement."  *Croslan v. Housing Authority for City of New Britain*, 974 F. Supp. 161, 171 (D. Conn. 1997); *see also Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) (The complaint

should "afford defendant sufficient notice of the communications complained of to enable him to defend himself."). Put most simply, BOA cannot frame a meaningful response to the vague allegations that it told someone, somewhere, something defamatory about Klein. *See Croslan*, 974 F. Supp. at 171; *see also U.S. ex rel. Smith*, 415 F.Supp.2d at 109 (A plaintiff "must at least plead the content of the alleged communications, when they were made, the context in which they were made, or by and to whom they were made . . . .").

While Klein may have generally identified BOA's alleged conduct, *i.e.* that it disseminated false credit information, Klein's defamation claim utterly fails to allege what specific statements, if any, were made to third parties, and who those third parties are. Klein thus fails to set forth a legally sufficient defamation claim. *See U.S. ex rel. Smith*, 415 F.Supp.2d at 109 (dismissing defamation claim for failure to plead with requisite specificity).

### 3.      Klein's Defamation Claim Fails Because He Failed To Plead Malice.

Banks, like BOA, enjoy a qualified privilege in connection with matters of credit reporting. *See Johns v. Brown*, 2009 WL 1218623, at *5 (Conn. Super. Apr. 8, 2009) (attached hereto as Exhibit Q); *see also Calhoun v. Chase Manhattan Bank (U.S.A.), N.A.*, 911 S.W.2d 403, 408 (Tex. App. 1995); *Boydston v. Chrysler Credit Corp.*, 511 N.E.2d 318, 321 (Ind. Ct. App. 1987); *Graney Dev. Corp. v. Tasken*, 411 N.Y.S.2d 756 (N.Y. App. Div. 1978).

Once it is determined that a conditional privilege applies, the plaintiff must demonstrate the existence of malice as part of his case. *Barry v. McCollom*, 81 Conn. 293, 297 (1908) ("when in the course of the trial it became an admitted fact that the defendant made . . . a privileged communication, [plaintiff] could rely on no presumption either of falsity or malice"); *Atwater v. Morning News Co.*, 67 Conn. 504, 518 (1896) ("So, it has correctly been held that,

when the defendant's evidence tends to prove that the alleged libel was a privileged communication, the plaintiff cannot break the force of that evidence, and establish actual malice, by relying on the presumption of falsity.  He must prove the defamatory charge to be false, and that the defendant knew it was false."); *cf. Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (plaintiff must prove falsity in cases implicating speech about matters of public concern); *Cox v. Galazin*, 460 F.Supp.2d 380, 394 fn. 12 (D. Conn. 2006) (where actual malice must be proven, burden of showing falsity lies with plaintiff).  In the matter at bar, Klein has not even ***alleged*** malice and, as a consequence, his defamation claims must fail.[13]

I.      **Klein's Conversion And Statutory Theft Claims Fail, So The Seventh And Ninth Counterclaims Should Be Dismissed.**[14]

Conversion is an unauthorized assumption and exercise of the right of ownership over property ***belonging to another***, to the exclusion of the owner's rights.  Similarly, statutory theft is the stealing of ***another's property*** or the knowing receipt and concealment of stolen property.  Statutory theft, however, requires an element over and above what is necessary to prove conversion, namely, that the defendant intentionally deprived the complaining party of his or her property.  Nonetheless, to prevail on either claim, the party alleging conversion or statutory theft must prove a sufficient property interest in the items in question.  *Discover Leasing, Inc. v. Murphy,* 33 Conn. App. 303, 309, 635 A.2d 843 (1993) (prima facie case for conversion and statutory theft requires proof that property in question "belonged to" plaintiff).  Accordingly, a claim for conversion may be brought when the relationship is one of bailor and bailee ***but not when it is one of debtor and creditor***. See *United States v. Johnston,* 268 U.S. 220, 226-27, 45 S. Ct. 496, 69 L. Ed. 925, 1925-1 C.B. 313, T.D. 3714 (1925).

---

[13] And, if Klein elects to replead and to include an allegation of malice, it goes without saying that, once again, any such allegation will have to contain sufficient facts to satisfy the requirements of *Iqbal* and *Twombly*.

