# Exhibit J

Westlaw.

Slip Copy, 2010 WL 3464708 (N.D.Cal.)
**(Cite as: 2010 WL 3464708 (N.D.Cal.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
KEMA, INC., et al., Plaintiffs,
v.
William KOPERWHATS, et al., Defendants.
and related counterclaims.
**No. C-09-1587 MMC.**

Sept. 1, 2010.

Valerie Margo Wagner, James L. Jacobs, GCA Law Partners LLP, Mountain View, CA, Linda M. MacLeod, Morgan, Franich, Fredkin & Marsh, San Jose, CA, for Plaintiffs.

Saralynn Mandel, Mandel & Adriano, Pasadena, CA, for Defendants.

**AMENDED [FN*] ORDER GRANTING IN PART AND DENYING IN PART COUNTERCLAIM DEFENDANTS KEMA, INC., RLW ANALYTICS, INC., AND CURT PUCKETT'S MOTION TO DISMISS AND MOTION TO STRIKE COUNTERPLAINTIFF'S FIRST AMENDED ANSWER AND COUNTERCLAIMS**

FN* The sole amendments are to correct two typographical errors. (*See infra* at 14:15-17.)

MAXINE M. CHESNEY, District Judge.

**\*1** Before the Court is counterclaim defendant KEMA, Inc. ("KEMA"), counterclaim defendant RLW Analytics, Inc. ("RLW"), and counterclaim defendant Curt Puckett's ("Puckett") (collectively "Counterclaim Defendants") joint Motion to Dismiss and Motion to Strike First Amended Counterclaims ("MTDS"), filed October 29, 2009. Counter-

claim plaintiff William Koperwhats ("Koperwhats") has filed opposition, to which Counterclaim Defendants have replied.

Having read and considered the papers filed in support of and in opposition to the motion, the Court hereby rules as follows.

**BACKGROUND**

By the instant action, Koperwhats, a software programmer, alleges Counterclaim Defendants breached a licensing agreement, improperly distributed Koperwhats' proprietary software and source code, and misused the trademark "Visualize-IT." Koperwhats asserts as against Counterclaim Defendants the following causes of action: (1) Copyright Infringement (First Cause of Action); (2) Violation of California Uniform Trade Secrets Act (Second Cause of Action); Breach of Contract (Third Cause of Action); Intentional Fraud (Fourth Cause of Action); Unfair Competition Under Cal. Bus. & Prof.Code § 17200 (Fifth Cause of Action); Intentional Interference with Prospective Business Advantage (Sixth Cause of Action); and Cancellation of Plaintiffs' Registered Trademark (Seventh Cause of Action).

By Order filed September 10, 2009, each of Koperwhats' first six causes of action, with the exception of his breach of contract claim as pertaining to RLW, were dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (*see* Order filed Sept. 10, 2009 ("Sept. 10 Order") at 20), and Koperwhats was granted leave to amend. (*See id.*) On October 13, 2009, Koperwhats filed his First Amended Answer and Counterclaims ("FACC"), realleging his previous counterclaims against Counterclaim Defendants, and adding, as against RLW and KEMA, the above-referenced Seventh Cause of Action for cancellation of registered trademark (*see* FACC at 24-46); Koperwhats also amended two of his affirmative defenses and added two new affirm-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3464708 (N.D.Cal.)
**(Cite as: 2010 WL 3464708 (N.D.Cal.))**

ative defenses (*see id.* ¶¶ 59-63).

By the instant motion, Counterclaim Defendants seek as to all Counterclaim Defendants, pursuant to Rule 12(b)(6), dismissal of each of Koperwhats' counterclaims with the exception of the Third Cause of Action as alleged against RLW and the Seventh Cause of Action. Additionally, Pucket contends the Court lacks personal jurisdiction over him and moves for dismissal pursuant to Rule 12(b) (2). Lastly, Counterclaim Defendants seek an order striking portions of the relief sought by Koperwhats, as well as an order striking Koperwhats' affirmative defense of trademark misuse.[FN1]

> FN1. Although Counterclaim Defendants initially challenged Koperwhats' additional counterclaim and affirmative defenses as having been filed without leave of court ( *see* MTDS at 18-20), they subsequently withdrew that objection (*see* Statement of Non-Opposition filed Dec. 22, 2009; *see also* Motion filed Dec. 22, 2009 at 3:3-11).

### LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Fed.R.Civ.P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *See id.* Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See id.* (internal quotation, citation, and alteration omitted).

*2 In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. *See NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ---U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly,* 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *See Iqbal,* 129 S.Ct. at 1950 (internal quotation and citation omitted).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, however, may be considered. *See Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994). In addition, a district court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referenced in the complaint. *See Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998). Finally, the Court may consider matters that are subject to judicial notice. *See Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986).

### DISCUSSION

### A. Motion to Dismiss Under Rule 12(b)(6)

The Court will address Koperwhats' first six causes of action in the sequence in which they are asserted

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3464708 (N.D.Cal.)
**(Cite as: 2010 WL 3464708 (N.D.Cal.))**

in the FACC.

## 1. First Cause of Action (Copyright Infringement)

In his First Cause of Action, Koperwhats alleges that Counterclaim Defendants have "downloaded, sold, licensed, distributed, 'shared,' or ... otherwise transferred" Koperwhats' software in a manner infringing his copyright. (*See* FACC ¶¶ 130, 134, 135.) Koperwhats further alleges he is in possession of a Copyright Registration Certificate ("Registration Certificate") covering the allegedly infringed copyrighted material and bearing registration number TX 6-920-412. (*See id.* ¶ 93 & Ex. 4.) Counterclaim Defendants argue Koperwhats' copyright infringement claim is subject to dismissal because Koperwhats' Registration Certificate does not, in fact, pertain to any work alleged to have been infringed, and consequently, the Court lacks jurisdiction.

Under the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with [the Act]." *See* 17 U.S.C. § 411(a). The registration requirement is jurisdictional, and thus a lack of registration bars an infringement claim. *See Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.,* 315 F.Supp.2d 1053, 1056 (C.D.Cal.2004). Consequently, the district court "lacks subject matter jurisdiction over a copyright claim if the certificate of registration is yet to be issued." *Id.* Further, a district court lacks jurisdiction over a copyright claim where the allegedly infringed work was published before the date of first publication identified in the registration, unless such registration identifies the registered work as derivative of, or a compilation containing, the allegedly infringed work. *See I.M.S. Inquiry Management Systems, v. Berkshire Information Systems, Inc.,* 307 F.Supp.2d 521, 527, 529 (S.D.N.Y.2004) (citing *Streetwise Maps, Inc. v. VanDam, Inc.,* 159 F.3d 739 (2d Cir.1998) and *Well-Made Toy Mfg.*

*Corp. v. Goffa Int'l Corp.,* 354 F.3d 112, 115-16 (2d. Cir.2003)); *see also Well-Made,* 354 F.3d at 516 (finding district court lacked jurisdiction where "the copied work ... [was] not listed in any copyright registration and the only copied expressive elements ... [did] not appear in any work whose copyright [had] been registered").

