**Exhibit L**

Westlaw.

Slip Copy, 2009 WL 905061 (D.N.J.)
**(Cite as: 2009 WL 905061 (D.N.J.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
KOGER, INC., Plaintiff,
v.
Marian KLCO, Jana Potocnakova, Martin Madej,
Mikulas Klasovsky and Ivan Mesarc, Defendants.
**Civil Action No. 08-4175 (SRC).**

March 9, 2009.

William D. Wallach, Matthew G. Wapner, Mccarter
& English, LLP, Newark, NJ, for Plaintiff.

**OPINION & ORDER**

CHESLER, District Judge.

**\*1** This matter comes before the Court upon two
motions: 1) the motion to dismiss the Complaint for
failure of service of process, lack of personal juris-
diction, forum non conveniens, and failure to state a
valid claim, pursuant to Federal Rule of Civil Pro-
cedure 12(b), by Defendants Marian Klco, Jana Po-
tocnakova, Martin Madej, Mikulas Klasovsky and
Ivan Mesarc (collectively, "Defendants"); and 2)
the cross-motion to remand by Plaintiff Koger, Inc.
("Koger"). For the reasons stated below, Defend-
ant's motion to dismiss will be granted, and
Plaintiff's cross-motion to remand will be denied.

This dispute arises from an employment relation-
ship between Plaintiff and Defendants. The follow-
ing facts are undisputed. Plaintiff is a New Jersey
Corporation. Defendants are nationals and residents
of the Republic of Slovakia. Plaintiff and Defend-
ants executed individual employment agreements in
Slovakia at varying times during the period of 2001
through 2003. These agreements are written only in
English. Defendants worked for Plaintiff in the
company's office in the Republic of Slovakia.

On May 20, 2008, in the Superior Court of New
Jersey, Plaintiff filed the Complaint, asserting elev-
en counts. The first count asserts that all Defend-
ants engaged in tortious interference with Plaintiff's
business relationships producing economic disad-
vantage. The remaining counts assert claims for
misappropriation of confidential information and
breach of contract against each Defendant individu-
ally. On August 15, 2008, Defendants filed a Notice
of Removal based on diversity jurisdiction, remov-
ing the action to this Court. On August 21, 2008,
Defendants filed the instant motion to dismiss.
Plaintiff responded with opposition and a cross-
motion to remand.

On November 12, 2008, this Court heard oral argu-
ment on these two motions. As stated on the record,
this Court concluded that the parties had failed to
brief some of the legal issues fundamental to
resolving these motions. This Court Ordered the
parties to submit supplemental briefing on the issue
of the validity of the contracts under the law of the
Republic of Slovakia. The parties have now briefed
this issue.

A federal district court sitting in diversity applies
the conflict of law principles of the state in which it
sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S.
487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941);
*Chin v. Chrysler LLC,* 538 F.3d 272, 278 (3d
Cir.2008). In contract cases, New Jersey courts de-
cide questions of choice of law using an approach
that "focuses on the state that has the most signific-
ant connection with the parties and the transaction."
*Keil v. National Westminster Bank, Inc.,* 311
N.J.Super. 473, 484, 710 A.2d 563
(N.J.Super.Ct.App.Div.1998) (quoting *Gilbert
Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.,* 134 N.J.
96, 102, 629 A.2d 885 (1993)). "The significant re-
lationship test focuses upon that state which has the
most meaningful connections with the transaction
and the parties in issue ." *State Farm Mut. Auto.
Ins. Co. v. Estate of Simmons,* 84 N.J. 28, 34, 417
A.2d 488 (1980).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 905061 (D.N.J.)
**(Cite as: 2009 WL 905061 (D.N.J.))**

**\*2** Plaintiff does not contend that New Jersey has a more meaningful connection with the parties and the transaction. Plaintiff relies principally on the argument that New Jersey law gives the parties freedom to contract, and that the parties chose to enter a contract [FN1] with provisions selecting New Jersey as the venue for litigation and New Jersey law as the governing law. The problem with Plaintiff's position is that it does not recognize the structure of the analysis that this Court must conduct to resolve the motions before it. First, this Court must apply New Jersey conflict of law principles to determine which state's law defines whether a contract exists. Then, this Court determines whether, under that state's law, a valid contract exists. It would only be after this step that the Court would look within the four corners of the contract for a governing law or venue provision.

> FN1. Throughout this discussion, this Court refers to the employment agreements executed by the parties as "the contracts." This is for convenience only and does not imply any determination of the contractual validity of these employment agreements.

Thus, Plaintiff misses the mark in arguing that, following New Jersey law, this Court should honor the contractual provisions for choice of law. Before this Court can look within a contract, there must be a valid contract. *See Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.,* 145 F.3d 505, 509 (2d Cir.1998) ("In the absence of a clear finding of a contract, the district court's determination that the parties reached agreement on a forum-selection clause was premature"); *Langley v. Prudential Mortg. Capital Co., LLC,* 546 F.3d 365, 368 (6th Cir.2008) (same). Before this Court can decide whether there is a valid contract, it must ask which state's law applies to this determination.

Under New Jersey's choice of law rules for contractual disputes, this Court must first determine which state has the more meaningful connection with the parties and the transaction. Plaintiff does not claim more than that New Jersey has *a substantial rela-*

*tionship* to the transaction, and the question is whether New Jersey has *the most meaningful relationship* to the transaction. "In making [this] determination, courts should rely on the factors and contacts set forth in Restatement sections 6 and 188." *Spruance,* 134 N.J. at 102, 629 A.2d 885. Section 188(2) of the Restatement (Second) of Conflict of Laws lists five factors to evaluate in assessing the significance of the relationship to the transaction:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971).

The Complaint does not allege that the contracts were negotiated, signed, or performed in New Jersey. Rather, Plaintiff appears to concede that Defendants are residents of the Republic of Slovakia, signed the contracts in the Republic of Slovakia, and did the vast majority of their work for Plaintiff in the Republic of Slovakia. (*See* Pl.'s Opp. Br. 23-24.) New Jersey's connection to the transaction appears to be based on: 1) Plaintiff is a New Jersey corporation with a principal place of business in New Jersey; 2) although Defendants signed the employment contracts in the Republic of Slovakia, they then mailed and faxed the contracts to Plaintiff in New Jersey; and 3) Plaintiff's New Jersey employees communicated with Defendants in the Republic of Slovakia during their employment. Applying Restatement § 188(2), this Court finds that the Republic of Slovakia has the most significant relationship to the employment-contracting transaction. Under New Jersey's choice of law rules, the validity of the contract is decided under the law of the Re-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 905061 (D.N.J.)
**(Cite as: 2009 WL 905061 (D.N.J.))**

public of Slovakia.

**\*3** The Court must next decide whether the employment contracts between Plaintiff and Defendants are valid and enforceable under the laws of the Republic of Slovakia. The parties agree that this dispute turns on interpretation of Act. No. 270/1995, titled "An Act of Parliament Dated November 15, 1995 on the State Language of the Slovak Republic" (the "Language Act").[FN2] In particular, the parties dispute the interpretation of section 8(2), which states: "Written legal acts in public and legal relation or in similar labour relations are made in the state language." [FN3] Defendant argues that this law establishes that only contracts written in the Slovak language are legally valid and enforceable. Plaintiff argues that: 1) this provision is a suggestion, not a requirement; 2) even if it is a requirement, violation of the Language Act does not void the contract.

> FN2. This title comes from the translation available at the website of the Ministry of Culture of the Slovak Republic, http:// www.culture.gov.sk/en /legislation/jazykov-zkon____anglick-verzia (last visited March 6, 2009).

> FN3. The parties' experts do not cite the source of the translation of the law that each uses. The parties do not dispute, however, the precise wording of the translation. There is also no dispute that the Language Act states that the state language of the Republic of Slovakia is the Slovak language.

Federal Rule of Civil Procedure 44.1 provides the principles fundamental to this Court's determination of questions of foreign law:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not sub-

mitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

As support for its interpretation of section 8(2), Plaintiff relies on the opinion of JUDr. Anna Rozmusová. (Docket Entry No. 23.) Rozmusová contends simply that the provision's use of the passive voice shows that it is a recommendation, not a mandate. Defendants rely on the opinion of Lubomir Marek, who concedes that the law does not "provide for explicit legal consequences" for violation of the Language Act, but states that, under general principles of Slovak civil law, an employment contract only in English would be void. (Bartkus Supp. Cert. Ex. A at 1.) Defendants also rely on the opinion of JUDr. Andrea Havlátová Rajczyová, who concurs and adds that an employment contract not meeting the requirements of the Language Act would be invalid under the Civil Code § 40 Section 1, which states: "if a legal act or agreement of parties was not performed in the form required by law, it shall be invalid." (Bartkus Supp. Cert. Ex. E at trans. 3-4.) In response, Plaintiff repeats the contention that section 8(2) of the Language Act is a suggestion, not a requirement, and so it does not establish a "form required by law" within the meaning of Civil Code § 40 Section 1. Plaintiff also responds that Defendants have omitted a crucial part of this Civil Code provision which nullifies their argument.

This Court concludes that the contracts are invalid and unenforceable under the law of the Republic of Slovakia because they do not meet the requirements of section 8(2) of the Language Act. Although there are slight differences in the translations used by the parties, there do not appear to be any material differences. This Court selects the translation of section 8(2) submitted by Plaintiff which is published on the website of the Ministry of Culture of the Slovak Republic: [FN4] "Written legal procedures in an occupational and legal relation, or in an analogous occupational relation, are made out in the State language." (Docket Entry No. 23 at 8.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 905061 (D.N.J.)
**(Cite as: 2009 WL 905061 (D.N.J.))**

FN4. http://www.culture.gov. sk/ en/legislation/jazykov-zkon_____ anglick-verzia (last visited March 6, 2009).

**\*4** This Court does not accept Plaintiff's argument that this law is merely a recommendation. No ambiguity appears in the plain language of the provision. Nothing suggests that it is advisory or precatory. Plaintiff's expert Rozmusová contends that the use of the passive voice [FN5] shows that the provision is a recommendation, asserting that, were it mandatory, it would use "shall be" instead of "are."

FN5. Plaintiff's expert relied on a translation which uses the words "are issued" in place of "are made out" in the translation quoted here. (Docket Entry No. 23 at 1.)

Setting aside Rozmusová's mistaken characterization of the distinction between the use of "are" and "shall be" as passive versus active,[FN6] which is immaterial, there is no reason to believe that a law's use of the present passive, instead of the future passive, turns a mandate into a recommendation. This is not the case in English, and Plaintiff offers no evidence that it is true in the Slovak language. Moreover, there is no dispute that the Language Act is an official enactment of the governing legislative body of the Republic of Slovakia.[FN7] Plaintiff has not questioned the status of the Language Act, in its entirety, as a legitimate and operative law of the Republic of Slovakia. This Court construes section 8(2) of the Language Act according to its plain meaning: written legal contracts are made out in the state language. The contrapositive of this proposition, which is logically equivalent, is that a contract not made out in the state language is not a legal contract.

FN6. "Are issued" and "shall be issued" both use the passive voice. They differ in tense, not voice.

FN7. The Language Act was enacted in 1995 by the National Council of the Slovak Republic. The website of the National

Council of the Slovak Republic states: "National Council of the Slovak Republic [ ] is the sole constitutional and legislative body of the Slovak Republic." http:// www.nrsr.sk/default.aspx?sid=nrsr/poslani e (last visited March 6, 2009).

Because the proffered agreements are not made out in the state language, they are not legal contracts under the law of the Republic of Slovakia. This resolves the question at issue, and this Court need not reach the parties' arguments about the applicability of the Civil Code. Counts VII through XI of the Complaint assert claims for breach of contract. Under New Jersey's choice of law rules, this Court applies the law of the Republic of Slovakia to the question of whether the Complaint alleges an essential element of a claim for breach of contract, the existence of a legally valid contract. *Frederico v. Home Depot,* 507 F.3d 188, 203 (3d Cir.2007); *Coyle v. Englander's,* 199 N.J.Super. 212, 223, 488 A.2d 1083 (N.J.Super.Ct.App.Div.1985). Having failed to allege legally valid contracts, Plaintiff has failed to state valid claims for breach of contract. Because amendment is futile, Counts VII through XI will be dismissed with prejudice.

Counts II through VI assert claims for misappropriation of confidential information in breach of contractual and fiduciary obligations. For the reasons stated above, to the extent that Counts II through VI rely on contractual theories, they will be dismissed with prejudice.

Defendants contend as well that Count I should be dismissed for failure to meet the pleading standard set forth in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). This Court agrees.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 905061 (D.N.J.)
**(Cite as: 2009 WL 905061 (D.N.J.))**

not do." *Id .* at 1964-65 (internal citations omitted); *see also* FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (internal citations omitted).

*5 Count I, asserting a claim for tortious interference with economic advantage, does not plead sufficient facts to raise the right to relief above a speculative level. Rather, Count I makes no factual allegations identifying what business relationships were interfered with nor specifying the conduct of Defendants that has injured Plaintiff. Plaintiff asserts that it has lost or may lose business as a result of Defendants' tortious conduct, but this is not more than a "formulaic recitation of the elements of a cause of action." *Id.* Count I will be dismissed without prejudice.

Counts II through VI also fail to meet the pleading requirements of *Twombly.* These claims for misappropriation of confidential information all allege that it is "inevitable" that a particular employee, in his or her new employment, "will make disclosure and use of Koger's confidential and proprietary information." (*See, e.g.,* Complaint ¶¶ 60, 64.) Again, this lacks sufficient factual allegations to raise the right to relief above the speculative level. Insofar as Counts II through VI rely on common law tort theories, they will be dismissed without prejudice.

Furthermore, while this Court has not yet performed any choice of law analysis for the tort claims in the complaint, were this Court to do so and conclude that New Jersey law applied, it is worth noting that "the general knowledge, skill and experience gained by an employee during his employment cannot be claimed as a trade secret by his employer." *Rohm & Haas Co. v. Adco Chemical Co.,* 689 F.2d 424, 432 (3d Cir.1982). If Plaintiff chooses to replead the claims for misappropriation of confidential information, it must allege sufficient specific facts to raise the right to relief above the speculative level, in the context of the law of the jurisdiction selected through New Jersey's choice of law analysis.

Plaintiff bases the cross-motion for remand exclusively on the forum selection clause in the purported contract. In view of this Court's determination that the Complaint fails to allege a valid contract, this argument must fail. Plaintiff's cross-motion to remand will be denied.

For the reasons stated above,

**IT IS** on this 9th day of March, 2009,

**ORDERED** that Defendant's motion to dismiss for failure to state a valid claim (Docket Entry No. 3) is **GRANTED;** and it is further

**ORDERED** that Counts VII through XI of the Complaint are hereby **DISMISSED** with prejudice, as are any aspects of Counts II through VI that rely on contractual theories; and it is further

**ORDERED** that Counts I through VI are hereby **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiff is granted leave to amend the Complaint within 45 days of the filing of this Order; and it is further

**ORDERED** that Plaintiff's cross-motion to remand (Docket Entry No. 5) is **DENIED.**

D.N.J.,2009.
Koger, Inc. v. Klco
Slip Copy, 2009 WL 905061 (D.N.J.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit M

Westlaw.

