# Exhibit O

Westlaw.

Page 1

Slip Copy, 2010 WL 2721401 (W.D.Okla.), 2010 Copr.L.Dec. P 29,972
**(Cite as: 2010 WL 2721401 (W.D.Okla.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
W.D. Oklahoma.
ARCHITECTS COLLECTIVE, Plaintiff,
v.
GARDNER TANENBAUM GROUP, L.L.C., and
The Benham Companies, L.L.C., Defendants.
**No. CIV-08-1354-D.**

July 6, 2010.

Chad C. Taylor, Riggs Abney Neal Turpen Orbison Lewis-OKC, Oklahoma City, OK, for Plaintiff.

Clell I. Cunningham, III, Dunn Swan & Cunningham, Alvin R. Leonard, Charles F. Alden, III, Hudson Alden Leonard & Hanes, Oklahoma City, OK, for Defendants.

***ORDER***

TIMOTHY D. DEGIUSTI, District Judge.

*1 On November 18, 2009, the Court entered its Order [Doc. No. 17] granting the separate motions to dismiss filed by Gardner Tanenbaum Group, L.L.C. ("Gardner") and by The Benham Companies, L.L.C. ("Benham"). In the Order, the Court found that, pursuant to Fed.R.Civ.P. 12(b)(6), Plaintiff's conversion and breach of contract or tortious interference with contract claims failed to state claims upon which relief may be granted; the Court also granted the defendants' request that Plaintiff plead a more definite statement in support of its copyright claim. Because the Court also concluded that the Complaint's deficiencies could be cured by amendment, Plaintiff was granted leave to amend; Plaintiff then filed its Amended Complaint.

Now before the Court are the motions to dismiss filed separately by Benham [Doc. No.23] and by Gardner [Doc. No. 25] [FN1]; pursuant to Fed.R.Civ.P. 12(b)(6), each defendant seeks dismissal of Plaintiff's claims of conversion and tortious interference with contract. Plaintiff timely responded, and Benham and Gardner filed reply briefs. Benham and Gardner also ask the Court to stay the remaining copyright and breach of contract claims, arguing that those claims are also pending in a parallel state court proceeding; they contend the resolution of the state proceeding will dispose of those claims.

> FN1. In its Motion, Gardner does not present legal argument or authority, but adopts in full the brief submitted by Benham.

*I. Background:*

In the Amended Complaint, Plaintiff alleges it holds a copyright covering certain drawings and related written materials, identified as "instruments of service," related to the design and development of a multifamily housing project, known as "Lincoln Central Park," to be constructed in multiple phases in Oklahoma City (the "Project"). Plaintiff alleges that it entered into a contract with Gardner (the "First Contract") on April 15, 2004; according to the terms of the First Contract, Plaintiff was to provide services related to the design and preparation of written plans for development of the Project. Amended Complaint, ¶ 6. Plaintiff alleges that, on February 26, 2006, it entered into a Letter of Engagement (the "Second Contract") with Gardner whereby Plaintiff would provide similar services for subsequent phases of the Project. *Id.*, ¶ 7. Plaintiff submits copies of the First Contract and the Second Contract (the "Contracts") as Exhibits 1 and 2, respectively, to the Amended Complaint.

According to Plaintiff, it prepared drawings, specifications and other documents (the "Instruments of Service") for the Project, and provided copies of the Instruments of Service to Gardner, as required

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

by the Contracts; the Instruments of Service were copyrighted by Plaintiff, and the Contracts provided that they would remain Plaintiff's property. Pursuant to the Contracts, Gardner was prohibited from using the Instruments of Service in connection with work performed by others on the Project. Amended Complaint at ¶ ¶ 8-9. Plaintiff further alleges that, without Plaintiff's authorization, Gardner provided copies of the copyrighted Instruments of Service to Benham, which allegedly used the material in work it performed on the Project; Plaintiff alleges that the defendants' conduct in copying that material constitutes copyright infringement; it also alleges that Gardner breached the Contracts by providing Plaintiff's copyrighted Instruments of Service to Benham. *Id.* at ¶ 10-11. Plaintiff also contends Benham copied and modified its Instruments of Service without Plaintiff's authorization, and Benham used the copyrighted material in preparing its own plans.

*2 Based on this alleged conduct, Plaintiff asserts four causes of action: 1) a breach of contract claim against Gardner; 2) a tortious interference with contract claim against Benham; 3) a copyright infringement claim against both Gardner and Benham; and 4) a conversion claim against both defendants.

Prior to the filing date of this action, Gardner filed suit in the District Court of Oklahoma County, Case No. CJ-07-7216, against Plaintiff and another defendant, alleging causes of action based on breach of contract and negligence (the "state court action"). A copy of the Amended Petition filed in the state court action is submitted by Benham as Exhibit A to its motion. Plaintiff has asserted a counterclaim in the state court action; Benham submits a copy of Plaintiff's answer and counterclaim as Exhibit C to its motion. According to Benham, the counterclaim in the state court action asserts the same allegations as those included in the Amended Complaint filed in this lawsuit, a contention which Plaintiff disputes.

In their current motions, Benham and Gardner argue that the Amended Complaint fails to cure the pleading deficiencies of the original Complaint with respect to both the tortious interference and conversion claims. They ask the Court to dismiss those claims and to determine that further amendment would be futile. They also ask the Court to stay the balance of the claims until the state court action is completed.

