# Exhibit Q

Westlaw.

Page 1

Not Reported in A.2d, 2009 WL 1218623 (Conn.Super.), 47 Conn. L. Rptr. 549
(Cite as: 2009 WL 1218623 (Conn.Super.))

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of New Haven.
Morgan JOHNS et al.
v.
Seth BROWN et al.
**No. CV085024593.**

April 8, 2009.

West KeySummary
**Libel and Slander 237 ☞23.1**

237 Libel and Slander
    237I Words and Acts Actionable, and Liability
Therefor
        237k23 Publication
            237k23.1 k. In General. Most Cited Cases

**Libel and Slander 237 ☞74**

237 Libel and Slander
    237IV Actions
        237IV(A) Right of Action and Defenses
            237k74 k. Persons Liable. Most Cited
A car dealer was entitled to strike consumers' defamation of credit claims brought against it. The consumers alleged that the dealership defrauded them into leasing a car on the understanding that they were trading in another car that the dealership falsely represented it would pay off the remainder of the lease on and return it to the lessor. The consumers further alleged that because the dealership did not do this they defaulted on the lease for the other car which negatively affected their credit rating. While the consumers' allegations implied that the lessor and/or one or more credit agencies, nonparties to the instant action, published a defamatory

statement regarding their creditworthiness, the consumers did not allege that the car dealership published any defamatory statement. Therefore, the defamation claims were legally insufficient.

Pellegrino Law Firm, New Haven, CT, for Seth
Brown et al.

KEEGAN, MAUREEN M., J.

**\*1** The defendants have filed a motion to strike the plaintiffs' counts thirteen and fourteen of the complaint, which counts allege "defamation of credit," on the grounds that this cause of action is not recognized in Connecticut and the plaintiffs have not alleged the essential elements of an ordinary defamation claim. In the plaintiffs' operative counts, they allege that the defendants-Partyka Chevrolet, Inc. (Partyka), d/b/a Lee Partyka Chevyland-Mazda, and its employee, Seth Brown-defrauded the plaintiffs into leasing a 2008 Chevrolet Impala from Partyka based on the understanding that the plaintiffs were trading in their 2006 Nissan Pathfinder; that the defendants falsely represented that Partyka would pay off the remainder of the Pathfinder lease and return it to Nissan-Infiniti LT & NILT, Inc. (Nissan-Infiniti); and that, as a result, Mrs. Johns defaulted on the lease for the Pathfinder, which negatively affected her credit rating on her credit report. For the reasons stated herein, the court grants the defendants' motion to strike counts thirteen and fourteen of the complaint.

*FACTS*

The plaintiffs, Morgan Johns and Maria Johns, filed a sixteen-count complaint against the defendants claiming for fraud, negligent misrepresentation, violation of the Connecticut Unfair Trade Practices Act (CUTPA), civil theft, conversion, defamation of credit and unjust enrichment as to both defendants, as well as claims for negligent supervision and breach of contract as to Partyka. The plaintiffs al-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2009 WL 1218623 (Conn.Super.), 47 Conn. L. Rptr. 549
**(Cite as: 2009 WL 1218623 (Conn.Super.))**

lege the following facts, which are common to all counts and pertinent to the motion at issue.

In April 2008, the plaintiffs visited Partyka and inquired about trading in their 2006 Nissan Pathfinder, which Mrs. Johns was leasing from Nissan-Infiniti, for a 2008 Chevrolet Impala. At that time, Brown, a salesman for Partyka, informed the plaintiffs that Partyka would accept the Pathfinder as a trade-in, that the plaintiffs would be reducing their monthly payments from $433.00 per month to $395.00 per month by purchasing the Impala and that Partyka would return the Pathfinder to Nissan-Infiniti. The plaintiffs then executed several documents with Partyka, including a credit application and a purchase and sales agreement for the Impala, which specifically noted that the Pathfinder would be traded in as part of the purchase of the Impala.

On or about April 29, 2008, after being informed that they had been approved for a loan, the plaintiffs returned to Partyka and met with Partyka's finance manager who informed them that they were approved at a higher interest rate than previously expected because the lease for the Pathfinder was factored into the loan application. Due to the increase in the interest rate on their loan, the plaintiffs were required to execute another purchase and sale agreement and retail installment contract in order to purchase the Impala. Neither document reflected that the plaintiffs were trading in the Pathfinder. Brown then contacted the plaintiffs' insurance agent and instructed him to add the Impala to the plaintiffs' insurance policy and drop the Pathfinder from the policy. The plaintiffs left the Pathfinder at Partyka, provided Brown with its keys, and left the dealership in the Impala. At that time, the Pathfinder's odometer registered approximately 25,000 miles.

*2 In June 2008, the plaintiffs received a "late notice" from Nissan-Infiniti, informing them that they were delinquent on the lease payment for the Pathfinder. Brown informed Mrs. Johns that there must have been a mix up with the paperwork somewhere at Nissan-Infiniti and, subsequently, that

Partyka had attempted to pay off the wrong vehicle and that it would take a few days to "clear up." The plaintiffs began receiving phone calls from Nissan-Infiniti informing them that Mrs. Johns had defaulted on her lease agreement by failing to insure the Pathfinder and failing to pay the required lease payments. Mrs. Johns contacted Brown, and he informed her that the problem arose due to Partyka's inadvertent forwarding of a check in the wrong amount to Nissan-Infiniti and that he would send the remainder of the money to Nissan-Infiniti by Western Union. He thereafter provided Mrs. Johns with a copy of a Western Union payment in the amount of $890.00 sent by Partyka to Nissan-Infiniti and dated July 11, 2008.

On August 1, 2008 at approximately 6 a.m., a towtruck driver knocked on Mrs. Johns' door, informing her that he was there to repossess the Pathfinder and inquiring as to its location. Mrs. Johns immediately contacted Brown, who informed her that Partyka was still in possession of the Pathfinder because, while Partyka had planned on turning in the Pathfinder as an "early lease termination," Nissan-Infiniti would not "take it back." Brown also explained that that the "deal" on the Impala was already completed when he discovered that Nissan-Infiniti would not accept the Pathfinder, but that he would pay the remaining balance on the Pathfinder "out of his own pocket."

After speaking with Mrs. Johns on August 1, 2008, Brown contacted an agent at Nissan-Infiniti, Alison Jennings, and obtained a payoff figure for the Pathfinder. Subsequently, Brown informed Mrs. Johns that he had paid off the Pathfinder and provided her with a copy of a FedEx Airbill addressed to Nissan-Infiniti and an accompanying receipt. Nissan-Infiniti thereafter contacted Mrs. Johns and indicated that they had not received payment. Brown informed Mrs. Johns that, at the request of Alison Jennings, he had placed a stop payment on the check and reissued a new check. Rather than mailing a check to Nissan-Infiniti, Brown simply mailed envelopes containing nothing but his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2009 WL 1218623 (Conn.Super.), 47 Conn. L. Rptr. 549
**(Cite as: 2009 WL 1218623 (Conn.Super.))**

business card.

