# **<u>EXHIBIT A</u>**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT (NEW HAVEN)

-------------------------------------------------------------------x

BANK OF AMERICA, N.A.                        :
                                             :
            Plaintiff,                       :        CIVIL ACTION NO.
                                             :        3:10-CV-00987 (MRK)
v.                                           :
                                             :
SAMUEL KLEIN                                 :
                                             :
            Defendant.                       :        November 16, 2010
-------------------------------------------------------------------x

### AFFIDAVIT OF SAMUEL KLEIN IN SUPPORT OF
### DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

STATE OF NEW YORK          :
                           :      ss:
COUNTY OF NEW YORK         :

Personally appeared Samuel Klein, who being first duly sworn deposes and says:

1.      I am over the age of eighteen and believe in the obligations of an oath.

2.      The following information is based upon my own personal knowledge and belief.

3.      This Affidavit is submitted in support of Defendant's Motion to Disqualify

Plaintiff's Counsel which is being filed in this matter.

4.      From October 2007 until January 2008, the law firm of Edwards Angell Palmer &

Dodge LLP ("Edwards & Angell") represented me as a defendant in the matter of *FHC Danbury*

*LLC, et al. v. LJA (Danbury), LLC, et al.* in the Court of Chancery of the State of Delaware (the

"First Delaware Action").  Edwards & Angell also represented two other defendants in the

Delaware Action, LJA Danbury, LLC ("LJA Danbury") and LJA Newark, LLC ("LJA Newark").

At that time, I held a majority interest in both of those entities.

5.     During that same time period, Edwards & Angell also represented LJA Danbury, LJA Newark and me, along with another entity in which I held a 50% interest, LJA Management, LLC ("LJA Management") in the matter of *LJA (Danbury), LLC, et al.  v. Leslie Klein* in the Court of Chancery of the State of Delaware (the "Second Delaware Action").  The three LJA entities and I were the Plaintiffs in the Second Delaware Action.  In the course of preparing the Verified Complaint which Edwards & Angell filed on my behalf, Edwards & Angell and I had extensive communications about the detailed allegations regarding my business dealings and financial affairs which were contained in that complaint.

6.     Due to the fact that the two Delaware Actions involved allegations about my financial affairs, in the course of Edwards & Angell's representation of me I provided them with a great deal of confidential and proprietary information relating to my finances and business dealings.  This included, but was not limited to, bank statements, current and pro forma financial statements, internal correspondence, emails and memoranda, as well as information regarding the two loans referenced in paragraphs 10 and 11 of this Affidavit which are the subject of this lawsuit.

7.     This information included, but was not limited to, my tax returns from 2004 through 2006.

8.     Additionally, attorneys from Edwards & Angell frequently met with me at my home and office, and were given access to my personal and corporate files, both electronic and hard copies.  Most of this information was never produced to the opposing parties, as both cases were concluded before discovery was completed.  They also prepared me for and represented me

-2-

at my deposition in the First Delaware Action. Edwards & Angell eventually moved to withdraw from its representation of me due, in part, to a fee dispute.

9.      I currently have three loan relationships with the Plaintiff. Two of them – the ones that are the subject of this lawsuit – were already in place at the time that Edwards & Angell represented me in the two Delaware Actions.

10.     First, there is a May 23, 2006 loan from United States Trust Company, National Association ("U.S. Trust") to Agrippa, LLC ("Agrippa"), a company wholly owned by me, in the amount of $3.2 million secured by property owned by Agrippa in New York, New York (the "New York Loan"). I have personally guaranteed this loan. The Plaintiff has alleged that it is now the owner and holder of the Agrippa Note and Guaranty.

11.     Next, there is a February 26, 2007 loan from U.S. Trust to PLC, LLC ("PLC") a company wholly owned by me, in the amount of $1.35 million secured by a mortgage on real property owned by PLC in Jackson, Wyoming (the "Wyoming Loan"). I have personally guaranteed this loan as well. The Plaintiff has alleged that it is now the owner and holder of the PLC Note and Guaranty.

12.     Finally, there is an April 28, 2008 loan from the Bank to me in the amount of $5.8 million secured by property located in Greenwich, Connecticut (the "Connecticut Loan").

13.     The Wyoming Loan is the subject of *PLC Partners, LLC v. Bank of America, N.A.*, in the United States District Court for the District of Wyoming (the "Wyoming Action"), in which an attorney from Edwards & Angell represents the Bank of America.

14.     I never consented to Edwards & Angell's representation of the Bank in either this or the Wyoming Actions.

15.    I also never consented to Edwards & Angell's use in this action of any information relating to the July 20, 2007 hearing in the First Delaware Action.

16.    Edwards & Angell filed formal appearances on my behalf in the two Delaware Actions in October 2007, however, I first consulted with the firm about those two cases in the Summer of 2007.  In the course of those consultations and the firm's subsequent representation of me, I had extensive conversations with attorneys at Edwards & Angell about the July 20, 2007 hearing and the events leading up to it.  As a result, they became privy to my thoughts, impressions and opinions regarding those issues, and I discussed with them the proper manner in which to address them.  As a direct result of its prior representation of me in the Delaware Actions, Edwards & Angell also has knowledge of certain proceedings, findings and orders entered in those matters that go beyond information which is available as a matter of public record.

_____
Samuel Klein

Subscribed and sworn to before me on this the 13 day of November, 2010.

_____
Notary Public
My Commission Expires:

HEATHER J. PARSONS
Notary Public, State of New York
No. 01PA6175958
Qualified in New York County
Commission Expires Oct. 22, 2011

-4-

# EXHIBIT B

EFiled: May 21 2007 10:06AM EDT
Transaction ID 14942848
Case No. 2855-VCS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| FHC Danbury LLC and FHC Newark LLC, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| LJA (Danbury), LLC, LJA Newark, LLC and Samuel Klein, | ) ) ) ) | C.A. No. 2855-VCS |
| Defendants, | ) ) ) | |
| and | ) ) | |
| KF (Danbury), LLC and KF Newark LLC, | ) ) | |
| Nominal Defendants. | ) | |

## CORRECTED VERIFIED AMENDED COMPLAINT

Plaintiffs FHC Danbury LLC ("FHC Danbury") and FHC Newark LLC ("FHC Newark") (collectively, "FHC") by and through their undersigned attorneys, allege for their amended complaint as follows:

### Nature of the Action

1.     This case arises from the actions taken by the managers of two related limited liability companies in dereliction of their fiduciary duties and the companies' operating agreements.  KF (Danbury), LLC ("KF Danbury") and KF Newark LLC ("KF Newark") (collectively, the "Companies") are Delaware limited liability companies that each own an interest in real property and in a hotel constructed on the property.  The Companies are managed by defendants LJA (Danbury), LLC ("LJA Danbury") and LJA Newark, LLC ("LJA Newark") (collectively, "LJA") through their common principal, Samuel Klein ("Klein") (together with

LJA, "Defendants"). Under the Companies' operating agreements, Klein is defined to mean LJA and thus they collectively serve as the Managers of the Companies.[1]

2.    Over the last several years, Defendants have mismanaged the Companies, and have engaged in activities to enrich themselves at the expense of FHC and its principal, David H. Feinberg ("Feinberg"), by:  (i) paying out large sums of cash from the Companies' accounts to affiliates of Klein; (ii) instituting capital calls and then failing to contribute their proportionate share of the funds requested; (iii) causing the Companies to borrow additional funds without FHC's consent; (iv) running up the accounts payable for the Companies by failing to pay the Companies' bills and expenses as they became due; (v) failing to make monthly mortgage payments to the bank holding the mortgages on the hotels, TD Banknorth, N.A. (the "Bank"); and (vi) causing the Companies to default on their loan obligations.

3.    Based on these actions (as described in more detail herein), FHC asserts claims against Defendants for breach of fiduciary duty and breach of the Companies' operating agreements.  FHC seeks accountings of all corporate funds of KF Danbury and KF Newark, including all capital contributions made by either Member and all expenses incurred by the Companies, and the return of any funds that have been misappropriated by Defendants.

4.    FHC also seeks Defendants' removal as Managing Member and Tax Matters Member of the Companies.  FHC seeks this relief because Klein's mismanagement of the Companies has placed FHC and Feinberg in a difficult position – foreclosure proceedings on the Hotels are imminent and Feinberg faces significant exposure on personal guaranties he executed in connection with the mortgages (the "Feinberg Guaranties").  To facilitate an orderly

---

[1]    Accordingly, all references herein to the LJA entities in their capacity as the Managers of the Companies shall be deemed to also include and encompass Klein and vice versa.

sale of the hotels to a third-party buyer, which will maximize the chances of avoiding foreclosure and reduce or eliminate Feinberg's exposure under the Feinberg Guaranties, FHC seeks an order removing the LJA entities and Klein as the Manager and the Tax Matters Member (as that term is defined in the operating agreements and described herein) of the Companies, and naming the FHC entities (or, alternatively, some neutral third party appointed by the Court) as the Companies' Manager and Tax Matters Member.

5.    Because Klein's continued refusal to comply with his fiduciary and contractual obligations has irretrievably damaged the relationship between Feinberg and Klein, it is no longer reasonably practicable for the Companies' two members to carry on the business of the Companies.   Accordingly, FHC seeks a judicial order authorizing the dissolution of KF Danbury and KF Newark pursuant to 6 *Del. C.* § 18-802, once the Hotels have been sold to a third party.  Finally, because the hotels are currently managed by affiliates of Klein, who were appointed by Klein and operate the hotels in accordance with Klein's instructions, FHC also seeks to have the management companies removed from that role.

### FHC's Recent Review of the Companies' Documents Confirms that Klein Has Engaged in Self-Dealing

6.    The membership of the two Companies is similar – an LJA entity controlled by Klein is the 50% owner of each Company and serves, along with Klein, as the Manager of each Company, and the sole other 50% Member is an FHC entity controlled by Feinberg. The operating agreements governing the two Companies are also similar.  Pursuant to the operating agreements, LJA is contractually obligated to maintain accurate and complete books and records of the Companies and to provide FHC with certain financial reports of the Companies.

7.      In contravention of the operating agreements, LJA repeatedly denied FHC access to the Companies' financial records. Only after FHC brought this lawsuit and LJA agreed to stipulate to a status quo order requiring LJA to give FHC access to the Companies' books and records of account did LJA and Klein begin providing FHC with the Companies' financial documents and records – and even then, access to books and records was delayed by several weeks.

8.      Based on a review of the documents produced or otherwise made available by LJA, FHC has learned that a significant portion of the funds it contributed in response to capital calls initiated by LJA has not been used to pay for legitimate expenses associated with the ownership or operation of the hotels, but instead has gone straight to LJA or its affiliates. The documents also reveal that LJA has improperly failed to contribute $862,550 in response to capital calls that it initiated between November 2006 and January 2007, and that LJA has improperly drawn $387,000 in additional proceeds from the Bank, thereby increasing the principal owed on the Companies' loans and increasing the amount of Feinberg's potential liability under the Feinberg Guaranties.

9.      As a result of Klein's failure to contribute his share of capital required by the capital calls that he himself initiated, and Klein's improper payments to himself, the Companies have been unable to pay the mortgages on the hotels that the Companies own. As described below, the Bank has declared the loans to be in default and has engaged counsel to initiate  foreclosure proceedings and to pursue litigation against Feinberg (and perhaps Klein as well) on the personal guaranties he gave to the Bank. FHC and Feinberg need immediate relief to prevent Klein's wrongful acts from resulting in a fire sale of the hotels and personal exposure on the Feinberg Guaranties.

4

## The Parties

10.     Plaintiff FHC Danbury is a Delaware limited liability company with its principal place of business in New York, New York.  FHC Danbury was formed by Feinberg and others for the purpose of participating in KF Danbury and is controlled by Feinberg.