[14] Connecticut law would, for the reasons described above, *see* footnote 10, *supra*, control as regards the disposition of Klein's conversion and statutory theft claims.

A debtor-creditor relationship arises from a debt owed by one party to another. The debt owed arises from an obligation, often contractual, on the part of the debtor, not from a preexisting property interest of the creditor. In contrast, '[a] relationship of bailor-bailee arises when the owner, while retaining general title, delivers personal property to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled, or to otherwise deal with the goods according to the bailor's directions. . . . In bailment, the owner or bailor has a general property [interest] in the goods bailed . . . . The bailee, on the other hand, has mere possession of items left in its care pursuant to the bailment.' A bailment therefore contemplates redelivery of goods entrusted to the bailee, whereas a debtor-creditor relationship contemplates the payment of an obligation defined by agreement between the parties.

***Furthermore, a bailment may not exist when the goods entrusted to a party properly are intermingled or commingled with goods belonging to others***. In *B. A. Ballou & Co. . . .* , we specifically concluded that, '[b]ecause [the recipient of the plaintiff's scrap metal (recipient)] commingled the scrap metal and had it remanufactured by a third party who mixed it with new metal as needed, there was no way of determining whether any of the same scrap sent to [the recipient] by [the plaintiff] ever returned to [the plaintiff] as finished brass.' ***If the purported bailee is not bound to return the same items that were delivered to him by the bailor, but may deliver any other item or items of equal value, there is no bailment***.

*Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 418-20 (2007) (certain citations omitted; emphases added).

As *Mystic Color Lab* establishes, Klein's conversion and statutory theft claims fail for at least three reasons. First, the relationship existing between BOA and Klein is plainly that of debtor and creditor. When Klein relinquished possession of certain monies to BOA, he may have had an expectation that they would be applied in a certain way, but it is axiomatic that the funds no longer "belonged" to him. Quite simply, he did not expect to get them back and, as

such, it was legally impossible for BOA to "convert" or to "steal" them.  *Id.*  Second, even if Klein did have the right to regain possession of the monies at issue, that right could have been satisfied by remittance of any combination of legal tender, and it was <u>not</u> necessary for BOA to return the exact notes or coins that had been surrendered by Klein to it.  Because Klein's remittances were comingled with other BOA funds, Klein's statutory theft and conversion claims again fail.  *Id.*  Finally, Klein has wholly failed to allege that BOA intended to deprive him of his property.  *Id.*  As such, Klein's statutory theft claim fails as a matter of law unless the same is properly replead.

**J.      Klein's Misappropriation Claim Fails, And The Tenth Counterclaim Should Be Dismissed.**

BOA has been unable to locate any Connecticut authority establishing a tort of misappropriation, other than in the context of misappropriation of a trade secret.  BOA respectfully submits that Klein's misappropriation claim is just a conversion or statutory theft claim by a different moniker and that, for the reasons aforesaid with respect to such claims, the misappropriation should also be dismissed.

**K.      Klein's Intentional And Negligent Infliction Of Emotional Distress Claims Fail As A Matter Of Law And, Therefore, The Eleventh And Twelfth Counterclaims Should Be Dismissed.[15]**

To establish a proper claim for the infliction of emotional distress under Connecticut law, a plaintiff must demonstrate: (1) that the defendant intended to inflict emotional distress, or that it knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause

---

[15] Connecticut law again controls the disposition of this issue.  *See* footnote 10, *supra.*

of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.  *Jones v. Gem Chevrolet*, 166 F.Supp.2d 647, 651 (D. Conn. 2001); *Appleton v. Board of Education*, 254 Conn. 205, 211 (2000).

The key element of an intentional infliction of emotional distress claim is the second, which requires proof by the plaintiff that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* at 211.  To demonstrate extreme and outrageous conduct for purposes of a claim of intentional infliction of emotional distress, a plaintiff must present evidence of "conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."  *Jones*, 166 F.Supp.2d at 651 (quoting *Petyan v. Ellis*, 200 Conn. 243, 254 n. 5 (1986)).  Determining "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court . . . . Only where reasonable minds disagree does it become an issue for the jury."  *Hartmann v. Gulf View Estates Homeowners Ass'n, Inc.*, 88 Conn.App. 290, 295 (2005) (citation omitted).

As the *Restatement ((Second) of Torts* has observed:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

*Id.*, § 46 (1965).