**\*3** Here, the Registration Certificate identifies a work that was completed in 2008 and first published on June 16, 2008; the Registration Certificate does not identify any preexisting work or works. [FN2] (*See* FACC Ex. 4.) Counterclaim Defendants argue that, based on the facts alleged in the FACC, many of the allegedly infringed software versions were published prior to June 16, 2008. Specifically, in the FACC, Koperwhats alleges that commencing in 2002, RLW obtained Koperwhats' services in order that it could use subsequent versions of "Visualize-It [ ] developed by Koperwhats ... including Versions 3 and 4" (*see id.* ¶ 85) and that Version 3.3 was published on RLW's website on February 27, 2006 (*see id.* Ex. 3). As Counterclaim Defendants point out, in light of such allegations, the Registration Certificate cannot pertain to Version 3.3 or to any software versions prior to Version 3.3, because any such version necessarily was published prior to June 16, 2008 and is not identified as a preexisting work on which the registered work is based. As Counterclaim Defendants further point out, Koperwhats' pleading is, at best, ambiguous as to the material he deposited with the United States Copyright Office in seeking the Registration Certificate. Although Koperwhats alleges he "submitt[ed] a portion of the source code for Version 4.3 of Visualize-It," (*see id.* ¶ 159), he also alleges "[t]he version of source code submitted to the U.S. Copyright Office *corresponds to* a portion of the source code for Version 4.3" (*see id.* ¶ 94) (emphasis added) and that "the source code of the [ ] program [ ] from which the deposits for copyright registration were made[ ] *is similar to but not identical to,* Versions 3 through 4.3" (*see id.* ¶ 95) (emphasis added).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3464708 (N.D.Cal.)
**(Cite as: 2010 WL 3464708 (N.D.Cal.))**

FN2. In the context of copyright registration "publication" is defined as "the distribution of copies of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." *See* 17 U.S.C. § 101.

Accordingly, Counterclaim Defendants' motion will be granted as to Koperwhats' First Cause of Action, and the Court will afford Koperwhats an opportunity to amend his counterclaim to cure the above-noted deficiencies as to versions later than Version 3.3.

**2. Second Cause of Action (Misappropriation of Trade Secrets)**

Koperwhats, in his Second Cause of Action, alleges the source code to his software constitutes a trade secret, and that KEMA, RLW, and Pucket have "stole [n]" and improperly "transferred" such source code to Axmor, which is improperly "using" such source code. (*See* FACC ¶¶ 191-194.) Further, Koperwhats alleges, KEMA and RLW "improperly used, copied, sold or otherwise distributed software programs that utilize [Koperwhats'] trade secrets." ( *See id.* ¶ 195.) Counterclaim Defendants argue Koperwhats' claim is subject to dismissal because Koperwhats has failed to adequately allege "the disclosure or use of anything 'secret,' " and, consequently, the claim is "preempted" by the Copyright Act.[FN3] (*See* MTDS at 12-13.)

FN3. Although couched in terms of preemption, this argument is more appropriately characterized as an assertion that the software at issue fails to meet the statutory definition of a "trade secret," as there is no argument that, if Koperwhats has adequately alleged such a secret, his claim is not preempted. *See, e.g., Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209, 1212 (9th Cir.1998) (holding, for claim to be preempted under Copyright Act, "the rights that a plaintiff asserts under state law must

be 'rights that are equivalent' to those protected by the Copyright Act") (quoting 17 U.S.C. § 301(a)); *Firoozye v. Earthlink Network,* 153 F.Supp.2d 1115, 1130 (N.D.Cal.2001) (holding, where action "for disclosure and exploitation of trade secrets require[s] a status of secrecy, not required for copyright," action is not preempted; finding action under California Uniform Trade Secrets Act requires such secrecy) (internal quotation and citation omitted).

By the Court's prior order, Koperwhats' Second Cause of Action, as initially pleaded, was dismissed for failure to adequately allege the elements of a trade secret claim. (*See* Sept. 10 Order at 10-12.) Under California Civil Code § 3426.1, a "trade secret" must (1) "[d]erive[ ] independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use," and (2) be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *See* Cal. Civ.Code § 3426.1(d)(1), (2). In his earlier pleading, Koperwhats failed to allege that the misappropriated software was kept "secret," given Koperwhats' alleged submission of the source code for Version 4.3 to the Copyright Office and failure to allege he had "blocked out" any "trade secret material" prior to such submission. *See* 37 C.F.R. § 202.20(c)(2)(vii)(A)(2) (providing for deposit with "portions of the source code containing trade secrets blocked-out"); *see also In re Providian Credit Card Cases,* 96 Cal.App.4th 292, 304, 116 Cal.Rptr.2d 833 (2002) (holding "[p]ublic disclosure, that is the absence of secrecy, is fatal to the existence of a trade secret"; noting "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished") (internal quotation and citation omitted).