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

**C**

United States District Court,
W.D. New York.
WOLF CONCEPT S.A.R.L., Plaintiff,
v.
EBER BROS. WINE AND LIQUOR CORP., National Distributing Company, Inc., Eber-NDC,
LLC, Lester Eber and David Eber, Defendants.
No. 07-CV-06233.

Aug. 17, 2010.

**Background:** Licensee of premium vodka brand brought action alleging that distributor and related parties conspired to unlawfully restrain trade and competition, in violation of New York's Donnelly Act, tortiously interfered with its contractual relationships, and engaged in fraud and breach of contract. Defendants moved for judgment on pleadings.

**Holdings:** The District Court, Michael A. Telesca, J., held that:
(1) defendants did not enter into agreement in restraint of trade;
(2) licensee did not state claim for conspiracy to monopolize;
(3) licensee did not suffer antitrust injury;
(4) licensee's fraud claim against distributor was redundant;
(5) licensee stated breach of contract claim against distributor.

Motion granted in part and denied in part.

West Headnotes

**[1] Antitrust and Trade Regulation 29T ☞
972(3)**

29T Antitrust and Trade Regulation
   29TXVII Antitrust Actions, Proceedings, and
Enforcement
      29TXVII(B) Actions
         29Tk972 Pleading
            29Tk972(2) Complaint
               29Tk972(3) k. In General. Most
Cited Cases
Party alleging violation of New York's Donnelly Act must: (1) identify relevant product market; (2) describe nature and effects of purported conspiracy; (3) allege how economic impact of that conspiracy is to restrain trade in market in question; and (4) show conspiracy or reciprocal relationship between two or more entities. N.Y.McKinney's General Business Law § 340(1).

**[2] Antitrust and Trade Regulation 29T ☞
972(3)**

29T Antitrust and Trade Regulation
   29TXVII Antitrust Actions, Proceedings, and
Enforcement
      29TXVII(B) Actions
         29Tk972 Pleading
            29Tk972(2) Complaint
               29Tk972(3) k. In General. Most
Cited Cases
Alleged conspiracy between vodka distributor and its joint venturer to fraudulently obtain exclusive rights to distribute and sell premium vodka brand in order to strengthen their market position by excluding brand from market did not amount to agreement in restraint of trade, in violation of New York's Donnelly Act, absent identification of relevant product market, or of how alleged conspiracy impacted or restrained trade in that relevant market. N.Y.McKinney's General Business Law § 340(1).

**[3] Antitrust and Trade Regulation 29T ☞
972(3)**

29T Antitrust and Trade Regulation
   29TXVII Antitrust Actions, Proceedings, and
Enforcement
      29TXVII(B) Actions
         29Tk972 Pleading
            29Tk972(2) Complaint
               29Tk972(3) k. In General. Most

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

Cited Cases
Although no heightened pleading requirements apply in antitrust cases, plaintiff must do more than cite relevant antitrust language to state claim for relief, but instead must allege sufficient facts to support cause of action under antitrust laws.

**[4] Antitrust and Trade Regulation 29T ☜972(3)**

29T Antitrust and Trade Regulation
   29TXVII Antitrust Actions, Proceedings, and Enforcement
        29TXVII(B) Actions
           29Tk972 Pleading
               29Tk972(2) Complaint
                  29Tk972(3) k. In General. Most Cited Cases
Under New York law, to identify relevant market in antitrust case, plaintiff must allege facts regarding substitute products, or distinguish among apparently comparable products, or allege other pertinent facts relating to cross-elasticity of demand. N.Y.McKinney's General Business Law § 340(1).

**[5] Antitrust and Trade Regulation 29T ☜620**

29T Antitrust and Trade Regulation
   29TVII Monopolization
      29TVII(A) In General
         29Tk619 Elements in General
           29Tk620 k. In General. Most Cited Cases

**Antitrust and Trade Regulation 29T ☜621**

29T Antitrust and Trade Regulation
   29TVII Monopolization
      29TVII(A) In General
         29Tk619 Elements in General
           29Tk621 k. Intent. Most Cited Cases
To establish claim of conspiracy to monopolize under New York's Donnelly Act, plaintiff must allege facts sufficient to support (1) concerted action; (2) overt acts in furtherance of conspiracy; and (3) specific intent to monopolize. N.Y.McKinney's Gener-

al Business Law § 340 et seq.

**[6] Antitrust and Trade Regulation 29T ☜972(3)**

29T Antitrust and Trade Regulation
   29TXVII Antitrust Actions, Proceedings, and Enforcement
        29TXVII(B) Actions
           29Tk972 Pleading
               29Tk972(2) Complaint
                  29Tk972(3) k. In General. Most Cited Cases
Allegation by licensee of premium vodka brand that its distributor and distributor's joint venturer conspired to fraudulently obtain exclusive rights to distribute and sell brand in order to strengthen their market position by excluding brand from market was insufficient to state claim for conspiracy to monopolize under New York's Donnelly Act, where licensee failed to provide any facts describing alleged conspiratorial conduct, explaining how purported conspiracy created unlawful monopoly in premium vodka market, or describing how alleged conspiracy economically impacted relevant markets and restrained trade. N.Y.McKinney's General Business Law § 340 et seq.

**[7] Antitrust and Trade Regulation 29T ☜972(5)**

29T Antitrust and Trade Regulation
   29TXVII Antitrust Actions, Proceedings, and Enforcement
        29TXVII(B) Actions
           29Tk972 Pleading
               29Tk972(2) Complaint
                  29Tk972(5) k. Injury to Business or Property. Most Cited Cases
To state plausible claim for antitrust violation under New York's Donnelly Act, plaintiff must allege that challenged action had actual adverse effect on competition as a whole in relevant market. N.Y.McKinney's General Business Law § 340 et seq.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

**[8] Antitrust and Trade Regulation 29T ☞ 972(5)**

29T Antitrust and Trade Regulation
   29TXVII Antitrust Actions, Proceedings, and Enforcement
      29TXVII(B) Actions
         29Tk972 Pleading
            29Tk972(2) Complaint
               29Tk972(5) k. Injury to Business or Property. Most Cited Cases
Alleging injury as individual competitor within market does not suffice to state claim for antitrust injury under New York's Donnelly Act, as antitrust statutes were enacted to protect competition and not individual competitors. N.Y.McKinney's General Business Law § 340 et seq.

**[9] Antitrust and Trade Regulation 29T ☞ 582**

29T Antitrust and Trade Regulation
   29TVI Antitrust Regulation in General
      29TVI(E) Particular Industries or Businesses
         29Tk582 k. Food and Beverages; Restaurants. Most Cited Cases
Licensee of premium vodka brand did not suffer antitrust injury under New York's Donnelly Act as result of its distributor's allegedly wrongful failure to distribute and sell brand, where licensee alleged only that it lost license, profits, and business opportunities, but did not allege any harm to competition as a whole. N.Y.McKinney's General Business Law § 340 et seq.

**[10] Torts 379 ☞ 212**

379 Torts
   379III Tortious Interference
      379III(B) Business or Contractual Relations
         379III(B)1 In General
            379k212 k. Contracts. Most Cited
Under New York law, to state claim for tortious interference with contractual relations, plaintiff must allege: (1) existence of valid, enforceable contract between plaintiff and third party; (2) knowledge of

that contract by defendant; (3) defendant's intentional inducement of breach by third party to contract; and (4) resulting damages.

**[11] Fraud 184 ☞ 32**

184 Fraud
   184II Actions
      184II(A) Rights of Action and Defenses
         184k32 k. Effect of Existence of Remedy by Action on Contract. Most Cited Cases
Under New York law, contract action cannot be converted into one for fraud merely by alleging that contracting party did not intend to meet its contractual obligations.

**[12] Fraud 184 ☞ 32**

184 Fraud
   184II Actions
      184II(A) Rights of Action and Defenses
         184k32 k. Effect of Existence of Remedy by Action on Contract. Most Cited Cases
Under New York law, premium vodka brand licensee's claim that distributor never intended to perform under distribution agreement arose out of same facts as its breach of contract claim, and thus licensee's fraud claim against distributor was redundant and its sole remedy was for breach of contract.

**[13] Copyrights and Intellectual Property 99 ☞ 107**

99 Copyrights and Intellectual Property
   99II Intellectual Property
      99k107 k. Contracts. Most Cited Cases
Under New York law, fact that licensing agreement and distribution agreement for premium vodka brand expired by their own terms when distributor failed to sell sufficient quantity of vodka by deadline did not bar licensee's breach of contract claim based on distributor's alleged failure to use its best efforts to market and distribute vodka.

**[14] Contracts 95 ☞ 9(1)**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

95 Contracts
   95I Requisites and Validity
      95I(A) Nature and Essentials in General
         95k9 Certainty as to Subject-Matter
            95k9(1) k. In General. Most Cited
Under New York law, "best efforts" clause in contract may be enforceable, so long as there is some definite, measurable standard and clear set of guidelines against which to measure defendant's efforts.

**[15] Contracts 95 ⇒326**

95 Contracts
   95VI Actions for Breach
      95k326 k. Grounds of Action. Most Cited Cases
Under New York law, to state claim for breach of contract, plaintiff must allege facts sufficient to show: (1) contract; (2) performance by party seeking recovery; (3) breach of contract by other party; and (4) damages attributable to breach.

**[16] Copyrights and Intellectual Property 99 ⇒107**

99 Copyrights and Intellectual Property
   99II Intellectual Property
      99k107 k. Contracts. Most Cited Cases
Under New York law, premium vodka brand licensee's allegations that distributor failed to use its best efforts to advertise, promote, market, and otherwise distribute amount specified in distribution agreement, and that licensee lost its temporary license and suffered direct and consequential damages as result of distributor's failure were sufficient to state breach of contract claim against distributor.

Edward B. Safran, Edward B. Safran, Esq., New York, NY, Michael R. Wolford, Sarah Snyder Merkel, The Wolford Law Firm LLP, Rochester, NY, for Plaintiff.

Paul J. Yesawich, III, Dale A. Worrall, Melanie L. Sarkis, Harris Beach LLP, Pittsford, NY, Steven A. Stadtmauer, Harris Beach PLLC, New York, NY,

for Defendant.

## DECISION and ORDER

MICHAEL A. TELESCA, District Judge.

### *INTRODUCTION*

**\*1** Plaintiff Wolf Concept S.A.R.L, ("Wolf Concept" or "Plaintiff") brings this action pursuant to New York statutory and common law claiming that the remaining defendants in this case [FN1], Eber Bros. Wine and Liquor Corp. ("Eber Bros."), Eber-NDC, LLC ("Eber-NDC"), Lester Eber and David Eber ("The Ebers"), (all collectively referred to as the "Eber Defendants" or "Defendants") have conspired to unlawfully restrain trade and competition in violation of New York's Donnelly Act (New York General Business Law §§ 340-347), tortiously interfered with Plaintiff's contractual relationships, and engaged in fraud and breach of contract.

The Eber Defendants move for judgment on the pleadings dismissing Plaintiff's Amended Complaint [FN2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on grounds that Wolf Concept has failed to state any claims upon which relief can be granted. Specifically, the Eber Defendants contend that Plaintiff has: (1) failed to allege the necessary elements of a Donnelly Act claim; (2) failed to allege that the Eber Defendants used wrongful means to interfere with Plaintiff's contracts; (3) failed to plead its fraud claim with the requisite particularity required under Rule 9(b) of the Federal Rules of Civil Procedure; (4) improperly attempted to plead a fraud claim that is nothing more than a veiled breach of contract claim; and (5) failed to state a viable breach of contract claim because by its own terms, the underlying agreement automatically terminated. Wolf Concept opposes the Eber Defendants' Motion.

For the reasons set forth below, the Court grants the Eber Defendants' Motion in part and dismisses the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

First, Second, Third and Fourth Causes of Action set forth in the Amended Complaint, and denies the Defendants' Motion with respect to the Fifth Cause of Action for breach of contract. Thus, the only claim that remains is Plaintiff's breach of contract claim against defendant Eber Bros.

### BACKGROUND

The following facts are not disputed or are presumed to be true for the purposes of the Court's analysis of the Defendants' Motion. Plaintiff Wolf Concept is a French company that manufactures and distributes premium vodka distilled in Holland and bottled in France. During the time at issue set forth in the Amended Complaint, Plaintiff had an exclusive, albeit temporary, license to use the name "Petrossian" and market an "ultra-premium" brand of European vodka known as "Petrossian Vodka."

Wolf Concept obtained this temporary license from Petrossian, Inc. and related Petrossian companies (hereinafter collectively "Petrossian, Inc.") by agreement dated July, 2004 (hereinafter the "Licensing Agreement"). The Licensing Agreement specifically references the relationship to be formed with Eber Bros. to distribute the vodka in New York State and Delaware (the "Territory") [FN3].

Petrossian Vodka had never before been sold in the U.S., but according to the Amended Complaint, the brand name "Petrossian" was well known and associated with luxury products around the world. According to Plaintiff, "[a]fter decades of advertising, marketing and product placement, the *Petrossian* brand had become well known in the Western world as a symbol of exclusivity, luxury and quality, and was identifiable and known to the general public in the same manner as *Rolls Royce* and *Mercedes.*" (Am. Compl. ¶ 10).

**\*2** Plaintiff sought a partner to help it distribute Petrossian Vodka in the U.S. market and selected the Eber Bros. due to its long and well established history as a wholesale distributor of wine and spir-

its, particularly in the New York Metropolitan area. The parties entered into an Importation and Distribution Agreement ("Distribution Agreement") in August, 2004.

The Distribution Agreement provided that Eber Bros. would exclusively import and use its "best efforts" to distribute Petrossian Vodka in the designated Territory. The Distribution Agreement also set forth desired "volume objectives" in which the agreement provided that the parties desired Eber Bros. to distribute at least 2500 cases of Petrossian Vodka by December 31, 2005.

Significantly, Wolf Concept's Licensing Agreement with Petrossian, Inc. provided Wolf Concept with a temporary license until December 31, 2005 for the purpose of marketing 2500 cases of Petrossian Vodka in the Territory. (Licensing Agreement, Article 3). If 2500 cases could not be sold by Eber Bros. by that date, "[Petrossian, Inc.] and Wolf Concept [had] no further obligation to one another [and the Licensing Agreement] would lapse." (Licensing Agreement, Article 4). Additionally, if 2500 cases could not be sold by December 31, 2005, Wolf Concept was required to terminate the Distribution Agreement with Eber Bros. and buy back the remaining cases from Eber Bros. pursuant to Article 16 of the Distribution Agreement. (*Id.*).

Eber Bros. did not sell 2500 cases of Petrossian Vodka by December 31, 2005 because the vodka was allegedly not well received in the Territory. Therefore, Wolf Concept's temporary license agreement with Petrossian, Inc. expired and the Distribution Agreement with Eber Bros. was terminated.

Plaintiff commenced the instant action on October 6, 2006, and in its Amended Complaint alleges the following Causes of Action: In the First and Second Causes of Action, Wolf Concept alleges that the Eber Defendants engaged in an unlawful conspiracy to monopolize and restrain trade in violation of the Donnelly Act. In the Third Cause of Action, Plaintiff alleges that Eber-NDC engaged in actions causing tortious interference with a contract-i.e.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

the Distribution Agreement. In the Fourth Cause of Action, Plaintiff alleges a claim for fraud against The Ebers and Eber Bros. Finally, in the Fifth Cause of Action, Wolf Concept alleges that Eber Bros. breached the Distribution Agreement.