*II. Standards governing Rule 12(b)(6) motions to dismiss:*

To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008); *VanZandt v. Oklahoma Dept. of Human Services,* 276 F. App'x 843, 846 (10th Cir.2008) (unpublished opinion).

To state a plausible claim, "the Plaintiff has the burden to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *VanZandt,* 276 F. App'x at 846 (quoting *Robbins,* 519 F.3d at 1247.) "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Thus, plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570; *Robbins,* 519 F.3d at 1247. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L. C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir.2007) (emphasis in original). Although the Court must construe well-pleaded facts as true, not all factual allegations are "entitled to the assumption of truth." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1951 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* The Court need

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

not accept as true the assertions in a complaint which "amount to nothing more than a 'formulaic recitation of the elements' " of a claim. *Ashcroft,* 129 S.Ct. at 1951 (quoting *Twombly,* 550 U.S. at 554-555).

*III. Application:*

*A. Plaintiff's claim of tortious interference with a contract:*

*3 To state a claim of tortious interference with a contract under Oklahoma law, a plaintiff must plead facts to show that 1) the plaintiff had a business or contractual right with which the defendant interfered; 2) the interference was malicious and wrongful and was not justified, privileged, or excusable; and 3) the plaintiff incurred damages proximately caused by the wrongful interference. *Wilspec Technologies, Inc. v. DunAn Holding Group Co., Ltd.,* 204 F.3d 69, 74 (Okla.2009); *Mac Adjustment, Inc. v. Property Loss Research Bureau,* 595 P.2d 427, 428 (Okla.1979).

Defendants argue that the Amended Complaint is inadequate to support a tortious interference claim against Benham because Plaintiff has failed to allege facts to show that Benham induced or caused Gardner to breach its contract with Plaintiff or that the alleged interference was malicious and wrongful. As Defendants note, Plaintiff alleges in paragraph 7 of the Amended Complaint that Benham "cooperat[ed]" with Gardner in receiving the Instruments of Service and copying the same for Benham's use. Under Oklahoma law, tortious interference "can arise only when one who is not a party to a contract interferes with that contract by convincing one of the contracting parties to breach its terms." *Ray v. American National Bank & Trust Co.,* 894 P.2d 1056, 1060 (Okla.1994).

Oklahoma has adopted the Restatement (Second) of Torts ("Restatement") analysis of a claim for tortious interference with a contract. *See Morrow Development Corp. v. American Bank and Trust Co.,* 875 P.2d 411, 416 (Okla.1994) (applying Restatement § 766). According to the Restatement, the defendant's conduct must be sufficient to establish "inducing or otherwise causing" another party to breach the contract. Restatement (Second) of Torts § 766 (1977). "Inducing" is defined as applicable to situations in which a party to the contract is free to choose between two courses of conduct, and the interferer causes him to choose one course of conduct. *Id.,* comment h. "Otherwise causing" applies to circumstances in which the interferer's conduct requires the contracting party to breach the contract. *Id.*

As Benham points out, the Amended Complaint allegation that Benham knew or should have known of the existence of Gardner's contract with Plaintiff is not sufficient to support a tortious interference claim. To be subject to liability for tortious interference, "the actor must have knowledge of the contract with which he is interfering *and* of the fact that he is interfering with the performance of the contract." Restatement (Second) Torts § 766, comment i (1977) (emphasis added).

Furthermore, Plaintiff's allegation that Benham and Gardner "cooperated" is not sufficient to satisfy the requirement that Benham induced Gardner to breach the contract. Plaintiff offers no authority to support a contention that a third party's mere cooperation with a contracting party is sufficient to constitute interference.

*4 The Amended Complaint also alleges only that Benham knew of Gardner's contract with Plaintiff; it does not allege facts to show that Benham knew Gardner was contractually prohibited from providing copies of the Instruments of Service to Benham or that Benham knew its presumed request for such copies would constitute an interference with the contract. Plaintiff does not allege facts to show that Benham knew its conduct would interfere with Gardner's contractual obligations to Plaintiff.

The Amended Complaint also fails to allege facts to support the requisite element of malice. The Ok-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2721401 (W.D.Okla.), 2010 Copr.L.Dec. P 29,972
**(Cite as: 2010 WL 2721401 (W.D.Okla.))**

lahoma Supreme Court has held the requisite element of malice "clearly requires a showing of bad faith." *Tuffy's, Inc. v. City of Oklahoma City,* 212 P.3d 1158, 1165 (Okla.2009). Although Plaintiff alleges that Benham "maliciously and wrongfully undertook to interfere in the Contracts and the relations between Plaintiff and Gardner," and that such actions were not justified, privileged, or excusable, these allegations are conclusory recitations of the elements of the claim. Allegations which "amount to nothing more than a 'formulaic recitation of the elements' " are insufficient as a matter of law to state a plausible claim for relief. *Ashcroft,* 129 S.Ct. at 1951 (quoting *Twombly,* 550 U.S. at 554-555). Plaintiff has failed to plead *facts* showing that Benham knew its conduct would interfere with Gardner's contractual obligations and *facts* which could support malice. Further, Plaintiff does not allege that Benham knew the Contracts prohibited Gardner from providing the Instruments of Service to Benham.