On September 23, 2008, Mrs. Johns received a certified letter from Nissan-Infiiti indicating that the Pathfinder was repossessed from Partyka on September 19, 2008. At this time, the mileage on the Pathfinder was 34,601 miles, which plaintiffs allege suggests that Partyka allowed others to use the Pathfinder for personal transportation after it was traded in on April 29, 2008.

After discovering the repossession of the Pathfinder, Mrs. Johns attempted to contact Brown, but he did not answer the phone or return her calls. She then contacted Joseph Gallagi, general manager of Partyka, who denied that Partyka had ever accepted the Pathfinder as a trade-in. On or about October 28, 2008, Mrs. Johns received notice from Nissan-Infiiti that the Pathfinder was sold at an auction and that the she was responsible for a $10,757.96 deficiency judgment due to her default on the lease.

*3 In the defamation of credit counts, the plaintiffs further allege that Brown and Partyka or its agents "knew or should have known" that their "actions and/or inactions would cause Mrs. Johns to default on the lease for the Pathfinder" and that "such a default would be published and appear on Mrs. Johns' credit report, thereby negatively affecting her credit rating;" that "Mrs. Johns' credit report sufficiently identifies her as well as her perceived creditworthiness to current and potential creditors;"; and that "Mrs. Johns' credit rating, and by consequence her reputation, have been harmed by the publication of the default on the Pathfinder lease."

On January 15, 2009, the defendants filed a motion to strike the plaintiffs' claims for "defamation of credit" on the grounds that such a claim is not recognized in Connecticut and the plaintiffs have not alleged the essential elements of an ordinary defamation claim. On February 17, 2009, the plaintiffs filed an objection to the motion and a memorandum of law in support of the objection.

*DISCUSSION*

"The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC v. Alves,* 262 Conn. 480, 498, 815 A.2d 1188 (2003). "A motion to strike is the proper procedural vehicle ... to test whether Connecticut is ready to recognize some newly emerging ground of liability." (Internal quotation marks omitted.) *Rich v. Foye,* Superior Court, complex litigation Docket at Waterbury, Docket No. X01 CV 06 5003443 (August 28, 2006, Cremins, J.) (21 Conn.Supp. 11, 44 Conn. L. Rptr 184, 186).

The court must "construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Sullivan v. Lake Compounce Theme Park Inc.,* 277 Conn. 113, 117, 889 A.2d 810 (2006). "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded." *RK Constructors, Inc. v. Fusco Corp.,* 231 Conn. 381, 383 n. 2, 650 A.2d 153 (1994); see also *Ferryman v. Groton,* 212 Conn. 138, 142, 561 A.2d 432 (1989). Accordingly, "[i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Batte-Holmgren v. Commissioner of Public Health,* 281 Conn. 277, 294, 914 A.2d 996 (2007).

The defendants argue that Connecticut does not recognize a cause of action for defamation or slander of credit; and furthermore, applying a standard defamation analysis to these causes of action, the plaintiffs have not alleged that the defendants published a defamatory statement regarding Mrs. Johns to a third party. The plaintiffs argue that the court should "either adopt the plaintiffs' cause of action for defamation of credit or alternatively extend the 'classic' definition of defamation to encompass the element of causation as a replacement for the element of publication."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2009 WL 1218623 (Conn.Super.), 47 Conn. L. Rptr. 549
**(Cite as: 2009 WL 1218623 (Conn.Super.))**

**\*4** "Defamation is comprised of the torts of libel and slander. Defamation is that which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions against him ... Slander is oral defamation ... Libel ... is written defamation." *Lowe v. Shelton,* 83 Conn.App. 750, 765, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004). "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Internal quotation marks omitted.) *Hopkins v. O'Connor,* 282 Conn. 821, 838, 925 A.2d 1030 (2007).

"A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." (Internal quotation marks omitted.) *Id.* " 'Publication,' ... is a word of art, which includes any communication by the defendant to a third person." *Pickering v. St. Mary's Hospital,* Superior Court, judicial district of Waterbury, Docket No. CV 05 4002947 (June 29, 2005, Eveleigh, J.) (quoting 3 Restatement (Second), Torts § 652D, comment (a) (1971)).

The plaintiffs argue that the court should recognize a new cause of action for "defamation of credit" and hold that their claim is valid because "there are a variety of other ... jurisdictions that have adopted causes [of] action based on slander of credit." However, the decisions that have recognized a cause of action for "slander of credit" have made clear that it requires proof of, at a minimum, all the elements of an ordinary slander or defamation cause of action. See, e.g., *Federal Deposit Ins. Corp. v. Bathgate,* 27 F.3d 850, 871 (3d Cir.1994) ("The torts of trade libel, slander of credit, and

slander of title require 'the publication, or communication to a third person, of false statements concerning the plaintiff, his property, or his business.' "); *Regent National Bank v. K-C Ins. Premium Finance Co.,* United States District Court, Docket No. 96-8615, 1997 U.S. Dist. LEXIS 18072, \*6 (E.D.Pa. November 13, 1997) ("Slander of credit requires 'the publication, or communication to a third person, of false statements concerning the plaintiff, his property, or his business.' "); *Musto v. Bell South Telecommunications Corp.,* 748 So.2d 296, 297 n. 1 (Fla.App.1999) ("slander of credit [is] a cause of action established on proof the defendant finance company willfully and maliciously made a false statement to another finance company regarding the plaintiff's indebtedness, which statement was known by the defendant to be false when made, and was made with the intent of preventing the plaintiff from procuring credit"); *Layton v. Florida Dept. of Highway Safety & Motor Vehicles,* 676 So.2d 1038, 1040 n. 2 (Fla.App.), review denied, 686 So.2d 579 (1996) ( "victims of a false credit report can bring a common law action for defamation").

**\*5** Moreover, because "[c]redit investigation and reporting agencies enjoy [a] qualified privilege" with regard to credit reports, courts have also required proof of malice in slander of credit cases. (Internal quotation marks omitted.) *County Vanlines Inc. v. Experian Information Solutions, Inc.,* 317 F.Sup.2d 383, 390 (S.D.N.Y.2004) (applying New York law), aff'd, United States Court of Appeals, Docket No. 04-2982-cv, 2005 U.S.App. LEXIS 25422 (2d Cir. November 22, 2005), cert. denied, 549 U.S. 826, 127 S.Ct. 349, 166 L.Ed.2d 44 (2006); see also *Dun & Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896, 899 (Tex.1970) (holding "conditional or qualified" privilege applies, "[t]he effect of [which] is to justify the communication when it is made without actual malice"); *Weir v. Equifax Services, Inc.,* 210 App.Div.2d 944, 620 N.Y.S.2d 675, 677 (1994) ("It is the very function of the qualified privilege to protect the conduct of a credit investigative reporting company."); L. Dietz,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2009 WL 1218623 (Conn.Super.), 47 Conn. L. Rptr. 549
**(Cite as: 2009 WL 1218623 (Conn.Super.))**

15A Am.Jur.2d 210, Collection and Credit Agencies § 28 (2000) ("reports of mercantile or other credit-reporting agencies, furnished in good faith to one having a legitimate interest in the information, are privileged").[FN1] Even were this court inclined to recognize a new cause of action, the plaintiffs have not alleged the requisite malice.