11.     Plaintiff FHC Newark is a Delaware limited liability company with its principal place of business in New York, New York.  FHC Newark was formed by Feinberg and others for the purpose of participating in KF Newark and is controlled by Feinberg.

12.     Defendant LJA Danbury is a Delaware limited liability company with its principal place of business in New York, New York.  LJA Danbury was formed by Klein and others for the purpose of participating in KF Danbury and is controlled by Klein.

13.     Defendant LJA Newark is a Delaware limited liability company with its principal place of business in New York, New York.  LJA Newark was formed by Klein and others for the purpose of participating in KF Newark and is controlled by Klein.

14.     Nominal defendant KF Danbury is a Delaware limited liability company with its principal place of business in New York, New York.  KF Danbury's certificate of formation was filed with the Delaware Secretary of State on August 13, 1998.

15.     Nominal defendant KF Newark is a Delaware limited liability company with its principal place of business in New York, New York.  KF Newark's certificate of formation was filed with the Delaware Secretary of State on September 9, 2002.

## The Operation of the Hotels

16.     KF Danbury owns an interest in a lease on certain land in Danbury, Connecticut, and owns and operates a hotel on the premises (the "Danbury Hotel").  KF Newark

5

owns certain land in Newark, New Jersey, and owns and operates a hotel on the premises (the "Newark Hotel" and, together with the Danbury Hotel, the "Hotels").[2]

17.     In 1999, KF Danbury began construction of the Danbury Hotel.   The Danbury Hotel has been open to the public since September 2000.

18.     In September 2002, KF Newark began construction of the Newark Hotel. The Newark Hotel has been open to the public since May 2004.

19.     Both Hotels are managed and operated by LJA Management LLC ("LJA Management"), another entity controlled by Klein.   Upon information and belief, LJA Management has delegated the day-to-day management and operations of KF Danbury and KF Newark to Fairchild Properties Ltd. ("Fairchild"), another Klein-controlled entity.

20.     The Companies pay LJA Management, or one of its affiliates, monthly fees for managing and operating the Hotels that are based on each Hotel's total revenues.

21.     In 2006, the Companies began exploring the possible sale of the Hotels to a third party.  On January 31, 2007, KF Danbury entered into an agreement to sell the Danbury Hotel to RLJ Urban Lodging Fund Acquisitions, LLC (the "Buyer") for $13,400,000.  Also on January 31, 2007, KF Newark entered into an agreement to sell the Newark Hotel to the same Buyer for $23,000,000.

22.     During February and March 2007, the Buyer performed its due diligence, and the closings of the sales of the Hotels were anticipated to take place in April 2007.  In late March 2007, however, FHC discovered that the Buyer had terminated the agreements of sale. FHC has received contradictory explanations from LJA and the broker who facilitated the sales

---

[2]     The Danbury Hotel operates as a Hilton Garden Inn.  The Newark Hotel operates as a Marriott Springhill Suites.

as to why the sales went off-track, and the documents produced to date by LJA regarding the termination of the sale are equally unenlightening. The Companies and Klein have been named as defendants in an action filed by the Buyer in Maryland State Court in which the Buyer claims to have properly terminated the contracts and seeks the return of $2 million in down payments that it made. At this point, FHC does not have sufficient information to evaluate the merits of the Buyer's claims and the defenses Klein has asserted on behalf of the Companies. The Companies are now engaged in costly litigation, which presumably is being paid for with Company funds that have not been authorized by FHC.

### The General Provisions of the Operating Agreements

23.   KF Danbury is governed by an operating agreement, dated as of October 14, 1998 (the "Danbury Operating Agreement"). A true and correct copy of the Danbury Operating Agreement is attached hereto as Exhibit A. In connection with the execution of the Danbury Operating Agreement, FHC Danbury contributed an initial $300,000 of capital to KF Danbury and LJA contributed an initial $200,000 of capital.

24.   KF Newark is governed by a similar operating agreement, dated as of December 6, 2002 (the "Newark Operating Agreement" and, together with the Danbury Operating Agreement, the "Operating Agreements"). A true and correct copy of the Newark Operating Agreement is attached hereto as Exhibit B. In connection with the execution of the Newark Operating Agreement, FHC Newark was to contribute an initial $650 of capital to KF Newark and LJA Newark was to contribute an initial $350 of capital.

7

25.     Section 4.1(a) of the Operating Agreements provides that LJA[3] "shall be the Manager of the Compan[ies] and shall be responsible for the day-to-day operation of the Compan[ies] and the construction and development of the Hotel[s]." The Operating Agreements further provide in Section 1.1 that the FHC entities will initially own 50% of the economic and voting interest in each of the Companies and will be the sole member other than the LJA entities. That "Percentage Interest" has not changed.

26.     Pursuant to Section 8.6 of the Operating Agreements, LJA is designated as the tax matters member (the "Tax Matters Member") for both KF Danbury and KF Newark, for federal tax purposes.

### LJA's Obligations to Maintain Financial Records and to Report to FHC

27.     The Operating Agreements obligate LJA, as the Managing Member of both KF Danbury and KF Newark, to "maintain or cause to be maintained accurate and complete (i) minutes and records of the Members, and (ii) books and records of account of the Compan[ies]." Danbury Op. Agmt. § 8.3; Newark Op. Agmt. § 8.3. Section 8.3 further requires that the Companies' books and records be made available during regular business hours "upon written request for examination and copy by any Member . . . ." *Id.*

28.     In its capacity as Managing Member of KF Danbury and KF Newark, LJA is also required to prepare and deliver reports to FHC, including, among others: (i) weekly occupancy rate reports; (ii) monthly reports showing the results of operations for the Hotels,

---

[3]     The actual language of Section 4.1(a) states that "*Klein* . . . shall be the Manager of the Company and shall be responsible for the day-to-day operation of the Compan[ies] and the construction and development of the Hotel[s]" (emphasis added). Section 1.1, however, provides that Klein "shall mean LJA . . . ." Klein and LJA therefore both operate as the Manager of KF Danbury and KF Newark and are synonymous for purposes of reading and interpreting the Operating Agreements.

including gross operating income, net operating income, balance sheet information, and information regarding each Hotel's occupancies and average room rents, which are to be delivered within 30 days after the end of each calendar month; (iii) quarterly reports containing an unaudited statement of income and expense and showing the results of operations for the quarter and for the prior quarters in the calendar year that are to be delivered no later than 30 days after the end of each calendar quarter; and (iv) yearly reports containing an audited statement of income and expense showing the results of operations for the year that are to be delivered within 60 days after the end of each Fiscal Year.[4]  Danbury Op. Agmt. § 8.4(b)-(e); Newark Op. Agmt. § 8.4(b)-(e).

29.     LJA, as Managing Member of KF Danbury and KF Newark, must also supply FHC, no later than March 15 of each year, with certain tax information from the Companies' prior fiscal year so that FHC can prepare its annual tax returns.  Specifically, LJA must provide FHC with a "computation of the distributions to such Member and the allocation to such Member of the Net Profits or Net Losses, as the case may be, and the Gain or Loss recognized by or allocated to the Compan[ies] on the sale of any Company Property during such prior Fiscal Year."  Danbury Op. Agmt. § 8.4(a); Newark Op. Agmt. § 8.4(a).

30.     As detailed in Paragraphs 60 through 64 below, LJA did not comply with any of these provisions.  When FHC sought to inspect the books and records of the Companies in early 2007, Klein told FHC that the books and records had not been compiled and therefore did not exist.  In early 2007, Klein also told the Companies' outside accountants that year-end audits of the Hotels (for fiscal year 2006) were not necessary, and that the auditors did not need to

---

[4]     Pursuant to Section 1.1 of the Operating Agreements, the Companies' Fiscal Year is defined as the calendar year, *i.e.*, January 1 through December 31.

schedule visits to the Hotels.  Only after FHC filed this lawsuit did LJA begin to prepare and produce the Companies' financial reports to FHC and re-engage the Companies' outside auditors to prepare year-end audited financials.

### Provisions for Capital Calls

31.    The Operating Agreements also contain provisions permitting capital calls in the event the Companies need additional funds to cover certain types of expenses.[5] Specifically, either Member of KF Danbury or KF Newark may call for an additional capital contribution by making a written demand setting forth, among other things, "the aggregate amount of funds required and the specific reason for such expenditure, together with reasonable supporting documentation." Danbury Op. Agmt. § 5.2(c), (d); Newark Op. Agmt. § 5.2(c), (d).

32.    Pursuant to Section 5.2(c) of the Danbury Operating Agreement, LJA Danbury is required to contribute 40% of the amount of any additional capital contribution, and FHC Danbury is required to contribute the remaining 60%.  In connection with the refinancing of the Danbury property in 2002, however, the parties agreed to modify the percentages to be contributed to future capital calls so that both LJA Danbury and FHC Danbury would contribute 50% of any additional capital calls.

33.    Pursuant to Section 5.2(c) of the Newark Operating Agreement, LJA Newark was initially required to contribute 35% of the amount of any additional capital contribution, and FHC Newark was required to contribute the remaining 65%.  In accordance with Section 5.2(c), however, the Members' respective percentages for capital calls are presently 50/50.

---

[5]    The types of expenses that may be paid by initiating an additional capital call are set forth in Section 4.4 of the Operating Agreements.

## LJA Danbury Initiates a Series of Capital Calls but Fails to Make
## Its Contractually Required Contributions

34.    Beginning in mid-November 2006, LJA Danbury commenced a series of additional capital calls, all purportedly to cover KF Danbury's expenses.

35.    In November 2006, in response to two separate capital calls initiated by LJA Danbury, FHC Danbury contributed $155,550 in cash to KF Danbury.  FHC Danbury participated in these capital calls to ensure that the Danbury Hotel (and KF Danbury) did not fall behind paying their expenses while the sale of the Hotel was being finalized, with the understanding that LJA Danbury was also contributing $155,550, as required by the Danbury Operating Agreement.

36.    In December 2006, in response to another capital call initiated by LJA Danbury, FHC Danbury contributed an additional $200,000 of capital to KF Danbury.  As before, FHC Danbury contributed these funds to ensure that the Danbury Hotel (and KF Danbury) did not fall behind paying their expenses while the sale of the Hotel was being finalized, with the understanding that LJA Danbury was also contributing $200,000, as required by the Danbury Operating Agreement.

37.    At the time of the November and December capital calls, LJA Danbury provided FHC Danbury with no documentation as to why the KF Danbury needed additional cash from FHC Danbury, instead promising FHC Danbury that it would "true up all [accounts] in the next 24 hours."  Despite this assurance, prior to the filing of this litigation, FHC Danbury did not receive any records from LJA Danbury indicating the purpose for the November and December 2006 capital calls, or documenting LJA Danbury's contributions in response to those capital calls.

11

38.     In fact, apart from a $25,000 contribution made on December 6, 2007, LJA Danbury did not contribute any cash in response to the November and December capital calls.

39.     In January 2007, LJA Danbury delivered notices of two more capital calls to FHC Danbury, asking for an additional $290,000. Once again, LJA Danbury (contrary to the Danbury Operating Agreement) gave little or no explanation of the need for the additional capital and provided no supporting documentation. Despite this deficiency, FHC Danbury reluctantly contributed another $290,000 in response to the capital calls so as not to jeopardize the ongoing negotiations for the sale of the Hotels to the Buyer, with the understanding that LJA Danbury was also contributing $290,000, as required by the Danbury Operating Agreement.