In the matter at bar, Klein alleges, at best, that BOA intentionally failed to adjust the interest rates on a loan that he guaranteed (*Answer, First Counterclaim – Breach of Contract*, ¶

11); failed to properly apply two payments on loans that he guaranteed (*id.*, ¶ 14); "erroneously" declared certain loans in default (*id.*); "attempted" to declare the loan made by him in default (*id.*, ¶¶ 17-18); and, "on information and belief," incorrectly reported Klein's loans in default to unknown credit agencies (*id.*, *Sixth Count – Defamation*, ¶ 21).  None of this conduct, even if believed, rises to the level of outrage necessary to support Klein's infliction claims.  *See Hukic v. Aurora Loan Serv.*, 588 F.3d 420, 438-39 (7th Cir. 2009) (failure to properly apply consumer's mortgage loan payment, and mistakenly reporting that loan as delinquent held not sufficiently outrageous as a matter of law); *In re Baker*, 18 B.R. 243 (W.D.N.Y. 1982) (debt collection practices that included between 100 and 120 telephone calls, work visits, and false impersonation of a police officer held not sufficiently outrageous); *cf. Falit v. Provident Life and Accident Ins. Co.*, 2010 WL 2710478, at *3 (D. Conn. July 7, 2010) (attached hereto as <u>Exhibit R</u>) (citing *Farrah v. Allstate Ins. Co.*, 2003 Conn.Super. LEXIS 2508 (Conn. Super. Sept. 16, 2003)).

Finally, Klein's allegations that the conduct at issue caused him "severe emotional distress," *Answer*, *Eleventh Counterclaim – Negligent Infliction of Emotional Distress*, ¶ 21; *id.*, *Twelfth Counterclaim – Intentional Infliction of Emotional Distress*, ¶ 21, and that BOA's conduct was "extreme and outrageous," *id.*, *Twelfth Counterclaim – Intentional Infliction of Emotional Distress*, ¶ 21, are mere conclusions bereft of any factual support.  As such, they again fail to satisfy *Iqbal* and *Twombly*.  *See Vogler v. Countrywide Home Loans, Inc.*, 2010 WL 3394034, at *9 (M.D.N.C. Aug. 26, 2010) (attached hereto as <u>Exhibit S</u>).

**L.      Klein's *CUTPA* Claim Fails To Sufficiently Plead An "Ascertainable Loss" And, As Such, The Thirteenth Counterclaim Should Be Dismissed.[16]**

In order to adequately plead a claim under CUTPA, a plaintiff must allege the existence of an "ascertainable loss."  *Artie's Auto Body, Inc. Hartford Fire Ins. Co.*, 287 Conn. 208, 217-18 (2008).  Here, Klein has merely plead that talismanic language with formulaic ritualism, but he has done nothing to in any way establish facts that would nudge his assertions from the plausible to the possible.  Under *Iqbal* and *Twombly,* his *CUTPA* claim must be dismissed.

## IV.   <u>CONCLUSION</u>

Klein waived his right to interpose ***any*** counterclaims and, on that basis alone, all of his counterclaims should be dismissed <u>without</u> leave to replead.

In addition, though, even if they survive that initial obstacle, all of Klein's counterclaims are inadequately plead under *Iqbal* and *Twombly*.  And, while some of Klein's claims could admittedly be replead, others simply fail, under any scenario, as a matter of law.

For the reasons herein set forth, therefore, BOA asks that this Court dismiss all of Klein's counterclaims.

---

[16] Connecticut law again controls the disposition of this issue.  *See* footnote 10, *supra*.

Dated at Hartford, Connecticut this 12th day of November, 2010.

                                        PLAINTIFF,
                                        BANK OF AMERICA, N.A.

                                        /s/Donald E. Frechette
                                        Donald E. Frechette, Esq.
                                        Edwards, Angell, Palmer & Dodge LLP
                                        20 Church Street
                                        Hartford, CT  06103
                                        Phone:(860) 525-5065
                                        Facsimile: (860) 527-4198


                        **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 12th day of November, 2010, the foregoing was filed with the Court electronically and served by regular first class mail, postage prepaid, upon anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


                                        /s/Donald E. Frechette
                                        Donald E. Frechette, Esq.

HFD 216390.3