**\*4** In his FACC, Koperwhats realleges his trade secret claim without material alteration and, in his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3464708 (N.D.Cal.)
**(Cite as: 2010 WL 3464708 (N.D.Cal.))**

opposition to the instant motion, contends the source code he submitted to the Copyright Office has been kept secret because restrictions are placed on the public's ability to obtain copies of deposits submitted in conjunction with an application for registration of a copyright. *See* 37 C.F.R. § 201.2(d)(2)(i)-(iii) (providing requests for copies of deposited material will be granted only upon receipt of (i) written authorization from copyright holder, (ii) written request from attorney involved in litigation pertaining to the copyright, or (iii) receipt of court order). As Counterclaim Defendants note, however, "the articles deposited in connection with completed copyright registrations and retained under the control of the Copyright Office, shall be open to public inspection." *See* 17 U.S.C. § 705(b); *see also* 37 C.F.R. § 201.2(b)(1) (providing for public "inspection [at the Copyright Office] of ... material deposited in connection with a completed copyright registration").

Koperwhats also argues that because only 50 pages of Version 4.3 were deposited with the Copyright Office, the portions of the source code he has not deposited remain a trade secret. Although the required deposit of 50 pages of source code at the Copyright Office has been found not to defeat a claim for misappropriation of trade secrets as to the remaining portions of source code, *see Cinebase Software, Inc. v. Media Guaranty Trust, Inc.,* 1998 WL 661465 at *11 (N.D.Cal.1998), Koperwhats, in his FACC, does not rely on any portion of the source code for Version 4.3 as a basis for his misappropriation claim; rather, his misappropriation claim is based exclusively on the source code for Version 3.3 (*See* FACC ¶¶ 91, 130, 192-93.) Further, as the district court in *Cinebase* noted, the failure to secure non-disclosure agreements from others in possession of any remaining portions is fatal to a trade secret claim. *See Cinebase,* 1998 WL661465 at *11 (finding plaintiff's "failure to secure nondisclosure agreements from technical personnel" unreasonable). Here, Koperwhats, by an exhibit to the FACC, essentially pleads he provided RLW with the source code for Version 3.3. (*See*

FACC Ex. 3.) Consequently, Koperwhats has not alleged he took reasonable efforts to maintain the secrecy of any portion of the source code for Version 3.3. Although Koperwhats contends, in conclusory fashion and without further elaboration, that there was an "understanding [the source code] was to be kept confidentially" (*see* Opp'n at 14:3-4), Koperwhats has not included any such allegation in the FACC, let alone facts sufficient to plead a reasonable effort to maintain secrecy.

Accordingly, Counterclaim Defendants motion to dismiss Koperwhats' Second Cause of Action will be granted, and Koperwhats will be afforded an opportunity to amend to cure the above-noted deficiencies.

### 3. Third Cause of Action (Breach of Contract)

**\*5** In his Third Cause of Action, Koperwhats alleges KEMA, RLW, and Puckett have breached a licensing agreement (hereafter "Agreement") between Koperwhats and RLW. As Counterclaim Defendants note, however, Koperwhats again fails to allege that either KEMA or Puckett was a party to said Agreement or an alter ego of any party thereto. (*See* Sept. 10 Order at 12-14.)