### DISCUSSION

### I. Standard of Review of Rule 12(c) motion:

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is evaluated under the same standards that apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.,* 580 F.Supp.2d 273, 277 (S.D.N.Y.2008). Accordingly, when evaluating a Rule 12(b)(6) or Rule 12(c) motion, the court must "accept ... all factual allegations in the complaint [as true] and draw ... all reasonable inferences in the plaintiff's favor." *See Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotation marks omitted).

*3 When a defendant tests the sufficiency of a complaint by motion, "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 173 L.Ed.2d 929 (2007)). In order to withstand dismissal, therefore, a "complaint must contain sufficient factual matter, [ ], to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* -
--U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). This "does not require heightened fact pleading of specifics...." *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007). It does, however, "require enough facts to 'nudge [plaintiff's] claims across the line from conceivable

to plausible.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

### II. Donnelly Act Claims

Plaintiff's First and Second Causes of Action against the Eber Defendants allege violations of the Donnelly Act (N.Y. General Business Law § 340- § 347). Plaintiff asserts that Defendants entered into unspecified agreements with the intent to unlawfully restrict Plaintiff's ability to sell or distribute its product, and further, that Eber Bros. conspired with NDC [FN4], through the Eber-NDC joint venture, to fraudulently obtain exclusive rights to distribute and sell Petrossian Vodka in order to strengthen their market position by excluding Petrossian from the market. (Am. Compl. ¶ 29). Plaintiff further asserts that this anti-competitive conduct has resulted in damage to its brand identity, lost business opportunities, and lost investments. (Am. Compl. ¶ 31).

The Eber Defendants move to dismiss the First and Second Causes of Action on the basis that the Amended Complaint fails to allege facts necessary to support the essential elements of a Donnelly Act claim. Further, the Eber Defendants assert that Plaintiff's claims seek damages for personal losses which do not result from the restriction of competition as a whole, claiming that the purpose of the Donnelly Act is to redress injuries to competition as a whole.

Even accepting all of the allegations set forth in the Amended Complaint as true, I find that Plaintiff has not set forth facts sufficient to establish the necessary elements of a Donnelly Act violation, including a relevant product market, a conspiracy that restrained trade in the relevant product market and an antitrust injury. As a result, the First and Second Causes of Action must be dismissed with prejudice.

### A. First Cause of Action: Agreement in Restraint of Trade

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

[1][2] Under the Donnelly Act, any contract, agreement, or arrangement which forms a monopoly or restrains competition in trade is illegal. N.Y. Gen. Bus. Law § 340(1). A party alleging a violation of this act must "1) identify the relevant product market; 2) describe the nature and effects of the purported conspiracy; 3) allege how the economic impact of that conspiracy is to restrain trade in the market in question; and 4) show a conspiracy or reciprocal relationship between two or more entities." *Altman v. Bayer Corp.,* 125 F.Supp.2d 666, 672 (S.D.N.Y.2000); *Shepard Industries, Inc. v. 135 East 57th Street, LLC,* 1999 WL 728641 (S.D.N.Y.1999); *Watts v. Clark Associates Funeral Home, Inc.,* 234 A.D.2d 538, 538, 651 N.Y.S.2d 585 (2d Dep't 1996). In this case, Plaintiff's antitrust claims fail because the Amended Complaint does not sufficiently plead two essential elements of a Donnelly Act claim: the relevant product market and an explanation of how the alleged conspiracy between Eber Bros. and Eber-NDC impacted or restrained trade in that relevant market.

**\*4** [3] Although no heightened pleading requirements apply in antitrust cases, a plaintiff must do more than cite relevant antitrust language to state a claim for relief. *Todd v. Exxon Corporation,* 275 F.3d 191, 198 (2d Cir.2001) FN5. "A plaintiff must allege sufficient facts to support a cause of action under the antitrust laws. Conclusory allegations that the defendant violated those laws are insufficient." *Kasada, Inc. v. Access Capital, Inc.,* 2004 WL 2903776, *3, 2004 U.S. Dist. LEXIS 25257, *11-12 (S.D.N.Y.2004) (internal citations and quotations omitted); *see also, Heart Disease Research Foundation v. General Motors Corp.,* 463 F.2d 98, 100 (2d Cir.1972) ("a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal.")

*Product Market*

"The first step in a court's analysis must be a definition of the relevant market ... because [w]ithout a definition of that market, there is no way to measure [a defendant's] ability to lessen or destroy competition." *Shepard Industries, Inc. v. 135 East 57th Street, LLC,* 1999 WL 728641, *3 (quoting *Pepsico, Inc. v. Coca-Cola Co., Inc.,* 1998 WL 547088 *3 (S.D.N.Y.1998)). Defining the relevant product market requires consideration of "cross-elasticity of demand" between products, which measures "the extent to which consumers will change their consumption of one product in response to a price change in another." *Pepsico,* 1998 WL 547088, *5, (citing, *Eastman Kodak v. Image Technical Servs.,* 504 U.S. 451, 469, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992)). In other words, "[i]f customers are able to substitute one product [ ] in response to a nontrivial increase in price of another, these products [ ] fall within the same product market." *Id.*

[4] For antitrust purposes, therefore, the plaintiff must allege facts regarding substitute products, or distinguish among apparently comparable products, or allege other pertinent facts relating to "cross-elasticity of demand," otherwise, a court may dismiss the complaint. *See Shepard,* 1999 WL 728641, *3. In this case, there is no identification of the relevant product market. There is no identification of comparable, substitute products with which Petrossian Vodka competes, or products that consumers could choose in lieu of Petrossian Vodka.

The Amended Complaint only refers to Petrossian Vodka as an "ultra-premium" luxury brand, and it merely avers that Eber Bros. purposely kept it out of the market place because Eber Bros. is the distributor for "competitive" brands. (Am. Compl. ¶ 29-31). Yet the Amended Complaint neither identifies these competitors nor explains how Eber Bros.' conduct would affect the relevant product market in the Territory. These flaws are fatal to an antitrust claim. *See Wolf Concept v. Eber Bros.,* 2007 WL 1310147, *2, 2007 U.S. Dist. LEXIS 32982, *6 ("Plaintiff failed to show how exclusion of Petrossian vodka would affect the market for premium vodka in New York, a necessary element of a claim

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

under the Donnelly Act."); *see e.g., Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc.,* 34 A.D.3d 91, 94-95, 823 N.Y.S.2d 79 (2d Dep't 2006) ("Plaintiff's failure to allege a[ ] product market is thus fatal to its Donnelly Act claim.") Accordingly, Plaintiff's First Cause of Action must be dismissed.

**B. Second Cause of Action: Conspiracy to Monopolize**

*5 In Plaintiff's Second Cause of Action, Wolf Concept claims that the Defendants engaged in a conspiracy to monopolize the ultra-premium vodka market in violation of the Donnelly Act. In particular, Plaintiff alleges that the Eber Defendants, "pursuant to a plan or arrangement, improperly, maliciously and unlawfully attempted to, did and continue to improperly influence the relevant market, to wit: [the] premium and ultra-premium vodka market ..." (Am. Compl. ¶ 33).

[5] To establish a claim of conspiracy to monopolize, a plaintiff must allege facts sufficient to support (1) concerted action; (2) overt acts in furtherance of the conspiracy; and (3) specific intent to monopolize. *Kramer v. Pollock-Krasner Foundation,* 890 F.Supp. 250, 255 (S.D.N.Y.1995). As noted by Judge Brieant, Plaintiff's claim of conspiracy to monopolize apparently rests on the following: "Plaintiff and NDC each entered into an agreement with Eber Bros. within six months of each other; Eber Bros. did not sell much of Plaintiff's product; and therefore there must have been [a] conspiracy between NDC and Eber Bros. to restrain the sale of Plaintiff's product." *Wolf Concept S.A.R.L.,* 2007 WL 1310147, *2, 2007 U.S. Dist. LEXIS 32982, *6 (holding this is insufficient to state a claim under the Donnelly Act and granting NDC's motion for summary judgment).

[6] Here, Plaintiff fails to allege facts which, even when taken as true, establish that the Eber Defendants engaged in concerted, overt acts with the specific intent to achieve an unlawful monopoly.

Plaintiff merely alleges that Eber Bros. and Eber-NDC conspired to "freeze" Petrossian Vodka out of the New York and Delaware markets to boost its market power. (Am. Compl. ¶¶ 24-27, 34). Other than this conclusory (and oft repeated) allegation, however, there are no facts that: describe Eber-NDC's and Eber Bros.' conspiratorial conduct; explain how this purported conspiracy created an unlawful monopoly in the premium vodka market, and/or describe how this alleged conspiracy economically impacted the premium vodka markets in New York City and Delaware and restrained trade. Plaintiff's use of antitrust buzzwords and rhetoric, in the absence of factual allegations, is not enough to raise Plaintiff's "right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Without facts to support the basic elements of a conspiracy claim under the Donnelly Act, Wolf Concept's Second Cause of Action fails to state a claim and is therefore dismissed with prejudice.

**C. Plaintiff Lacks a Specific Antitrust Injury**

[7][8] Moreover, to state a plausible claim for an antitrust violation, Plaintiff must allege that the challenged action had "an actual adverse effect on competition as a whole in the relevant market." *Kasada,* 2004 WL 2903776, *7, 2004 U.S. Dist. LEXIS 25257, *23 (S.D.N.Y.2004). Alleging injury as an individual competitor within the market does not suffice to state a claim for an antitrust injury as antitrust statutes were enacted to protect competition and not individual competitors. *See George Haug Co. v. Rolls Royce Motor Cars,* 148 F.3d 136, 139 (2d Cir.1998); *Bennett v. Cardinal Health Marmac Distribs.,* 2003 WL 21738604, *3, 2003 U.S. Dist. LEXIS 12883, *11 (E.D.N.Y.2003). Although "plaintiff may have been deprived of certain [profits] as a result of [defendants'] practice[s], [those] losses are clearly not tantamount to injury to competition in the market as a whole and thus do not constitute a cognizable claim under the Donnelly Act." *Victoria T. Enterprises, Inc. v. Charmer Industries, Inc.,* 63 A.D.3d 1698, 1699, 881 N.Y.S.2d 570 (4th Dep't 2009).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

*6 [9] Here, even accepting Wolf Concept's allegations as true, it has failed to allege that the conduct complained of had an adverse effect on competition in the relevant product market as a whole. Rather, it is clear from the Amended Complaint that Plaintiff's main objective is to recover damages from the Eber Defendants as a result of Plaintiff's personal losses-i.e., its loss of the temporary license from Petrossian, Inc., and lost profits, business opportunities, etc. (Am. Compl. ¶ 31). "[A] plaintiff [is obligated] to demonstrate, as a threshold matter, that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." *George Haug Co., Inc.,* 148 F.3d at 139. Furthermore, "it is not ... proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been set forth in the complaint." *Id.*

Based on the foregoing, therefore, the Plaintiff's First and Second Causes of Action for Donnelly Act violations must be dismissed with prejudice.

### III. Tortious Interference Claim

In its Third Cause of Action, Plaintiff contends that defendant Eber-NDC intentionally and unlawfully induced defendant Eber Bros. to breach the Distribution Agreement. This claim must also be dismissed because the Amended Complaint fails to set forth the integral elements of a claim for tortious interference.

[10] To state a claim for tortious interference with contractual relations, a plaintiff must allege (1) the existence of a valid, enforceable contract between plaintiff and a third party; (2) knowledge of that contract by the defendant; (3) defendant's intentional inducement of a breach by the third party to the contract; and (4) resulting damages. *NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.,* 87 N.Y.2d 614, 620-21, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996).

In the instant case, assuming *arguendo* that the contract between Wolf Concept and Eber Bros. was actually breached, Plaintiff failed to allege knowledge of the Distribution Agreement by Eber-NDC and an intentional inducement of a breach of that agreement. Plaintiff only states that "Eber-NDC intentionally and maliciously procured, or participated in the procurement of, the breach of the [Distribution] Agreement by Eber Bros." (Am. Compl. ¶ 39). This amounts to nothing more than "a formulaic recitation of the elements of [the] cause of action" and does not suffice to survive a motion for judgment on the pleadings. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *see also, Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (plaintiff must "amplify a claim with some factual allegations ... to render the claim plausible.") Accordingly, Plaintiff's Third Cause of Action for tortious interference with a contract must be dismissed with prejudice because it fails to state facts sufficient to support the necessary elements.

### IV. Fraud Claim against The Ebers and Eber Bros.

*7 Plaintiff's Fourth Cause of Action asserts that the Ebers made intentional and deliberate misrepresentations of material fact upon which Wolf Concept detrimentally relied. In particular, Plaintiff claims that The Ebers made material misrepresentations regarding the strength and financial health of their company, the absence of any conflicts of interest, and misrepresented their intention to carry through with the terms of the Distribution Agreement. As a result of these misrepresentations, Wolf Concept alleges it was induced into an agreement with Eber Bros. and "ceded" its valuable licensing rights to them. (Am. Compl. ¶¶ 38, 39).

The Eber Defendants seek dismissal of the Fourth Cause of Action on the basis that it is not pled with the requisite particularity required under Rule 9(b) of the Federal Rules, and further, the fraud claim is nothing more than a veiled breach of contract claim. The Eber Defendants contend that the Fourth

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

Cause of Action should be dismissed because it arises out of the same facts and circumstances which support the breach of contract claim, and therefore, it is duplicative.

Again, assuming *arguendo* that Plaintiff's fraud claim is sufficiently pled for purposes of Rule 8 and 9(b) of the Federal Rules of Civil Procedure, Plaintiff's Fourth Cause of Action must nevertheless be dismissed.

[11] The Fourth Cause of Action is nothing more than a breach of contract claim disguised as fraud. *See Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.,* 2003 WL 22384797, *4-5, 2003 U.S. Dist. LEXIS 18531, *12-15 (W.D.N.Y.2003). "It is well settled under New York law that a contract action cannot be converted into one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations." *Id.; see also, Telecom Int'l America, Ltd. v. AT & T Corp.,* 280 F.3d 175, 196 (2d Cir.2001) ("Under New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.")

[12] Here, the crux of Plaintiff's claim is the purported intentional failure of The Ebers and Eber Bros. to perform its contract with Wolf Concept. Indeed, the Amended Complaint states, "The Ebers did virtually nothing to advertise, promote and market the Petrossian product" (Am. Compl. ¶ 44), and "[n]either [of The Ebers] nor Eber Bros. had any intent of performing [the Distribution Agreement] when it was executed ... The only intent [T]he Ebers and their company had was to suppress the Petrossian product from the market and eliminate a competitive produce (sic) in accordance with their arrangement with NDC." (*Id.*).

Clearly, the fraud claim simply recasts the breach of contract claim by adding that the Eber Defend-

ants never intended to perform the contract with Plaintiff. This is insufficient to state and support a claim for fraud. Accordingly, the Fourth Cause of Action is dismissed with prejudice.