The Court agrees with Defendants that the Amended Complaint fails to state a claim for relief as to the cause of action based on tortious interference with contract. The allegations in the Amended Complaint do not cure the pleading deficiencies of the original Complaint as to this cause of action. Accordingly, Plaintiff's claim for tortious interference with a contract must be dismissed.

Defendants also ask the Court to determine that Plaintiff should not be authorized to again amend to attempt to state a claim for relief. As Defendants point out, although leave to amend should be freely granted, the Court is not required to grant leave where an amendment would be futile. *Compton v. Rent-A-Center, Inc.,* 350 F. App'x 216, 221 (10th Cir.2009) (unpublished opinion) (citing *E. Spire Communications, Inc. v. New Mexico Public Regulation Comm'n,* 392 F.3d 1204, 1211 (10th Cir.2004)).

Defendants ask the Court to conclude that, because Plaintiff has previously sought unsuccessfully to amend to state a tortious interference claim, the Court need not give it yet another chance to do so. "Repeated failure to cure deficiencies by amendment is itself grounds for denying leave to amend." *Janis v. Story & Associates,* 1997 WL 545569, at *1(10th Cir. Sept. 4, 1997) (unpublished opinion) (citing *Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir.1993)); *see also Mountain View Pharmacy v. Abbott Labs.,* 630 F.2d 1383, 1389 (10th Cir.1980).

*5 In this case, the Defendants' motions to dismiss the tortious interference claim in the original Complaint discussed in detail the factual allegations required to state a claim for relief. The Court's Order dismissing the tortious interference claim also discussed the requisite factual allegations. Notwithstanding these explanations, Plaintiff has failed to include sufficient facts to state a plausible claim for relief on this basis; instead, Plaintiff includes conclusory statements reciting the elements of the claims. Accordingly, the Court concludes that granting leave to further amend would be futile [FN2].

> FN2. Plaintiff's asserted right to relief is not impacted by the dismissal of this claim because, as Defendants point out, the allegations in the Amended Complaint with regard to the claim of tortious interference are essentially the same as those comprising Plaintiff's copyright infringement claim. The latter claim is based on the contention that Gardner and Benham cooperated in the unauthorized copying of Plaintiff's copyrighted Instruments of Service; Defendants do not seek dismissal of the copyright infringement claim.

The motions to dismiss the tortious interference with contract claim are GRANTED. Leave to amend is not authorized.

*B. Plaintiff's claim for conversion:*

Defendants also argue that the Amended Complaint

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2721401 (W.D.Okla.), 2010 Copr.L.Dec. P 29,972
**(Cite as: 2010 WL 2721401 (W.D.Okla.))**

does not cure the pleading deficiencies in Plaintiff's conversion claim, contending that Plaintiff bases this claim on the alleged conversion of intangible property. Furthermore, they contend that the facts alleged establish that this claim is preempted by copyright law.

As Defendants correctly argue, Oklahoma does not recognize a cause of action based on conversion of an intangible property interest. "The common law rule in Oklahoma is that only tangible personal property may be converted." *Beshara v. Southern Nat. Bank,* 928 P.2d 280, 289, n. 26 (Okla.1996) (citations omitted); *Shebester v. Triple Crown Insurers* 826 P.2d 603, 608 (Okla.1992). "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein"; it has been defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels of another." *Welty v. Martinaire of Oklahoma, Inc.,* 867 P.2d 1273, 1275 (Okla.1994) (citing *Steenbergen v. First Fed. Sav. & Loan,* 753 P.2d 1330 (Okla.1987) and Black's Law Dictionary (4th ed.)). Oklahoma has not recognized a cause of action based on conversion of intellectual property. *KT Specialty Distribution, LLC v. Xlibris Corp.,* 2008 WL 4279620, at *4 (N.D.Okla. Sept. 11, 2008) (unpublished opinion) (denying leave to amend to assert a claim for misappropriation or conversion of intellectual property).

Plaintiff argues that its conversion claim is not based on intangible property but on the misappropriation of the documents constituting the Instruments of Service. Because these consist of tangible items including drawings and related documents, Plaintiff contends that its claim is cognizable under Oklahoma law.

As Benham points out in its reply brief, however, the Amended Complaint does not allege that Gardner converted the original Instruments of Service; in fact, Plaintiff expressly alleges that Gardner was authorized, by the Contracts, to possess the Instruments of Service. Amended Complaint ¶¶ 12, 19. Gardner cannot have converted the documents which the Contracts authorized it to possess. Plaintiff offers no authority to support the existence of a plausible claim against Gardner on this basis.

*6 Plaintiff also alleges, however, that Benham obtained and copied the Instruments of Service and utilized them to create its own documents. Plaintiff contends that its conduct in doing so constitutes conversion. The focus of Plaintiff's allegation is the contention that Benham wrongfully copied the content of the Instruments of Service to incorporate them in its own specifications and plans.

As the Court noted in its Order granting the motions to dismiss this claim in the original Complaint, the underlying focus of Plaintiff's contentions appears to be the alleged unlawful copying and use of the content of the Instruments of Service. Defendants argue in their current motions that the Amended Complaint does not include factual allegations which could alter that conclusion. Plaintiff's conversion claim is based on the alleged use of Plaintiff's copyrighted intellectual property. Because the alleged converted property is intangible, Plaintiff does not plead a conversion claim cognizable under Oklahoma law. As such, the claim must be dismissed.