> FN1. "[B]eginning in the last quarter of the nineteenth century, all but two American jurisdictions, Georgia and Idaho, adopted the theory of qualified privilege for credit reporting agencies in defamation suits." V. Maurer, Common Law Defamation and the Fair Credit Reporting Act, 72 Geo. L.J. 95, 100 (1983). Moreover, § 1681h(e) of the federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.), "states that a consumer who brings any action or proceeding for defamation, invasion of privacy, or negligence based on information in credit reports [must] prove *malice or willful intent* to injure on the part of the credit agency in order to recover." (Emphasis added.) *Marekh v. Equifax,* 2 Fed. Appx. 155, 156 (2d Cir.), cert. denied, 533 U.S. 916, 121 S.Ct. 2522, 150 L.Ed.2d 694 (2001); *Benson v. Trans Union, LLC,* 387 F.Sup.2d 834, 844 (N.D.Ill.2005) ("Section 1681h makes consumer reporting agencies qualifiedly immune from state law defamation claims unless a plaintiff can show that the credit reporting agency acted with malice or willful intent to injure.").

The question thus becomes whether the plaintiffs have alleged the required elements of a defamation claim.[FN2] The plaintiffs' defamation claims allege that the defendants "knew or should have known" that their "actions and/or inactions would cause Mrs. Johns to default on the lease for the Pathfinder" and that "such a default would be published and appear on Mrs. Johns' credit report, thereby negatively affecting her credit rating;" that "Mrs. Johns' credit report sufficiently identifies her as well as

her perceived creditworthiness to current and potential creditors;" and that "Mrs. Johns' credit rating, and by consequence her reputation, have been harmed by the publication of the default on the Pathfinder lease."

> FN2. "While Connecticut jurisprudence has not expanded its interpretation of slander to create a separate cause of action for this specific context, a defamatory statement implicating a plaintiff's credit may still be actionable according to the current interpretation of the tort in Connecticut." *Ullerup v. Miezejeski,* Superior Court, judicial district of New Haven, Docket No. CV 06 5004625 (May 3, 2007, Cosgrove, J.).

The plaintiffs claim that the defendants' fraudulent conduct caused Mrs. Johns to default on the Pathfinder lease, that Nissan-Infiniti reported the default to one or more credit agencies and that, as a result, those agencies reduced Mrs. Johns' credit rating. However, while the plaintiffs' allegations imply that Nissan-Infiniti and/or one or more credit agencies, nonparties to the present action, published a defamatory statement regarding Mrs. Johns' creditworthiness, the plaintiffs do not allege that the defendants published any defamatory statement.[FN3] Therefore, the plaintiffs' defamation claims are legally insufficient.

> FN3. "[A] complaint for defamation must, on its face, specifically identify what allegedly defamatory statements were made, by whom, and to whom." (Internal quotation marks omitted.) *Ullerup v. Miezejeski,* Superior Court, judicial district of New Haven, Docket No. CV 06 5004625 (May 3, 2007, Cosgrove, J.) (granting defendant's motion to strike). [I]n defamation actions especially, words count, and a premium is placed on the precise words employed ... Although it is not necessary to allege the exact words of the defamatory statement, the complaint must apprise the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2009 WL 1218623 (Conn.Super.), 47 Conn. L. Rptr. 549
**(Cite as: 2009 WL 1218623 (Conn.Super.))**

  defendants of the specific statements that
are alleged to be defamatory." (Internal
quotation marks omitted.) *Id.*

The plaintiffs argue that the court must recognize a
cause of action for defamation of credit in the
present case because Mrs. Johns has no other ad-
equate remedy to "appropriately compensate" her
"for the injury she suffered." However, this is not a
sufficient basis for this court to adopt an entirely
new cause of action.

## CONCLUSION

**\*6** Accordingly, for all the reasons stated herein,
the defendants' motion to strike counts thirteen and
fourteen of the complaint is GRANTED.

Conn.Super.,2009.
Johns v. Brown
Not Reported in A.2d, 2009 WL 1218623
(Conn.Super.), 47 Conn. L. Rptr. 549

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit R

Westlaw.

Slip Copy, 2010 WL 2710478 (D.Conn.)
**(Cite as: 2010 WL 2710478 (D.Conn.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Ronald FALIT, Plaintiff,
v.
PROVIDENT LIFE AND ACCIDENT INSUR-
ANCE COMPANY, Defendant.
**Civil No. 3:09cv1593 (JBA).**

July 7, 2010.

Kenneth John Laska, Segal & Laska, Plainville,
CT, for Plaintiff.

Jean Elizabeth Tomasco, Theodore J. Tucci, Robin-
son & Cole, Hartford, CT, for Defendant.

**RULING ON DEFENDANT'S MOTION TO
DISMISS [Doc. # 22]**

JANET BOND ARTERTON, District Judge.

**\*1** Plaintiff Ronald Falit brought suit against De-
fendant Provident Life and Accident Insurance
Company ("Provident") in connection with Provid-
ent's denial of his claim for disability benefits. Falit
brings a four-count complaint against Provident,
raising claims of (1) breach of contract, (2) viola-
tion of CUTPA/CUIPA,[FN1] (3) reckless violation
of CUTPA/CUIPA, and (4) intentional infliction of
emotional distress ("IIED"). Provident has moved
to dismiss Counts Two, Three, and Four. For the
reasons that follow, Provident's motion will be
granted.

> FN1. See Connecticut Unfair Trade Prac-
> tices Act ("CUTPA"), Conn. Gen.Stat. §
> 42-110a et seq.; Connecticut Unfair Insur-
> ance Practices Act ("CUIPA"), Conn.
> Gen.Stat. § 38a-815 et seq.

**I. Facts**

Falit, a physician, alleges that Provident [FN2] issued
to him a disability policy providing a "monthly be-
nefit for total disability of $3120 per month starting
on the 61 st day of the period of total disability."
(3d Am. Compl. [Doc. # 21] at ¶ 4.) On November
7, 2006, while assisting a patient, Plaintiff "lifted
the patient up and in doing so ... injured [his] back [
]." (Id. at ¶ 8.) Falit was diagnosed as being totally
disabled, and "was awarded workers compensation
benefits." (Id. at ¶¶ 9-10.) Shortly thereafter he sub-
mitted to Provident a claim for total disability bene-
fits (id. at ¶ 11), and in the months that followed-
first on February 19, 2007, and then on April 9,
2007-Falit submitted two medical reports to Provid-
ent documenting this claim (id. at ¶¶ 12, 13).
Provident denied Plaintiff's claim for benefits, and
Plaintiff now alleges that the claims "have not been
paid," "were not paid in a timely fashion," "were
not approved," "were not approved in a timely fash-
ion," and "were wrongfully denied." Provident ap-
parently denied the claim on the basis that Plaintiff
had a sickness rather than an injury and total disab-
ility. (See id. at ¶ 15.)