40.     In fact, LJA Danbury did not contribute any cash in response to either of these capital calls.

41.     In February 2007, LJA Danbury sent notice of another capital call, this time in the amount of $125,000. Once again, in violation of the Danbury Operating Agreement, LJA Danbury provided no reason for the capital call, other than that the funds were needed for unspecified "operating purposes," and provided no supporting documentation. Having contributed over $645,550 in cash to KF Danbury since November 2006, and having received no explanation or documentation about where the funds were going or whether LJA Danbury had been contributing its 50% share, FHC Danbury did not make this additional capital contribution. LJA Danbury also did not contribute any cash to this capital call. In fact, on February 1, 2007, LJA Danbury wrote a check from KF Danbury's account for $50,000 to a Klein affiliate (Fairchild) and posted it to an account entitled "Due from Fairchild" without FHC Danbury's prior approval, in violation of the Danbury Operating Agreement.

42.     All told, during 2006 and 2007, FHC Danbury contributed $725,550 in cash to KF Danbury in response to capital calls initiated by LJA Danbury.  Moreover, $645,550 of these payments occurred between mid-November 2006 and mid-January 2007.  LJA Danbury has provided FHC Danbury no explanation as to what those funds were used for or why such a large sum was necessary to fund the operations of the Danbury Hotel and KF Danbury or to prepare the Danbury Hotel for sale during those months.  By comparison, FHC Danbury contributed a total of $498,000 to KF Danbury in 2003, 2004 and 2005 combined.

43.     Based on FHC's review of the documents produced by LJA to date, Klein contributed only $105,000 to KF Danbury during 2006 and 2007.  Klein has therefore failed to fund $620,550 of his own capital calls in direct violation of the Danbury Operating Agreement.

44.     Defendants have not only failed to meet their funding obligations under the Danbury Operating Agreement in connection with the additional capital calls they initiated, but have also authorized large payments – the details of which have not yet been provided to FHC Danbury – to Klein or his affiliates.

45.     For example, during the on-site inspection of KF Danbury's books and records that took place at the Danbury Hotel on May 9, 2007, FHC Danbury discovered that LJA Danbury made unauthorized payments in 2006 and 2007 to an affiliate of Klein totaling approximately $160,000 that were coded as "Other Marketing."  FHC Danbury requested the supporting documentation for these expenses during the inspection, but was told that the invoices were kept at Defendants' office in New York City, notwithstanding the fact that Defendants had previously told FHC Danbury that none of the Companies' documents were kept at Defendants' Manhattan office.

13

46.     FHC Danbury's inspection also revealed that, during 2006, Defendants wrote checks payable to cash totaling $87,000, some of which were endorsed by the Danbury Hotel's general manager, and others which were endorsed by Klein and/or his assistant.  These payments are not authorized by the Danbury Operating Agreement and were not approved by FHC.

**LJA Newark Requests Additional Capital Contributions from FHC Newark**

47.     In December 2006, in response to another capital call, FHC Newark contributed another $75,000 to KF Newark, with the understanding that LJA Newark was also contributing $75,000, as required by the Newark Operating Agreement.  LJA Newark informed FHC Newark that the funds were needed to "fund the shortfall in debt service."  Again, LJA Newark failed to provide FHC Newark with any supporting documentation for the capital call, as required by the Newark Operating Agreement.  LJA Newark also failed to provide FHC Newark with any records indicating the parties' respective contributions in connection with the 2006 capital calls initiated by LJA Newark.

48.     LJA Newark did not contribute any cash in response to the December 2006 capital call.

49.     In January 2007, LJA Newark requested an additional $142,000 from FHC.  LJA Newark offered FHC Newark only a cursory explanation as to why the funds were needed and did not supply FHC Newark with any supporting documentation, as required by the Newark Operating Agreement.  FHC Newark reluctantly made this contribution, with the understanding that LJA Newark was also contributing $142,000 in response to this capital call, as required by the Newark Operating Agreement.

14

50.     In fact, LJA Newark contributed no cash in response to the January 2007 capital call.

51.     FHC Newark paid the substantial sums requested in these capital calls to ensure that the Newark Hotel (and KF Newark) did not fall behind paying their expenses while the sale of the Hotel was being finalized.

52.     Since March 2006, FHC Newark has contributed $467,000 in response to LJA Newark's capital calls.  By comparison, prior to these recent capital calls, no funds were required by KF Newark to cover the operations (as opposed to the construction) of the Newark Hotel since the opening of the Hotel in 2004.

53.     Based on FHC's review of the documents produced by LJA to date, Klein contributed only $250,000 to KF Newark during 2006 and 2007.  Klein has therefore failed to fund $217,000 of his own capital calls in direct violation of the Newark Operating Agreement.

54.     Moreover, during the on-site inspection of KF Newark's books and records that took place at the Hotel on May 11, 2007, FHC Newark discovered that LJA Newark made unauthorized payments to an affiliate of Klein totaling $447,500 that were coded as "Marketing Fee Other" and "Management Consulting Fee."  Despite FHC Newark's request, Defendants have not provided FHC Newark with any supporting documentation for these expenses and was told that the invoices were kept at Defendants' office in New York City, notwithstanding the fact that Defendants had previously told FHC Newark that none of the Companies' documents were kept at Defendants' Manhattan office.

55.     FHC Newark's inspection also revealed that, during 2006 and 2007, Defendants wrote checks payable to cash totaling over $132,000.  These payments are not authorized by the Newark Operating Agreement and were not approved by FHC Newark.

56.     In addition, FHC Newark learned that Defendants caused KF Newark to borrow an additional $387,000 from the Bank without first obtaining FHC's consent as required by Section 4.2 of the Newark Operating Agreement.  Based on the records made available to FHC Newark during its inspection of the Newark Hotel's books and records, Defendants caused KF Newark to borrow $300,000 in July 2006.  However, the funds do not appear to have been used to pay down the Company's creditors, as they were deposited in KF Newark's bank account and then wired the same day to LJA Newark.  In August 2006, Defendants caused KF Newark to borrow an additional $87,000.  FHC Newark has not been able to confirm from the documents produced by Defendants to date where these funds went.

### LJA Claims It Is Not Required to Contribute Cash to the Capital Calls

57.     FHC's review of the documents produced by Defendants in the litigation to date, as well as those made available to FHC during the on-site inspections at the Hotels, confirms that LJA funded only $105,000 in response to the capital calls it initiated for KF Danbury (approximately 14% of the total amount they were required to contribute under the Danbury Operating Agreement).   Similarly, the documents indicate that LJA funded only $250,000 in response to the capital calls it initiated for KF Newark (just over 50% of the total amount they were required to contribute under the Newark Operating Agreement).

58.     Klein has now taken the position that he can unilaterally elect to make capital contributions "in kind" by contributing his "services" or "time" to the Companies rather than cash.  In response to FHC's complaints about LJA's protracted failure to provide FHC with any reports of operations for the Hotels and to explain where the funds that the Companies should have received from the capital calls went, Klein responded on behalf of LJA with a glib email claiming that "[I] have in over 2 million in cash and prizes (time)."

16

59.     Nothing in the Operating Agreements gives Defendants this type of authority.  If Defendants have credited LJA's capital accounts for unspecified "services" without actually contributing any funds to KF Danbury or KF Newark, they did so in violation of the Operating Agreements and have engaged in a series of self-dealing transactions that implicate the duty of loyalty they owe to both FHC and the Companies and are subject to the entire fairness test.

### LJA Admits that It Failed to Keep the Companies' Financial Records Properly

60.     Throughout 2006 and 2007, FHC requested that LJA, as Manager of the Companies, send monthly and quarterly reports for KF Danbury and KF Newark, as required by Section 8.4 of the Operating Agreements.  LJA did not respond to FHC's requests, nor did it provide FHC with the requested information.  Prior to the filing of this action, the last monthly report that FHC received for KF Danbury and KF Newark was in May 2006.

61.     LJA also ignored FHC's requests for KF Danbury's and KF Newark's audited statements of income and expense for fiscal year 2006, and has failed to provide FHC with the Companies' audited statements within the time proscribed by Section 8.4(e) of the Operating Agreements.  Similarly, despite FHC's request, LJA also failed to deliver to FHC the tax information described in Section 8.4(a) of the Operating Agreements before the March 15, 2007 deadline.  Notwithstanding the fact that outside auditors have prepared the Companies' audited financials every year since their formation, as required by the Operating Agreements, LJA told the Companies' outside accountants that audits were not needed for fiscal year 2006. The filing of this litigation has prompted LJA to re-engage the auditors to begin preparing the Companies' year-end financial statements and tax documents.

17

62.    In mid-February 2007, FHC formally requested, in accordance with Section 8.3 of the Operating Agreements, that LJA make the Companies' books and records available to FHC's accountants.  On February 20, 2007, a representative of FHC appeared at LJA's offices to inspect the Companies' books and records.  During that meeting, Klein admitted that he had not kept the Companies' books and records up to date, and that therefore no records were available for review.

63.    On April 2, 2007, LJA again failed to make books and records available for inspection, as described below.

64.    LJA's interrogatory responses, dated April 30, 2007, verify that LJA did not maintain the Companies' books and records, nor did it comply with its obligations under the Operating Agreements to provide FHC with certain financial reports.  In addition, it is clear from LJA's interrogatory responses that many of the reports that LJA was required to prepare and provide to FHC were not prepared at all and/or were provided to FHC only in response to this lawsuit.  For example, although LJA claims to have prepared monthly reports for the Companies on a regular basis shortly after the month's end, the bulk of the reports were not provided to FHC until late April 2007, in connection with LJA's document production in this action.  LJA has offered no explanation as to why the monthly reports, if prepared on a timely basis, were not furnished to FHC, as required by the Operating Agreements.

### The Situation with the Bank Deteriorates into Crisis

65.    On March 23, 2007, the Bank informed FHC that the Companies were significantly past due on their mortgage payments on their respective properties, and insisted that both loans be brought current immediately.  On Sunday, March 25, 2007, Feinberg spoke with Klein via telephone to address the outstanding issues surrounding KF Danbury and KF Newark.

18

During that conversation, Klein promised that he would contact the Bank immediately to work out the late mortgage payment issues. Klein also promised that FHC's accountants would be permitted access to KF Danbury's and KF Newark's books and records sometime in the coming week, and promised to bring FHC up to date on the status of KF Danbury's and KF Newark's financial accounts as well as the capital contributions of each Member.

66.     Klein and LJA did not fulfill any of these promises.

67.     In violation of Klein's promise to address the past-due mortgage payments, Klein and LJA failed to contact the Bank – despite receiving numerous phone messages and emails from the Bank and FHC. On Friday, March 30, 2007, the Bank contacted Klein and demanded that KF Danbury and KF Newark make a payment of $600,000 by the end of the day to avoid a possible default. Despite the seriousness of the situation, Klein declined to make the payment and did not contact FHC to discuss the Bank's demand. Later that afternoon, FHC spoke with the Bank and was told that both mortgages had been transferred to the Bank's workout department. The loans are now in default and formal declarations of default have been issued.

68.     A default by KF Danbury and KF Newark under the loan agreements with the Bank has disastrous consequences for the Companies, FHC and Feinberg. Under KF Newark's Franchise Agreement with Marriott, the hotel chain may terminate the agreement if KF Newark defaults on its loan obligations. Similarly, upon and information and belief, if KF Danbury defaults on its loan obligations, Hilton is permitted to terminate its Franchise Agreement with KF Danbury. Without the backing of a national chain, the Hotels' (and the Companies') revenues will decline significantly and the Hotels will likely be forced to shut down. Moreover, to secure the mortgages on the Hotels, Feinberg has executed personal

19

guaranties for 50% of the KF Newark loan and for up to $2,500,000 of the KF Danbury loan. Under the Feinberg Guaranties, Feinberg will be potentially liable for guaranty payments to the Bank of approximately $2.5 million if KF Danbury defaults on the loan, and similar payments of approximately $9.5 million if KF Newark defaults.