A plaintiff seeking to hold a defendant liable under the alter ego doctrine must show "(1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice." *See Flynt Distributing Co., Inc. v. Harvey,* 734 F.2d 1389, 1393 (1984). Where a parent and subsidiary relationship exists, the first prong of such test "has alternatively been stated as requiring a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *See Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir.2001) (noting "[t]he 'general rule' is that "a subsidiary and the parent are separate entities") (internal quotation and citation omitted). Factors relevant to a determination of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3464708 (N.D.Cal.)
**(Cite as: 2010 WL 3464708 (N.D.Cal.))**

alter ego include (1) commingling of funds and oth-
er assets of the two entities, (2) the holding out by
one entity that it is liable for the debts of the other,
(3) identical equitable ownership in the two entities,
(4) use of the same offices and employees, (5) use
of one as a mere shell or conduit for the affairs of
the other, (6) inadequate capitalization, (7) disreg-
ard of corporate formalities, (8) lack of segregation
of corporate records, and (9) appointment of
identical directors and officers. *See Sonora Dia-
mond Corp. v. Superior Court,* 83 Cal.App.4th 523,
538-39, 99 Cal.Rptr.2d 824 (2000) (citing cases).
"No one characteristic governs"; rather, "courts
must look at all the circumstances to determine
whether the doctrine should be applied." *See id.* at
539, 99 Cal.Rptr.2d 824. "Mere ownership of all
the stock and control and management of a corpora-
tion ... is not of itself sufficient to cause the courts
to disregard the corporate entity." *See Meadows v.
Emett & Chandler,* 99 Cal.App.2d 496, 498-99, 222
P.2d 145 (1950).

Here, Koperwhats alleges that RLW, KEMA, and
Puckett are alter egos of each other because (1)
KEMA "acquired" RLW and "is the sole sharehold-
er of RLW," (2) RLW's website bears the KEMA
logo, describes KEMA's operations, and features a
KEMA press release, (3) Puckett is now the Senior
Vice President in the Sustainable Market Strategies
Group for KEMA and no longer holds any position
at RLW, (4) RLW and KEMA are represented by
the same counsel in this litigation, (5) other former
employees of RLW are now employees of KEMA,
and (6) KEMA advertises and sells RLW products
on its website. (*See* FACC at ¶¶ 67-69, 124,
136-142.)

Such allegations, however, are insufficient to plead
an alter ego relationship. In particular, Koperwhats
makes no allegation that "fraud or injustice" would
result if the corporate structure were disregarded.
*See Flynt* 734 F.2d at 1393. Koperwhats has not al-
leged, for example, that RLW is undercapitalized,
*see Minton v. Cavaney,* 56 Cal.2d 576, 580, 15
Cal.Rptr. 641, 364 P.2d 473 (1961), or that efforts

have been made by KEMA to strip RLW of assets
in order to avoid liability, *see Las Palmas Asso-
ciates v. Las Palmas Center Assoc.,* 235 Cal.App.3d
1220, 1251, 1 Cal.Rptr.2d 301 (1991). The FACC
includes no other allegations sufficient to hold any
defendant other than RLW liable for breach of the
Agreement.

*6 Accordingly, to the extent Counterclaim De-
fendants seek dismissal of Koperwhats' Third
Cause of Action as alleged against KEMA and
Puckett, the motion will be granted, and Koper-
whats will be afforded an opportunity to amend to
cure the above-noted deficiencies.

**4. Fourth Cause of Action (Intentional Fraud)**

Koperwhats, in his Fourth Cause of Action, alleges
Exhibit A to Koperwhats and RLW's 2008 Settle-
ment and License Agreement ("Agreement") as
well as a February 17, 2009 email from Puckett to
Koperwhats "intentionally concealed accurate and
complete user identification and registration
codes." (*See* FACC ¶ 210.) In the Court's Septem-
ber 10, 2009 Order, the Court dismissed Koper-
whats' Fourth Cause of Action to the extent it was
based on the Agreement and Exhibit A thereto, for
the reason that, contrary to Koperwhats' allegation,
the Agreement "does not provide that Exhibit A
thereto contains a list of all the entities to which
RLW had distributed Versions 3 through 4 of Visu-
alize-IT." (*See* Sept. 10 Order at 15:3-6; *see also*
FACC Ex. 11 at § 5.2, Ex. A.) Also by said Order,
the Court dismissed Koperwhats' Fourth Cause of
Action to the extent it was based on the above-
referenced email, for the reason that Koperwhats
had not adequately alleged he relied on any repres-
entation made in such email or that he suffered
"any loss or damage as a result of any reliance." (
*See* Sept. 10 Order at 15:14-16:2.)