## V. Breach of Contract

*8 Plaintiff's Fifth Cause of Action alleges breach of contract against Eber Bros. for, *inter alia,* failing to use its "best efforts" to promote sales and adequately advertise and/or promote Petrossian Vodka. (Am. Compl. ¶ 49). The Eber Defendants argue that this claim should be dismissed because the Distribution Agreement terminated by its very terms as soon as Wolf Concept's temporary license from Petrossian, Inc. expired in December, 2005. According to Defendants, the existence of a valid, operative license was a "condition subsequent" to the Distribution Agreement, the expiration of which meant the contract could be set aside and the parties no longer had binding obligations to each other. Moreover, Defendants argue that the requirement that Eber Bros. use its "best efforts" to market and distribute Petrossian Vodka was too vague and indefinite to be enforceable, and, in order for a contract to be enforceable, all material terms must be definite and explicit.

[13] As an initial matter, accepting Plaintiff's allegations as true, the Licensing Agreement and the Distribution Agreement expired or terminated due to Eber Bros. material breach in not selling 2500 cases of Petrossian Vodka by December 31, 2005. Accordingly, even though the agreement(s) between the parties may have come to an end, if a material breach was the cause of that end, it is an actionable breach.

[14] Additionally, a "best efforts" clause in a contract may be enforceable, so long as there is some definite, measurable standard and a clear set of guidelines against which to measure the defendant's efforts. *See Bloor v. Falstaff Brewing Corp.,* 454 F.Supp. 258, 266-267 (S.D.N.Y.1978), *aff'd,* 601 F.2d 609 (2d Cir.1979) (The term "best efforts" ne-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
**(Cite as: 2010 WL 3258389 (W.D.N.Y.))**

cessarily takes its meaning from the circumstances, and under a distribution contract, it is measured against the distributor's capabilities and prior merchandising of other similar products). The function of the Court at this stage, however, is not to determine whether Eber Bros. sufficiently used its "best efforts" to perform under the terms of the Distribution Agreement. The only concern for the Court at this juncture is whether Plaintiff stated a plausible claim for breach of contract.

[15] To state a claim for breach of contract, the plaintiff must allege facts sufficient to show: "(1) a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages attributable to the breach." *Alesayi Beverage Corp. v. Canada Dry Corp.,* 947 F.Supp. 658, 667 (S.D.N.Y.1996) (citing, *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522 (2d Cir.1994)).

[16] Here, Wolf Concept has stated a viable claim for breach of contract. There is no dispute that the parties entered into a contract (the Distribution Agreement) for the distribution of 2500 cases of Petrossian Vodka, which was not accomplished. Wolf Concept asserts that Eber Bros.' failure to distribute 2500 cases is evidence of its material breaches of the Distribution Agreement, including, *inter alia,* its failure to use its best efforts to advertise, promote, market and otherwise distribute the amount agreed. (Am. Compl. ¶ 49). Eber Bros. alleged material breaches also purportedly led to Wolf Concept's direct and consequential damages, such as loss of the temporary license from Petrossian, Inc., lost profits, lost business opportunities, etc. (Am. Compl. ¶ 50).

*\*9 Clearly, Plaintiff has stated a claim for breach of contract. Accordingly, the Eber Defendants' Motion to dismiss the Fifth Cause of Action for breach of contract is denied.

### CONCLUSION

For the reasons set forth above, the Eber Defendants' Motion to Dismiss is granted in part and denied in part, as follows:

(1) The Eber Defendants' Motion to Dismiss Plaintiff's First and Second Causes of Action asserted against all Defendants for violation of the Donnelly Act is granted with prejudice;

(2) The Eber Defendants' Motion to Dismiss Plaintiff's Third Cause of Action for Tortious Interference asserted against Eber-NDC and Eber Bros. is granted with prejudice;

(3) The Eber Defendants' Motion to Dismiss Plaintiff's Fourth Cause of Action for Fraud asserted against The Ebers and Eber Bros. is granted with prejudice;

(4) The Eber Defendants' Motion to Dismiss Plaintiff's Fifth Cause of Action for Breach of Contract asserted against Eber Bros. is denied.

Therefore, all that remains of Plaintiff's claims as alleged in the Amended Complaint is the breach of contract claim against Eber Bros. Wine and Liquor Corp.

ALL OF THE ABOVE IS SO ORDERED.

> FN1. Plaintiff Wolf Concept S.A.R.L. originally commenced this action against the above-captioned defendants in the New York County Supreme Court. That action was removed to the United States District Court for the Southern District of New York before the Hon. Charles L. Brieant on or about October 26, 2006. In May, 2007, Judge Brieant dismissed the claims asserted against defendant National Distributing Company, Inc. ("NDC") by granting NDC's motion for summary judgment. *See Wolf Concept S.A.R.L. v. Eber Bros., et al.,* 2007 WL 1310147, \*2, 2007 U.S. Dist. LEXIS 32982, \*6 (S.D.N.Y.2007). Judge Brieant also granted the remaining defendants' motion to change venue to the United

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172
(Cite as: 2010 WL 3258389 (W.D.N.Y.))

States District Court for the Western District of New York, where the case is now pending. *See id.*

FN2. Following dismissal of the claims asserted against NDC and removal to this Court, Plaintiff filed an Amended Complaint against the remaining defendants-i.e., the Eber Defendants-on September 5, 2008.

FN3. Although not attached to the Amended Complaint, the Court may consider the Licensing Agreement in ruling on Defendants' Motion because the Licensing Agreement is referenced in the Amended Complaint, Plaintiff relied on it in bringing suit, and clearly Plaintiff knew of it when bringing suit. Moreover, it is integral to the Amended Complaint. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *see also, Mathis v. United Homes, LLC,* 607 F.Supp.2d 411, 412 (E.D.N.Y.2009) ( "Although courts, in considering motions to dismiss for failure to state a claim ..., are normally required to look only to the allegations on the face of the complaint, they may also consider documents that are attached to the complaint, or incorporated [by reference]; further, even if not attached or incorporated by reference, a document ... which is integral to [the complaint] may be considered by [the court] in ruling on such motions.")

FN4. Even though Judge Brieant dismissed all claims against NDC, including all Donnelly Act claims, the Amended Complaint still makes reference to a Donnelly Act claim against NDC for a "conspiracy to monopolize." *See* Amended Complaint, ¶¶ 32-35, pp. 14, 19. The instant decision concerns only the claims in the Amended Complaint asserted against the Eber Defendants.

FN5. Although the *Todd* case concerns violations of the Sherman Act, the Donnelly Act is generally construed in accordance with the Sherman Act. *See Re-Alco Indus., Inc. v. National Center for Health Education,* 812 F.Supp. 387, 393 (S.D.N.Y.1993) . The Sherman Act and the Donnelly Act require identical basic elements of proof for claims of monopolization or attempt to monopolize, and the Donnelly Act was modeled after the Sherman Act. *See New York v. Mobil Oil Corp.,* 38 N.Y.2d 460, 381 N.Y.S.2d 426, 344 N.E.2d 357 (1976). Indeed, the Court of Appeals has held that Donnelly Act claims should be construed in light of federal Sherman Act precedent. *See X.L.O. Concrete Corp. v. Rivergate Corp.,* 83 N.Y.2d 513, 518, 611 N.Y.S.2d 786, 634 N.E.2d 158 (1994). Therefore, this decision relies on cases interpreting claims under both acts as authority.

W.D.N.Y.,2010.
Wolf Concept S.A.R.L. v. Eber Bros. Wine and Liquor Corp.
--- F.Supp.2d ----, 2010 WL 3258389 (W.D.N.Y.), 2010-2 Trade Cases P 77,172

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit N

Westlaw.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan,
Southern Division.
Christopher MAIBERGER, et al., Plaintiffs,
v.
CITY OF LIVONIA, et al., Defendants.
**Case No. 2:09-cv-15000.**

July 13, 2010.
Order Denying Reconsideration Oct. 8, 2010.

**Background:** Towing company and owner brought state court action against city, officials and competitor, stemming from failed bid for award of city towing contract. Action was removed. Defendants moved for summary judgment.

**Holdings:** The District Court, Stephen J. Murphy, III, J., held that:
(1) plaintiffs lacked prudential standing to maintain constitutional claims;
(2) claim alleging violations of Michigan Open Meetings Act was time-barred;
(3) plaintiffs failed to allege that officials were third parties to towing contract;
(4) officials were entitled to qualified immunity;
(5) competitor did not intentionally interfere with plaintiffs' bid for contract; and, on plaintiffs' motion for reconsideration,
(6) District Court correctly applied standard for motion to dismiss in dismissing claim for tortious interference with business relations.

Motions for summary judgment granted; motion for reconsideration denied.

West Headnotes

**[1] Federal Civil Procedure 170A ☙103.2**

170A Federal Civil Procedure
    170AII Parties

        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or Interest. Most Cited Cases

**Federal Civil Procedure 170A ☙103.4**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.4 k. Rights of Third Parties or Public. Most Cited Cases
Under doctrine of "prudential standing," plaintiff may not raise generalized grievances and generally may not raise rights of third parties.

**[2] Constitutional Law 92 ☙675**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(A) Persons Entitled to Raise Constitutional Questions; Standing
            92VI(A)1 In General
                92k675 k. Zone of Interest. Most Cited Cases

**Federal Civil Procedure 170A ☙103.2**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or Interest. Most Cited Cases
"Zone of interest" test for assessing prudential standing requires plaintiff to show that rights he is seeking to protect are those rights contemplated by statute or constitutional guarantee being invoked.

**[3] Constitutional Law 92 ☙885**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(A) Persons Entitled to Raise Constitu-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

tional Questions; Standing
    92VI(A)10 Due Process
        92k885 k. In General. Most Cited Cases

**Constitutional Law 92** &#x262D;925

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(A) Persons Entitled to Raise Constitutional Questions; Standing
        92VI(A)11 Equal Protection
            92k925 k. Government Contracts. Most Cited Cases
Towing company and owner that brought action against city and officials, stemming from failed bid for award of city towing contract, lacked prudential standing to maintain claims alleging due process and equal protection violations; plaintiffs were merely "disappointed bidders" under Michigan law, and there was no allegation that they were prevented from bidding or had been disqualified from bidding on future projects. U.S.C.A. Const.Amends. 5, 14.

**[4] Municipal Corporations 268** &#x262D;92

268 Municipal Corporations
    268IV Proceedings of Council or Other Governing Body
        268IV(A) Meetings, Rules, and Proceedings in General
        268k92 k. Rules of Procedure and Conduct of Business. Most Cited Cases
Limitations period governing violations of Michigan Open Meetings Act was applicable to claim brought by towing company and owner against city and officials, stemming from failed bid for award of city towing contract; claim sought to invalidate actions of city council taken at official meeting and alleged "secret meeting" held prior to it. M.C.L.A. §§ 15.270(3), 15.273.

**[5] Limitation of Actions 241** &#x262D;58(2)

241 Limitation of Actions

241II Computation of Period of Limitation
    241II(A) Accrual of Right of Action or Defense
        241k58 Liabilities Created by Statute
        241k58(2) k. Liability of Municipality or Public Officers. Most Cited Cases
Claim brought under Michigan Open Meetings Act by towing company and owner against city and officials, stemming from failed bid for award of city towing contract, accrued upon publication of minutes from city council meeting at which contract was awarded. M.C.L.A. §§ 15.270(3), 15.273.

**[6] Torts 379** &#x262D;222

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
        379III(B)1 In General
        379k222 k. Tortfeasor as Stranger to Contract or Relationship, in General. Most Cited Cases
Essential element of claim for tortious interference with business relationship under Michigan law is that defendant is third party to contract or relationship.

**[7] Torts 379** &#x262D;222

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
        379III(B)1 In General
        379k222 k. Tortfeasor as Stranger to Contract or Relationship, in General. Most Cited Cases
Under Michigan law, cause of action for tortious interference with business relationship may not lie against person that is not third party to anticipated contractual relationship.

**[8] Torts 379** &#x262D;241

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

379III(B)2 Particular Cases
    379k241 k. Business Relations or Economic Advantage, in General. Most Cited Cases
Towing company and owner that brought action against city and officials, stemming from failed bid for award of city towing contract, failed to establish that officials were third parties to contract at issue, as required to maintain claim for tortious interference with business relationship under Michigan law; there were no allegations giving rise to inference that mayor or police chief were acting solely for their own benefit with no benefit to city.

**[9] Torts 379 ☞223**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)1 In General
                379k223 k. Employees and Agents; Corporate Entities. Most Cited Cases
Under Michigan law, corporate agents are not liable for tortious interference with corporation's contracts unless they acted solely for their own benefit with no benefit to corporation.

**[10] Civil Rights 78 ☞1376(4)**

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(4) k. Municipalities and Counties and Their Officers. Most Cited Cases
City officials were entitled to qualified immunity as to claims brought by towing company and owner, stemming from failed bid for award of city towing contract; officials' actions could not have constituted violation of plaintiffs' clearly established due process and equal protection rights, since Michigan law provided no rights to unsuccessful bidders. U.S.C.A. Const.Amends. 5, 14.

**[11] Conspiracy 91 ☞1.1**

91 Conspiracy
    91I Civil Liability
        91I(A) Acts Constituting Conspiracy and Liability Therefor
            91k1 Nature and Elements in General
                91k1.1 k. In General. Most Cited Cases
Under Michigan law, "civil conspiracy" is combination of two or more persons to accomplish criminal or unlawful purpose or to accomplish lawful purpose by criminal or unlawful means.

**[12] Federal Civil Procedure 170A ☞1828**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1828 k. Time of Determination; Reserving Decision. Most Cited Cases
There is no requirement to permit discovery in context of motion to dismiss when allegations in pleadings fail to establish entitlement to relief. Fed.Rules Civ.Proc.Rule 12, 28 U.S.C.A.

**[13] Torts 379 ☞214**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)1 In General
                379k214 k. Existence of Valid or Identifiable Contract, Relationship or Expectancy. Most Cited Cases
Under Michigan law, "valid business expectancy," for tortious interference purposes, is one that is reasonably likely or probable, not wishful thinking.

**[14] Torts 379 ☞241**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
        379III(B)2 Particular Cases
            379k241 k. Business Relations or Eco-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

nomic Advantage, in General. Most Cited Cases
Towing company and owner that brought action against competitor, stemming from failed bid for award of city towing contract, failed to establish that competitor intentionally interfered with plaintiffs' bid for contract, as required to maintain claim for intentional interference with advantageous business relationship under Michigan law, since any interference was simple business competition and did not include wrongful conduct.

**[15] Torts 379 🔗218**

379 Torts
   379III Tortious Interference
      379III(B) Business or Contractual Relations
         379III(B)1 In General
            379k218 k. Improper Means; Wrongful, Tortious or Illegal Conduct. Most Cited Cases
Under Michigan law, for purposes of tortious interference claim, "per se wrongful act" is act that is inherently wrongful or can never be justified under any circumstances.

**[16] Torts 379 🔗261**

379 Torts
   379III Tortious Interference
      379III(B) Business or Contractual Relations
         379III(B)4 Evidence
           379k260 Weight and Sufficiency
            379k261 k. In General. Most Cited Cases
Under Michigan law, if plaintiff alleging tortious interference relies upon intentional, lawful act done with malice and unjustified by law, he must demonstrate, with specificity, affirmative acts that corroborate unlawful purpose or improper motive.

**[17] Federal Civil Procedure 170A 🔗928**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(I) Motions in General
         170Ak928 k. Determination. Most Cited Cases

It is an exception to the norm for the District Court to grant a motion for reconsideration. E.D.Mich., Rule 7.1(h)(3).