Even if these allegations were sufficient to state a plausible claim for relief, Defendants correctly argue that the conversion claim is preempted by federal copyright law. The Copyright Act specifically provides that it provides exclusive protection for material copyrighted, and it preempts both state common law and statutory provisions regarding the protection of the owner's rights. 17 U.S.C. § 301(a); *Ehat v. Tanner,* 780 F.2d 876, 878 (10th Cir.1985). Preemption extends to both legal and equitable rights. 17 U.S.C. § 301(a).

Plaintiff argues that its claim is not preempted because it seeks the return of tangible property. The Tenth Circuit has held that federal copyright preemption does not extend to conversion of tangible property. *See Ehat,* 780 F.2d at 878.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2721401 (W.D.Okla.), 2010 Copr.L.Dec. P 29,972
**(Cite as: 2010 WL 2721401 (W.D.Okla.))**

In the Amended Complaint, Plaintiff alleges that its Instruments of Service, "composed of Drawings, Specifications, and other documents created by Plaintiff relating to the Project, are tangible personal property owned solely and exclusively by the Plaintiff." Amended Complaint at ¶ 18. Plaintiff alleges that, although Gardner was authorized to possess the Instruments of Service for the purposes set forth in the Contracts, it "wrongfully took" them for "its own benefit and use," and has released or copied the Instruments of Service "for release and improper use by Benham." *Id.* at ¶ 19. Plaintiff alleges that the foregoing occurred without its knowledge or consent and contrary to Plaintiff's property rights. *Id.* Defendants argue that these allegations do not alter the conclusion that Plaintiff's conversion claim is preempted by the Copyright Act.

Federal preemption exists if: 1) the work at issue is within the scope of the subject matter of the copyright protected by federal law, and 2) if the rights available under state law are equivalent to those within the scope of federal copyright protection. *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1146-47 (10th Cir.2009); *Ehat*, 780 F.2d at 878.

*7 In this case, according to Plaintiff's own allegations in the Amended Complaint, the initial element is satisfied because the Instruments of Service are within the scope of Plaintiff's copyright. Plaintiff expressly alleges that "the Instruments of Service are duly registered, copyrighted works," and that the "Instruments of Service are properly registered with the United States Copyright Office as an Architectural Work." Amended Complaint, ¶¶ 8, 11. Thus, the specific material which Plaintiff contends was wrongfully converted is protected by the Copyright Act, and the initial element of preemption is satisfied.

The Court must next consider whether the rights asserted by Plaintiff in its conversion claim are the same as those protected by the Copyright Act. A claim alleging conversion is preempted if it is based on the alleged conversion of intellectual property; conversion of tangible property is not preempted. *Ehat*, 780 F.2d at 878. Where the alleged conversion is based on the unauthorized copying of material protected by a copyright, the claim is preempted; in such cases, the elements of the conversion claim and the copyright infringement are the same. *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort*, 2007 WL 2701995, at * 12 (D.Colo. Sept. 12, 2007) (unpublished opinion). As the Tenth Circuit has explained, however, a claim is not preempted if it requires proof of elements not essential to a copyright infringement claim:

> [I]f "a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim."

*La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1199 n. 2 (10th Cir.2005), *abrogated on other grounds, Reed Elsevier, Inc. v. Muchnick*, --- U.S. ----, 130 S.Ct. 1237, 1243 n. 2 (2010)(quoting *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 847 (10th Cir.1993)).

Where a conversion claim is based on the defendant's unauthorized possession of copyrighted works and their subsequent copying and use, the claim is protected by the Copyright Act's prohibition against unauthorized reproduction and distribution of the copyrighted works. *R.W. Beck*, 577 F.3d at 1147-48. Accordingly, the conversion claim is preempted. *Id.* Where a plaintiff's conversion claim seeks recovery of damages "flowing from" the "reproduction and distribution" of his copyright works, his rights are also protected by the Copyright Act and are preempted. *Ehat*, 780 F.2d at 877.

In this case, the Amended Complaint reflects that Plaintiff contends Benham took its copyrighted Instruments of Service, copied them, and modified them for its own use; Plaintiff contends Benham's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2721401 (W.D.Okla.), 2010 Copr.L.Dec. P 29,972
**(Cite as: 2010 WL 2721401 (W.D.Okla.))**

modified copies are "substantially similar" to Plaintiff's copyrighted works. Amended Complaint, ¶ 20. Although it seeks the return of the "copies" allegedly made by Benham, it also seeks damages resulting from Benham's unauthorized use and copying of the Instruments of Service. *Id.,* ¶ 21.

*\*8* The Court agrees with Defendants that Plaintiff's conversion claim is effectively the same as its copyright infringement claim, and the conversion claim is preempted by the Copyright Act. Accordingly, the conversion claim is dismissed. Because such claim is preempted, further amendment would be futile, and leave to amend is not authorized.