> FN2. The state-court suit also named Un-
> umProvident Insurance Company and Un-
> umProvident, entities that Provident, in its
> Notice of Removal, asserted do not exist.
> Provident is now the only named defend-
> ant. See 3d Am. Compl. [Doc. # 21].

Count Two of the Third Amended Complaint al-
leges that Provident engages, as a general business
practice, in conduct rendered unlawful by CUIPA. (
See 3d Am. Compl. at ¶¶ 19-22.) Count Three al-
leges that Provident's violation of CUTPA/CUIPA
was "willful, wanton and reckless in that
[notwithstanding that] in the past it had been sub-
ject to various regulatory actions as well as civil
claims regarding the violation of the aforemen-
tioned matters in other jurisdictions and before oth-
er regulatory agencies they continued to perform

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2710478 (D.Conn.)
**(Cite as: 2010 WL 2710478 (D.Conn.))**

such acts." (*Id.* at ¶¶ 23-24.) Count Four alleges that "Provident also acted recklessly and willfully as to the Plaintiffs" in inflicting "emotional distress." (*See id.* at ¶¶ 25-26.)

## II. Standard

The Federal Rules of Civil Procedure requires that a complaint "contain ... a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). Provident's motion to dismiss challenges the Amended Complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Summarizing the two recent Supreme Court cases addressing Rules 8(a)(2) and 12(b)(6), *Ashcroft v. Iqbal,* ---U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Second Circuit has explained that "[a]s a matter of substance, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kuck v. Danaher,* 600 F.3d 159, 162-63 (2d Cir.2010) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555).

## III. Discussion

**\*2** Provident argues that Plaintiff's CUTPA/CUIPA claims must be dismissed in the absence of non-conclusory factual allegations that it engaged, as a general business practice, in conduct similar to its conduct vis-á-vis him. Provident further argues that the Amended Complaint contains no allegations of extreme and outrageous conduct necessary to sustain a claim of intentional infliction of emotional distress.

Plaintiff's nine-page opposition includes no discussion or citation to authority regarding the law relating to CUTPA/CUIPA or IIED. In it, he relies on a

number of cases that pre-date *Iqbal* and *Twombly;* argues that his case should be decided upon the evidence rather than upon the pleadings; and, citing a 1962 Supreme Court antitrust summary-judgment case, asserts that Rule 8(a)(2) standards are different for complex cases such as antitrust and CUTPA than for simple cases, and therefore these cases are better left for summary judgment or trial than disposed of on motions to dismiss.[FN3] Attached to Plaintiff's opposition memorandum are three documents: (1) an attorney-produced chart of Falit's interactions with Provident, which allegedly show multiple instances of unfair conduct on Provident's part in dealing with Falit; (2) certain correspondence among and regarding Falit, his physicians, Provident, and Provident's physicians; and (3) a 24-page printout from the Maine Bureau of Insurance Website, not referenced in the Amended Complaint, that publicizes and recites a November 2004 Regulatory Settlement Agreement ("RSA") between Provident and government regulatory entities that set terms of Provident's regulatory settlement with these regulators to implement "a plan of corrective action" (Ex. B ¶ 4) without Provident needing to "admit, deny or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it" (*id.* ¶ 12).

> FN3. Plaintiff cites *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), which reversed a grant of summary judgment to a defendant on claims brought under the Sherman Act. It explained that "we cannot say on this record that 'it is quite clear what the truth is.' ... We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Id.* at 472-73. *Poller* did not address motions to dismiss, and *Iqbal* expressly rejected the contention that the Su-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2710478 (D.Conn.)
**(Cite as: 2010 WL 2710478 (D.Conn.))**

preme Court's "decision in *Twombly* should be limited to pleadings made in the context of an antitrust dispute." *Iqbal,* 129 S.Ct. at 1953. In short, *Poller* is of no help to Plaintiff, even assuming that it remains good law. *But see Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 747 (3d Cir.1996) (holding that *Poller's* " 'special standard' " for antitrust cases "was abandoned" in *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 468-69, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992)).

**A. Counts Two and Three: CUTPA/CUIPA**

It is well settled that a denial of a single claim cannot form the basis of a CUTPA/CUIPA claim, even if the denial involved multiple unfair acts. *See Lees v. Middlesex Ins. Co.,* 229 Conn. 842, 849, 643 A.2d 1282 (1994) ("the defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a 'general business practice' as required by [CUIPA]"); *see also, e.g., Martin v. Am. Equity Ins. Co.,* 185 F.Supp.2d 162, 168 (D.Conn.2002) ("the law in Connecticut is clear that CUIPA ... does not cover isolated instances of insurer misconduct" (citing *Lees,* 229 Conn. at 849, 643 A.2d 1282)). Provident argues that the allegations do not support a finding of a "general business practice" or a finding of an unfair practice.

The Court cannot consider the RSA in resolving the motion to dismiss because it is not referenced in or integral to the Amended Complaint, *see Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 & n. 4 (2d Cir.2002), and the Court declines to convert Provident's motion into a motion for summary judgment, *see* Fed.R.Civ.P. 12(d), at this preliminary stage. Plaintiff's allegation that Provident "frequently ha[s] committed [CUIPA-violating] acts and in so doing [is] following a general business practice" (3d Am. Compl. at ¶ 21) is "a formulaic recitation

of [an] element[ ] of [the] cause of action," *Iqbal,* 129 S.Ct. at 1949, and the Amended Complaint contains no factual matter that renders plausible his claim that Provident has engaged in a general business practice of conduct similar to the conduct that Falit alleges it took against him. Absent allegations of fact showing a general business practice, Falit's CUTPA/CUIPA claim must fail.

**B. Count Four: Intentional Infliction of Emotional Distress**

*3 An allegation of reckless or willful infliction of emotional distress, which is how Plaintiff has captioned Count Four, is a claim of intentional infliction of emotional distress. *See Myslow v. New Milford School Dist.,* No. 3:03cv496(MRK), 2006 WL 473735, *17 (D.Conn. Feb. 28, 2006); *see also Montanaro v. Baron,* No. CV065006991, 2008 WL 1798528, *4-*5 (Conn.Super.Ct. Mar.28, 2008). In Connecticut the tort of intentional infliction of emotional distress ("IIED") is comprised of four elements:

"It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."