69.     Klein also failed to fulfill his promise to provide FHC with access to the Companies' books and records during the week of March 26, 2007.  Fearing that Klein was not going to make good on his promise to allow FHC access to the Companies' books, on Thursday, March 29, 2007, LJA sent FHC two notices (one for KF Danbury and one for KF Newark), pursuant to Section 8.6 of the Operating Agreements, requesting once again that FHC be allowed to examine certain of the Companies books and records, including (i) bank statements, (ii) check registers, (iii) trial balances, and (iv) correspondence and other documents relating to LJA's efforts to sell the Hotels to the Buyer, at 10:00 a.m. on the following Monday (April 2).

70.     At 10:00 a.m. on Monday, April 2, 2007, a representative of FHC went to LJA's office to inspect the Companies' books and records but was turned away after being told there were no books and records available for review.  Although the FHC representative pressed for copies of the Companies' bank statements, the LJA representative claimed that his "hands [we]re tied," and FHC walked away empty-handed.

71.     By letters dated April 9, 2007, the Bank informed Feinberg that the loans were in default, demanded full payment of the principal due on the loans, along with interest and late charges, and gave notice that it may begin charging the default rate of interest (which is 5 percentage points higher than the rates on the loans).  As of April 9, 2007, the total amount due on the KF Danbury loan was $9,803,063.69, and the total amount due on the KF Newark loan was $19,067,950.33.

72.     When Klein did not contact the Bank to discuss payment of the past due amounts, the Bank's workout department contacted Feinberg on April 30, 2007, requesting immediate payment of the outstanding amounts due under the loans.  The Bank informed Feinberg that it was prepared to turn the loans over to its lawyers if payment was not made.  In response, Feinberg contacted Klein to discuss possible payment options.  Over the next several days, Feinberg made several proposals to Klein in which LJA and FHC would contribute funds to cover the interest owing on the loans.  Klein did not accept any of these proposals.

73.     On May 2, 2007, the Bank sent an email to Feinberg and Klein informing them that if the loans were not brought current by the end of the week, the Bank would begin implementing the default interest rate and commence collection suits against Feinberg and Klein as guarantors of the loans.  Despite this warning, Klein did not agree to contribute funds to the Companies so that they could be paid out to the Bank.

74.     On May 4, 2007, the Bank emailed Feinberg and Klein with its final proposal:  (i) pay $829,804.36 on the KF Newark loan to bring the loan current; and (ii) pay $365,702.37 in outstanding interest and late charges on the KF Danbury loan.  Although Feinberg advised Klein that he was ready and willing to contribute his 50% share (just under $600,000) if Klein were to contribute an equal amount, Klein did not agree to pay his 50% share before the end-of-the-day deadline imposed by the Bank, and no payment to the Bank has been made.

75.     The Hotels are the only assets of the Companies.  In order for the Companies to pay off the balance of the now past-due loans and for Feinberg to avoid exposure in a possible collection suit on the Feinberg Guaranties, the Hotels will need to be sold as soon as practicable and the proceeds paid to the Bank.

21

## FHC's Recent Review of the Companies' Books and Records
### Confirms Klein's Wrongdoing

76.     FHC has now been able to review certain books and records of the Companies and has confirmed that Defendants have systematically engaged in a course of conduct designed to strip the Companies of their funds and divert them to Klein or his affiliates. FHC has learned that Defendants have diverted hundreds of thousands of dollars from the Companies' accounts to LJA or one of Klein's affiliates, despite having no basis under the Operating Agreements to do so.  In addition, LJA has shirked its obligations to contribute to the capital calls that it initiated.  As explained above in Paragraphs 32 and 33, since 2002, FHC and LJA have each been obligated under the Operating Agreements to contribute 50% of any additional capital calls.   Notwithstanding this requirement, during 2006 and 2007, FHC's contributions to the Companies total more than three times what LJA put in -- $1,192,550 (from FHC) versus $355,000 (from LJA).

77.     Upon information and belief, if LJA made its required capital contributions, and if the contributions of FHC and LJA were properly applied and funds had not been improperly diverted to Klein and his affiliates, KF Danbury and KF Newark would have been able to pay the Hotels' expenses as they became due.

78.     Moreover, notwithstanding FHC's recent sizable capital contributions, LJA has caused the Companies to default on their payment obligations to suppliers and creditors. In January and February 2007, FHC received letters from several of KF Newark's vendors regarding outstanding balances owed by KF Newark and threatening to suspend delivery and/or pursue legal action against KF Newark.  Based on the documents produced by LJA to date, the total amount of KF Danbury's accounts payable as of April 24, 2007 is $262,854.74.  Similarly, the documents show that the total amount of KF Newark's accounts payable as of that same date

is a staggering $1,942,000. If LJA had been managing the Companies properly in accordance with its fiduciary and contractual duties, these bills and expenses would have been paid in due course.

79.     As described in more detail in Paragraph 56 herein, FHC has also learned that Defendants caused KF Newark to borrow an additional $387,000 from the Bank without first obtaining FHC's consent as required by Section 4.2 of the Newark Operating Agreement. Defendants' unilateral action has severe consequences – the balance due under KF Newark's loan with the Bank has increased and, in turn, the amount of Feinberg's potential liability under the Feinberg Guaranties has also increased.

80.     The documents produced by LJA also show, and the Bank has now confirmed, that both KF Danbury and KF Newark have failed to make required mortgage payments on their respective properties and/or that their bank accounts were overdrawn. If LJA had been managing the Companies properly in accordance with its fiduciary and contractual duties, these bills and expenses would also have been paid in due course.

81.     LJA's failure to manage KF Danbury's and KF Newark's financial accounts properly has also caused the Companies to incur significant late fees, penalties, and interest charges with vendors, the Bank, and the States of New Jersey and Connecticut. Based on FHC's review of the documents produced by Defendants, these fees and penalties amount to several hundreds of thousands of dollars. Despite LJA's representations that it would reimburse the Companies for these expenses, LJA has not done so and has refused to respond to FHC's requests or provide FHC with documentation that it has reimbursed KF Danbury and KF Newark for these expenses – all of which could have been prevented if LJA had been managing the Companies properly.

23

### Demand Excused

82.     To the extent any of the claims alleged against Defendants are deemed to be derivative in nature, demand is excused.  FHC and LJA are the only members of the Companies, and thus demand on LJA (as the Companies' Managing Members) would be futile. LJA is not able to disinterestedly and independently consider a demand because (i) it has substantially profited as a result of the actions challenged herein, (ii) the amended complaint alleges that it engaged in deliberate wrongdoing in violation of the Operating Agreements and its fiduciary duties, and (iii) the amended complaint alleges that it has acted other than in good faith. Accordingly, LJA's actions were not the product of a valid business judgment, and LJA (and its affiliates) face a substantial risk of personal liability.

### COUNT I

### (Breach of Fiduciary Duty of Loyalty and Good Faith against Defendants LJA Danbury and Klein)

83.     FHC Danbury repeats and realleges the allegations contained in paragraphs 1 through 82 as though fully set forth herein.

84.     Section 4.1 of the Danbury Operating Agreement provides that Klein shall be the Manager of KF Danbury.  Section 1.1, in turn, states that "Klein" shall mean LJA Danbury.  Defendant LJA Danbury is controlled by and acts through its principal, Klein, and both operate as the Manager of KF Danbury.

85.     As the Manager of KF Danbury, defendants LJA Danbury and Klein owe fiduciary duties of loyalty and good faith to KF Danbury and to its co-member, FHC Danbury. These fiduciary duties require Defendants LJA Danbury and Klein to place the interests of KF Danbury and its members above their own interests when making decisions on behalf of KF

Danbury and to refrain from engaging in self-dealing transactions on terms that are not entirely fair.

86.   In violation of their duties of loyalty and good faith, LJA Danbury and Klein have embarked on a course of conduct and engaged in self-dealing transactions that were intended to improperly divert Company funds and enrich themselves at the expense of FHC Danbury and Feinberg.  Among other things, LJA Danbury and Klein have:  (i) paid out large sums of cash to affiliates of Klein from the Company's accounts; (ii) instituted capital calls and then failed to contribute their proportionate share of the funds; (iii) caused the Company to borrow additional funds without FHC's consent; (iv) run up the accounts payable for the Company by failing to pay the Company's bills and expenses as they became due; (v) failed to make monthly mortgage payments to the Bank; and (vi) caused the Company to default on its loan obligations.

87.   As a direct and proximate result of the foregoing, FHC Danbury has suffered damages in an amount to be determined at trial.

88.   FHC Danbury has no adequate remedy at law.

## COUNT II

### (Breach of Fiduciary Duty of Loyalty and Good Faith against Defendants LJA Newark and Klein)

89.   FHC Newark repeats and realleges the allegations contained in paragraphs 1 through 88 as though fully set forth herein.

90.   Section 4.1 of the Newark Operating Agreement provides that Klein shall be the Manager of KF Newark.  Section 1.1, in turn, states that "Klein" shall mean LJA Newark. Defendant LJA Newark is controlled by and acts through its principal, Klein, and both operate as the Manager of KF Newark.

25

91.     As the Manager of KF Newark, defendants LJA Newark and Klein owe fiduciary duties of loyalty and good faith to KF Newark and to its co-member, FHC Newark. These fiduciary duties require LJA Newark and Klein to place the interests of KF Newark and its members above their own interests when making decisions on behalf of KF Newark and to refrain from engaging in self-dealing transactions on terms that are not entirely fair.

92.     In violation of their duties of loyalty and good faith, LJA Newark and Klein have embarked on a course of conduct and engaged in self-dealing transactions that were intended to improperly divert Company funds and enrich themselves at the expense of FHC Newark and Feinberg.  Among other things, LJA Newark and Klein have:  (i) paid out large sums of cash to affiliates of Klein from the Company's accounts; (ii) instituted capital calls and then failed to contribute their proportionate share of the funds; (iii) caused the Company to borrow additional funds without FHC's consent; (iv) run up the accounts payable for the Company by failing to pay the Company's bills and expenses as they became due; (v) failed to make monthly mortgage payments to the Bank; and (vi) caused the Company to default on its loan obligations.

93.     As a direct and proximate result of the foregoing, FHC Newark has suffered damages in an amount to be determined at trial.

94.     FHC Newark has no adequate remedy at law.

## COUNT III

**(Breach of the Fiduciary Duty of Care against Defendants LJA Danbury and Klein)**

95.     FHC Danbury repeats and realleges the allegations contained in paragraphs 1 through 94 as though fully set forth herein.

26

96.     Section 4.1 of the Danbury Operating Agreement provides that Klein shall be the Manager of KF Danbury.   Section 1.1, in turn, states that "Klein" shall mean LJA Danbury.   Defendant LJA Danbury is controlled by and acts through its principal, Klein, and both operate as the Manager of KF Danbury.

97.     As the Manager of KF Danbury, defendants LJA Danbury and Klein owe a fiduciary duty of care to KF Danbury and to its co-member, FHC Danbury.   Their fiduciary duty of care requires LJA Danbury and Klein to use that amount of care that an ordinary prudent person in like circumstances would have exercised, and to consider all material information that was reasonably available when making decisions on behalf of KF Danbury.   Not only did LJA Danbury and Klein fail to act with care, they also acted with gross negligence and in deliberate disregard of their fiduciary responsibilities to KF Danbury's co-member, FHC Danbury.

98.     In violation of their duty of care, LJA Danbury and Klein have, among other things:  (i) run up the accounts payable for the Company by failing to pay the Company's bills and expenses as they became due; (ii) failed to make monthly mortgage payments to the Bank; (iii) caused the Company to default on its loan obligations; (iv) failed to maintain accurate books and records of the Company; and (v) failed to provide FHC Danbury with copies of certain financial reports as required by the Danbury Operating Agreement.   These acts constitute gross negligence and willful misconduct on the part of LJA Danbury and Klein.

99.     As a direct and proximate result of the foregoing, FHC Danbury has suffered damages in an amount to be determined at trial.