Counterclaim Defendants contend the Fourth Cause
of Action remains deficient, for the reason that Ko-
perwhats still has not identified a fraudulent state-
ment in either the Settlement Agreement or Exhibit

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3464708 (N.D.Cal.)
**(Cite as: 2010 WL 3464708 (N.D.Cal.))**

A thereto, and because Koperwhats has not added any new allegations in an effort to show he relied to his detriment on the February 17, 2009 email.

As the Court noted in its prior Order, the elements of fraud, under California law, are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *See Engalla v. Permanente Med. Group,* 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843, 938 P.2d 903 (1997) (internal quotation and citation omitted). The Court next turns to the two documents on which Koperwhats relies.

**a. 2008 Settlement Agreement and Exhibit A thereto**

The Court agrees with Counterclaim Defendants that Koperwhats, in his amended Fourth Cause of Action, has not cured the deficiencies identified by the Court's September 10, 2009 Order. Specifically, Koperwhats has failed to identify in the Agreement or Exhibit A thereto any statement made by either Counterclaim Defendant that either directly, or by omission therefrom, constitutes a misrepresentation of fact. In particular, there is no statement in either of the two documents that Exhibit A contains a list of all the entities to which RLW had distributed Versions 3 through 4 of Visualize-It. Rather, as the Court previously pointed out, the Agreement merely grants a license to use such software to the specific entities listed in the exhibit. (*See* FACC Ex. 11 at § 5 .2.) Koperwhats' new allegations that oral misrepresentations were made, whether or not incorporating Exhibit A by reference (*see e.g.,* FACC ¶¶ 106, 107, 111, 213, 214), fail to satisfy the requirement that fraud claims be pled "with particularity." *See* Fed.R.Civ.P. Rule 9(b); *see also Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1107 (holding "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged" and must "set forth what is false or misleading about a statement, and

why it is false") (internal quotations and citations omitted).

**b. February 17, 2009 Email**

*7 As Counterclaim Defendants correctly point out, Koperwhats, in his FACC, has not alleged any new facts to support his contention that he relied on the February 17, 2009 email from Puckett or that he suffered "any loss or damage as a result of any reliance." (*See* Sept. 10 Order at 15:14-16:2.) Rather, in his opposition, Koperwhats argues the Court erred in its prior order by considering "whether Koperwhats actually relied ..., and [sought] 'proof' he so relied, not whether he properly pled the element of reliance." (*See* Opp'n at 18:2-4.) Contrary to Koperwhats' assertion, however, and as discussed in the Court's prior Order, Koperwhats' allegation that he relied by "refraining from litigation", (*see* FACC ¶ 215), is essentially conclusory in nature and ambiguous, in that the FACC contains no factual allegation as to the nature of any lawsuit Koperwhats would have filed in the absence of the conduct at issue, *see Iqbal,* 129 S.Ct. at 1949 ("holding [t]o survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face") (internal quotation and citation omitted), nor has Koperwhats alleged how the above-referenced email deterred Koperwhats from filing any such lawsuit, particularly given Koperwhats' allegation that, on March 5, 2009, approximately two weeks after the transmission of the email, Koperwhats' counsel sent counsel for KEMA a cease and desist letter demanding "an accurate listing of all users" of the software at issue. *See id.; (see also* Sept. 10, 2010 Order at 15:15-18; FACC ¶¶ 144-46.)