**[18] Federal Civil Procedure 170A 🔗928**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(I) Motions in General
         170Ak928 k. Determination. Most Cited Cases
To obtain reconsideration, the movant must: (1) demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled, and (2) show that correcting the defect will result in a different disposition of the case. E.D.Mich., Rule 7.1(h)(3).

**[19] Federal Civil Procedure 170A 🔗928**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(I) Motions in General
         170Ak928 k. Determination. Most Cited Cases
The requirement that a movant seeking reconsideration demonstrate a palpable defect limits the District Court to revisiting only those errors that are obvious, clear, unmistakable, manifest, or plain. E.D.Mich., Rule 7.1(h)(3).

**[20] Federal Civil Procedure 170A 🔗928**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(I) Motions in General
         170Ak928 k. Determination. Most Cited Cases
Absent a significant error that changes the outcome of a ruling on a motion, the District Court will not provide a party with an opportunity to relitigate issues already decided, through granting a motion for reconsideration. E.D.Mich., Rule 7.1(h)(3).

**[21] Torts 379 🔗222**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)1 In General
                379k222 k. Tortfeasor as Stranger to Contract or Relationship, in General. Most Cited Cases
The sine qua non of a Michigan law claim for tortious interference with a business relationship is that the defendant must be a third party to the contractual relationship or expectancy in question; a person who is a party to a contract cannot logically interfere with it.

**[22] Federal Civil Procedure 170A ⟸1772**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)3 Pleading, Defects In, in General
                170Ak1772 k. Insufficiency in General. Most Cited Cases
To survive a motion to dismiss for failure to state a claim, a plaintiff must show in his or her complaint that a given claim is more than just a possibility. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[23] Federal Civil Procedure 170A ⟸1772**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)3 Pleading, Defects In, in General
                170Ak1772 k. Insufficiency in General. Most Cited Cases
A plaintiff cannot provide facts that are merely consistent with a defendant's liability and expect to survive a motion to dismiss; rather, the facts must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[24] Torts 379 ⟸241**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)2 Particular Cases
                379k241 k. Business Relations or Economic Advantage, in General. Most Cited Cases

**Torts 379 ⟸255**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)3 Actions in General
                379k255 k. Pleading. Most Cited Cases
District court correctly applied standard for motion to dismiss for failure to state claim, in dismissing towing company's Michigan law claim against police chief for tortious interference with business relations, arising from company's failed bid for city towing contract, where court based dismissal on fact that company's allegations, rather than giving rise to inference that police chief was acting solely for his own benefit with no benefit to city, gave rise to inference that police chief had good and longstanding relationship with company and therefore believed that city would benefit from continuing the relationship. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[25] Federal Civil Procedure 170A ⟸1772**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)3 Pleading, Defects In, in General
                170Ak1772 k. Insufficiency in General. Most Cited Cases
When a plaintiff pleads facts in support of a claim that could just as easily lend credence to a completely innocuous scenario, the claim ought to be dismissed. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.
Deborah L. Gordon, Deborah L. Gordon Assoc., Bloomfield Hills, MI, for Plaintiffs.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

Donald L. Knapp, Jr., City of Livonia, Michael E. Fisher, Carl V. Creighton, Creighton McLean & Shea PLC, Livonia, MI, Michael E. Rosati, Johnson, Rosati, Farmington Hills, MI, for Defendants.

*OPINION AND ORDER GRANTING DEFEND-ANTS' MOTIONS FOR SUMMARY JUDGMENT (docket nos. 10 and 13)*

STEPHEN J. MURPHY, III, District Judge.

**\*1** This is an action for violation of due process and equal protection, tortious interference with business expectancy, civil conspiracy and violation of the Michigan Open Meetings Act. The plaintiffs are a towing company, Ross Towing of Livonia, and its owner, Christopher Maiberger (collectively, "Ross Towing"). The defendants are Livonia Towing Company and its owner, John Klotz (collectively "Livonia Towing"), the City of Livonia, the Livonia City Council, and various Livonia officials and council members. The action is based upon Ross Towing's failed bid for a towing contract with the City that was ultimately awarded to Livonia Towing.

The action was filed in Wayne County Circuit Court and removed to this Court on December 23, 2009. The docket has been extremely active since that time. The defendants filed two motions to stay and the plaintiffs filed cross-motions to permit discovery and a motion to amend the complaint. The Court granted the defendants' motion to stay discovery on February 24, 2010 and granted plaintiffs' motion to amend the complaint on April 16, 2010, giving the plaintiffs twenty days in which to file their proposed amended complaint. The plaintiffs filed their first amended complaint on April 20, 2010.

Before the Court are two motions for summary judgment, filed by two different sets of defendants. Defendants John Klotz and Livonia Towing have filed a motion for dismissal and summary judgment on the two counts asserted against them, arguing

that the allegations in the amended complaint fail to state a claim against them for either tortious interference or civil conspiracy. The municipal defendants have also filed a motion to dismiss or for summary judgment, arguing that the plaintiffs lack standing to bring a suit challenging the award of the contract to Livonia towing, that the plaintiffs' claims are barred by qualified, legislative and governmental immunity, that the various allegations fail to state claims upon which relief may be granted, and that any claim under the Michigan Open Meetings Act is barred by the applicable statute of limitations.

The Court has reviewed the pleadings, the briefs, and the relevant facts in the record, and held a hearing on defendants' motions on April 22, 2010. For the reasons stated below, defendants' summary judgment motions will be granted.

## FACTS

The City of Livonia contracts for the provision of towing services within the city limits. Amended Complaint ¶ 15. The City contract awards a towing company the right to provide towing services to City-owned vehicles well as to set rates for private towing within the city limits. *Id.* ¶ 16. The towing contract is extremely lucrative to the successful bidder. *Id.* ¶ 17. Livonia Towing, owned and operated by defendant Klotz, has held the towing contract with the City for the past twenty years. *Id.* ¶ 18.

Livonia has a city ordinance that requires the City to solicit sealed bids by advertisement for the towing contract and forbids the contract to "be awarded other than to the lowest bidder except by authority of the council." Livonia Ordinance, Chapter 3.04.140.C. The ordinance also provides that "[t]he council, at its discretion, shall have the right to reject any and all bids...." *Id.* There is also an ethics ordinance that prohibits a city official or employee from "us[ing] his/her official position to unreasonably secure, request, or grant, any privileges, ex-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

emptions, contracts or preferential treatment for himself/herself or others." Livonia Ordinance, Chapter 2.200.

**\*2** The plaintiffs allege that Livonia Towing has not had to participate in a competitive bidding process for years. Amended Complaint, ¶ 19. The plaintiffs allege in their briefs on information and belief that relatives of Livonia police officers work for Livonia Towing, relatives of Klotz work for the City of Livonia, a family member of Council Member Godfroid-Marecki obtained substantial income from Klotz in 2008, and defendant Chief of Police Stevenson has personal or financial connections with Livonia Towing. Plaintiffs do not make these allegations in the amended complaint.

Maiberger obtained a lease on property in Livonia in May, 2008 and later obtained a variance (allowing for an impound lot) and began operating Ross Towing of Livonia. Amended Complaint ¶ 22. Maiberger's family owns and operates the Larry Ross Garage, Inc., which has provided towing services to the City of Southfield for many years. *Id.*, ¶ 14. Prior to the opening of Ross Towing of Livonia, Livonia Towing was the only towing company in Livonia and therefore had no competition for the towing contract with the City of Livonia. *Id.*, ¶ 24.

Maiberger alleges that police officers harassed him and his employees by engaging in "near-constant" surveillance of Ross Towing's business by police officers in police cars parked across the street from the business. Amended Complaint ¶ 25-26. Maiberger asserts that police cars regularly followed Maiberger and his employees as they left the premises of Ross Towing until they left the jurisdiction. *Id.*, ¶ 26. Maiberger was also pulled over twice in one week for allegedly not wearing his seatbelt, although on each occasion he was wearing his seatbelt. *Id.*, ¶¶ 27-28. Police department employees wrote memos supporting Livonia Towing and against Ross Towing's bid for the towing contract and began investigating Ross Towing for no apparent reason. *Id.*, ¶ 30. Maiberger alleges in a brief, on information and belief, that the memor-

andum written by Officer Scott Tar intentionally misrepresented information provided by Officer Snook, the impound officer of the City of Southfield, but this allegation is not in the amended complaint.

Maiberger met with Chief of Police Stevenson in order to introduce himself. Amended Complaint ¶¶ 36-37. Stevenson told Maiberger that his loyalties were with Livonia Towing and that he could not foresee going with anyone else to provide towing services. *Id.*, ¶ 37.

The towing contract between the City and Livonia Towing expired on October 10, 2008. Amended Complaint ¶ 31. The zoning variance for the impound lot is explicitly contingent on Livonia Towing maintaining its contract with the City and when the contract expired so did the variance permitting Livonia Towing to operate its towing business. *Id.*, ¶¶ 31-32. Maiberger asserts that Livonia Towing was therefore not qualified to submit a bid to provide towing services to the City. *Id.*, ¶ 35.

**\*3** On October 20, 2008, the City published a notice that it was seeking qualified applicants to competitively bid on the towing services contract. Amended Complaint ¶ 33.

On November 17, 2008, Livonia Towing and Ross Towing submitted sealed bids for the towing contract. Amended Complaint ¶ 38. The bid packet provided by Ross Towing included a letter of recommendation from the Southfield Chief of Police. *Id.*, ¶ 41. Maiberger alleges that on November 21, 2008, Livonia Police Chief Stevenson called the Southfield Chief of Police and told him to withdraw his letter of recommendation. *Id.*, ¶ 42.

In previous years the Livonia Chief of Police provided reports and recommendations to the Livonia City Council regarding proposed towing contracts. Amended Complaint ¶ 39. Maiberger alleges that Mayor Jack Kirksey removed Chief of Police Stevenson from consideration of the bids in this case because Stevenson had contacted the South-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

field Chief of Police and asked him to withdraw his letter of recommendation for Ross Towing, and because the plaintiffs had complained of "other intentionally tortious actions by Defendant Stevenson and other employees of Defendant Livonia." *Id.,* ¶¶ 40-46.

Plaintiffs assert that an unsigned report and recommendation, dated December 30, 2008, was in existence by January 12, 2009. Amended Complaint % 48. That same day, a signed report and recommendation was distributed and shortly thereafter withdrawn. *Id.,* ¶ 49. The next day, another signed report and recommendation was distributed with bid packets for each company attached. *Id.,* ¶ 50. The report and recommendation was authored by Michael Slater, Livonia Director of Finance, and Sean P. Kavanagh, Livonia City Attorney. The report and recommendation found that the Ross Towing proposal was higher than the proposal by Livonia Towing because the Ross Towing contract proposed an additional charge of $35 in cases where a flatbed tow truck was used, and flatbed wreckers are used for a majority of tow jobs. The report recommended that Livonia Towing be awarded the contract for towing services, and that Ross Towing be used to provide towing services if Livonia Towing was unavailable to provide a particular service. Livonia Towing Motion for Summary Judgment, Exh. D.

On January 21, 2009, Michael Slater, the Livonia Director of Finance, presented the report and recommendation to a Study Committee Meeting of the Livonia City Council. At this meeting, Council member Meakin offered a resolution to grant the contract to Ross Towing, but no vote was taken. Amended Complaint ¶ 52. Plaintiffs allege on information and belief that, at the study committee meeting, Ross Towing had four votes in support of their receiving the towing contract, while Livonia Towing had only one vote. *Id.,* ¶ 53.

On February 8, 2009, council member Joe Laura emailed council member Godfroid-Marecki stating that, contrary to the conclusion in the report and recommendation, it appeared that Ross Towing was

the lowest bidder because the report and recommendation did not give credit for a 10% discount Ross Towing proposed to provide to all Livonia residents, and that the City's evaluation of the bids appeared "sloppy at best." Amended Complaint ¶ 55.

**\*4** Plaintiffs allege on information and belief that a quorum of the city council met in a secret meeting at a restaurant in Plymouth, Michigan to discuss what to do about the towing contract. Amended Complaint ¶ 57. Plaintiffs also allege on information and belief that Mayor Kirksey met with certain members of the city council immediately prior to a March 9, 2009 city council meeting to block the towing contract from being sent back to the City for further analysis, to force the towing contract to be voted on that evening, and to ensure the towing contract was awarded to Livonia Towing. *Id.,* ¶ 60.

On March 9, 2009, the City Council held a public meeting and voted on the towing contract. Amended Complaint ¶ 59. Councilman Laura offered a resolution at that meeting to extend the ethics ordinance to all department heads, including the Police Chief and Fire Chief. *Id.,* ¶ 61. The resolution did not pass. *Id.,* ¶ 62. During the March 9, 2009 City Council meeting, plaintiffs allege that Council Member Marecki "repeatedly referred to Defendant Livonia Towing as the winning company and Plaintiff Ross Towing as the losing company", which plaintiff asserts "[i]ndicat[es] clearly that the decision to grant the towing grant to Defendants Livonia Towing and Klotz had already been made in some nonpublic meeting, and that the whole process was a sham." *Id.,* ¶ 64. During the March 9, 2009 meeting, Council Member Joe Laura stated that:

> ... I've seen department heads try to get involved in this inappropriately um, [unintelligible] to the point of an emotional tirade. I've heard all kinds of stories of department heads trying to influence people um to try to support certain parties....

> ... I'm just amazed at the flip-flopping that's going

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

on. At the conversations that are going on, um, and the stuff that I'm receiving back from, you know, what department heads are threatening who to try to get things done. Mayor, I'm gonna be talking to you after about some of your department heads and I'd like for you to take a look at them. Some of the allegations, at least to investigate.....

Amended Complaint ¶ 66.

The City Council awarded the towing contract to Livonia Towing at the March 9, 2009 meeting by a vote of three to two. Amended Complaint ¶ 65. Plaintiffs allege, however, without further elaboration, that "Plaintiffs were actually granted the contract at some procedural stage, prior to the contract being awarded to Defendants Livonia Towing and Klotz." *Id.*, ¶ 87.

Plaintiffs filed this action in Wayne County Circuit Court on October 30, 2009, and it was removed to this Court by defendants on December 23, 2009.

The Court granted the plaintiffs leave to file an amended complaint on April 16, 2010. The amended complaint contains five counts. Count one, asserted against the City of Livonia, Mayor Kirksey, Chief of Police Stevenson, Klotz and Livonia Towing, is a claim for tortious interference with an advantageous business relationship or expectancy. Count two, asserted against the City, the City Council, council members Meakin, Toy, and Godfroid-Marecki, Mayor Kirksey and Police Chief Stevenson, is a claim that the defendants deprived the plaintiffs of a constitutionally protected property interest without due process of law. Count three, asserted against the same defendants, is a claim that the government defendants violated the plaintiffs' right to equal protection by treating the plaintiffs less favorably than other similarly situated persons without a rational basis. Count four, asserted against the City, the City Council, and council members Meakin, Toy and Godfroid-Marecki, claims that the named defendants violated the Michigan Open Meetings Act by deliberating

about and awarding the towing contract in a non-public meeting. Count five, asserted against all defendants, is a claim for civil conspiracy.

## LEGAL STANDARD

**\*5** While the motions are captioned as motions for summary judgment, the motion filed by the Livonia Defendants appears to be both a motion to dismiss the complaint pursuant to Fed. R. Civ. 12(b)(6) and a motion for summary judgment pursuant to Fed.R.Civ.P. 56.

Motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) test the legal sufficiency of the complaint. Rule 8 of the Federal Rules of Civil procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

*Iqbal* 129 S.Ct. at 1949 (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The Court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. The court should then consider only the well-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

pleaded factual allegations, assume their veracity, and determine whether they state a plausible claim for relief. *Id.*

If matters outside the pleadings are presented to the Court and not excluded, the Court must treat the motion as one for summary judgment and give all parties reasonable opportunity to present all material pertinent to the motion. Fed.R.Civ.P. 12(d). Summary judgment should be rendered if the pleadings, the discovery and disclosures on file and any affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). When a motion for summary judgment is properly supported, the party opposing summary judgment may not rely on allegations or denials in its pleadings but must by affidavits or otherwise set out specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e)(2). Affidavits filed in opposition to summary judgment must be made on personal knowledge, setting forth admissible facts. Fed.R.Civ.P. 56(e)(1).

## ANALYSIS

I. *Summary Judgment Motion by City of Livonia Defendants*

The municipal defendants-the City of Livonia, the Livonia City Council, Council Members Brian Meakin, Laura Toy, and Terry Godfroid-Marecki, Mayor Jack Kirksey, and Police Chief Robert Stevenson (collectively "the Livonia Defendants") have moved to dismiss and/or for summary judgment on four grounds. First, the Livonia defendants assert that the plaintiffs lack standing to bring this suit because disappointed bidders do not have standing under Michigan law. Second, the Livonia defendants assert that the plaintiffs' claims are barred by qualified immunity, governmental immunity and legislative immunity. Third, defendants assert that the claims against the Livonia defendants fail to state a claim upon which relief may be

granted. Fourth, defendants assert that plaintiffs' claims under the Michigan Open Meetings Act are barred by the statute of limitations.

A. *Standing*

*6 Defendants move to dismiss plaintiffs' claims of violation of due process and equal protection on the grounds that plaintiffs lack standing to assert these claims.

[1][2] Standing doctrine places constitutional and prudential limits on who may bring suit in federal court. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 291 (6th Cir.2006). Constitutional standing requires a plaintiff to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' " *Id.* ( *quoting Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). The injury-in-fact must be concrete and particularized, and actual or imminent, not conjectural or hypothetical; it must be fairly traceable to the actions of the defendant and likely to be redressable by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Under the doctrine of prudential standing, a plaintiff may not raise generalized grievances and generally may not raise the rights of third parties. *Club Italia,* 470 F.3d at 291. One prudential standing requirement is the "zone of interest" test, which requires a plaintiff to show that the rights he or she is seeking to protect are those rights contemplated by the statute or constitutional guarantee being invoked. *Id.*

Defendants argue that under Michigan law, disappointed bidders have no standing to challenge the award of a contract to another bidder. In support, defendants cite *Talbot Paving Company v. City of Detroit* (" *Talbot II* "), 109 Mich. 657, 660, 67 N.W. 979 (1896) *and City of Detroit v. Wayne Circuit Judges,* 128 Mich. 438, 439, 87 N.W. 376 (1901).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
(Cite as: 2010 WL 2772490 (E.D.Mich.))

*Wayne Circuit Judges* involved a challenge to an award by the City of Detroit of a contract to repave a street. A bidder (who was also a taxpayer) that was not awarded the contract filed suit, alleging that the award should have been made to him as the lowest bidder whose bid was alleged to have conformed to the specifications as published, while the winner's bid did not. In *Talbot II*, the Detroit City Council rejected the plaintiff's bid for a repaving contract, although it was the lowest bid, on grounds that the Supreme Court found "purely technical and without foundation." In both cases, the Michigan Supreme Court held that the plaintiffs lacked standing to bring the suit. The reasoning of the court was that whenever an action is brought for breach of a duty imposed by statute, the party bringing it must show that he had an interest in the performance of the duty and that the duty was performed for his benefit. *Talbot II,* 109 Mich. at 660, 67 N.W. 979. The Michigan court concluded that statutory provisions that require the acceptance of the lowest responsible bid were not enacted for the benefit of an unsuccessful bidder but were enacted for the benefit of the citizens of the city. *Id.* at 662, 67 N.W. 979.

In *Malan Constr. Corp. v. Board of County Road Commissioners,* 187 F.Supp. 937 (E.D.Mich.1960), Judge Levin summarized the reasoning of the earlier cases:

*7 Competitive bidding is not intended to benefit bidders. It is designed to protect the taxpaying public from fraud or favoritism in the expenditure of government funds for public works projects. The Michigan Supreme Court has held that the duty of public officials to consider honestly competitive bids runs directly to the community and that, therefore, only the public, through a taxpayer's suit, has standing to enjoin a proposed contract. The incidental benefit received by bidders from competitive bidding does not allow an unsuccessful bidder to bring a private action.

*Malan Constr.,* 187 F.Supp. at 939 (citing *Talbot II* ).

Plaintiffs assert that the Michigan cases cited by the defendants are irrelevant, and that plaintiffs have federal constitutional standing under the Sixth Circuit case of *Club Italia Soccer,* 470 F.3d at 291. In *Club Italia,* a nonprofit sports organization brought a section 1983 claim against Shelby Township, Michigan, alleging that the township's bidding procedures for development of a soccer complex and its acceptance of a bid from a competing business deprived the organization of due process and equal protection. The township had been involved in discussions with Soccer City, a for-profit company that wished to develop and construct a soccer complex on township property. Soccer City submitted a formal proposal and did environmental testing on two sites. Club Italia, a nonprofit sports organization, expressed concerns about the bidding process at town board meeting and expressed interest in submitting a proposal. The board held a special meeting at which it decided to accept additional proposals and, ten days later, issued an "invitation to compete," inviting all other interested parties to submit proposals. The invitation to compete required proposals to be submitted within three weeks and required bidders to guarantee that the winner would reimburse Soccer City for its costs of environmental testing. Club Italia was unable to conduct necessary surveying and design needed to complete its bid in the time allotted, and the township board refused to grant Club Italia more time. As a result, Soccer City was the only entity submitting a bid and won the contract.

Club Italia sued in federal court. The district judge dismissed the case on the grounds that the plaintiff lacked standing as a disappointed bidder. The Sixth Circuit disagreed with this reasoning.[FN1] The Sixth Circuit explained that the rule in this circuit is that "unless a party brings suit under the APA [Administrative Procedures Act] or similar legislation which evinces a congressional intent to create a grounds for standing for a disappointed bidder, this Court will not confer standing on disappointed bidders" because disappointed bidders do not come within the zone of interests sought to be regulated

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
(Cite as: 2010 WL 2772490 (E.D.Mich.))

or protected by bidding statutes. *Club Italia,* 470 F.3d at 294. Because the plaintiff did not rely on the APA or similar legislation, the Sixth Circuit held that the district court was correct that it would be improper to grant the plaintiff standing as a disappointed bidder. The court found, however, that the inquiry did not end there because the district court neglected to address the plaintiff's assertion that it was not a disappointed bidder for the reason that plaintiff never actually submitted a bid. The Sixth Circuit was persuaded by the plaintiff's argument that its standing arose from the fact that it was not afforded adequate opportunity to submit a proposal in an open bidding process. The Court ruled that defendant's refusal to allow the plaintiff to bid on the contract was sufficient to allege injury in fact so as to confer federal constitutional standing. FN2

*8 [3] The Court has analyzed the issue and finds that the authority of *Club Italia* does not establish grounds for standing in this case. *Club Italia* is distinguishable from the present case because, here, the plaintiffs did in fact bid on the contract at issue, and, as such are disappointed bidders, and lack standing absent a specific statute conferring them the standing to sue. *Club Italia,* 470 F.3d at 294. In this case, there is no allegation that the plaintiffs were prevented from bidding on this contract or have been disqualified from bidding on future projects. *Cf. EBI-Detroit, Inc. v. City of Detroit,* 279 Fed.Appx. 340, 348 (6th Cir.2008) (distinguishing *Club Italia* and holding disappointed bidder has no standing where there is no allegation that bidder was precluded from future contracts). Plaintiffs are not suing under the APA or similar legislation, and the Michigan case law makes it apparent that they do not have a state-created entitlement. Under *Club Italia,* plaintiffs lack standing to challenge their failed bid and summary judgment is therefore appropriate.FN3

B. *Michigan Open Meetings Act Statute of Limitations (Count IV)*

The Livonia Defendants move to dismiss Count Four of the amended complaint, alleging violation of the Michigan Open Meetings Act, on the grounds that the claim is barred by the statute of limitations contained in the act.

The Open Meetings Act, Mich. Comp. Laws § 15.261 *et seq.,* prohibits state and local legislative bodies from doing business in closed meetings. Defendants move to dismiss Count Four as barred by the statute of limitations. Defendants note that the complaint is unclear as to what section of the Open Meeting Act the plaintiffs are relying upon, but argue that even the most liberal of the limitations periods contained in the act bar the present suit.

The Open Meetings Act provides that "any person may commence a civil action in the circuit court to challenge the validity of a decision of a public body made in violation of this act." Mich. Comp. Laws § 15.270(1). The Act provides, however, that a court does not have jurisdiction to invalidate a decision of a public body for a violation of the act unless the action is commenced within the periods of time specified in the Act. Mich. Comp. Laws § 15.270(3). Specifically, an action to invalidate a decision of a public body must be commenced "[w]ithin 60 days after the approved minutes are made available to the public," or, in a case where the "decision involves the approval of contracts, the receipt or acceptance of bids ..., within 30 days after the approved minutes are made available to the public pursuant to that decision." *Id.* Finally, Mich. Comp. Laws § 15.273 provides that public officials found to have intentionally violated the act may be personally liable for damages not to exceed $500 plus actual costs and attorneys fees, and such an action must be brought within 180 days after the date of the violation that gives rise to the cause of action.

*9 [4] Defendants argue that the latest date that the alleged covert meeting could have occurred was March 9, 2008, since that was the date that the towing contract was awarded to Livonia Towing, and even under the longest limitation period, the latest

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
(Cite as: 2010 WL 2772490 (E.D.Mich.))

date to file a claim under the Open Meetings Act
would be September 4, 2009. The complaint in this
action was filed on October 30, 2009, more than
236 days after the contract with Livonia Towing
was approved, and therefore the action falls outside
even the most generous limitation period. Alternat-
ively, the minutes of the board meeting that awar-
ded the contract to Livonia Towing were published
on March 25, 2009, and the action was filed 219
days after the publication of these minutes, again
outside the longest of the limitation periods.

Plaintiffs make two arguments in response. First,
plaintiffs cite *Detroit News v. Detroit,* 185
Mich.App. 296, 301, 460 N.W.2d 312 (1990), for
the proposition that there is no limitations period
for claims brought pursuant to Mich. Comp. Laws §
15.271, the portion of the Act authorizing a person
to commence a civil action to compel compliance
or enjoin further noncompliance with the act. The
*Detroit News* case, however, is irrelevant here. *De-
troit News* involved an Open Meetings Act suit
brought by a newspaper to enjoin the defendant
City of Detroit from closing council meetings con-
cerning settlement strategy in connection with
pending litigation relative to the Chrysler Jefferson/
Conner Project and to compel the city to produced a
sealed copy of the minutes of such closed meetings
for in camera review. The court in *Detroit News* ex-
plicitly held that the 30 day limitation period con-
tained in Mich. Comp. Laws § 15.270(3) did not
apply in that case because the plaintiffs were not
seeking to invalidate the actions of the city council,
but were seeking to enjoin further noncompliance
with the act and compel the city to produce the
minutes of a closed meeting. Here, however, the
plaintiffs are seeking to invalidate the actions of the
city council taken at the March 9, 2008 meeting and
the alleged secret meeting held prior to the official
meeting, and are seeking damages and attorneys
fees for the meeting. They are not seeking the pro-
duction of the purported minutes as a remedy, but
rather as a discovery tool for furthering their under-
lying action for invalidation, damages and attorneys
fees. This case is therefore unlike *Detroit News,*

and the limitation period contained in Mich. Comp.
Laws § 15.270(3) and/or Mich. Comp. Laws §
15.273 apply.

[5] Plaintiffs second argument is that an action
brought to invalidate the award of the towing con-
tract to Livonia Towing is still timely despite being
brought more than 236 days after the alleged secret
meeting because, they argue, the time period for
bringing a suit to invalidate the contract runs from
the date that the approved minutes of the meeting
are released. Here, plaintiffs allege that the
"decision" was made in the alleged secret meeting,
and since no minutes have been released from the
alleged secret meeting (and in fact defendants deny
any such secret meeting ever occurred), the limita-
tion period contained in Mich. Comp. Laws §
15.270 has not yet commenced running.

*10 The Court finds this argument, while thought-
ful, to be without merit. Whatever may have
happened in the alleged secret meeting, the record
reflects that as a matter of law the contract was
awarded to Livonia Towing at the City Council
meeting on March 9, 2009. There is no dispute that
the minutes of the March 9, 2009 meeting were
published on March 25, 2009. The complaint in this
action was filed on October 30, 2009, 219 days
after the publication of the minutes. Plaintiffs' ac-
tion to invalidate the award of the contract to Livo-
nia Towing under Mich. Comp. Laws § 15.270 and
any claim for damages under Mich. Comp. Laws §
15.273 is therefore time barred.

This conclusion is not altered by plaintiffs' motion
under Rule 56(f) for discovery. As detailed below,
the plaintiffs have filed a Rule 56(f) affidavit stat-
ing that summary judgment is inappropriate be-
cause there are material factual issues as to whether
the alleged secret meeting took place. The Court
concludes, however, that on the undisputed facts
the limitation period for bringing a Open Meetings
Act claim has lapsed even assuming that the alleged
secret meeting did take place. As the limitations
period has lapsed, plaintiffs' other allegations are
immaterial and summary judgment is appropriate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
(Cite as: 2010 WL 2772490 (E.D.Mich.))

here.

C. *Tortious Interference with Business Relationship (Count I)*

Count One of the amended complaint alleges a claim of tortious interference with an advantageous business relationship or expectancy against defendants City of Livonia, Kirksey, and Stevenson, as well as against Livonia Towing and Klotz. The City, Mayor Kirksey and Stevenson move to dismiss Count One as against them on the grounds that the amended complaint fails to state a claim upon which relief may be granted. Specifically, the Livonia Defendants argue that the tortious interference claim should be dismissed because none of the government defendants are third parties to the towing contract and because they are all immune from the tortious interference claim.

### 1. *Does Count I fail to state a claim against the Livonia Defendants?*

The Livonia Defendants argue that Count I fails to state a claim against the government defendants because the complaint fails to allege the existence of a valid business relationship or expectancy and because the complaint fails to allege tortious acts interfering with the expectancy.

The elements of a claim for tortious interference with economic relations are: (i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage.

*Lucas v. Monroe County* 203 F.3d 964, 978-79 (6th Cir.2000); see also *Laurence G. Wolf Capital Mgmt. Trust v. City of Ferndale,* 2009 WL 416785 (Mich.Ct.App.2009).

[6][7][8] An essential element of a tortious interfer-

ence claim is that the defendant is a third party to the contract or business relationship. *Reed v. Michigan Metro Girl Scout Council,* 201 Mich.App. 10, 13, 506 N.W.2d 231 (1993). A cause of action for tortious interference may not lie against a person that is not a third party to the anticipated contractual relationship. *Id.* Plaintiffs' claim for tortious interference against the City of Livonia fails to allege such a third-party relationship. The Court will therefore dismiss the tortious interference claim against the City.