*III. Defendants' motion to stay:*

The Court's conclusion that the tortious interference and conversion claims must be dismissed without leave to amend does not dispose of this case. Remaining for adjudication are Plaintiff's copyright infringement and breach of contract claims. Defendants ask the Court to stay those claims pending the disposition of the state court action, arguing that the remaining claims in this action are also asserted in that action. Defendants contend a stay is appropriate under the Court's inherent authority to ensure judicial economy as well as the *Colorado River* doctrine, which authorizes a stay where pending federal and state actions are parallel. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818 (1976). Plaintiff objects, and argues the state court action does not involve the same claims it asserts in this case.

At the time Benham's motion to dismiss was filed, the state court action was set for trial in April of 2010; however, the District Court of Oklahoma County's current docket sheet for the case reflects that the April trial date was stricken, and the case is now set for a July 2010 pretrial conference. FN3 The docket sheet does not reflect that a trial date has been scheduled.

   FN3. Submitted as Exhibit D to Benham's motion is a copy of the docket sheet for the state court action. Although the docket sheet reflects that the case is set for trial in April 2010, a more recent docket sheet obtained from the electronic records of the Oklahoma County District Court shows that the April trial date was stricken; the current docket sheet shows a pretrial conference is scheduled in July, 2010.

Because of the motions to dismiss the Complaint and the Amended Complaint, the Court has not conducted a status and scheduling conference in this case. The Court concludes that doing so would allow the Court to more fully determine the status of the pending state court action. Accordingly, the Court finds that consideration of a stay of this action is inappropriate at this time. To that extent, Defendants' motions are denied.

*V. Conclusion:*

For the reasons set forth herein, Defendants' motions to dismiss Plaintiff's claim for tortious interference with a contract and for conversion [Doc. Nos. 23 and 25] are GRANTED, and leave to amend these claims is denied. Defendants' motion to stay is DENIED at this time, and the action will proceed on Plaintiff's remaining claims. This action will be set for a status and scheduling conference on the next available docket, and the parties will be notified accordingly.

IT IS SO ORDERED.

W.D.Okla.,2010.
Architects Collective v. Gardner Tanenbaum Group, L.L.C.
Slip Copy, 2010 WL 2721401 (W.D.Okla.), 2010 Copr.L.Dec. P 29,972

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit P

Westlaw.

Page 1

Slip Copy, 2010 WL 1740521 (M.D.N.C.)
**(Cite as: 2010 WL 1740521 (M.D.N.C.))**

Only the Westlaw citation is currently available.

United States District Court,
M.D. North Carolina.
FEN-PHEN SERIES 2005-01, a series of Cap Tran Funding, LLC, Plaintiff,
v.
James S. FARRIN, P.C., Defendant.
No. 1:09CV479.

April 28, 2010.

Ryan James Adams, Shirley & Adams, PLLC, Raleigh, NC, for Plaintiff.

James L. Gale, Smith Moore Leatherwood, LLP, Raleigh, NC, Thadeus Matthew Creech, Smith Moore, LLP, Greensboro, NC, for Defendant.

### MEMORANDUM OPINION AND RECOMMENDATION

WALLACE W. DIXON, United States Magistrate Judge.

\*1 This matter is before the court on Defendant James S. Farrin, P.C .'s ("Defendant") motion to dismiss (docket no. 8). The motion challenges Plaintiff FenPhen Series 2005-01, a series of Cap Tran Funding, LLC's ("Plaintiff") claims for: (1) breach of contract as an alleged third-party beneficiary; (2) tortious interference with contract; and (3) unfair and deceptive trade practices, and it seeks an order from the court dismissing those claims. Plaintiff has responded to the motion, and, in this posture, the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge; thus, the motion must be addressed by recommendation. For the following reasons, it will be recommended that the court grant Defendant's motion to dismiss Plaintiff's claims.

### Background

This lawsuit arises out of a co-counseling agreement between Defendant James S. Farrin, P.C. and McEachin and Gee Attorneys at Law, LLP ("M & G"), to which Plaintiff claims to be a third-party beneficiary. On July 2, 2009, Plaintiff filed a complaint in this court based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Defendant has filed a motion to dismiss Plaintiff's complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### Alleged Facts[FN1]

> FN1. The alleged facts are taken as true for the purpose of the pending motion, and I recite only those alleged facts relevant to the pending motion.

Defendant James S. Farrin, P.C., is a Durham, North Carolina law firm specializing in personal injury litigation. Plaintiff "Fen-Phen Series 2005-01, a series of Cap Tran Funding, LLC" is a Delaware limited liability company that arranges financing for class action lawsuits. Plaintiff is an assignee to a loan and security agreement entered into on January 27, 2005, between Capital Transaction Group and McEachin Law Firm, P.C., referred to as the "Fen-Phen Agreement." (Compl. ¶ 6, docket no. 10.) Pursuant to this agreement, Capital Transaction Group loaned McEachin Law Firm $1,300,000 secured by a promissory note and security interests in McEachin Law Firm's accounts, including anticipated legal fees from the FenPhen litigation. (*Id.* ¶ 7.) In addition, McEachin Law Firm's president, A. Donald McEachin, personally guaranteed his firm's performance under the Fen-Phen Agreement. (*Id.* ¶ 10.)