*Appleton v. Board of Educ. of Town of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (2000) (quoting *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986)). Whether an actor's conduct is "extreme and outrageous" is an issue for the Court in the first instance and a factual question for the jury "[o]nly where reasonable minds disagree" as to whether "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 210-11, 757 A.2d 1059.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2710478 (D.Conn.)
**(Cite as: 2010 WL 2710478 (D.Conn.))**

Provident's argument, which Plaintiff has not addressed, is that the Amended Complaint contains no allegation of conduct that is sufficient extreme or outrageous to support an IIED claim. The Court agrees. No allegation even hints at extreme or outrageous conduct by Provident intended to inflict emotional distress on Falit. Provident denied Falit's claim on a basis that Falit believes to be erroneous: that Falit was in fact not totally disabled. Even if Provident were wrong, and breached its contract with Falit, it comes nowhere near showing the kind of extreme and outrageous conduct necessary to support an IIED claim. *See also Ormsby v. Nationwide Mutual Fire Ins. Co.,* No. CV 990429984, 2000 WL 739606, *6, 2000 Conn.Super. LEXIS 1318 (Conn.Super.Ct. May 25, 2000) (IIED claim dismissed where "the facts of the present case amount to a disagreement between the plaintiff and the defendants as to the amount of the loss"); *Farrah v. Allstate Ins. Co.,* No. CV 010342834S, 2003 WL 22206802, *2, 2003 Conn.Super. LEXIS 2508 (Conn.Super.Ct. Sept.16, 2003) (IIED claim dismissed where complaint alleged that "Allstate Insurance Company deliberately and intentionally caused the Plaintiff Lynne Farrah, emotional upset" by violating every section of CUIPA, which allegations were not "allegation[s] of extreme or outrageous conduct").

Therefore, Plaintiff's IIED claim must be dismissed.

**IV. Conclusion**

For the reasons stated above, Provident's Motion to Dismiss [Doc. # 22] is GRANTED. Count One, for breach of contract, remains for further disposition.

**\*4** IT IS SO ORDERED.

D.Conn.,2010.
Falit v. Provident Life and Accident Ins. Co.
Slip Copy, 2010 WL 2710478 (D.Conn.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit S

Westlaw.

Slip Copy, 2010 WL 3394034 (M.D.N.C.)
**(Cite as: 2010 WL 3394034 (M.D.N.C.))**

C
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
M.D. North Carolina.
Richard VOGLER and wife, Dayle Vogler,
Plaintiffs, pro se,
v.
COUNTRYWIDE HOME LOANS, INC., et al.,
Defendants.
**No. 1:10CV370.**

Aug. 26, 2010.

Richard Vogler, Pleasant Garden, NC, pro se.

Dayle Vogler, Pleasant Garden, NC, pro se.

A. Todd Brown, Megan E. Miller, Hunton & Willi-
ams, Jason K. Purser, Shapiro & Ingle, LLP, Char-
lotte, NC, Richard Lynn Jackson, Brock and Scott,
LLP, Winston-Salem, NC, Matthew Lee Under-
wood, Brock & Scott, PLLC, Charlotte, NC, for
Defendants.

**MEMORANDUM OPINION AND RECOM-
MENDATION**

WALLACE W. DIXON, United States Magistrate
Judge.

*1 This matter is before the court on motions to dis-
miss by Defendants Countrywide Home Loans, Inc.
("CHL"), The Bank of New York Mellon, as Trust-
ee for the Certificateholders of CWALT, Inc. Al-
ternative Loan Trust 2006-7CB (also erroneously
sued as "The Bank of New York Mellon")
("BONY"), BAC Home Loans Servicing, L.P.
("BAC"), Mortgage Electronic Registration Sys-
tems, Inc. ("MERS"), and Shapiro & Ingle, L.L.P.
("S & I" and collectively with CHL, BONY, BAC,

and MERS "Defendants") (docket nos. 18, 20). The
parties have responded to the respective motions,
and, in this posture, the matter is ripe for disposi-
tion. Furthermore, the parties have not consented to
the jurisdiction of the magistrate judge. Therefore,
all dispositive motions must be addressed by re-
commendation. For the following reasons, it will be
recommended that the court grant Defendants' mo-
tions to dismiss.

**FACTS AND BACKGROUND**

Plaintiffs obtained a mortgage loan for $259,800.00
for their residence at 411 E. Sheraton Park Rd.,
Pleasant Garden, North Carolina, on or about Janu-
ary 25, 2006. The loan was evidenced by a promis-
sory note ("the Note") and secured by a deed of
trust, recorded in book 6475, page 2833, of the
Guilford County Registry.

Plaintiffs failed to make payments when payments
were due under the terms of the Note. Defendant
BONY, in its capacity as Trustee for the deed of
trust on Plaintiff's residence, thereafter commenced
a foreclosure action against Plaintiff before the
Clerk of Superior Court of Guilford County by
means of a special proceeding bearing file number
10 SP 1122 ("the Foreclosure"). On March 25,
2010, after hearing evidence and examining the ap-
propriate affidavits and certified copies of docu-
ments, the state court found that there was a valid
debt owed by the Plaintiff, Richard Vogler. The
court also found that Defendant BONY was the
holder of the Note, and that the Note was currently
in default. The Assistant Clerk of Superior Court of
Guilford County entered an order allowing a fore-
closure sale to proceed pursuant to N.C.
GEN.STAT. § 45-21.16.

On April 12, 2010, Plaintiffs filed this lawsuit in
Guilford County District Court. In their complaint,
Plaintiffs state 31 claims for relief, including al-
leged violations of the Fair Debt Collection Prac-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3394034 (M.D.N.C.)
**(Cite as: 2010 WL 3394034 (M.D.N.C.))**

tices Act and criminal statute 18 U.S.C. § 474. On May 12, 2010, Defendants removed the case to this court, citing federal question jurisdiction as the basis for removal. Defendants CHL, BONY, BAC, and MERS filed a motion to dismiss on May 26, 2010, (docket no. 18) and Defendant S & I filed a separate motion to dismiss on June 2, 2010. (docket no. 20).

Plaintiffs argue that Defendants have violated the rules of civil procedure by filing a motion to dismiss in the state court and then again after removal to this court. There is no indication that the state court ruled on the original motion to dismiss. For this court to rule on a motion to dismiss, it has to be filed here along with the required brief. Moreover, this court's May 24, 2010, order expressly allowed Defendants to file their motion and brief. Since this court can find nothing improper with Defendants' filings, it will consider the motion to dismiss.

**STANDARD OF REVIEW ON A MOTION TO DISMISS**

**\*2** In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.,* 887 F.Supp. 811, 813 (M.D.N.C.1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 327 (4th Cir.1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (clarifying *Twombly* ). With these principles in mind, the court now turns to the motion to dismiss.

**DISCUSSION**

Plaintiffs' claims will be addressed in the order that they were presented in the complaint. The numbering and titles of the claims will also match those used in the complaint.

*Section II, Claim 1, "NO EVIDENCE OF CONTRACTUAL OBLIGATION "*

Plaintiffs argue that there was no contract between themselves and BONY and that Plaintiffs owed no money to BONY. This claim contradicts the findings by the state court when it issued its order allowing the foreclosure and sale to proceed. Thus, the doctrine of collateral estoppel, or issue preclusion, bars Plaintiffs from bringing this claim here. "[C]ollateral estoppel precludes the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim." *Whitacre P'ship v. Biosignia, Inc.,* 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004).