100.    FHC Danbury has no adequate remedy at law.

## COUNT IV

**(Breach of the Fiduciary Duty of Care against Defendants LJA Newark and Klein)**

101.    FHC Newark repeats and realleges the allegations contained in paragraphs 1 through 100 as though fully set forth herein.

102.    Section 4.1 of the Newark Operating Agreement provides that Klein shall be the Manager of KF Newark.  Section 1.1, in turn, states that "Klein" shall mean LJA Newark. Defendant LJA Newark is controlled by and acts through its principal, Klein, and both operate as the Manager of KF Newark.

103.    As the Manager of KF Newark, defendants LJA Newark and Klein owe a fiduciary duty of care to KF Newark and to its co-member, FHC Newark.  Their fiduciary duty of care requires LJA Newark and Klein to use that amount of care that an ordinary prudent person in like circumstances would have exercised, and to consider all material information that was reasonably available when making decisions on behalf of KF Newark.  Not only did LJA Newark and Klein fail to act with care, they also acted with gross negligence and in deliberate disregard of their fiduciary responsibilities to KF Newark's co-member, FHC Newark.

104.    In violation of their duty of care, LJA Newark and Klein have, among other things:  (i) run up the accounts payable for the Company by failing to pay the Company's bills and expenses as they became due; (ii) failed to make monthly mortgage payments to the Bank; (iii) caused the Company to default on its loan obligations; (iv) failed to maintain accurate books and records of the Company; and (v) failed to provide FHC Newark with copies of certain financial reports as required by the Newark Operating Agreement.  These acts constitute gross negligence and willful misconduct on the part of LJA Newark and Klein.

105.   As a direct and proximate result of the foregoing, FHC Newark has suffered damages in an amount to be determined at trial.

106.   FHC Newark has no adequate remedy at law.

## COUNT V

**(Breach of the Operating Agreements against Defendants LJA Danbury and Klein)**

107.   FHC Danbury repeats and realleges the allegations contained in paragraphs 1 through 106 as though fully set forth herein.

108.   Pursuant to Section 8.3 of the Danbury Operating Agreements, LJA Danbury and Klein, as the Managing Member of KF Danbury, are required to "maintain or cause to be maintained accurate and complete (i) minutes and records of the Members, and (ii) books and records of account of the Company . . . in accordance with sound business practices . . . ." Danbury Op. Agmt. § 8.3(a).  Moreover, "all records of the Company . . . shall be available upon written request for examination and copy by any Member or their duly authorized representatives, at any reasonable time during normal business hours." *Id.*

109.   In addition, Section 8.4 of the Danbury Operating Agreement imposes contractual obligations on LJA Danbury and Klein to prepare and deliver to FHC Danbury certain financial reports of KF Danbury, including monthly and quarterly reports.  Section 8.4 of the Danbury Operating Agreement also requires LJA Danbury and Klein to provide FHC Danbury with yearly audited statements of KF Danbury's income and expenses and relevant yearly tax information.

110.   FHC Danbury has fully performed all of its obligations under the Danbury Operating Agreement.

111.    LJA Danbury and Klein have breached their contractual obligations under the Danbury Operating Agreement by, among other things:  (i) denying FHC Danbury access to KF Danbury's books and records; (ii) failing to maintain a system of books and records documenting KF Danbury's income and expenses; (iii) failing to prepare and deliver monthly and quarterly reports regarding KF Danbury's operations to FHC Danbury; (iv) failing to provide FHC Danbury with KF Danbury's audited financials and relevant tax information for fiscal year 2006 in accordance with the deadlines set forth in the Danbury Operating Agreement; and (v) failing to contribute $620,550 in response to the additional capital calls they initiated.

112.    FHC Danbury has been damaged as a result of LJA Danbury's and Klein's breach of the Danbury Operating Agreement.

## COUNT VI

### (Breach of the Operating Agreements against Defendants LJA Newark and Klein)

113.    FHC Newark repeats and realleges the allegations contained in paragraphs 1 through 112 as though fully set forth herein.

114.    Pursuant to Section 8.3 of the Newark Operating Agreements, LJA Newark and Klein, as the Managing Member of KF Newark, are required to "maintain or cause to be maintained accurate and complete (i) minutes and records of the Members, and (ii) books and records of account of the Company . . . in accordance with sound business practices . . . ." Newark Op. Agmt. § 8.3(a). Moreover, "all records of the Company . . . shall be available upon written request for examination and copy by any Member or their duly authorized representatives, at any reasonable time during normal business hours." *Id.*

115.    In addition, Section 8.4 of the Newark Operating Agreement imposes contractual obligations on LJA Newark and Klein to prepare and deliver to FHC Newark certain

30

financial reports of KF Newark, including monthly and quarterly reports.  Section 8.4 of the Newark Operating Agreement also requires LJA Newark and Klein to provide FHC Newark with yearly audited statements of KF Newark's income and expenses and relevant yearly tax information.

116.   FHC Newark has fully performed all of its obligations under the Newark Operating Agreement.

117.   LJA Newark and Klein have breached their contractual obligations under the Newark Operating Agreement by, among other things:  (i) denying FHC Newark access to KF Newark's books and records; (ii) failing to maintain a system of books and records documenting KF Newark's income and expenses; (iii) failing to prepare and deliver monthly and quarterly reports regarding KF Newark's operations to FHC Newark; (iv) failing to provide FHC Newark with KF Newark's audited financials and relevant tax information for fiscal year 2006 in accordance with the deadlines set forth in the Newark Operating Agreement; (v) failing to contribute $217,000 in response to the additional capital calls they initiated; and (vi) causing KF Newark to incur additional indebtedness without the prior consent of FHC Newark.

118.   FHC Newark has been damaged as a result of LJA Newark's and Klein's breach of the Newark Operating Agreement.

## COUNT VII

**(Removal of LJA Danbury and Klein as Manager of KF Danbury pursuant to 6 _Del. C._ §18-110)**

119.   FHC Danbury repeats and realleges the allegations contained in paragraphs 1 through 118 as though fully set forth herein.

120.   Section 18-110(a) of the Delaware Limited Liability Act governs the removal of a manager of a Delaware limited liability company and provides, in relevant part:

31

> Upon application of any member or manager, the Court of Chancery may hear and determine . . . the right of any person to become or continue to be a manager of a limited liability company . . . ; and to that end make such order or decree in any such case as may be just and proper, with power to enforce the production of any books, papers and records of the limited liability company relating to the issue.

6 *Del. C.* §18-110.

121. As the Managing Member of KF Danbury, LJA Danbury and Klein owe fiduciary duties of care, loyalty and good faith to FHC Danbury and KF Danbury, which prevent LJA Danbury and Klein from taking actions to promote their own interests at the expense of KF Danbury and require LJA Danbury and Klein to exercise reasonable skill and care in their capacity as Managing Member.

122. In addition, pursuant to the Danbury Operating Agreement, LJA Danbury and Klein are required to provide FHC Danbury with information regarding the purpose of any additional capital calls and to contribute its proportionate share of any additional capital calls. The Danbury Operating Agreement also imposes contractual obligations upon LJA Danbury and Klein to: (i) maintain appropriate books and records; (ii) give FHC Danbury access to those books and records; (iii) provide FHC Danbury with monthly and quarterly reports regarding KF Danbury's performance and the operations of the Danbury Hotel; and (iv) furnish FHC Danbury with an audited statement of KF Danbury's income and expenses and relevant tax information for fiscal year 2006 prior to the deadlines set forth in the Danbury Operating Agreement.

123. As alleged in more detail herein, LJA Danbury and Klein have violated both the requirements imposed by the Danbury Operating Agreement and their fiduciary duties as Manager.

124. Based on these actions, LJA Danbury and Klein should not be permitted to continue as the Manager of KF Danbury.

32

125.    Similarly, LJA Danbury and Klein should not be permitted to continue as the Tax Matters Member of KF Danbury.

126.    FHC Danbury has no adequate remedy at law.

## COUNT VIII

### (Removal of LJA Newark and Klein as Manager of KF Newark pursuant to 6 *Del. C.* §18-110)

127.    FHC Newark repeats and realleges the allegations contained in paragraphs 1 through 126 as though fully set forth herein.

128.    Section 18-110(a) of the Delaware Limited Liability Act governs the removal of a manager of a Delaware limited liability company and provides, in relevant part:

> Upon application of any member or manager, the Court of Chancery may hear and determine . . . the right of any person to become or continue to be a manager of a limited liability company . . . ; and to that end make such order or decree in any such case as may be just and proper, with power to enforce the production of any books, papers and records of the limited liability company relating to the issue.

6 *Del. C.* §18-110.

129.    As the Managing Member of KF Newark, LJA Newark and Klein owe fiduciary duties of care, loyalty and good faith to FHC Newark and KF Newark, which prevent LJA Newark and Klein from taking actions to promote their own interests at the expense of KF Newark and require LJA Newark and Klein to exercise reasonable skill and care in their capacity as Managing Member.

130.    In addition, pursuant to the Newark Operating Agreement, LJA Newark and Klein are required to provide FHC Newark with information regarding the purpose of any additional capital calls and to contribute its proportionate share of any additional capital call. The Newark Operating Agreement also imposes contractual obligations upon LJA Newark and

33

Klein to:  (i) maintain appropriate books and records; (ii) give FHC Newark access to those books and records; (iii) provide FHC Newark with monthly and quarterly reports regarding KF Newark's performance and the operations of the Newark Hotel; and (iv) furnish FHC Newark with an audited statement of KF Newark's income and expenses and relevant tax information for fiscal year 2006 prior to the deadlines set forth in the Newark Operating Agreement.

131.    As alleged in more detail herein, LJA Newark and Klein have violated both the requirements imposed by the Newark Operating Agreement and their fiduciary duties as Manager.

132.    Based on these actions, LJA Newark and Klein should not be permitted to continue as the Manager of KF Newark.

133.    Similarly, LJA Newark and Klein should not be permitted to continue as the Tax Matters Member of KF Newark.

134.    FHC Newark has no adequate remedy at law.

## COUNT IX

### (Accounting of KF Danbury)

135.    FHC Danbury repeats and realleges the allegations contained in paragraphs 1 through 134 as though fully set forth herein.

136.    FHC Danbury has requested access to the books and records of KF Danbury in accordance with its rights as a Member, but has been given limited access to only some, not all, of the Company's records.

137.    During 2006 and 2007, FHC Danbury paid $725,550 in capital contributions to KF Danbury, but has yet to receive full supporting documentation for the capital

calls that precipitated those capital contributions, or sufficient documentation to confirm that LJA Danbury has paid its proportionate share of the capital contributions.

138.    As alleged above, FHC Danbury believes that LJA Danbury and Klein are diverting a portion of the funds FHC Danbury has paid into KF Danbury to LJA Danbury's own accounts or to accounts of one of Klein's affiliates.

139.    FHC Danbury is entitled to an accounting of all corporate funds of KF Danbury, including all capital contributions made by either Member and all expenses incurred by KF Danbury, and the return of any funds that have been misappropriated by Defendants.

140.    FHC Danbury has no adequate remedy at law.

## COUNT X

### (Accounting of KF Newark)

141.    FHC Newark repeats and realleges the allegations contained in paragraphs 1 through 140 as though fully set forth herein.

142.    FHC Newark has requested access to the books and records of KF Newark in accordance with its rights as a Member, but has been given access to only some, not all, of the Company's records.

143.    During 2006 and 2007, FHC Newark paid $467,000 in capital contributions to KF Newark but has yet to receive full supporting documentation for the capital calls that precipitated those capital contributions, or sufficient documentation to confirm that LJA Newark has paid its proportionate share of the capital contributions.

144.    As alleged above, FHC Newark believes that LJA Newark and Klein are diverting a portion of the funds FHC Newark has paid into KF Newark to LJA Newark's own accounts or to accounts of one of Klein's affiliates.