Koperwhats' renewed allegation that his reliance on the email caused him to "forego ... additional payments for use of his copyrighted software," (*see* FACC ¶ 167), likewise is unavailing. Such allegation, without further factual elaboration, remains ambiguous.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3464708 (N.D.Cal.)
**(Cite as: 2010 WL 3464708 (N.D.Cal.))**

In sum, Koperwhats has failed to amend his FACC to plead a fraudulent representation contained in the Settlement Agreement and/or Exhibit A, or to adequately allege he suffered any loss or damage as a result of any reliance on the February 17, 2009 email, nor has he adequately pleaded a fraud claim based on any other communication by either of the Counterclaim Defendants.

Accordingly, Counterclaim Defendants' motion to dismiss Koperwhats' Fourth Cause of Action will be granted, and Koperwhats will be afforded another opportunity to amend.

**5. Fifth Cause of Action (Unfair Competition)**

In his Fifth Cause of Action, Koperwhats alleges Counterclaim Defendants have violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200, *et seq.,* by committing the alleged violations set forth in Koperwhats' First through Fourth Causes of Action (*see* FACC ¶ 225; Opp'n at 18:8-14). Consequently, the Fifth Cause of Action is derivative of Koperwhats' other claims. *See Berryman v. Merit Prop. Mgmt.,* 152 Cal.App.4th 1544, 1554, 62 Cal.Rptr.3d 177 (2007) (holding "[u]nder its 'unlawful' prong, the UCL borrows violations of other laws ... and makes those unlawful practices actionable under the UCL").

**\*8** As discussed above, the First through Fourth Causes of Action are subject to dismissal, with the exception of the Third Cause of Action to the extent it is alleged against RLW. (*See* Sept. 10 Order at 16.) Further, as noted in the Court's prior order, a breach of contract can form the basis of a claim under the UCL only if the breach "also constitutes conduct that is unlawful, unfair, or fraudulent." *See Puentes v. Wells Fargo Home Mortgage, Inc.,* 160 Cal.App.4th 638, 645, 72 Cal.Rptr.3d 903 (2008) (internal quotation and citation omitted); *see also Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc.,* 319 F.Supp.2d 1059, 1074-75 (C.D.Cal.2003) (dismissing UCL claim based on alleged breach of contract where breach was not alleged to violate

any statute). In its prior order, the Court dismissed Koperwhats' UCL claim on the ground Koperwhats had failed to allege any conduct that was "unlawful, unfair, or fraudulent" independent of the alleged breach of contract. (*See* Sept. 10 Order at 16.) Koperwhats' FACC contains no new factual allegations in that regard.

Accordingly, Counterclaim Defendants motion to dismiss Koperwhats' Fifth Cause of Action will be granted, and Koperwhats will be afforded an opportunity to amend to the extent such cause of action is based on his First, Second, and/or Fourth Causes of Action.

**6. Sixth Cause of Action (Intentional Interference with Prospective Economic Advantage)**

In his Sixth Cause of Action, Koperwhats alleges that Counterclaim Defendants "dissuaded potential customers from purchasing [software from Koperwhats], interfering with [his] prospective economic advantage with these potential customers." (*See* FACC ¶ 240.) Counterclaim Defendants argue such claim is subject to dismissal on the ground that Koperwhats again has failed to identify any existing business relationship with which any Counterclaim Defendant allegedly interfered.

As with Koperwhats' first answer and counterclaims, no prospective business relationship is identified other than by the generic assertion that "current and prospective customers" were "dissuaded" from purchasing or licensing Koperwhats' software. Koperwhats' conclusory allegation of a relationship, without identifying such relationship, is insufficient under Rule 8 to allow an opposing party to meaningfully respond. *See Iqbal,* 129 S.Ct. at 1950 (holding courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

Accordingly, Counterclaim Defendants' motion to dismiss Koperwhats' Sixth Cause of Action will be granted with leave to amend.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3464708 (N.D.Cal.)
**(Cite as: 2010 WL 3464708 (N.D.Cal.))**

**B. Motion to Dismiss Under Rule 12(b)(2)**

Because the Court, as discussed above, has found all of Koperwhats' claims against Puckett are subject to dismissal, the Court will not address herein the merits of this additional argument.