**\*11** [9] As to corporate agents, such as the mayor and the chief of police, "[i]t is now settled law that corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation." *Id.* Defendants argue that neither the police chief nor the Mayor may be liable for tortious interference with the City's purported contract because there are no factual allegations that support an inference that the police chief or the mayor were acting solely for their own benefit with no benefit to the city.

The Court will dismiss plaintiffs' tortious interference claim against Mayor Kirksey because there are no allegations in the amended complaint that would support such a claim against the mayor. The amended complaint alleges that Kirksey is the elected Mayor of Livonia and a resident of the Eastern District of Michigan (Amended Complaint ¶ 9); that plaintiff Maiberger contacted Mayor Kirksey and asked that he address "these and other intentionally tortious actions" by police chief Stevenson and other employees of Livonia (Amended Complaint ¶ 44); that Mayor Kirksey met with Maiberger and told him that Stevenson would be removed from involvement in evaluating the towing bids and that a three member committee would be formed (Amended Complaint ¶ 45); that Mayor Kirksey removed Stevenson from involvement with the evaluation of the bids for the towing contract and appointed an independent committee to make a recommendation (Amended Complaint ¶ 46); and that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

immediately prior to the council meeting, Mayor Kirksey met with certain members of the City Council and others "to block the towing contract from being sent back to the City and force a vote on the towing contract that evening to ensure the towing contract was awarded to Defendants Livonia Towing and Klotz" (Amended Complaint ¶ 60).

Even assuming all these allegations are true, there are no allegations that would give rise to the inference that the Mayor was acting solely for his own benefit with no benefit to the City. Rather, these allegations raise the equally strong inference that the Mayor was acting because he believed that Livonia Towing was the best company to perform towing services for the City. Thus, the allegations against Mayor Kirksey falls under the rule articulated in *Reed* that "corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation." *Reed,* 201 Mich.App. at 13, 506 N.W.2d 231. The Court will therefore dismiss the tortious interference claim against Mayor Kirksey.

The Court will also grant defendants' motion to dismiss the tortious interference claim against Police Chief Stevenson, because those allegations do not state a valid tortious interference claim against the police chief. The amended complaint alleges that Stevenson is the Chief of Police of Livonia and a resident of the Eastern District (Amended Complaint ¶ 10); Maiberger's business was watched by police department employees, Maiberger's employees were followed from their place of business, and Maiberger was pulled over twice for not wearing a seatbelt when he in fact was wearing a seatbelt (Amended Complaint ¶¶ 25-28); Stevenson and the Fire Chief wrote unsolicited letters praising Livonia Towing (Amended Complaint ¶ 29); members of the police department wrote memos criticizing Ross Towing and began investigating Ross Towing (Amended Complaint ¶ 30); Stevenson told Maiberger that his loyalties lay with Livonia Towing and he could not foresee going with anyone else to

provide towing services (Amended Complaint ¶¶ 36-37); Stevenson was removed by the Mayor from considering the towing contract because he had contacted the Southfield Chief of Police and asked him to withdraw a letter of recommendation that he submitted in support of Ross Towing (Amended Complaint ¶¶ 40-46); while the bids were being considered by the City Council, "Defendant Stevenson was still doing all he could to tortiously interfere with and corrupt the bidding process in favor of Defendants Livonia Towing and Klotz, including preparing correspondence to the City Council regarding Ross Towing" (Amended Complaint ¶ 54); and in a February 12, 2009 email, Council member Joe Laura acknowledged that he had heard that Stevenson had "business connections" to Livonia Towing and Klotz (Amended Complaint ¶ 58).

**\*12** As with the Mayor, even taking all allegations in the amended complaint as true, they do not state a claim for tortious interference against Chief of Police Stevenson. The only allegations that would constitute wrongful conduct on the part of Police Chief Stevenson are allegations that he asked the Southfield police chief to withdraw his letter of recommendation for Ross Towing. There is no allegation that the letter was in fact withdrawn, and the only result was that Stevenson was removed from further involvement in the towing contract. Writing letters in support of Livonia Towing is not per se wrongful, even if the Court were to credit the double hearsay allegation that Stevenson had business connections with Livonia Towing. Further, the allegations in the amended complaint do not give rise to an inference that Stevenson's actions were solely for his own benefit and not also for the benefit of Livonia. The allegations give rise to an equally strong inference that Stevenson had a good and longstanding relationship with Livonia Towing and therefore believed that the City would benefit from continuing the relationship. Finally, the decision to award the towing contract was the council's decision, not the police chief's decision, and there are no facts alleging that any action of the police chief caused the contract to be awarded to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

Livonia Towing rather than Ross Towing. In fact, the inference from the pleaded facts is that Stevenson had no further involvement in the award of the towing contract after he contacted the Southfield police chief. The plaintiff's complaint therefore fails to allege facts from which a plausible claim for tortious interference with business expectancy may be drawn against defendant Stevenson, and dismissal of the claims are appropriate against defendant Stevenson.

In summary, plaintiffs' amended complaint fails to state a claim for tortious interference with business expectancy against any of the Livonia Defendants, and the Court will therefore grant the Livonia Defendants' motion to dismiss Count One of the Complaint.

### 2. *Government Tort Immunity*

The City, Mayor Kirksey and Police Chief Stevenson also move to dismiss Count I on the grounds of governmental immunity. Governmental agencies such as the City of Livonia are immune form tort liability when they are engaged in the exercise or discharge of a governmental function. Mich. Comp. Laws § 691.1407(1). Officers and employees are immune when engaged in discretionary tasks within the scope of their authority when their actions do not amount to gross negligence. Mich. Comp. Laws § 691.1407(2). Plaintiffs argue in response that dismissal on the grounds of governmental immunity is not appropriate because the question of whether the defendants were acting within their respective authority is a highly fact-intensive inquiry. See *American Transmissions v. Attorney General,* 454 Mich. 135, 141, 560 N.W.2d 50 (1997).

The Court will not reach or address the issue of governmental immunity because it appears that the complaint fails to state a claim for tortious interference against either defendant as discussed in Section I(C)(1).

### D. *Qualified Immunity*

*13 The Livonia Defendants argue that the federal constitutional claims in Counts Two and Three, asserted against Kirksey, Stevenson, and City Council Members Meakin, Toy, and Godfroid-Marecki, should be dismissed on the grounds of qualified immunity.

Qualified immunity protects governmental officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* ---U.S. ----, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). When a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir.2009). The plaintiff also has the burden of showing the right asserted is clearly established. *Id.* The ordinary procedure in determining the applicability of the defense is first, the court must decide whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right. *Pearson,* 129 S.Ct. at 815-16. If the plaintiff satisfies this first step, the court should then decide whether the right alleged to have been violated is clearly established. *Id.* at 816.

The Livonia Defendants argue that the individual defendants are entitled to qualified immunity because there was no violation, let alone a clearly established violation, of the plaintiffs' constitutional rights because Michigan law gives no rights to unsuccessful bidders. The defendants also argue that the facts do not show conduct by the defendants that would give rise to a constitutional violation.

[10] *Club Italia,* 470 F.3d 286 (6th Cir.2006), discussed *supra,* supports defendants' argument that there is no equal protection or due process violation here. In *Club Italia* the Sixth Circuit held that there was no due process violation because a disappointed would-be bidder did not have a liberty interest in the township's failure to award the contract to the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
(Cite as: 2010 WL 2772490 (E.D.Mich.))

plaintiff; the township there did not besmirch the plaintiff's good name or prevent it from entering into other contracts. In addition, the court found that there was no constitutionally protected property interest because the bidder neither alleged that it was actually awarded the contract and then deprived of it or that, under state law, the township had limited discretion, which it abused in awarding the contract. *Club Italia,* 470 F.3d at 297. The same is true here. There are no factual allegations that would support plaintiffs' contention that the contract was awarded to the plaintiffs "at some point" or that the town had limited discretion in awarding the contract. Also, allegations that the successful bidder was granted special treatment do not give rise to an equal protection violation when the plaintiff fails to negate every conceivable basis which might support the defendants actions or allege animus. *Id.* at 298-99.

**\*14** The plaintiffs distinguish *Club Italia* and argue that their complaint adequately states a claim that the defendants violated their clearly established rights because the complaint alleges that the defendants "singled out and treated Plaintiffs less favorably than other similarly situated persons without any rational basis" and "acted out of vindictiveness and ill will." Amended Complaint ¶ 93. This argument is not persuasive. These are simple legal conclusions and are not, under *Iqbal,* entitled to a presumption of truth. Instead, the proper inquiry is whether the facts alleged create a plausible claim that the defendants were acting without rational basis and out of vindictiveness and ill will.

Plaintiffs rely on *Experimental Holdings v. Farris,* 503 F.3d 514 (6th Cir.2007), for the proposition that "a 'disappointed bidder' to a government contract may establish a legitimate claim of entitlement protected by due process by showing either that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officials as to whom the contract should be awarded." *Experimental Holdings,* 503 F.3d at 519 (quoting *United of Omaha Life Ins. Co. v. Solomon,*

960 F.2d 31, 34 (6th Cir.1992)). Plaintiffs allege in their amended complaint that they "were actually granted the contract at some procedural state, prior to the contract being awarded to Defendants Livonia Towing and Klotz." Amended Complaint ¶ 87. They argue that this allegation is sufficient to plead a property interest to state a due process claim.

In response, defendants argue, correctly, that the allegation that the plaintiffs were "actually granted the contract at some procedural stage" is the kind of naked legal assertion that is not entitled to the presumption of truth under *Twombly* and *Iqbal.* Rather, the actual facts alleged show that the plaintiffs were never awarded the contract at any "procedural stage" and therefore, as a matter of law, have not been deprived of a recognized property interest for purposes of due process analysis.

**\*15** The Court agrees with the defendants that the complaint fails to allege a violation of the plaintiffs' rights because it fails to allege facts that create a plausible claim that the defendants deprived the plaintiffs of property without due process of law, or that the defendants singled out and treated the plaintiffs less favorably that other similarly situated persons or that they were acting out of vindictiveness and ill will. Summary judgment is therefore appropriate on Counts Two and Three.

### E. *Civil Conspiracy (Count V)*

[11] The amended complaint asserts a civil conspiracy claim against all defendants. A civil conspiracy is a combination of two or more persons to accomplish a criminal or unlawful purpose or to accomplish a lawful purpose by criminal or unlawful means. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Assn.,* 257 Mich.App. 365, 384, 670 N.W.2d 569 (2003). Defendants argue that the civil conspiracy claim must be dismissed as to the Livonia Defendants because there is no separate actionable tort upon which to ground the civil conspiracy. *See id.* ("[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separ-

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

ate actionable tort"). Also, the plaintiff has failed to allege material facts showing the existence and scope of the conspiracy. *Payton v. City of Detroit*, 211 Mich.App. 375, 397, 536 N.W.2d 233 (1995).

The Court agrees with the defendants that plaintiffs' amended complaint fails to allege an actionable tort or, therefore, a claim for civil conspiracy against the Livonia Defendants, and Count Five of the Amended Complaint will be dismissed as to those defendants.

*F. Are Plaintiffs Entitled to Discovery?*

The plaintiffs have filed a motion to permit discovery pursuant to Fed.R.Civ.P. 56(f). In their motion and the accompanying affidavit, plaintiffs argue that the following material factual issues require that summary judgment be denied as to the Livonia Defendants because of the need for more discovery. Plaintiffs argue that they expect to discover that (1) Police Chief Stevenson had a personal and/or financial stake in Livonia Towing being awarded the towing contract, (2) Stevenson called the Southfield Chief of Police and demanded that he withdraw his letter of recommendation; (3) Stevenson and others took steps to prevent Ross Towing's bid from being considered fairly and equally; (4) it was predetermined that Livonia Towing would win the towing contract; (5) City Council Members met in a non-public meeting at a restaurant in Plymouth, Michigan and decided to grant the contract to Livonia Towing; (6) none of the procedures required for the City Council to hold a closed meeting were followed, nor was the meeting one that was permitted to be closed; (7) the minutes of the alleged nonpublic meeting were never prepared or made public; (8) City Council members had personal or financial relationships with Klotz or Livonia Towing that should have been disclosed and may have required recusal; (9) Stevenson and others violated the City's ethics ordinance by failing to disclose their interest in Livonia Towing and Klotz receiving the towing contract; (10) Stevenson told members of his police force to engage in an organized

pattern and practice of harassing and threatening plaintiffs; (11) fraud, abuse and illegality permeated the bid process and awarding of the towing contract.

[12] First, the Court notes that there is no requirement to permit discovery in the context of a motion to dismiss when the allegations in the pleadings fail to establish entitlement to relief. Rule 56 of the Federal Rules of Civil Procedure permits a defendant to move for summary judgment at any time prior to 30 days after the close of discovery. Fed.R.Civ.P. 56(c). Rule 56(f) permits a party to oppose summary judgment on the grounds that further discovery is needed. Further discovery, however, is not merited if the factual allegations contained in the complaint fail to rise to the standard required by *Twombly* and *Iqbal*.

Plaintiffs cite *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir.2008) for the proposition that "[t]ypically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion." Plaintiffs also cite *Vance By and Through Hammons v. U.S.*, 90 F.3d 1145, 1148 (6th Cir.1996) for the general rule that "summary judgment is improper if the nonmovant is not afforded a sufficient opportunity for discovery." The Sixth Circuit has also held, however, that summary judgment is appropriate, even absent discovery, if the issues can be resolved as a matter of law and the plaintiff has not established that additional discovery will solve their pleading problems. *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir.1989). Because the Court finds that the plaintiffs have failed to allege legally cognizable claims against the Livonia Defendants, the Court also finds that the plaintiffs are not entitled to further discovery pursuant to Fed.R.Civ.P. 56(f).

II. *Summary Judgment Motion by Livonia Towing and Klotz*

*16 Defendants Livonia Towing Company and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
(Cite as: 2010 WL 2772490 (E.D.Mich.))

Klotz have also moved for dismissal or, in the alternative, for summary judgment as to the two counts pending against them, Count One (tortious interference) and Count Five (Civil Conspiracy). For the reasons stated below, the Court finds that the amended complaint fails to state a claim against Livonia Towing and Klotz under either theory, and will therefore grant Livonia Towing's motion to dismiss both counts.

A. *Count One, Tortious Interference*

Livonia Towing argues that it is not liable for intentional interference with advantageous business relationship because (a) the plaintiffs did not have a reasonable business expectancy and (b) any interference by Livonia Towing and Klotz was simple competition and did not include any wrongful conduct.

The allegations as to Klotz and Livonia Towing are that Klotz is the owner of Livonia Towing and Livonia Towing has had the towing contract with the City of Livonia for more than twenty years (Amended Complaint ¶ 11, 18); Livonia submitted a sealed bid for the towing contract on November 17, 2008 (Amended Complaint ¶ 38); Councilman Laura heard that Chief of Police Stevenson had "business connections" with Livonia Towing and Klotz (Amended Complaint ¶ 58) and the towing contract was awarded to Livonia Towing (Amended Complaint ¶ 65).

1. *Reasonable Expectancy*

[13] A valid business expectancy is one that is reasonably likely or probable, not wishful thinking. *Lucas v. Monroe County,* 203 F.3d at 979.