Plaintiff alleges that in late 2005, it became apparent that McEachin Law Firm was going to default on its payment obligations to Capital Transaction Group under the Fen-Phen Agreement. Plaintiff al-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1740521 (M.D.N.C.)
(Cite as: 2010 WL 1740521 (M.D.N.C.))

leges that Capital Transaction Group and McEachin Law Firm began negotiations to give Capital Transaction Group additional collateral for the amounts owed under the Fen-Phen Agreement. (*Id.* ¶ 11.) Around the same time, A. Donald McEachin formed a partnership with Donald Gee and organized the firm of McEachin and Gee Attorneys at Law, LLP ("M & G"). (*Id.* ¶ 14.) M & G thereafter became involved with the so-called "Pigford Litigation," a class action civil rights case brought by black farmers who alleged they were denied loans and subsidies by the United States Department of Agriculture. (*Id.* ¶ 13.) Plaintiff alleges that McEachin raised the possibility of generating additional collateral on the amount owed to Capital Transaction Group from the expected legal fees from the "Pigford Litigation." (*Id.* ¶ 12.)

*2 On or around July 9, 2007, M & G and Defendant James S. Farrin executed a letter of intent to serve as co-counsel for the Pigford litigation claims. Plaintiff alleges that, at this time, Defendant became aware of M & G's payment obligations to Plaintiff under the Fen-Phen Agreement. (*Id.* ¶ 19.) The negotiations related to the project's financing failed, however, and M & G subsequently executed a co-counseling agreement with the law firm of Pogust & Braslow, LLC ("Pogust"). (*Id.* ¶ 20.) After learning that M & G had executed a co-counseling agreement with Pogust, Defendant then induced M & G to agree to enter into a new co-counseling agreement with Defendant. When Pogust learned that M & G intended to breach the co-counsel agreement with Pogust, Pogust threatened to sue M & G for breach of contract. M & G thereafter entered into a settlement agreement with Pogust, allowing Pogust to assume 6,000 of the 40,000 Pigford claims held by M & G. Plaintiff alleges that this settlement agreement caused a significant reduction in the collateral subject to the Fen-Phen agreement. (*Id.* ¶ 24.)

On December 14, 2007, Defendant and M & G entered into a co-counseling agreement regarding the remaining Pigford claimants. (*Id.* ¶ 25.) Plaintiff alleges that, pursuant to this agreement, Defendant was scheduled to make several payments to M & G that were designed to help M & G pay off its debt to Plaintiff. Plaintiff alleges that these payments should have totaled at least $900,000, but that Defendant never paid the money to M & G. (*Id.* ¶ 30.) Later, on July 9, 2008, Defendant and M & G entered into a revised co-counsel agreement involving themselves and additional law firms. (*Id.* ¶ 28.) On August 11, 2008, M & G entered into an agreement with Farmers' Law Group of Connecticut, LLC ("Farmers"), providing that Farmers agreed to undertake and indemnify M & G for all of its obligations and debts to Plaintiff in exchange for Farmers' rights to a portion of the fees generated from the Pigford litigation. (*Id.* ¶ 31.)

**Standard of Review on a Motion to Dismiss**

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.,* 887 F.Supp. 811, 813 (M.D.N.C.1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 327 (4th Cir.1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations omitted). *See also Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) (clarifying *Twombly* ). "Nor does

Slip Copy, 2010 WL 1740521 (M.D.N.C.)
(Cite as: 2010 WL 1740521 (M.D.N.C.))

Page 3

a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal,* 129 S.Ct. at 1949 (internal quotations omitted). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. When considering whether a complaint states a plausible claim and can survive a Rule 12(b)(6) motion, a court " 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.' " *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir.2009) (quoting *Iqbal,* 129 S.Ct. at 1950). With these principles in mind, the court now turns to the motion to dismiss.

**Discussion**

**I. Defendant's Motion to Dismiss Plaintiff's Claim for Breach of Contract As a Third-Party Beneficiary**

*3 In support of its breach of contract claim against Defendant, Plaintiff alleges that it is an intended third-party beneficiary of the $900,000 payment that Defendant was obligated to pay to M & G in the December 14, 2007, co-counseling agreement between Defendant and M & G. Defendant contends that Plaintiff has not sufficiently shown its status as an intended third-party beneficiary and the claim should, therefore, be dismissed. For the following reasons, I agree with Defendant that dismissal of Plaintiff's breach of contract claim is proper.

To state a claim for breach of contract as a third-party beneficiary under North Carolina law, "the allegations in the complaint must be sufficient to allow the court to draw a reasonable inference that the plaintiff was intended to be a third party beneficiary at the time the contract was made." [FN2] *In re Shearin Family Invs., LLC,* 418 B.R. 870, 876 (Bankr.E.D.N.C.2009). Accordingly, to establish a claim based on the third-party beneficiary doctrine, a plaintiff must allege: " '(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for [the plaintiff's] *direct,* and not incidental, benefit.' " *Hospira Inc. v. Alphagary Corp.,* ---N.C.App. ----, ----, 671 S.E.2d 7, 13 (2009) (emphasis in original) (quoting *Leasing Corp. v. Miller,* 45 N.C.App. 400, 405-06, 263 S.E.2d 313, 317 (1980)).