The state court judgment to which Defendants would have this court give preclusive effect is the foreclosure proceeding in Guilford County. As discussed, *supra,* the state court foreclosure order expressly found that BONY was the holder of the Note and that Plaintiffs had shown no valid legal reason why the foreclosure should not proceed. To the extent that Plaintiffs failed to raise any issues in the state court proceeding that they attempt to raise in this lawsuit, a North Carolina state court would find that Plaintiffs waived the right to raise those issues. Chapter 45 of the North Carolina General Statutes provides for an appeal of an order allowing

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3394034 (M.D.N.C.)
**(Cite as: 2010 WL 3394034 (M.D.N.C.))**

a foreclosure sale. *See* N.C. GEN.STAT. § 45-21.16(d1). The appeal must be taken within ten days of the Clerk's order allowing foreclosure, and the appeal must be filed in the Superior Court Division of the county where the foreclosure is occurring. *See id.*

**\*3** Here, Plaintiffs did not appeal the state court foreclosure ruling. Plaintiffs therefore waived their right in the state courts to contest the issues adjudicated by the Clerk in the state court foreclosure proceedings, including proof of ownership of the Note and deed of trust under N.C. GEN. STAT. § 45-21.16(d). In other words, if this case had remained in state court, the state court would give preclusive effect to the judicial findings in the state foreclosure proceeding, and this court must give the same respect to those findings.

Plaintiffs contend that not all of the Defendants were involved in the foreclosure action and that therefore collateral estoppel does not apply. Plaintiffs ignore the fact that their addition of defendants does not affect the findings of the state court involving only BONY and Plaintiffs, namely that BONY was the holder of the Note, the debt was owed by Richard Vogler, the Note was in default, and that Plaintiffs had shown no valid legal reason why foreclosure should not proceed. Consequently, Plaintiffs' first claim should be dismissed.

*Section II, Claim 2, "MALICIOUS FORECLOSURE"*

Plaintiffs claim that Defendants acted fraudulently by pursuing foreclosure without any admissible or verifiable proof to support BONY's right to Plaintiffs' property. Plaintiffs are collaterally estopped from bringing this claim, since the state court determined that BONY was the valid holder of the Note. Since this court will honor that finding, BONY could not have been acting fraudulently when it pursued foreclosure.

Moreover, to succeed on a claim for malicious prosecution, there must be a termination of the earlier proceeding in favor of the current plaintiff. *Best v. Duke Univ.,* 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994). Since the foreclosure was terminated in Defendants' favor, Plaintiffs' claim must fail. This claim should be dismissed.

*Section II, Claim 3, "CRIMINAL CONSPIRACY AND THEFT"*

Plaintiffs claim that Defendants were guilty of conspiracy by pursuing foreclosure without evidence of entitlement to do so. Once again, the state court found that BONY had produced evidence that it was entitled to pursue foreclosure, so this claim fails.

*Section II, Claim 4, "FRAUDULENT INDUCEMENT"*

Plaintiffs claim that they should have been told that their loan was calculated to produce a higher return when sold as a security to an investor and that this constituted fraud. When alleging fraud under North Carolina law, plaintiff must plead "the following essential elements: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage." *Breeden v. Richmond Cmty. Coll.,* 171 F.R.D. 189, 194 (M.D.N.C.1997). Plaintiffs have not pleaded that the alleged nondisclosure of the possible sale of their loan to an investor was a material fact that should have been disclosed. Neither have Plaintiffs provided any reason why this caused them any harm. Plaintiffs received the loan for which they bargained and have not given any reason why the alleged nondisclosure has resulted in damage to them. Since Plaintiffs have failed to plead the essential elements, this claim should be dismissed.[FN1]

> FN1. Defendants argue in their motion to dismiss that Plaintiffs' fraudulent induce-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3394034 (M.D.N.C.)
(Cite as: 2010 WL 3394034 (M.D.N.C.))

ment claim should be barred by the statute of limitations. Since this claim was more easily dismissed on other grounds, the statute of limitations argument is not ad- dressed.

*Section II, Claim 5, "LENDER ATTEMPTING TO FRAUDULENTLY COLLECT ON VOID LIEN"*

**\*4** Plaintiffs appear to argue that the lien associated with the mortgage was invalid. Once again, the state court determined that there was a valid debt owed and that BONY was entitled to pursue foreclosure. The doctrine of collateral estoppel applies again here, and therefore this claim must fail.

*Section II, Claim 6, "LENDER PROFITS BY CREDIT FAULT SWAP DERIVATIVES"*

Although unclear, Plaintiffs might be arguing here that Defendants have benefitted from unjust enrichment. As Defendants correctly point out in their Motion to Dismiss, "an action for unjust enrichment is quasi-contractual in nature [and so it] may not be brought in the face of an express contract." *Bright v. QSP, Inc.,* 20 F.3d 1300, 1306 (4th Cir.1994) (quoting *Acorn Structures, Inc. v. Swantz,* 846 F.2d 923, 926 (4th Cir.1988)). Plaintiffs had an express contract with CHL, now assigned to BONY, related to the mortgage, so Plaintiffs many not bring a quasi-contract claim for unjust enrichment. Moreover, the statute of limitations for unjust enrichment is three years. *See Housecalls Home Health Care, Inc. v. State, Dept. of Health & Human Servs.,* --- N.C.App. ----, ----, 682 S.E.2d 741, 744 (2009). Since Plaintiffs filed this suit more than a year after the statute ran, this claim is time barred as well.

*Section II, Claim 7, "LENDER CONSPIRED WITH TRUSTEE"*

Plaintiffs claim that there was a conspiracy between CHL and the trustee to induce Plaintiffs to sign documents without allowing time for Plaintiffs to read and fully understand what was being signed. "The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette v. Univ. of North Carolina,* 96 N.C.App. 124, 139, 385 S.E.2d 185, 193 (1989) (citations omitted). Plaintiffs do not allege any facts to support their claim that there was a conspiracy, nor do they allege any facts showing in what way they were prevented from reading and fully understanding the documents. Plaintiffs do not describe how long the closing lasted, who conducted the closing, whether they were denied the opportunity to ask questions, or whether they were denied the opportunity to consult with a lawyer. This claim fails to meet the pleading requirements of *Twombly* and *Iqbal* and should be dismissed.

*Section II, Claim 8, "DECEPTIVE ADVERTISING AND OTHER UNFAIR BUSINESS PRACTICES"*

Plaintiffs allege that Defendants have engaged in a variety of unfair and unlawful business practices in violation of the Federal Trade Commission Act, 15 U.S.C. § 45 et seq. This section of the United States Code, however, does not provide for any private cause of action. *See, e.g., Holloway v. Bristol-Myers Corp.,* 485 F.2d 986, 988 (D.C.Cir.1973). Therefore, this claim should be dismissed.