35

145.   FHC Newark is entitled to an accounting of all corporate funds of KF Newark, including all capital contributions made by either Member and all expenses incurred by KF Newark, and the return of any funds that have been misappropriated by Defendants.

146.   FHC Newark has no adequate remedy at law.

## COUNT XI

### (Judicial Dissolution of KF Danbury)

147.   FHC Danbury repeats and realleges the allegations contained in paragraphs 1 through 146 as though fully set forth herein.

148.   LJA Danbury and Klein have failed to comply with their management and fiduciary obligations pursuant to the Danbury Operating Agreement.  The actions as alleged herein taken by LJA Danbury and Klein have resulted in a lack of cooperation and trust between the parties that makes it not reasonably practicable to carry on the business of KF Danbury in conformity with the Danbury Operating Agreement.

149.   Accordingly, FHC Danbury is entitled to an Order pursuant to 6 *Del. C.* § 18-802 decreeing that KF Danbury is dissolved.

150.   FHC Danbury has no adequate remedy at law.

## COUNT XII

### (Judicial Dissolution of KF Newark)

151.   FHC Newark repeats and realleges the allegations contained in paragraphs 1 through 150 as though fully set forth herein.

152.   LJA Newark and Klein have failed to comply with their management and fiduciary obligations pursuant to the Newark Operating Agreement.  The actions as alleged herein taken by LJA Newark and Klein have resulted in a lack of cooperation and trust between

36

the parties that makes it not reasonably practicable to carry on the business of KF Newark as alleged herein in conformity with the Newark Operating Agreement.

153.   Accordingly, FHC Newark is entitled to an Order pursuant to 6 *Del. C.* § 18-802 decreeing that KF Newark is dissolved.

154.   FHC Newark has no adequate remedy at law.

WHEREFORE, FHC respectfully seeks an Order of this Court:

A.   Entering judgment in its favor;

B.   Ordering that LJA Danbury and Klein be removed as Managers of KF Danbury and that FHC Danbury be appointed as Manager, or alternatively, that a custodian be appointed for KF Danbury;

C.   Ordering that LJA Danbury and Klein be removed as the Tax Matters Member of KF Danbury and that FHC Danbury be appointed as Tax Matters Member;

D.   Ordering that LJA Newark and Klein be removed as Manager of KF Newark and that FHC Newark be appointed as Manager, or alternatively, that a custodian be appointed for KF Newark;

E.   Ordering that LJA Newark and Klein be removed as the Tax Matters Member of KF Newark and that FHC Newark be appointed as Tax Matters Member;

F.   Ordering that LJA Management and Fairchild be removed as the Operator of the Hotels;

G.   Decreeing that KF Danbury is dissolved pursuant to 6 *Del. C.* §§ 18-801 and 18-802;

H.      Approving the winding up of the affairs and business of KF Danbury in accordance with the Danbury Operating Agreement and 6 *Del. C.* §§ 18-803 and 18-804;

I.      In connection with the dissolution and winding up of the affairs and business of KF Danbury:

      i.      Ordering the sale of the Danbury Hotel pursuant to Section 10.2 of the Danbury Operating Agreement; and

      ii.     Ordering that LJA Danbury and Klein cooperate with FHC Danbury to consummate any sale transaction;

J.      Decreeing that KF Newark is dissolved pursuant to 6 *Del. C.* §§ 18-801 and 18-802;

K.      Approving the winding up of the affairs and business of KF Newark in accordance with the Newark Operating Agreement and 6 *Del. C.* §§ 18-803 and 18-804;

L.      In connection with the dissolution and winding up of the affairs and business of KF Newark:

      i.      Ordering the sale of the Newark Hotel pursuant to Section 10.2 of the Newark Operating Agreement; and

      ii.     Ordering that LJA Newark and Klein cooperate with FHC Newark to consummate any sale transaction;

M.      Ordering accountings of KF Danbury and KF Newark, and the return of any funds that have been misappropriated by Defendants;

N.      Awarding FHC its costs and attorneys' fees; and

38

O.     Granting FHC such other and further relief as may be appropriate.


                              MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                              _____
                              Kenneth J. Nachbar (#2067)
                              Rodger D. Smith II (#3778)
                              Susan Wood Waesco (#4476)
                              Samuel T. Hirzel (#4415)
                              1201 North Market Street
                              P.O. Box 1347
                              Wilmington, DE  19899-1347
                              (302) 658-9200
                                   *Attorneys for Plaintiffs FHC Danbury LLC
                                   And FHC Newark LLC*

May 21, 2007


                                   39

## CERTIFICATE OF SERVICE

I hereby certify that on May 21st, 2007, I electronically filed and caused to be served by LexisNexis E-filing the foregoing **CORRECTED VERIFIED AMENDED COMPLAINT** upon the following counsel of record:

> Daniel A. Dreisbach (#2583)
> Evan O. Williford (#4162)
> One Rodney Square
> RICHARDS, LAYTON & FINGER, P.A.
> P.O. Box 551
> Wilmington, DE 19899

_____
Susan W. Waesco (#4476)

**<u>EXHIBIT C</u>**

EFiled: Oct 26 2007 11:22AM EDT
Transaction ID 16824172
Case No. 3314

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| LJA (Danbury), LLC, LJA Newark, LLC, | ) | |
| LJA Management, LLC, and Samuel Klein, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| Leslie Klein, | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT

Plaintiffs LJA (Danbury), LLC ("LJA Danbury"), LJA Newark, LLC ("LJA Newark"),

LJA Management, LLC ("LJA Management" and together with LJA Danbury and LJA Newark,

the "LJA Entities") and Samuel Klein ("Mr. Klein") (collectively, "Plaintiffs"), for their verified

complaint against Leslie Klein ("Defendant" or "Ms. Klein" and collectively with Mr. Klein, the

"Kleins") allege, upon knowledge as to themselves and their own acts and upon information and

belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Klein and Ms. Klein are soon to be former spouses.  Currently, the Kleins are in

the midst of hotly contested divorce proceedings in Connecticut State Court.  This is an action

necessitated by Defendant's blatant breaches of duty in connection with her fiduciary obligations

to the LJA Entities and to Mr. Klein as a member of the LJA Entities.  LJA Danbury is a member

and 50% interest holder in another Delaware limited liability company that owns and operates a

hotel property.  Similarly, LJA Newark is a member and 50% interest holder in a different

Delaware limited liability company that owns and operates a second hotel property.  After the

other members of limited liability companies that own the hotels sued the LJA Entities and Mr.

Klein, the parties to that lawsuit negotiated a settlement. The settlement hinged on a transfer of property from the LJA Entities to the principal of the plaintiffs in that action. Although such settlement indisputably is in the best interests of the LJA Entities, and although Ms. Klein has a fiduciary obligation to act in the best interests of the LJA Entities, Ms. Klein has refused to allow the transfer necessary to consummate the settlement in an attempt to gain leverage in the divorce proceedings. As a direct and proximate result, the LJA Entities and Mr. Klein continue to incur unnecessary legal fees and face threats of liability that could have been avoided if not for Defendant's self-interested conduct.     In dereliction of her fiduciary duties, Ms. Klein has demonstrated that she is acting to further her own bargaining position in the divorce proceedings at the expense of the LJA Entities and Mr. Klein.

THE PARTIES

Plaintiffs

2.      Mr. Klein is an individual residing at 131 Pecksland Road, Greenwich, CT 06831.

3.      Plaintiff LJA Danbury is a Delaware limited liability company with its principal place of business in New York, New York. LJA Danbury is a member-managed limited liability company. Its only members are the Kleins, each of whom has managerial authority over the business and affairs of LJA Danbury.

4.      Plaintiff LJA Newark is a Delaware limited liability company with its principal place of business in New York, New York. LJA Newark is a member-managed limited liability company. Its members are the Kleins and their minor children, who hold *de minimis* percentage interests. Each of the Kleins has managerial authority over the business and affairs of LJA Newark.

2

5.    Plaintiff LJA Management is a Delaware limited liability company with its principal place of business in New York, New York.  LJA Management is a member-managed limited liability company.  Its only members are the Kleins, each of whom has managerial authority over the business and affairs of LJA Management.

Defendant

6.    Ms. Klein is an individual residing at 131 Pecksland Road, Greenwich, CT 06831.

Relevant Non-Parties to the Verified Complaint

7.    FHC Danbury LLC ("FHC Danbury") is a Delaware limited liability company with its principal place of business in New York, New York.  FHC Danbury is controlled by David Feinberg ("Feinberg").

8.    FHC Newark LLC ("FHC Newark" and together with FHC Danbury, the "FHC Entities") is a Delaware limited liability company with its principal place of business in New York, New York.  FHC Newark is controlled by Feinberg.

9.    KF (Danbury), LLC ("KF Danbury") is a Delaware limited liability company with its principal place of business in New York, New York.

10.    KF Newark LLC ("KF Newark") is a Delaware limited liability company with its principal place of business in New York, New York.

## FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

Background

11.    Mr. Klein and Feinberg are real estate developers.  After being introduced by a mutual acquaintance, Klein and Feinberg agreed to collaborate on, among other things, the construction and operation of two hotels through two Delaware limited liability companies, as described below.

3

12.     KF Danbury's certificate of formation was filed with the Delaware Secretary of State on August 13, 1998.  KF Danbury owns an interest in a lease on certain land in Danbury, Connecticut, and owns and operates a hotel on the premises (the "Danbury Hotel").   The Danbury Hotel has been open to the public since September 2000.  The 50% - 50% members of KF Danbury are LJA Danbury and FHC Danbury, both of which were formed for the purpose of participating in KF Danbury.

13.     KF Newark's certificate of formation was filed with the Delaware Secretary of State on September 9, 2002.  KF Newark owns certain land in Newark, New Jersey, and owns and operates a hotel on the premises (the "Newark Hotel" and together with the Danbury Hotel, the "Hotels").  The Newark Hotel has been open to the public since May 2004.  The 50% - 50% members of KF Newark are LJA Newark and FHC Newark, both of which were formed for the purpose of participating in KF Newark.

14.     Prior to July 2007, the Kleins' LJA Entities were responsible for the management of the Hotels.

15.     Also prior to July 2007, the relationship between the LJA Entities and FHC Entities soured.  The deterioration of the parties' relationship culminated in the commencement of a lawsuit by the FHC Entities against the LJA Entities and Mr. Klein in an action currently pending in this Court, styled <u>FHC Danbury LLC, et al. v. LJA (Danbury), LLC, et al.</u>, C.A. No. 2855-VCS (the "Delaware Action").

16.     Prior to the original trial date in the Delaware Action, the parties negotiated and executed a settlement agreement (the "Settlement Agreement").  As explained more fully below, even though the Settlement Agreement would have provided a means for the LJA Entities to terminate the Delaware Action and to avoid potential liability and further legal fees, Ms. Klein

4

refused to consent to a property transfer contemplated by the Settlement Agreement and without such consent the Settlement Agreement could not be consummated. Ms. Klein's motivation is to gain leverage in the acrimonious divorce proceedings between the Kleins, as opposed to acting in the best interests of the entities to which she owes fiduciary duties.

The LJA Entities And Ms. Klein's Managerial Authority

17.   In January 2000, the Kleins executed the Operating Agreement of LJA Management LLC ("LJA Operating Agreement"). (A true and correct copy of the LJA Operating Agreement is attached hereto as Exhibit "A"). LJA Management is a Delaware limited liability company formed for the purpose of managing and operating hotel properties, or for any other lawful businesses, purposes, or activities.