**C. Motions to Strike**

Counterclaim Defendants have withdrawn their motions to strike the Seventh Cause of Action as well as the Second, Third, and Fifth Affirmative Defenses. Accordingly, the Court does not address those causes of action herein. Counterclaim Defendants' motion to strike Koperwhats' Fourth Affirmative Defense and portions of the Prayer remain for the Court's consideration.

**1. Fourth Affirmative Defense**

\*9 Counterclaim Defendants seek an order striking Koperwhats' Fourth Affirmative Defense (Trademark Misuse) on the ground such defense is a "restatement of the 'trademark misuse' affirmative defense in the original Answer," which was previously stricken (*See* MTDS at 19:21-23; Sept. 10 Order at 19-20.) The Court agrees.

Koperwhats' original Fourth Affirmative Defense stated: "[Counterclaim Defendants] are attempting to illegally expand the legitimate scope of the Visualize-IT® trademark. Such actions constitute trademark misuse, thereby rendering Plaintiff's Visualize-IT® trademark unenforceable." (*See* Defendants' Answer and Counterclaims, filed May 1, 2009 at ¶ 62.) Koperwhats' amended Fourth Affirmative Defense states: "[Counterclaim Defendants] have misused their Visualize-IT trademark, by continuing to apply the trademark to Versions 3.0 through 4.0 that is provided by Plaintiffs customers, creating a likelihood of customer confusion." (*See* FACC ¶ 62.) Because both affirmative defenses rely on the allegation that Counterclaim Defendants have misused their trademark, the deficiency noted in the Court's prior order remains; specifically, such

affirmative defense is duplicative of Koperwhats' separately pleaded defense of unclean hands.

Accordingly, Counterclaim Defendants' motion to strike Koperwhats' affirmative defense of trademark misuse will be granted without further leave to amend.

**2. Prayer for Compensatory Damages**

Counterclaim Defendants seek an order striking Koperwhats' prayer for compensatory and restitutionary damages on his UCL claim. As set forth above, Koperwhats' UCL claim is subject to dismissal. Consequently, Counterclaim Defendants' motion to strike the prayer for relief thereon will be denied as moot.

**CONCLUSION**

For the reasons stated above:

1. Counterclaim Defendants' motion to dismiss and to strike is hereby GRANTED in part and DENIED in part as follows:

a. With respect to Koperwhats' First Cause of Action (Copyright Infringement), the motion is hereby GRANTED, and such claim is hereby DISMISSED with leave to amend to cure the above-noted deficiencies only to the extent such claim is based on infringement of versions later than Version 3.3.

b. With respect to Koperwhats' Second (Misappropriation of Trade Secrets), Fourth (Fraud), and Sixth (Intentional Interference) Causes of Action, the motion is hereby GRANTED, and such claims are hereby DISMISSED with leave to amend.

c. With respect to Koperwhats' Third Cause of Action (Breach of Contract) as alleged against KEMA and Pucket, the motion is hereby GRANTED, and said claim is hereby DISMISSED with leave to amend.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3464708 (N.D.Cal.)
**(Cite as: 2010 WL 3464708 (N.D.Cal.))**

d. With respect to Koperwhats' Fifth Cause of Action (Unfair Competition), the motion is hereby GRANTED, and such claim is hereby DISMISSED with leave to amend to the extent it is based on the First, Second, and/or Fourth Causes of Action.

e. With respect to Koperwhats' Fourth Affirmative Defense (Trademark Misuse), the motion is hereby GRANTED and said affirmative defense is hereby STRICKEN without leave to amend.

*10 f. With respect to Koperwhats' prayer for damages on his Fifth Cause of Action, the motion is hereby DENIED as moot.

2. Koperwhats' Second Amended Answer and Counterclaims, if any, shall be filed no later than March 29, 2010.

**IT IS SO ORDERED.**

N.D.Cal.,2010.
KEMA, Inc. v. Koperwhats
Slip Copy, 2010 WL 3464708 (N.D.Cal.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.