*17 Plaintiffs argue that their allegation that they had a valid business expectancy must be accepted as true at this stage. This is incorrect, because the allegation that they had a valid business expectancy is a mere legal conclusion, which is not entitled to a presumption of validity under *Twombly* and *Iqbal.*

Instead, the Court is to look at the factual allegations in the complaint and determine if they establish that the plaintiffs had a valid business expectancy. The Court finds that the amended complaint does allege sufficient facts to allege a valid business expectancy, because it alleges that the Ross Towing bid was the only sufficient bid under the bidding guidelines.

2. *Wrongful conduct*

[14] Livonia Towing argues that the intentional interference with advantageous business relationship claim should be dismissed because there are no allegations of wrongful conduct. The Court is persuaded by this argument and will grant Livonia Towing's motion to dismiss the tortious interference claim on these grounds.

[15][16] In *Feldman v. Green,* 138 Mich.App. 360, 378, 360 N.W.2d 881 (1984), the Michigan Court of Appeals held that "one who alleges tortious interference with contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship or another." A per se wrongful act is "an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v. RL Polk Co.,* 193 Mich.App. 1, 12-13, 483 N.W.2d 629 (1992). If, however, the plaintiff relies upon an intentional, lawful act done with malice and unjustified by law, he must demonstrate, with specificity, affirmative acts that corroborate the unlawful purpose or improper motive. *Feldman,* 138 Mich.App. at 367-70, 360 N.W.2d 881. Defendants argue that the amended complaint only alleges that Livonia Towing submitted a bid for the towing contract that it had held for over twenty years and that it allegedly had business dealings with the police chief, and that these facts do not allege either the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business rela-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

tionship of Ross Towing.

Plaintiffs argue in response that the amended complaint alleges that the defendants acted improperly, with malice, and intentionally interfered with plaintiffs' bid for the towing contract, and that such allegations are sufficient to withstand defendants' motion to dismiss and require discovery. This argument is incorrect under *Twombly* and *Iqbal*. Plaintiffs' allegation that the defendants acted improperly and with malice are mere conclusions, which are not entitled to the presumption of truth. The actual facts alleged against Livonia Towing and Klotz are that they had a long-standing contract with the City of Livonia for towing services, that they submitted a sealed bid at the same time that the plaintiffs submitted a bid, that one of the council members heard that there was a business connection between Livonia Towing and the Police Chief, and that Livonia Towing won the bid and received the new towing contract from Livonia. These facts do not allege either a wrongful act per se or malice; rather, they most plausibly suggest that Livonia Towing was competing for the same contract as Ross Towing. Plaintiffs' amended complaint fails to state a claim for tortious interference with business expectancy, and Count One will therefore be dismissed as to Livonia Towing and Klotz.

B. *Count Five, Civil Conspiracy*

Livonia Towing argues that it is not liable for civil conspiracy because (a) there is no underlying tort on which the defendants could conspire, and (b) after the other defendants are dismissed from the case conspiracy would be impossible because there is only one defendant.

The Court agrees that dismissal of the civil conspiracy claim is appropriate. As discussed above, the plaintiffs have failed to allege any tort against Livonia Towing. There is no underlying tort upon which to base an action for civil conspiracy against the towing company, and there are no factual alleg-

ations of wrongful conduct on the part of Klotz or Livonia Towing. Plaintiffs' claim for civil conspiracy therefore also fails.

## CONCLUSION

For the reasons stated above, both summary judgment motions will be granted in full.

## ORDER

**WHEREFORE, IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (docket no. 24) is **GRANTED.**

**SO ORDERED.**

### *ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION (docket no. 40)*

**\*18** This case has its origins in a bidding war to provide towing for stranded vehicles to the City of Livonia ("City"). For almost twenty years, the City contracted with Livonia Towing Company, owned by John Klotz, for towing service. The City renewed that contract after completing a competitive government bidding process in 2009. The losing bidders, Ross Towing of Livonia and its owner Christopher Maiberger, filed this action in state court against Livonia Towing, John Klotz, the City, and numerous City officials, alleging improprieties in the bidding process under state and federal law. The defendants removed the case to this Court on December 23, 2009. On July 13, 2010, the Court entered an Order ("the July 13 Order") granting the defendants' summary judgment motions on all claims against them. Docket No. 38. Now before the Court is the plaintiffs' motion for reconsideration of the July 13 Order. The plaintiffs' assert legal errors in the Court's analysis of the tortious interference claims in the case, and in the Court's application of the motion to dismiss standard with respect to the tortious interference claim against one of the City officials. The Court concludes that the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

plaintiffs' motion fails to show a significant, out-
come-determinative error that would prompt the
Court to revisit its previous ruling. Accordingly, it
will deny the motion.

## STANDARD OF REVIEW

[17][18][19][20] It is an exception to the norm for
the Court to grant a motion for reconsideration. *See*
E.D. Mich. LR 7.1(h)(3) ("Generally ... the court
will not grant motions for rehearing or reconsidera-
tion that merely present the same issues ruled upon
by the court, either expressly or by reasonable im-
plication."). To obtain reconsideration, the movant
must (1) "demonstrate a palpable defect by which
the court and the parties and other persons entitled
to be heard on the motion have been misled" and
(2) "show that correcting the defect will result in a
different disposition of the case." *Id.* The require-
ment of a "palpable defect" limits the Court to re-
visiting only those errors that are "obvious, clear,
unmistakable, manifest, or plain." *United States v.*
*Cican,* 156 F.Supp.2d 661, 668 (E.D.Mich.2001).
Therefore, absent a significant error that changes
the outcome of a ruling on a motion, the Court will
not provide a party with an opportunity to relitigate
issues already decided.

## ANALYSIS[FN1]

*\*19* The plaintiffs make two claims of error in their
motion for reconsideration. First, they argue that
the Court did not apply the proper legal standard to
claims of tortious interference involving contracts
or expectancies between towing companies and
"stranded motorists." Second, they assert that the
Court incorrectly applied the standard of review for
a motion to dismiss to the tortious interference
claim against Robert Stevenson, the City's chief of
police. The Court holds, for the reasons stated be-
low, that neither of these claims represents a palp-
able, outcome-determinative error meriting recon-
sideration of this case.

*I. Did the Court Make a Legal Error in Analyzing*
*the Tortious Interference Claims?*

The plaintiffs contend that the Court erred when it
failed to properly consider its legal argument that
the City defendants tortiously interfered in
plaintiffs' expected contracts with stranded motor-
ists. They point to *Lucas v. Monroe County,* 203
F.3d 964 (6th Cir.2000) as authority for their posi-
tion. In that case, the plaintiff towing companies
sued the county and members of the sheriff's de-
partment because the companies were excluded
from a "call list" kept by the sheriff's department
for use by deputies when in need of a tow truck.
*Lucas,* 203 F.3d at 967. The sheriff's department in-
cluded towing companies on the list if they met cer-
tain objective characteristics, and there were no
contracts between the county and any towing com-
pany. *Id.* at 968. The defendants dropped the
plaintiffs from the "call list" after the plaintiffs
complained at a county board of commissioners'
meeting that the sheriff's department gave preferen-
tial treatment to companies on the list owned by
political supporters of the sheriff, even though the
department was required to distribute references
more or less evenly. *Id.* 968-71. The Sixth Circuit
reversed the district court's conclusion that such ac-
tions did not constitute tortious interference with
contracts, holding that the plaintiffs had "a reason-
able expectancy of an economic relationship with
stranded motorists who arranged for towing ser-
vices via the call list." *Id.* at 979.

[21] *Lucas* does not upset the Court's conclusion
that the City cannot be held responsible for tortious
interference with expected business relationships
between the plaintiffs and stranded motorists. The
*sine qua non* of a tortious interference claim is that
the defendant must be a third party to the contractu-
al relationship or expectancy in question; a person
who is a party to a contract cannot logically
"interfere" with it. July 13 Order, at 18; *Reed v.*
*Mich. Metro Girl Scout Council,* 201 Mich.App. 10,
13, 506 N.W.2d 231 (1993). In *Lucas,* the county's
arrangement for towing services did not involve a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

contract between the government and the towing companies. The Sixth Circuit in *Lucas* held that the county government and sheriff's department were "third parties" to expected contractual relationships between the towing companies and stranded motorists, rendering them potentially liable for tortious interference with those relationships. By contrast, the City of Livonia here chose to contract directly with one towing company to provide the needed services, rather than facilitate contracts between motorists and towing companies on an as-needed basis as the government defendants in *Lucas* did. The City was therefore a party to the contract, rather than a third party. *Lucas* appears to confirm, rather than undermine, the Court's conclusion that the City was not liable for tortious interference as a matter of law.

The plaintiffs' argument with respect to the City officials named in the complaint duplicates arguments the Court has already rejected. The Court reaffirms its holding that the plaintiffs' amended complaint does not contain any allegations that the individual city officials acted "solely for their own benefit with no benefit to the [municipal] corporation." *Reed*, 201 Mich.App. at 13, 506 N.W.2d 231. Such allegations are necessary to separate the actions of individual municipal officers from the municipality itself, so that the relevant officials might be deemed a "third party" to contracts between the municipality and other parties. Allegations of this sort are absent here and no prima facie case of a "third party" to any contract has been stated. Because the plaintiffs failed to show a significant, outcome-altering error in the July 13 Order with regard to the law of tortious interference, the Court will not reconsider its prior ruling on this point.

II.   *Did the Court Improperly Apply the Fed.R.Civ.P. 12(b) (6) Standard to the Tortious Interference Claim Against Police Chief Stevenson?*

**\*20** The plaintiffs' second assertion of error concerns the Court's application of the relevant standard of review to one of the tortious interference

claims. The Court noted in the July 13 Order that while the motions of all the parties were captioned as motions for summary judgment under Fed.R.Civ.P. 56, some of the arguments made by the City and its officials were akin to arguments made when seeking to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). July 13 Order, at 8. The tortious interference arguments were among those arguments the defendants objected to on Rule 12(b)(6) grounds. Plaintiffs allege that the Court failed to follow the standard of review on a motion to dismiss when analyzing the legal adequacy of their tortuous interference claim against Stevenson.

Rule 12(b)(6) allows dismissal of actions that "fail to state a claim upon which relief can be granted." A district court should only grant a motion to dismiss " 'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Minger v. Green*, 239 F.3d 793, 797 (6th Cir.2001) (quoting *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir.1996)). In evaluating a motion to dismiss, the court presumes the truth of all well-pled factual allegations. *Bishop v. Lucent Techs.*, 520 F.3d 516, 519 (6th Cir.2006). *But see Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the element of a cause of action will not do.' " (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))). All reasonable factual inferences are to be drawn in favor of the non-moving party. *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir.2007). "Detailed factual allegations" are not required. *Twombly*, 550 U.S. at 555.

[22][23]   The Supreme Court's decisions in *Twombly* and *Iqbal* should not be understood as undermining the Federal Rules' presumption of notice pleading, which only demands that the plaintiff make a "short and plain statement of the claim showing that the pleader is entitled to relief" in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

most instances. Fed.R.Civ.P. 8(a)(2). Nevertheless, those decisions do require a plaintiff to show in his or her complaint that a given claim is more than just a "possibility." A plaintiff cannot provide "facts that are 'merely consistent with' a defendant's liability" and expect to survive a motion to dismiss. *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555). Rather, the facts must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**\*21** [24] The plaintiffs fail to demonstrate in their motion for reconsideration that the Court grievously misapplied the Fed.R.Civ.P. 12(b)(6) standard with respect to the tortious interference charge against Stevenson. The crux of their argument appears to be the Court's conclusion in the July 13 Order that the plaintiffs' "allegations give rise to an equally strong inference that Stevenson had a good and longstanding relationship with Livonia Towing and therefore believed that the City would benefit from continuing the relationship." July 13 Order, at 21. This application of the motion to dismiss standard is not patently erroneous under *Iqbal* and *Twombly.* Indeed, it is the correct application of these cases.

[25] When a plaintiff pleads facts in support of a claim that could just as easily lend credence to a completely innocuous scenario, *Iqbal* and *Twombly* instruct that the claim ought to be dismissed. Furthermore, the Court was correct to conclude that the only potentially wrongful conduct alleged by the plaintiffs, for purposes of a tortious interference claim, was Stevenson's request for a withdrawal of his letter of recommendation. Moreover, it was not error for the Court to find that the wrongfulness of that request was negated by the City's removal of Stevenson from involvement in the towing contract [FN2] and the absence of any allegation that the letter was in fact withdrawn. In summary, the Court appropriately applied the Rule 12(b)(6) standard to the tortious interference claims against Stevenson were legally inadequate, and it will not accept the

plaintiffs' invitation to reconsider that conclusion.

### ORDER

**WHEREFORE,** it is hereby **ORDERED** that plaintiffs' motion for reconsideration (docket no. 40) is **DENIED.**

**SO ORDERED.**

> FN1. The Sixth Circuit ultimately upheld the dismissal on the grounds that the plaintiff failed to make out a substantive case of violation of either equal protection or due process.

> FN2. The Sixth Circuit relied on *Owen of Georgia, Inc. v. Shelby County,* 648 F.2d 1084 (6th Cir.1981), which ruled that when a state statute required a government body to accept the lowest qualifying bid, the low bidder had standing to challenge the award of the contract to a higher bidder. The plaintiffs here cannot assert standing based on *Owen of Georgia* because there is no requirement that requires Livonia to award the towing contract to the lowest bidder.

> FN3. As discussed below, it appears that the plaintiffs would be unable to state a claim for violation of due process or equal protection even if they did have standing. No protected liberty interest arises absent an allegation that the defendants precluded the plaintiff from entering into other contracts with the state or besmirched the plaintiffs' good name, and no protected property interest arose where the plaintiffs were never awarded the contract or allege that the municipality had limited discretion, which it abused, in awarding the contract. *Club Italia,* 470 F.3d at 296-97. Plaintiffs' allegation to the contrary that they were "actually granted the contract at some procedural stage" and that "[l]ocal rules and ordinances of Defendant Livonia

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)
**(Cite as: 2010 WL 2772490 (E.D.Mich.))**

limit the discretion of those considering and awarding contracts with the city" are legal conclusions that are not entitled to a presumption of truth under the standard set forth in *Iqbal,* and are implausible in that they are contradicted by all the facts actually in the record. *See Iqbal,* 129 S.Ct. at 1950 (district court not bound to accept as true legal conclusions couched as factual allegations). Nor could the plaintiffs establish an equal protection violation because they would be unable, on this record, to negate every conceivable basis for the government action or establish malice. *Club Italia,* 470 F.3d at 298.

FN1. All of the plaintiffs' arguments address either purported legal failings in the July 13 Order or a failure to properly construe facts the plaintiffs alleged. Because the Court finds that the accuracy of the July 13 Order's recitation of facts has not been meaningfully challenged, the Court incorporates it by reference into this Order.

FN2. Despite the plaintiffs' arguments, they in fact made no credible accusation that Stevenson was involved in the bid process after being removed by the City. The only document purportedly establishing involvement is Stevenson's letter to the City Council denying the accusations against him. Docket No. 21, Ex. 15. In no manner does a document of this type constitute "involvement in the bidding process."

E.D.Mich.,2010.
Maiberger v. City of Livonia
--- F.Supp.2d ----, 2010 WL 2772490 (E.D.Mich.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.