> FN2. Neither party has addressed the choice of law issues raised in this diversity of citizenship case, and both parties merely assume that North Carolina substantive law applies to all three claims. North Carolina's choice of law rules are well established, and the court need not delve extensively into them here. Suffice it to say, Defendant is a North Carolina corporation with its principal place of business in North Carolina, and Plaintiff is a Delaware LLC with its principal place of business in Florida. It appears reasonable, then, to assume that the alleged tortious conduct by Defendant occurred in North Carolina such that North Carolina law would apply to the tortious interference and unfair and deceptive trade practices claims. Moreover, it appears that the contract that is the subject of the breach of contract claim was entered into in North Carolina. In any event, I see no apparent conflicts of law with regard to the breach of contract claim. Thus, I will assume as the parties have that North Carolina law applies to the breach of contract, tortious interference, and unfair and deceptive trade practices claims.

Under the third prong, to survive a motion to dismiss, it is imperative that a plaintiff shows "that *both* contracting parties intended that a third party should receive a benefit that might be enforced in the courts. It is not enough that only one of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

parties to the contract and the third party intended that the third party should be a beneficiary." *Blis Day Spa, LLC v. Hartford Ins. Group,* 427 F.Supp.2d 621, 637 (W.D.N.C.2006) (emphasis in original). In other words, it is not enough to allege that a defendant knew about a potential benefit to a third party. As the North Carolina Court of Appeals stated in *Hospira Inc.,* an allegation of a defendant's knowledge of a plaintiff's potential benefit alone, "without demonstration of [the plaintiff's] active and direct involvement, is insufficient to establish that [the plaintiff] was a third party beneficiary." 671 S.E.2d at 13 (internal quotations omitted). Finally, because North Carolina law requires that contracts must be construed strictly against plaintiffs seeking enforcement as third-party beneficiaries, "the allegations in the complaint must be sufficient to overcome a presumption that the contracting parties did not intend to confer a legally enforceable benefit on the plaintiff." *In re Shearin Family Invs., LLC,* 418 B.R. at 877.

Here, Plaintiff has not stated a claim for breach of contract that is plausible on its face. Plaintiff has failed to plead factual content that would allow the court to draw the reasonable inference that the contract in question was entered into, by both parties, for Plaintiff's direct benefit. Rather, the complaint is comprised of mere "labels and conclusions" and "tenders naked assertions devoid of further factual enhancement." *Iqbal,* 129 S.Ct. at 1949 (internal quotations omitted). Plaintiff alleges that a $900,000 payment that Defendant was obligated to pay to M & G under the co-counsel agreement between Defendant and M & G "was intended to reduce M & G's debt owed to Plaintiff ... This fact was known to [Defendant] at the time." (Compl.¶ 40.) Plaintiff's complaint goes on to allege, in conclusory fashion, that "Plaintiff is an intended third party beneficiary of the $900,000.00 payment." (*Id.* ¶ 41.) Plaintiff offers no factual enhancement, however, for the allegations concerning Defendant. Moreover, as Defendant notes, the plain language of the co-counseling agreement itself makes no mention of any debt owed from M & G to Plaintiff.

At most, Plaintiff's allegations show that Defendant merely knew that Plaintiff stood to incidentally benefit from the co-counseling agreement. Plaintiff has, therefore, failed to show that the contract was entered into, by both contracting parties, for his "direct, and not incidental benefit." *Hospira Inc.,* 671 S.E.2d at 13. As the Fourth Circuit recently observed, "where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief, as required by Rule 8." *Francis,* 588 F.3d at 193 (internal quotations omitted). Accordingly, Plaintiff's breach of contract claim has failed to state a plausible claim on which relief can be granted.

**II. Defendant's Motion to Dismiss Plaintiff's Claim for Tortious Interference with Contract**

*4 In support of the tortious interference with contract claim, Plaintiff alleges that Defendant interfered with the agreement between Capital Transaction Group and McEachin Law Firm, P.C., referred to as the "Fen-Phen" Agreement, and the M & G/Pogust co-counseling agreement before entering into Defendant's own co-counseling agreement with M & G. Defendant contends that Plaintiff has not stated a plausible claim for tortious interference with contract. I agree.

Under North Carolina law, to state a claim for tortious interference with contract that is plausible on its face, Plaintiff must allege and provide facts to show:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1740521 (M.D.N.C.)
**(Cite as: 2010 WL 1740521 (M.D.N.C.))**

Page 5

*United Labs., Inc. v. Kuykendall,* 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). In order to demonstrate the element of acting without justification, a plaintiff's complaint must show "no motive for interference other than malice." *Filmar Racing Inc. v.. Stewart,* 141 N.C.App. 668, 674, 541 S.E.2d 733, 738 (2001). Indeed, "a defendant may encourage the termination of a contract 'if he does so for a reason reasonably related to a legitimate business interest.' " *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.,* 160 N.C.App. 520, 523, 586 S.E.2d 507, 510 (2003) (quoting *Robinson, Bradshaw & Hinson v. Smith,* 128 N.C.App. 305, 318, 498 S.E.2d 841, 850 (1998)). In other words, Plaintiff's complaint must plead factual content that would allow the court to draw the reasonable inference that Defendant " 'acted with malice and for a reason not reasonably related to the protection of a legitimate business interest.' " *Cobra Capital, LLC v. RF Nitro Commc'ns, Inc.,* 266 F.Supp.2d 432, 439 (M.D.N.C.2003) (quoting *Smith v. Ford Motor Co.,* 289 N.C. 71, 94 S.E.2d 282, 296 (1976)).