*Section II, Claim 9, "THE LIMITATIONS PERIOD FOR PLAINTIFFS' DAMAGES CLAIMS UNDER TILA AND RESPA SHOULD BE EQUITABLY TOLLED DUE TO THE DEFENDANTS' MISREPRESENTATIONS AND FAILURE TO DISCLOSE."*

**\*5** In this portion of the complaint, Plaintiffs remind the court that claims under the Truth in Lending Act (15 U.S.C. § 1601 et seq.), and the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3394034 (M.D.N.C.)
**(Cite as: 2010 WL 3394034 (M.D.N.C.))**

seq.) are subject to the equitable tolling doctrine. Plaintiffs do not explain, however, how they have a claim under either of these federal laws. This "claim" should be dismissed.

*Section II, Claim 10, "CLAIM TO QUIET TITLE."*

Plaintiffs once again claim that Defendants had no title, estate, lien, or interest in the property. As discussed above, these are arguments that should have been made at the foreclosure hearing or in an appeal of the resulting order. Here, they are barred by the doctrine of collateral estoppel.

*Section II, Claim 11, "RIGHT TO A TRIAL BY JURY"*

In this section of the complaint, Plaintiffs argue that they should get a trial by jury. Plaintiffs do not describe a cause of action so this "claim" should be dismissed.

*Section II, Claim 12, "SUFFICIENCY OF PLEAD-ING"*

Here, Plaintiffs argue that the complaint as written is sufficiently particular to allow the case to proceed. Plaintiffs do not describe a cause of action so this "claim" should be dismissed.

*Section III, First Claim, "Invalidity of the Power of Sale Clause"*

Plaintiffs argue that the use of the term "power of sale" in the mortgage documents is vague and should not be enforced. When it approved the foreclosure, the state court determined that the mortgage documents were valid and therefore Plaintiffs are estopped from making this claim here.

*Section III, Second Claim, "Unlawful Securitization of Loan"*

Plaintiffs allege that the loan was securitized, and

that this violated the power of assignment clause in the loan documents. Plaintiffs fail to allege how the securitization was a violation of the assignment clause. Plaintiffs further allege that this securitization changed the asset used as collateral from real property to personal property. Plaintiffs have not alleged how the securitization of the loan could change the asset from real property to personal property. Even if Defendants had the ability to accomplish this feat, Plaintiffs do not explain how this could harm them. This claim should be dismissed.

*Section III, Third Claim, "BONYM [BONY] is not a Party in Interest"*

Plaintiffs once again argue that they had no valid contract with BONY. Any finding for Plaintiffs on this claim would necessarily contradict the findings in the state court order allowing foreclosure, so this claim is barred by the doctrine of collateral estoppel.

*Section III, Fourth Claim, "BONYM [BONY] Has No Right to Foreclose"*

Plaintiffs repeat their claim that they have no contract with BONY, that BONY is not the valid holder of the Note, and that BONY does not have standing to pursue any action arising from the mortgage. Once again, Plaintiffs should have made these arguments at the foreclosure hearing, and Plaintiffs are estopped from bringing this claim here.

*Section III, Fifth Claim, "Failure to Account"*

**\*6** Plaintiffs argue that there is no evidence to prove the existence of an accounting of the debt allegedly owed. The state court examined affidavits and certified copies of documents and found that these documents proved the existence of a valid debt and the amount of that debt. Because of that finding, this claim is barred by collateral estoppel. [FN2]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3394034 (M.D.N.C.)
**(Cite as: 2010 WL 3394034 (M.D.N.C.))**

FN2. Defendants argue that no such claim for failure to account exists under North Carolina law as applied to these Defendants. Although the claim is titled "Failure to Account," this purported claim appears to be just another attempt by Plaintiffs to claim that Defendants have no documentation to prove that the debt is legitimate.

*Section III, Sixth Claim, "The Appointment of Substitute Trustee is Invalid and Void"*

Plaintiffs argue that the deed of trust did not authorize the appointment of a substitute trustee with the powers of a trustee. Nevertheless, Plaintiffs also stated that the deed "specifically states ... that 'Lender may from Time to time remove trustee and appoint a successor trustee....' " (Compl. ¶ 168, docket no. 6.) Moreover, in the state court's order, it implicitly found that the substitution was valid when it stated that "the Substitute Trustee can proceed to foreclosure under the terms of the above described Deed of Trust." (Ex. A, docket no. 19.) Any arguments that the substitution was invalid should have been raised in the foreclosure hearing or at an appeal to the order in the state court. This claim should be dismissed.

*Section III, Seventh Claim, "Violation of § 45-21.16"*

Plaintiffs allege that Defendants did not follow the notice requirements regarding the foreclosure hearing. Any deficiency in the foreclosure hearing should have been raised in that hearing or by objection or an appeal of the resulting order. In this claim, Plaintiffs are making a "collateral attack on a foreclosure proceeding and judgment, which the law does not permit." *Douglas v. Pennamco, Inc.,* 75 N.C.App. 644, 646, 331 S.E.2d 298, 300 (1985) (citing *Robinson v. United States Cas. Co.,* 260 N.C. 284, 132 S.E.2d 629 (1963)). This claim should be dismissed.

*Section III, Eighth Claim, "Lack of a Valid Consideration"*

Plaintiffs claim that they were not afforded an opportunity to bargain for the agreement and this implies that there was no consideration, voiding the contract. Plaintiffs allege no facts to support their statement that they were denied the opportunity to negotiate their loan. Furthermore, Plaintiffs received consideration for the contract, namely the loan. Plaintiffs have failed to state a claim for lack of consideration.

*Section III, Ninth Claim, "Fraud by Non-Disclosure"*

Plaintiffs argue that they were not informed of the "true nature" of the transaction as it actually occurred. As discussed in Section II, Claim 4, *supra,* to state a claim of fraud under North Carolina law, the plaintiff must claim that the misrepresentation or omission was material, and that it caused harm to the plaintiff. *Breeden,* 171 F.R.D. at 194. Here, Plaintiffs have not alleged that the funding behind the loan was material to their decision to obtain the loan, nor have they alleged facts which would support any claim of damages from this alleged nondisclosure. This claim should be dismissed.

*Section III, Tenth Claim, "Common Law Fraud"*

*7 Plaintiffs argue that Defendants' misrepresentations were negligent, if not intentional. This appears to be a claim for negligent misrepresentation. "The tort of negligent misrepresentation occurs when [ (1) ] a party justifiably relies [ (2) ] to his detriment [ (3) ] on information prepared without reasonable care [ (4) ] by one who owed the relying party a duty of care." *Simms v. Prudential Life Ins. Co. of Am.,* 140 N.C.App. 529, 532, 537 S.E.2d 237, 240 (2000) (citing *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988)). Plaintiffs do not specify the nature of the alleged misrepresentations. Nor do Plaintiffs specify how the alleged misrepresenta-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3394034 (M.D.N.C.)
**(Cite as: 2010 WL 3394034 (M.D.N.C.))**

tions caused them the specified damages, "including monetary loss, medical expenses, emotional distress, loss of employment, loss of credit, loss of opportunities, attorney fees and costs, and other damages to be determined at trial." (Compl. ¶ 248, docket no. 6.)