18.   The only members of LJA Management are the Kleins, and each owns a 50% interest in the company.

19.   LJA Management is a member-managed limited liability company. According to the LJA Operating Agreement, the "Members shall have full, complete and exclusive discretion to manage and control the business of the Company in furtherance of the purpose for which the Company is formed. The Members shall exercise their best efforts to promote the interests of the Company, and shall devote such time and attention as is reasonably necessary or advisable to discharge their obligations." (LJA Operating Agreement, § 4.1(a)). Moreover, the LJA Operating Agreement gives its members unfettered discretion to manage the day-to-day affairs of the company. In particular, the LJA Operating Agreement provides that:

> [T]he Members shall have power and authority, on behalf of the Company, to (a) purchase, lease or otherwise acquire from, or sell, lease or otherwise dispose of to, any Person any property, (b) borrow funds on behalf of the Company and mortgage any property of the Company in connection therewith, (c) open bank accounts and otherwise invest the funds of the Company, (d)

5

> purchase insurance on the business and assets of the Company, (e) commence lawsuits and other proceedings, (f) enter into any agreement, instrument or other writing, (g) retain accountants, attorneys or other agents, (h) make any decision or take any action whatsoever on behalf of the Company with respect to any entity in which the Company has an investment and (i) take any other lawful action that the Members consider necessary, convenient or advisable in connection with any business of the Company.

(LJA Operating Agreement, § 4.2).

20.    Prior to July 20, 2007, LJA Management had responsibility for the management of the Hotels, one of which is owned by KF Danbury and the other of which is owned by KF Newark. KF Danbury and KF Newark are both Delaware limited liability companies.  The members of KF Danbury are LJA Danbury and FHC Danbury.  The members of KF Newark are LJA Newark and FHC Newark.

21.    Pursuant to a lease agreement dated as of February 7, 2004, between LJA Management and KF Newark (the "Newark Lease Agreement"), KF Newark leased the Newark Hotel to LJA Management, while KF Newark continued to own the land on which the Newark Hotel is situated.  (A true and correct copy of the Newark Lease Agreement is attached hereto as Exhibit "B").  The purpose for the Newark Lease Agreement was to insure that the Newark Hotel would be eligible for a certain tax abatement offered by the City of Newark, New Jersey. To be eligible for that tax abatement, the Newark Hotel and the land on which it is situated cannot be owned by the same entity.

22.    In addition to LJA Management, the Kleins also are members of, and primary interest holders in, two other Delaware limited liability companies, Plaintiffs LJA Danbury and LJA Newark.

23.    The Kleins executed the Operating Agreement of LJA (Danbury) LLC on April 20, 1998 (the "Danbury Operating Agreement").  (A true and correct copy of the Danbury

6

Operating Agreement is attached hereto as Exhibit "C").   The purpose of LJA Danbury is to own and hold the leasehold estate consisting of the property on which the Danbury Hotel is situated, or for any other lawful businesses, purposes, or activities.

24.   The only members of LJA Danbury are the Kleins, and each owns a 50% interest in that entity.

25.   The Kleins executed the Operating Agreement of LJA Newark LLC on December 13, 2002 (the "Newark Operating Agreement").   (A true and correct copy of the Newark Operating Agreement is attached hereto as Exhibit "D").   The purpose of LJA Newark is to be member of KF Newark and to take appropriate action in connection with that membership, or for any other lawful businesses, purposes, or activities.

26.   The members of LJA Newark are the Kleins and their children.   Their percentage interests are as follows:   Klein – 60%; Ms. Klein – 31%; Lesa Peyton Klein – 3%; Jenna Lane Klein – 3%; and Annie Chandler Klein – 3%.

27.   Like LJA Management, LJA Danbury and LJA Newark are member managed limited liability companies.   As in the case of LJA Management, Ms. Klein has managerial authority over the business and affairs of LJA Danbury and LJA Newark and is bound to act in the best interests of those entities.   According to the entities' operating agreements, the "Members shall have full, complete and exclusive discretion to manage and control the business of the Company in furtherance of the purpose for which the Company is formed.   The Members shall exercise their best efforts to promote the interests of the Company, and shall devote such time and attention as is reasonably necessary or advisable to discharge their obligations." (Danbury Operating Agreement § 4.1(a); Newark Operating Agreement, § 4.1(a)).   Moreover,

7

these same operating agreements give their members, including Ms. Klein, unfettered discretion to manage the day-to-day affairs of those entities.  The agreements provide that:

> [T]he Members shall have power and authority, on behalf of the Company, to (a) purchase, lease or otherwise acquire from, or sell, lease or otherwise dispose of to, any Person any property, (b) borrow funds on behalf of the Company and mortgage any property of the Company in connection therewith, (c) open bank accounts and otherwise invest the funds of the Company, (d) purchase insurance on the business and assets of the Company, (e) commence lawsuits and other proceedings, (f) enter into any agreement, instrument or other writing, (g) retain accountants, attorneys or other agents, (h) make any decision or take any action whatsoever on behalf of the Company with respect to any entity in which the Company has an investment and (i) take any other lawful action that the Members consider necessary, convenient or advisable in connection with any business of the Company.

(Danbury Operating Agreement, § 4.2; Newark Operating Agreement § 4.2).

**Ms. Klein Violates Her Fiduciary Duties To The LJA Entities And To Klein In Order To Gain Leverage In The Kleins' Divorce Proceedings**

28.     In an effort to resolve the Delaware Action, Klein, LJA Danbury, and LJA Newark on the one hand; Feinberg, FHC Danbury, and FHC on the other; and KF Danbury and KF Newark executed the Settlement Agreement on June 25, 2007.  The crux of the Settlement Agreement was a transfer by Klein of his membership interests in the LJA Entities to Feinberg, the payment of certain funds by Feinberg to Klein, and the exchange of releases by the parties to the Settlement Agreement.

29.     Although LJA Danbury, LJA Newark, and Klein all believe that they have the power and the authority to transfer the assets as contemplated by the Settlement Agreement without the consent of any other person or entity, FHC Danbury and FHC Newark believe that an Order entered by the Superior Court of the Sate of Connecticut in connection with the Kleins' divorce proceedings bars Klein from transferring his interests in the LJA Entities to Feinberg

absent the approval of the Connecticut Court or the consent of Ms. Klein.  Based upon such belief, FHC Danbury and FHC Newark refuse to accept the transfer contemplated by the Settlement Agreement.  The Order entered by the Connecticut Court states in part:

> Neither party shall sell, transfer, encumber (except for the filing of Lis Pendens), conceal assign or remove or in any way dispose of, without the consent of the other party in writing, or an order of the court, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorneys fees in connection with this action.

30.     No order of the Connecticut State Court was entered to permit the transfers covered by the Settlement Agreement, nor, more importantly, will Ms. Klein consent to the transfers contemplated by the Settlement Agreement.   Rather, Ms. Klein is withholding her consent in order to gain leverage in the Kleins' divorce proceedings.  As a direct consequence, the LJA Entities were denied the opportunity to resolve the Delaware Action without liability and to avoid an adverse ruling from this Court, and were denied the opportunity to avoid additional legal fees in the Delaware Action.  Ms. Klein is withholding her consent despite the duty of loyalty and good faith that she owes to Klein and to the LJA Entities as a member and manager thereof.

Demand Excused

31.     To the extent any of the claims alleged against Ms. Klein are deemed to be derivative in nature, demand is excused.  The Kleins are the only members of LJA Management and LJA Danbury and, with the exception of the nominal percentage interests assigned to their minor children, are the only members of LJA Newark.  As such, demand by Klein on his soon to be ex-wife to commence an action against herself, which action is premised in part on her conduct in connection with an acrimonious divorce proceeding, would be futile.  Moreover, Ms.

9

Klein is not able to disinterestedly and independently consider a demand because, in addition to the Kleins' discord in connection with their divorce proceedings, this complaint alleges that Ms. Klein has breached her duty of loyalty to Klein and the LJA Entities and has pursued her own interests to the detriment of the LJA Entities and of Mr. Klein. Her action in refusing to consent to a liability-eliminating transfer of the Hotels to Feinberg for consideration negotiated at arm's length simply could not have been the product of a valid business judgment.

COUNT I

(The LJA Entities and Mr. Klein vs. Ms. Klein:  Breach of Fiduciary Duty)

32.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 31 as though fully set forth herein.

33.     Ms. Klein is a member of the LJA Entities.

34.     Ms. Klein has managerial authority over the LJA Entities.

35.     Ms. Klein owes a fiduciary duty of loyalty to her fellow members, including Mr. Klein, and the LJA Entities.

36.     In derogation of that duty, Ms. Klein put her interests above the interests of her fellow members and the LJA Entities when she opted to withhold her consent to a liability avoiding settlement in order to gain leverage in the Kleins' divorce proceedings.

37.     As a direct and proximate result of Defendant's refusal to consent to the property transfer necessary to consummate a settlement, the LJA Entities and Mr. Klein continue to incur unnecessary legal fees for the defense of an action that can be settled on terms the same or similar to those contained in the Settlement Agreement, but for Defendant's disloyal conduct.

38.     As a direct and proximate result of the foregoing, Plaintiffs have suffered damages in an amount to be proven at trial.

10

39.     Plaintiffs have no adequate remedy at law.

<u>COUNT II</u>

(The LJA Entities and Mr. Klein vs. Ms. Klein: Breach of Fiduciary Duty)

40.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 39 as though fully set forth herein.

41.     Ms. Klein is a member of the LJA Entities.

42.     Ms. Klein has managerial authority over the LJA Entities.

43.     Ms. Klein owes a fiduciary duty of loyalty to her fellow members, including Mr. Klein, and the LJA Entities.

44.     In derogation of that duty, Ms. Klein put her interests above the interests of her fellow members and the LJA Entities when she opted to withhold her consent to a liability avoiding settlement in order to gain leverage in the Kleins' divorce proceedings.

45.     As a direct and proximate result of Defendant's refusal to consent to the property transfer necessary to consummate a settlement, the LJA Entities and Mr. Klein continue to face the threat of liability in the Delaware Action, which action could be settled on terms the same or similar to those contained in the Settlement Agreement, but for Defendant's disloyal conduct.

46.     As a direct and proximate result of the foregoing, Plaintiffs have suffered damages in an amount to be proven at trial.

47.     Plaintiffs have no adequate remedy at law.

<u>COUNT III</u>

(Mr. Klein vs. Ms. Klein:  Contribution Based on Joint and Several Liability)

48.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 47 as though fully set forth herein.

11

49.     As a consequence of the Delaware Action, Klein faces a risk of liability on account of the claims against him and the LJA Entities of which he is a principal, as alleged in the FHC Entities' complaint in the Delaware Action.

50.     Ms. Klein, as a member and manager of the LJA Entities with fiduciary duties to her fellow members, is or may be liable over to Klein on account of his liability on a judgment rendered in the Delaware Action.

51.     Accordingly, Ms. Klein should stand ready to contribute her pro rata share of any judgment rendered against Klein in the Delaware Action.

WHEREFORE, Plaintiffs respectfully seek an Order of this Court:

A.     Entering judgment in their favor;

B.     Declaring that Defendant has breached her fiduciary duties to the LJA Entities and to Mr. Klein as co-member thereof by her refusal to consent to a liability avoiding settlement.

C.     Declaring that Defendant is liable over to Klein for her pro rata share of any liability owed by Klein on account of a judgment against him in the Delaware Action;

D.     Awarding Plaintiffs damages in amount to be proven at trial;

E.     Awarding Plaintiffs their costs and attorneys' fees; and

F.     Granting Plaintiffs such other and further relief as may be appropriate and equitable.

EDWARDS ANGELL PALMER & DODGE LLP

_/s / Michael J. Maimone_
Michael J. Maimone (# 3592)
Paul D. Brown (# 3903)
Joseph B. Cicero (# 4388)
919 N. Market Street, 15th Floor
Wilmington, DE  19801
(302) 777-7770

Dated:  October 25, 2007

*Attorneys for Plaintiffs Samuel Klein, LJA
(Danbury), LLC, LJA Newark, LLC, and LJA
Management, LLC*

13

**EXHIBIT D**

Gregory C. Dyekman – Wyo. Bar No. 5-1858
DRAY, THOMSON & DYEKMAN, P.C.
204 East 22nd St
Cheyenne WY 82001-3799
(307) 634-8891 – Telephone
(307) 634-8902 – Facsimile
greg.dyekman@draylaw.com

ATTORNEYS FOR DEFENDANT BANK OF AMERICA, N.A.


# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| PLC PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 10CV0141-D |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

---

## MOTION FOR ADMISSION OF NONRESIDENT
## ATTORNEY PRO HAC VICE OF DONALD E. FRECHETTE, ESQ.

---

**COMES NOW**, Gregory C. Dyekman, an attorney of record for the Defendant, Bank of American, N.A., and a member of the bar of the State of Wyoming and the United States District Court for the District of Wyoming in good standing, and hereby moves for admission of Donald E. Frechette, Esq., an attorney and partner of the law firm of Edwards Angell Palmer & Dodge LLP, to practice before this Court in the above-captioned action pursuant to Rule 83.12.2(b) of

the Local Civil Rules for the United States District Court for the District of Wyoming.   In support of this Motion, movant refers this Court to the Affidavit of Donald E. Frechette, Esq., attached hereto and incorporated herein as Exhibit "A".

To the best of my knowledge, Donald E. Frechette is of good moral character and veracity.

I have made my co-counsel aware of the provisions of the Local Civil Rules for the United States District Court for the District of Wyoming which require that local counsel be fully prepared to represent the client at any time and in any capacity, and I, or other members of the firm, will be prepared in accordance with those rules.

Respectfully submitted this 21st day of July, 2010.

DRAY, THOMSON & DYEKMAN, P.C.


By:   /s/ Gregory C. Dyekman
  Gregory C. Dyekman, Esq.
  Nicholas G. J. Healey, Esq.
  DRAY, THOMSON & DYEKMAN, P.C.
  204 East 22nd Street
  Cheyenne, WY  82001-3799
  (307) 634-8891 – Telephone
  (307) 634-8902 - Facsimile
  greg.dyekman@draylaw.com

ATTORNEYS FOR DEFENDANT
BANK OF AMERICA, N.A.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon the following by electronic mail through the Court's ECF system, this 21st of July, 2010, this document having been filed electronically.

Meredith G. Winn, Esq.                    [ ] U.S. Mail
DeFazio Law Office, LLC                   [ ] Federal Express
172 Center St, Ste 203                    [ ] Facsimile
P.O. Box 4877                             [ ] Hand Delivery
Jackson WY 83001                          [x] Electronic Mail

Attorney for Plaintiff


          */s/ Gregory C. Dyekman*
for Dray, Thomson & Dyekman, P.C.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| PLC PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 10CV0141-D |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

---

## AFFIDAVIT OF DONALD E. FRECHETTE, ESQ. IN SUPPORT OF
## MOTION FOR ADMISSION OF NONRESIDENT ATTORNEY PRO HAC VICE

---

| | |
|---|---|
| STATE OF CONNECTICUT | ) |
| | ) ss. |
| COUNTY OF HARTFORD | ) |

The undersigned, Donald E. Frechette, being of lawful age and duly sworn, states as follows:

1.     My name is Donald E. Frechette.  I am an attorney licensed to practice in the State of Connecticut, Attorney Registration No. 308309, and I am an attorney and partner of the law firm of EDWARDS ANGELL PALMER & DODGE LLP, 20 Church Street, Hartford, Connecticut 06103, telephone (860) 541-7713, facsimile (888) 325-9086, email dfrechette@eapdlaw.com.

2.     I am admitted to practice before the United States District Court for the Districts of Connecticut (since 9/16/1991) Maine (since 10/27/1983), New Hampshire (since 7/1/1992),

**EXHIBIT "A"**

Massachusetts (since 10/29/1991), the Northern and Southern Districts of New York (since 6/12/2001 and 5/8/2001, respectively), the Southern and Western Districts of Michigan (since 10/29/1991); the United States Court of Appeals for the First and Second Circuits (since 6/28/2000 and 2/4/1993, respectively); and the United States Supreme Court (since 8/23/1996).

3.      I am, and have been, a member in good standing of the Bar of the states of Connecticut (since 6/19/1989), Maine (since 10/6/1983), New Hampshire (since 10/30/1984), Michigan (since 11/17/1981), and the commonwealth of Massachusetts (since 5/21/1986) and I have not, at any time, been the subject of a disciplinary action in any state or in any court, nor have I ever been denied admission to the courts of any state or to any federal court.

4.      I am familiar with the Federal Rules of Civil Procedure, including the Local Rules of United States District Court for the District of Wyoming and at all times will abide by and comply with those rules as long as this matter is pending in this Court.

5.      Gregory C. Dyekman, DRAY, THOMSON & DYEKMAN, P.C., 204 East 22nd Street, Cheyenne, Wyoming 82001-3799, telephone (307) 634-8891, facsimile (307) 634-8902 is a member of the Wyoming bar, is admitted in The United States District Court for the District of Wyoming, and will be associated with me as co-counsel for the Defendant, Bank of America, N.A.

6.      I hereby acknowledge that local counsel is required to be fully prepared to represent the client at any time, in any capacity.

7.      I hereby acknowledge that I submit to and am subject to the disciplinary jurisdiction of the United States District Court for the District of Wyoming for any alleged misconduct arising in the course of the preparation and representation in these proceedings.

DATED this 16th day of July, 2010.

Donald E. Frechette

SUBSCRIBED and SWORN to before me this 16th day of July, 2010, by Donald
E. Frechette.

WITNESS MY HAND AND OFFICIAL SEAL.

SEAL                          Elizabeth M Mahoney
                              Notary Public

My Commission Expires:

ELIZABETH M. MAHONEY
NOTARY PUBLIC
MY COMMISSION EXPIRES APR. 30, 2013

-3-

# **EXHIBIT E**



# LEVETT ROCKWOOD
## P.C.
### Attorneys-at-Law

ANDREW B. NEVAS
anevas@levettrockwood.com

DIRECT DIAL
(203) 222-3103

November 3, 2010

**VIA FEDEX**

Donald E. Frechette, Esq.
Edwards, Angell, Palmer & Dodge
20 Church Street
Hartford, CT  06103

Re:   Bank of America, N.A. v. Klein
Case No. 3:10-CV-00987 (MRK)

Dear Attorney Frechette:

It has come to my attention that, as recently as January 2008, Edwards, Angell, Palmer & Dodge LLP ("Edwards & Angell") represented Samuel Klein individually as a defendant in the matter of *FHC Danbury LLC, et al. v. LJA (Danbury), LLC, et al.* in the Court of Chancery of the State of Delaware (the "Delaware Action"). In the course of Edwards & Angell's representation of Mr. Klein in the Delaware Action, it gained access to confidential and proprietary information relating to Mr. Klein's finances and business dealings.

In *PLC Partners, LLC v. Bank of America, N.A.*, now pending in the United States District Court for the District of Wyoming (the "Wyoming action"), the plaintiff is PLC Partners, LLC, an entity which, as you know, is wholly owned by Mr. Klein. You have been admitted *pro hac vice* in connection with that case on behalf of Bank of America, N.A. (the "Bank") without disclosing to the court that Edwards & Angell, the firm with which you are associated, previously represented Mr. Klein in the Delaware Action.

In *Bank of America, N.A. v. Klein*, currently pending in the United States District Court for the District of Connecticut (the "Connecticut Action"), Edwards & Angell has alleged on behalf of the Bank, *inter alia*, that Mr. Klein is insolvent and that the Bank believes that it is insecure with respect to one of the loans guaranteed by Mr. Klein.

Mr. Klein never consented to Edwards & Angell's representation of the Bank in either the Connecticut or Wyoming Actions.

Edwards & Angell's representation of the Bank in the Connecticut and Wyoming Actions appears to represent a violation of at least three separate provisions of the Rules of Professional Conduct.

Donald E. Frechette, Esq.                    -2-                    November 3, 2010

Rule 1.8(b) provides that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules."

Additionally, Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

Finally, under Rule 1.9(c), "[a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client."

Confidential information which Edwards & Angell has previously obtained from Mr. Klein about his finances as a direct result of its prior representation of him is clearly relevant to the allegations it has made against him in the Connecticut Action and the defenses it has raised in the Wyoming Action.

Furthermore, the Bank has promulgated Requests for Admissions in the Connecticut Action that ask Mr. Klein to admit or deny that certain orders were entered against him in the very proceedings in Delaware in which Edwards & Angell defended him. Thus, Edwards & Angell has taken advantage of the fact that, as a direct result of its prior representation of Mr. Klein in the Delaware Action, it has knowledge of certain proceedings, findings and orders entered in that matter. Edwards & Angell is now attempting to use this information to Mr. Klein's disadvantage by attempting to inject into the Connecticut Action certain adverse rulings entered against him while he was represented by Edwards & Angell in the Delaware Action.

Additionally, Edwards & Angell may well be taking advantage of the fact that it had access to Mr. Klein's confidential business and financial records to help it advise the Bank. In the course of its representation of the Bank in the Connecticut and Wyoming Actions, Edwards & Angell is presumably giving advice to the Bank regarding the proper manner in which to proceed against Mr. Klein which is undoubtedly informed, at least in part, by confidential information it has about Mr. Klein as a direct result of its representation of him in the Delaware Action.

Donald E. Frechette, Esq.                    -3-                    November 3, 2010

Both the Delaware and Connecticut Actions are substantially related.  Mr. Klein's business dealings, financial transactions and personal finances were central issues in the Delaware action.  They are in the Connecticut Action as well, particularly since the Bank has alleged that Mr. Klein has defaulted on his obligations to the Bank and is insolvent.

In light of the foregoing, Mr. Klein demands that Edwards & Angell withdraw from its representation of the Bank in the Connecticut and Wyoming Actions.  In the event that this does not occur within one week, appropriate motions will be filed with the respective District Courts.  Mr. Klein would certainly like to avoid doing this, and I hope and anticipate that you will cooperate so that this is not necessary.

Very truly yours,

Andrew B. Nevas

ABN:tjo

cc:   Samuel Klein
      James K. Lubing, Esq.

**EXHIBIT F**

# EDWARDS ANGELL PALMER&DODGE LLP

20 Church Street  Hartford, CT  06103  860.525.5065  *fax* 860.527.4198  eapdlaw.com

Donald E. Frechette
860.541.7713
*fax* 888.325.9086
dfrechette@eapdlaw.com

November 8, 2010

Andrew B. Nevas, Esq.
Levett Rockwood P.C.
33 Riverside Avenue
Westport, CT   06880

> Re:   Bank of America, N.A. v. Klein
>        Case No. 3:10-CV-00987 (MRK)

Dear Andrew:

We are in receipt of your letter dated  November 3, 2010 which demands that Edwards, Angell, Palmer & Dodge LLP ("EAPD") withdraw from further representation of Bank of America in connection with certain identified proceedings.

Respectfully, your client's 11th-hour decision to seek EAPD's disqualification appears to be little more that a litigation tactic.  As I explained in detail to Mr. Lubing, the facts will more than adequately demonstrate that EAPD has fully comported itself in accordance with the applicable rules of professional conduct.  Indeed, and based on Mr. Lubing's representations to the Wyoming federal court, it is clear that you are proceeding on the basis of several incorrect factual premises.

Suffice it to say, we do not intend to withdraw from our pending representation of Bank of America.  If, prior to proceeding further, you would like to discuss this matter, we would be happy to do so.  Alternatively, we will, of course, vigorously defend your motions.

Very truly yours,

Donald E. Frechette
Partner

DEF/rf

HFD 216988.1