Regarding Plaintiff's claim against Defendant for tortious interference with the M & G/Pogust agreement, Plaintiff has failed to sufficiently plead element one, a valid contract. That is, nowhere in the complaint does Plaintiff allege that it was a party to the M & G/Pogust agreement. As Plaintiff has not alleged that it was party to the M & G/Pogust Agreement, Plaintiff has failed to state a claim for tortious interference with contract related to the M & G/Pogust agreement.

Plaintiff has also failed to state a claim for tortious interference with contract regarding the Fen-Phen agreement between Plaintiff's assignor Capital Transaction Group and McEachin Law Firm. Plaintiff's complaint states, *inter alia,* that Defendant's "actions were taken with fraud, malice, or oppression, or with a conscious disregard of the rights of Plaintiff." (Compl.¶ 40.) Plaintiff, however, has merely alleged, but not shown, that Defendant acted without justification. This "formulaic recitation of the elements of a cause of action will not do."

*Twombly,* 550 U.S. at 555. To state a claim for tortious interference with contract, Plaintiff must plead factual content that allows the court to draw the reasonable inference that Defendant acted with malice, rather than just alleging that Defendant's actions were undertaken with malice. Rather than pleading "enough facts to state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570, Plaintiff's complaint "contains no factual allegations that would raise an inference of malice or an illegitimate business interest on the part of [defendant]," *Cobra Capital, LLC,* 266 F.Supp.2d at 439. Plaintiff's bare allegations of malice, devoid of any factual enhancement, prevent Plaintiff from stating a plausible claim for tortious interference with contract related to the Fen-Phen agreement. Accordingly, as Plaintiff's claim fails to sufficiently plead malice or an illegitimate business interest on the part of Defendant, it should be dismissed.

**III. Defendant's Motion to Dismiss Plaintiff's Claim for Unfair and Deceptive Trade Practices**

*5 Finally, Plaintiff alleges that Defendant has violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. GEN.STAT. § 75-1.1 et seq., by interfering with the M & G/Pogust co-counseling agreement and by committing tortious interference with regard to the M & G/Pogust and Fen-Phen Agreements. Defendant contends that Plaintiff has not stated a claim under which relief can be granted. I agree with Defendant that Plaintiff's claim under the UDTPA must be dismissed.

Pursuant to the UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. GEN.STAT. § 75-1.1 (a). To state a claim under the UDTPA, a plaintiff must make a clear showing of: (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused actual injury to the plaintiff or his business. *See Wysong & Miles Co. v. Employers of Wausau,* 4 F.Supp.2d 421, 433

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

(M.D.N.C.1998); *Bassett Seamless Guttering, Inc. v. GutterGuard, LLC,* 501 F.Supp.2d 738, 746 (M.D.N.C.2007). Whether the defendant committed the alleged acts is a question for the jury; whether the facts proven constitute an unfair and deceptive trade practice is a question of law for the court. *United Labs., Inc.,* 322 N.C. at 664, 370 S.E.2d at 389.

Commerce, as regulated by the Act, "includes all business activities, however denominated, *but does not include professional services rendered by a member of a learned profession.* " N.C. GEN.STAT. § 75-1.1(b) (emphasis added). In North Carolina, for the learned-profession exemption to apply, a two-prong test must be satisfied: "(1) the person or entity performing the alleged act must be a member of a learned profession; and (2) the conduct in question must be a rendering of professional services." *Godfredson v. JBC Legal Group, P.C.,* 387 F.Supp.2d 543, 548 (E.D.N.C.2005). It is well settled in North Carolina that the practice of law has traditionally been considered a learned profession. *See Reid v. Ayers,* 138 N.C.App. 261, 266, 531 S.E.2d 231, 235 (2000). Indeed, "the exemption applies anytime an attorney or law firm is acting within the scope of the traditional attorney-client role." *Id.* at 267, 531 S.E.2d at 236; *see also Harris v. NCNB Nat'l Bank of N.C.,* 85 N.C.App. 669, 677, 355 S.E.2d. 838, 844 (1987) ("In view of the strong public policy favoring freedom of communication between parties and their attorneys with respect to anticipated or pending litigation, we conclude as a matter of law that the communication ... concerning the subject matter of the controversy was neither unfair nor deceptive.").

Plaintiff's claim under the UDTPA must fail because Plaintiff has not made a proper showing that Defendant was engaged in commerce. That is, the underlying actions that Plaintiff alleges were unfair and deceptive arose from co-counseling agreements between Defendant and third parties. Jointly representing clients and entering into co-counseling agreements is within the scope of the traditional role of an attorney. Accordingly, Defendant's actions fall within the learned profession exception to the UDTPA, and the court should therefore dismiss Plaintiff's UDTPA claim.

**Conclusion**

*6 For the reasons stated herein, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's claims (docket no. 8) for (1) breach of contract as an alleged third-party beneficiary, (2) tortious interference with contract, and (3) unfair and deceptive trade practices be **GRANTED** and that those claims be **DISMISSED**.

M.D.N.C.,2010.
Fen-Phen Series 2005-01 v. Farrin
Slip Copy, 2010 WL 1740521 (M.D.N.C.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.