Moreover, the statute of limitations on negligent misrepresentation in North Carolina is three years. N.C. GEN.STAT. § 1-52(5); *Cincinnati Ins. Co. v. Centech Bldg. Corp.,* 286 F.Supp.2d 669, 686 (M.D.N.C.2003). Since the loan documents were signed in January of 2006 and this suit was filed over four years later, on April 12, 2010, it is barred by the statute of limitations. Plaintiffs have not given any reason in their complaint or in their response to the motion to dismiss which would cause this court to toll the statute of limitations. This claim should be dismissed.

*Section III, Eleventh Claim, "Breach of Fiduciary Duty"*

Plaintiffs appear to be claiming that the Defendants had a fiduciary duty to Plaintiffs with respect to the mortgage loan transaction. "A fiduciary duty arises when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Branch Banking & Trust Co. v. Thompson,* 107 N.C.App. 53, 60-61, 418 S.E.2d 694, 699 (1992) (internal quotation marks omitted). "However, an ordinary debtor-creditor relationship generally does not give rise to such a special confidence: [t]he mere existence of a debtor-creditor relationship between [the parties does] not create a fiduciary relationship." *Id.* (alterations in original) (internal quotation marks omitted).

Plaintiffs have not alleged that they had anything other than a debtor-creditor relationship with any of the Defendants. Plaintiffs have not alleged any facts that would indicate that Defendants had a fiduciary duty to Plaintiffs. Without a fiduciary duty to

Plaintiffs, there could be no breach of such a duty. This claim should be dismissed.

*Section III, Twelfth Claim, "The Deed of Trust is Void"*

Plaintiffs once again argue that the deed is void and that they have no valid liability to Defendants. The state court has already determined that BONY was the valid holder of the debt, owed by Plaintiff Richard Vogler, so this claim is barred by the doctrine of collateral estoppel.

*Section III, Thirteenth Claim, "Negligence/Negligence per se"*

**\*8** Plaintiffs argue that Defendants owed Plaintiffs a duty of care to "provide proper disclosures concerning the terms and conditions of the loans they marketed, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, and to avoid paying undue compensation such as 'yield spread premiums' to mortgage Brokers and loan officers." (Compl. ¶ 264, docket no. 6.) The statute of limitations for negligence claims is three years. N.C. GEN.STAT. § 1-52. The claim accrues "at the time of the occurrence of the last act of the defendant giving rise to the cause of action." *Pierson v. Buyher,* 101 N.C.App. 535, 537, 400 S.E.2d 88, 90 (1991) (quoting N.C. GEN.STAT. § 1-15(c)).

Here, all of the alleged acts occurred before the mortgage documents were signed or very shortly thereafter in January 2006. Since this action was filed over four years later, on April 12, 2010, it is barred by the statute of limitations. Plaintiffs have not alleged any facts in their complaint or in their response to the motion to dismiss which would cause this court to toll the statute of limitations. This claim should be dismissed.

*Section III, Fourteenth Claim, "Unjust Enrichment"*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3394034 (M.D.N.C.)
**(Cite as: 2010 WL 3394034 (M.D.N.C.))**

Plaintiffs repeat their claim for unjust enrichment. For the same reasons given in Section II, Claim 6, *supra*, this claim should be dismissed.

*Section III, Fifteenth Claim, "Breach of the Implied Covenant of Good Faith and Fair Dealing"*

Plaintiffs argue that Defendants breached the implied covenant of good faith and fair dealing "when Defendants (1) failed to provide all of the proper disclosures and (2) failed to perform valid and/or properly documented substitutions and assignments so that Plaintiffs could ascertain their rights and duties." (Compl.¶ 264). "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell,* 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985).

Plaintiffs have not shown how Defendants' alleged failure to disclose prevented Plaintiffs from receiving the benefits of the agreement. Plaintiffs' rights and duties were established by the original mortgage documents and any assignment of the Note did not change their rights and duties. This claim should be dismissed.

*Section III, Sixteenth Claim, "The Signature is Null and Void"*

Plaintiffs argue that the "Bank did alter the terms of the Note," and that this amounted to a forgery of the original note. The state court has determined that the debt was valid and Plaintiffs are collaterally estopped in this suit from arguing that the debt is not valid. This claim should be dismissed.

*Section III, Seventeenth Claim, "Violation of the Fair Debt Collection Practices Act"*

Plaintiffs argue that they did not receive notice as required by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Since

Plaintiffs do not specify what notice they should have received, this portion of the claim fails the pleading requirements of *Twombly* and *Iqbal.* Plaintiffs also claimed that BONY "transmitted false and fraudulent communications in an attempt to intimidate alleged account holders into paying a debt which they have not verified." (Compl.¶ 20.) It appears that this allegation is another attack on the validity of the debt that was owed, and that Plaintiffs are claiming that they should not have been receiving requests for payment from BONY because they did not owe any money to BONY. Because Plaintiffs are collaterally estopped from arguing that the debt was invalid, this claim should be dismissed.[FN3]

> FN3. Because this court has determined that this claim should be dismissed on other grounds, it will not address Defendants' alternative grounds for dismissing the claim, namely that BONY is not a debt collector as defined by the FDCPA, and not subject to its guidelines.

*Section III, Eighteenth Claim, "Violation of 18 U.S.C. § 474"*

*9 Plaintiffs claim that Defendants have violated 18 U.S.C. § 474. Section 474 is a criminal statute that deals with the counterfeiting of securities or obligations of the United States. As such, it is completely irrelevant to the documents associated with the loans here. This claim should be dismissed.

*Section III, Nineteenth Claim, "Intentional Infliction of Emotional Distress"*

Plaintiffs claim that Defendants were liable for the tort of intentional infliction of emotional distress ("IIED"). "The essential elements of an action for intentional infliction of emotional distress are '1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.' " *Waddle v. Sparks,* 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quoting

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3394034 (M.D.N.C.)
**(Cite as: 2010 WL 3394034 (M.D.N.C.))**

*Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). For a successful claim, the defendant's conduct must exceed "all bounds usually tolerated by decent society." *Guthrie v. Conroy,* 152 N.C.App. 15, 21, 567 S.E.2d 403, 408 (2002) (quoting *Watson v. Dixon,* 130 N.C.App. 47, 52-53, 502 S.E.2d 15, 19-20 (1998)). In addition, "the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Here, Defendants' alleged conduct does not exceed all bounds usually tolerated by decent society. Plaintiffs' conclusory statement that Defendants' conduct was extreme and outrageous, without alleging facts to support this legal conclusion, does not satisfy the pleading requirements of *Twombly* and *Iqbal.* Moreover, Plaintiffs assert that they suffered severe emotional distress, but do not allege any facts in support of this assertion. Because of the insufficiency of the claim, it should be dismissed.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the court **GRANT** Defendants' motions to dismiss (docket nos. 18, 20).

M.D.N.C.,2010.
Vogler v. Countrywide Home Loans, Inc.
Slip Copy, 2010 WL 3394034 (M.D.N.C.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.