**<u>EXHIBIT G</u>**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BANK OF AMERICA, N.A.,        :
                              :

                Plaintiff,    :     CIVIL ACTION NO:
                              :     3:10-cv-987 (MRK)

v.                            :

SAMUEL KLEIN,               :
                              :

                Defendant.   :     OCTOBER 1&, 2010

## FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANT SAMUEL KLEIN BY PLAINTIFF BANK OF AMERICA, N.A.

Pursuant to Fed. R. Civ. P. 36, plaintiff, Bank of America, N.A. through its undersigned counsel, hereby request that the defendant, Samuel Klein, admit the following:

### REQUEST NO. 1

Please admit that the March 30, 2006 letter attached hereto as Exhibit A (the "March 30 Letter") is a true and accurate copy of the original.

**RESPONSE:**

### REQUEST NO. 2

Please admit that the March 30 Letter is executed by Samuel Klein individually.

**RESPONSE:**

### REQUEST NO. 3

Please admit that the March 30 Letter is executed by Agrippa through its member, Samuel Klein.

HFD 215844.4

**RESPONSE:**

**REQUEST NO. 4**

Please admit that the March 30 Letter provided as follows:

> Nothing in this letter is intended to amend, modify, limit or restrict any provision of the loan documents. The provisions of the loan documents will be controlling and legally effective regardless of anything in this letter to the contrary.

**RESPONSE:**

**REQUEST NO. 5**

Please admit that, as a consequence of the language quoted in the immediately preceding Request to Admit, if the terms of the promissory note executed by Agrippa in connection with the March 30 Letter were at variance with the terms of the March 30 Letter itself, the terms of the note would control as a matter of law.

**RESPONSE:**

**REQUEST NO. 6**

Please admit that Agrippa Note (as defined in the Complaint) was a "loan document" executed in connection with the March 30 Letter.

**RESPONSE:**

**REQUEST NO. 7**

Please admit that, from March 30, 2006 to the present, Samuel Klein has been the sole member of Agrippa LLC.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 8**

Please admit that, from March 30, 2006 to the present, Samuel Klein has been an authorized representative of Agrippa LLC.

**RESPONSE:**


**REQUEST NO. 9**

Please admit that the March 30 Letter is executed by Agrippa through its member, Samuel Klein.

**RESPONSE:**


**REQUEST NO. 10**

Please admit that, from February 23, 2007 to the present, Mr. Samuel Klein has been the sole member of PLC Partners, LLC.

**RESPONSE:**


**REQUEST NO. 11**

Please admit that, from February 23, 2007 to the present, Samuel Klein has been an authorized representative of PLC Partners, LLC.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 12**

Please admit that the February 9, 2010 letter attached hereto as <u>Exhibit B</u> (the "February 9 Letter") is a true and accurate copy of the original.

**RESPONSE:**


**REQUEST NO. 13**

Please admit that the February 9 Letter was received by Jacob Okun, Esq.

**RESPONSE:**


**REQUEST NO. 14**

Please admit that the February 9 Letter (and all identified enclosures) was received by Jacob Okun, Esq.

**RESPONSE:**


**REQUEST NO. 15**

Please admit that Jacob Okun, Esq. ("Mr. Okun") was, on February 9, 2010, an attorney representing Samuel Klein ("Mr. Klein").

**RESPONSE:**


**REQUEST NO. 16**

Please admit that, in accordance with the Custom Mortgage Rider (as referenced in the February 9 Letter), the Bank had the right to obtain an appraisal of the Property (as defined in

- 4 -

HFD 215844.4

the February 9 Letter) if an adverse change occurred in real estate market conditions in the area where the Property (as defined in the February 9 Letter) is located.

**RESPONSE:**

## REQUEST NO. 17

Please admit that, in accordance with the Custom Mortgage Rider (as referenced in the February 9 Letter), the Bank had the right to obtain an appraisal of the Property (as defined in the February 9 Letter) if an adverse change occurred in the financial condition of Mr. Klein.

**RESPONSE:**

## REQUEST NO. 18

Please admit that, in accordance with the Custom Mortgage Rider (as referenced in the February 9 Letter), the Bank had the right to obtain a financial statement from Mr. Klein in form and detail satisfactory to the Bank.

**RESPONSE:**

## REQUEST NO. 19

Please admit that the February 9 Letter requested that Mr. Klein permit the Property (as therein defined) to be appraised.

**RESPONSE:**

## REQUEST NO. 20

Please admit that the February 9 Letter requested that Mr. Klein furnish the Bank with a financial statement.

HFD 215844.4

**RESPONSE:**


**REQUEST NO. 21**

Please admit that the February 9 Letter expressly reserved all of the Banks' rights at law and in equity.

**RESPONSE:**


**REQUEST NO. 22**

Please admit that Mr. Okun did not provide Bank of America, N.A. (the "Bank") with access to the Property (as defined in the February 9 Letter), all as requested in the February 9 Letter.

**RESPONSE:**


**REQUEST NO. 23**

Please admit that Mr. Okun did not provide the Bank with Mr. Klein's financial statement, all as requested by the February 9 Letter.

**RESPONSE:**


**REQUEST NO. 24**

Please admit that, between August 28, 2008 and February 9, 2010, an adverse change had occurred in real estate market conditions in Greenwich, Connecticut.

**RESPONSE:**

**REQUEST NO. 25**

Please admit that, between August 28, 2008 and February 9, 2010, Mr. Klein's net worth declined.

**RESPONSE:**

**REQUEST NO. 26**

Please admit that between August 28, 2008 and February 9, 2010, an adverse change in Mr. Klein's personal financial condition had occurred.

**RESPONSE:**

**REQUEST NO. 27**

Please admit that the February 9, 2010 Letter included a blank financial statement as an enclosure.

**RESPONSE:**

**REQUEST NO. 28**

Please admit that Mr. Klein did not provide the Bank with his personal financial statement, all as requested by the February 9 Letter.

**RESPONSE:**

**REQUEST NO. 29**

Please admit that Mr. Klein refused to allow access to the Property for purposes of allowing the Bank (or its representative) to conduct an appraisal.

HFD 215844.4

**RESPONSE:**

**REQUEST NO. 30**

Please admit that the February 10, 2010 Letter attached hereto as <u>Exhibit C</u> the "February 10 Letter") is a true and accurate copy of the original.

**RESPONSE:**

**REQUEST NO. 31**

Please admit that on February 10, 2010, Mr. Okun was an authorized representative of Klein.

**RESPONSE:**

**REQUEST NO. 32**

Please admit that Mr. Okun was, on February 10, 2010, an attorney representing Mr. Klein.

**RESPONSE:**

**REQUEST NO. 33**

Please admit that the statement contained within the February 10 Letter that Mr. Klein had made every payment to Plaintiff "on time" with respect to the Loan (as defined in the February 10 Letter) was, at the time it was made, false.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 34**

Please admit that the February 10 Letter explicitly accused the Bank of fabricating a payment default with respect to the Loan (as therein defined).

**RESPONSE:**


**REQUEST NO. 35**

Please admit that the February 10 Letter accused the Bank of "outrageous behavior."

**RESPONSE:**


**REQUEST NO. 36**

Please admit that the February 10 Letter explicitly refused the Bank's request for an appraisal of the Property (as defined by the February 9 Letter).

**RESPONSE:**


**REQUEST NO. 37**

Please admit that the February 10 Letter explicitly refused the Bank's request for a personal financial statement of Mr. Klein.

**RESPONSE:**


**REQUEST NO. 38**

Please admit that the February 10 Letter accused the Bank of a "reprehensible attempt to harass" Mr. Klein.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 39**

Please admit that the February 11, 2010 letter attached hereto as <u>Exhibit D</u> (the "February 11 Letter") is a true and accurate copy of the original.

**RESPONSE:**

**REQUEST NO. 40**

Please admit that the February 11 Letter was received by Mr. Okun.

**RESPONSE:**

**REQUEST NO. 41**

Please admit that Mr. Okun was, on February 11, 2010, an authorized representative of Samuel Klein.

**RESPONSE:**

**REQUEST NO. 42**

Please admit that on February 11, 2010, Mr. Okun was, an attorney representing Klein.

**RESPONSE:**

**REQUEST NO. 43**

Please admit that the February 11 Letter again requested that Mr. Klein provided access to the Property (as therein defined) for purposes of facilitating an appraisal.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 44**

Please admit that Mr. Klein did not provide the Plaintiff with access to the Property (as defined in the February 11 Letter) for purposes of facilitating an appraisal.

**RESPONSE:**


**REQUEST NO. 45**

Please admit that Mr. Okun did not provide the Plaintiff with access to the Property (as defined in the February 11 Letter) for purposes of facilitating an appraisal.

**RESPONSE:**


**REQUEST NO. 46**

Please admit that the February 11 Letter again requested that Mr. Klein provide the Bank with a personal financial statement.

**RESPONSE:**


**REQUEST NO. 47**

Please admit that Mr. Klein did not, at any time subsequent to the February 11 Letter, furnish the Bank with a personal financial statement.

**RESPONSE:**

- 11 -

HFD 215844.4

**REQUEST NO. 48**

Please admit that Mr. Okun did not, at any time subsequent to the February 11 Letter, furnish the Bank with Klein's personal financial statement.

**RESPONSE:**


**REQUEST NO. 49**

Please admit that the February 11 Letter reserved all of the Bank's rights at law and in equity.

**RESPONSE:**


**REQUEST NO. 50**

Please admit that the February 16, 2010 letter attached hereto as <u>Exhibit E</u> (the "February 16 Letter") is a true and accurate copy of the original.

**RESPONSE:**


**REQUEST NO. 51**

Please admit that the statement in the February 16 Letter to the effect that Mr. Klein had timely made every payment on the Loan (as defined in the February 16 Letter) was false when made.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 52**

Please admit that the February 18, 2010 letter attached hereto as <u>Exhibit F</u> (the "February 18 Letter") is a true and accurate copy of the original.

**RESPONSE:**

**REQUEST NO. 53**

Please admit that, on February 18, 2010, Mr. Okun was an authorized representative of Samuel Klein.

**RESPONSE:**

**REQUEST NO. 54**

Please admit that, on February 18, 2010, Mr. Okun was a authorized representative of Agrippa, LLC ("Agrippa").

**RESPONSE:**

**REQUEST NO. 55**

Please admit that, on February 18, 2010, Mr. Okun was a authorized representative of PLC Partners, LLC ("PLC").

**RESPONSE:**

**REQUEST NO. 56**

Please admit that, on February 18, 2010, Mr. Okun was an attorney representing Klein.

- 13 -

**RESPONSE:**


**REQUEST NO. 57**

Please admit that, on February 18, 2010, Mr. Okun was an attorney representing Agrippa.

**RESPONSE:**


**REQUEST NO. 58**

Please admit that, on February 18, 2010, Mr. Okun was an attorney representing PLC.

**RESPONSE:**


**REQUEST NO. 59**

Please admit that the February 18 Letter was received by Mr. Okun.

**RESPONSE:**


**REQUEST NO. 60**

Please admit that the February 18 Letter purported to advise PLC that a default had occurred with respect to the Wyoming Note (as therein defined).

**RESPONSE:**


**REQUEST NO. 61**

Please admit that the February 18 Letter purported to advise Mr. Klein that an event of default had occurred with respect to the Wyoming Guaranty (as therein defined).

**RESPONSE:**


## REQUEST NO. 62

Please admit that the February 18 Letter purported to advise Mr. Okun that a default had occurred with respect to the Wyoming Note (as therein defined).

**RESPONSE:**


## REQUEST NO. 63

Please admit that the February 18 Letter purported to advise Mr. Okun that an event of default had occurred with respect to the Wyoming Guaranty (as therein defined).

**RESPONSE:**


## REQUEST NO. 64

Please admit that the February 18 Letter purported to advise Agrippa that the New York Note (as therein defined) was in default.

**RESPONSE:**


## REQUEST NO. 65

Please admit that the February 18 Letter purported to advise Mr. Klein that the New York Note (as therein defined) was in default.

**RESPONSE:**

**REQUEST NO. 66**

Please admit that the February 18 Letter purported to advise Agrippa that the New York Guaranty (as therein defined) was in default.

**RESPONSE:**

**REQUEST NO. 67**

Please admit that the February 18 Letter purported to advise Mr. Klein that the New York Guaranty (as therein defined) was in default.

**RESPONSE:**

**REQUEST NO. 68**

Please admit that the February 18 Letter purported to advise Mr. Okun that the New York Note (as therein defined) was in default.

**RESPONSE:**

**REQUEST NO. 69**

Please admit that the February 18 Letter purported to advise Mr. Okun that the New York Guaranty (as therein defined) was in default.

**RESPONSE:**

**REQUEST NO. 70**

Please admit that Mr. Okun never authored any correspondence to the Bank, or any representative thereof, disputing the existence of any default with respect to the Wyoming Note (as defined in the February 18 Letter).

**RESPONSE:**


**REQUEST NO. 71**

Please admit that Mr. Okun never authored any correspondence to the Bank, or any representative thereof, disputing the existence of any default with respect to the Wyoming Guaranty (as defined in the February 18 Letter).

**RESPONSE:**


**REQUEST NO. 72**

Please admit that Mr. Okun never authored any correspondence to the Bank, or any representative thereof, disputing the existence of any default with respect to the New York Note (as defined in the February 18 Letter).

**RESPONSE:**


**REQUEST NO. 73**

Please admit that Mr. Okun never authored any correspondence to the Bank, or any representative thereof, disputing the existence of any default with respect to the New York Guaranty (as defined in the February 18 Letter).

**RESPONSE:**

**REQUEST NO. 74**

Please admit that Mr. Klein never authored any correspondence to the Bank, or any representative thereof, disputing the existence of a default with respect to the Wyoming Note (as defined in the February 18 Letter).

**RESPONSE:**

**REQUEST NO. 75**

Please admit that Mr. Klein never authored any correspondence to the Bank, or any representative thereof, disputing the existence of a default with respect to the Wyoming Guaranty (as defined in the February 18 Letter).

**RESPONSE:**

**REQUEST NO. 76**

Please admit that Mr. Klein never authored any correspondence to the Bank, or any representative thereof, disputing the existence of a default with respect to the New York Note (as defined in the February 18 Letter).

**RESPONSE:**

**REQUEST NO. 77**

Please admit that Mr. Klein never authored any correspondence to the Bank, or any representative thereof, disputing the existence of a default with respect to the New York Guaranty (as defined in the February 18 Letter).

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 78**

Please admit that no authorized representative of Mr. Klein or PLC ever authored any correspondence to the Bank, or to any authorized representative thereof, disputing the existence of a default with respect to the New York Note (as defined in the February 18 Letter).

**RESPONSE:**

**REQUEST NO. 79**

Please admit that no authorized representative of Mr. Klein or PLC ever authored any correspondence to the Bank, or to any authorized representative thereof, disputing the existence of a default with respect to the New York Guaranty (as defined in the February 18 Letter).

**RESPONSE:**

**REQUEST NO. 80**

Please admit that no authorized representative of Mr. Klein or PLC ever authored any correspondence to the Bank, or to any authorized representative thereof, disputing the existence of a default with respect to the Wyoming Note (as defined in the February 18 Letter).

**RESPONSE:**

**REQUEST NO. 81**

Please admit that no authorized representative of Mr. Klein or PLC ever authored any correspondence to the Bank, or to any authorized representative thereof, disputing the existence of a default with respect to the Wyoming Guaranty (as defined in the February 18 Letter).

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 82**

    Please admit that the February 18 Letter reserves all of the Bank's rights at law or in equity.

    **RESPONSE:**


**REQUEST NO. 83**

    Please admit that no person known to Mr. Klein ever responded to the February 18 Letter.

    **RESPONSE:**


**REQUEST NO. 84**

    Please admit that no person known to Mr. Klein ever responded to the February 18 Letter in writing.

    **RESPONSE:**


**REQUEST NO. 85**

    Please admit that the March 23, 2010 letter attached hereto as <u>Exhibit G</u> (the "March 23 Letter") is a true and accurate copy of the original.

    **RESPONSE:**

**REQUEST NO. 86**

Please admit that the March 23 Letter was received by Mr. Klein.

**RESPONSE:**


**REQUEST NO. 87**

Please admit that the March 23 Letter purported to advise Mr. Klein that the Wyoming Note (as therein defined) was in default.

**RESPONSE:**


**REQUEST NO. 88**

Please admit that the March 23 Letter purported to advise Mr. Klein that the New York Note (as therein defined) was in default.

**RESPONSE:**


**REQUEST NO. 89**

Please admit that the March 23 Letter purported to advise PLC that the Wyoming Note (as therein defined) was in default.

**RESPONSE:**


**REQUEST NO. 90**

Please admit that the March 23 Letter purported to advise Agrippa that the New York Note (as therein defined) was in default.

**RESPONSE:**

- 21 -

**REQUEST NO. 91**

Please admit that Mr. Klein never authored any correspondence to the Bank, or any representative thereof, disputing the claim, in the March 23 Letter, that the Wyoming Note (as therein defined) was in default.

**RESPONSE:**


**REQUEST NO. 92**

Please admit that Mr. Klein never authored any correspondence to the Bank, or any representative thereof, disputing the claim, in the March 23 Letter, that the New York Note was in default.

**RESPONSE:**


**REQUEST NO. 93**

Please admit that no representative of Agrippa authored any correspondence to the Bank, or any representative thereof, disputing the assertion, in the March 23 Letter, that the New York Note (as therein defined) was in default.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 94**

   Please admit that no representative of PLC authored any correspondence to the Bank, or any representative thereof, disputing the assertion, in the March 23 Letter, that the Wyoming Note (as therein defined) was in default.

   **RESPONSE:**


**REQUEST NO. 95**

   Please admit that no person known to Mr. Klein authored any correspondence to the Bank, or any representative thereof, disputing the assertions, in the March 23 Letter, that the New York Note (as therein defined) was in default.

   **RESPONSE:**


**REQUEST NO. 96**

   Please admit that no person known to Mr. Klein authored any correspondence to the Bank, or any representative thereof, disputing the assertions, in the March 23 Letter, that the Wyoming Note (as therein defined) was in default.

   **RESPONSE:**


**REQUEST NO. 97**

   Please admit that the March 23 Letter invited Mr. Klein to provide specific information regarding any claims of alleged Bank wrongdoing.

   **RESPONSE:**

**REQUEST NO. 98**

Please admit that Mr. Klein never provided the Bank, or any representative thereof, with any specific information in response to the request referenced in the immediately preceding Request to Admit.

**RESPONSE:**


**REQUEST NO. 99**

Please admit that the March 23 Letter advised Mr. Klein that the New York Note (as therein defined) had been underpaid in the amount of $371.78.

**RESPONSE:**


**REQUEST NO. 100**

Please admit that the March 23 Letter advised Agrippa that the New York Note (as therein defined) had been underpaid in the amount of $371.78.

**RESPONSE:**


**REQUEST NO. 101**

Please admit that the March 23 Letter provided three alternatives for the payment of the asserted $371.78 underpayment of the New York Note (as therein defined).

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 102**

Please admit that the March 23 Letter requested that the Bank be advised as to the manner in which the asserted $371.78 underpayment would be paid.

**RESPONSE:**

**REQUEST NO. 103**

Please admit that no authorized representative of Agrippa ever responded to the Bank's inquiries as to the manner in which Agrippa would like to pay the asserted underpayment of $371.78.

**RESPONSE:**

**REQUEST NO. 104**

Please admit that no person known to Mr. Klein ever advised the Bank of the manner in which the asserted underpayments of $371.78 would be paid.

**RESPONSE:**

**REQUEST NO. 105**

Please admit that no person known to Mr. Klein ever responded to the March 23 Letter.

**RESPONSE:**

**REQUEST NO. 106**

Please admit that no person known to Mr. Klein ever responded to the March 23 Letter in writing.

- 25 -

HFD 215844.4

**RESPONSE:**

**REQUEST NO. 107**

Please admit that the letter attached hereto as <u>Exhibit H</u> (the "April 12 Letter") is a true and accurate copy of the original.

**RESPONSE:**

**REQUEST NO. 108**

Please admit that the April 12 Letter (with all enclosures) was received by Mr. Klein.

**RESPONSE:**

**REQUEST NO. 109**

Please admit that the April 12 Letter was received by Mr. Klein.

**RESPONSE:**

**REQUEST NO. 110**

Please admit that the April 12 Letter purported to advise Mr. Klein that the Wyoming Note (as therein defined) was three payments past due.

**RESPONSE:**

**REQUEST NO. 111**

Please admit that the April 12 Letter purported to advise PLC that the Wyoming Note (as therein defined) was three payments past due.

HFD 215844.4

**RESPONSE:**

**REQUEST NO. 112**

Please admit that neither Mr. Klein, nor any person known to him, ever authored any correspondence to the Bank, or any representative thereof, disputing the Bank's claim that the Wyoming Note (as therein defined) was three payments past due.

**RESPONSE:**

**REQUEST NO. 113**

Please admit that no representative of PLC ever authored any correspondence to the Bank, or any representative thereof, disputing the Bank's claim that the Wyoming Note (as therein defined) was three payments past due.

**RESPONSE:**

**REQUEST NO. 114**

Please admit that the April 12 Letter advised Mr. Klein that, if an accommodation was required with respect to payments that were past due in connection with the Wyoming Note (as therein defined), the Bank would consider such a request.

**RESPONSE:**

**REQUEST NO. 115**

Please admit that the April 12 Letter advised PLC that, if an accommodation was required with respect to payments that were past due in connection with the Wyoming Note (as therein defined), the Bank would consider such a request.

- 27 -

**RESPONSE:**

## REQUEST NO. 116

Please admit that no representative of PLC ever authored, subsequent to the April 12 Letter, any document to the Bank, or any representative thereof, requesting an accommodation of the type referenced in the April 12 Letter.

**RESPONSE:**

## REQUEST NO. 117

Please admit that neither Mr. Klein, nor any person known to him, ever authored, subsequent to the April 12 Letter, any document to the Bank requesting an accommodation of the type referenced in the April 12 Letter.

**RESPONSE:**

## REQUEST NO. 118

Please admit that the April 12 Letter requested proof of insurance with respect to the Connecticut Property (as therein defined) within 7 days of the date thereof.

**RESPONSE:**

## REQUEST NO. 119

Please admit that neither Mr. Klein, nor any representative of Mr. Klein, furnished the Bank with evidence of insurance concerning the Connecticut Property (as defined in the April 12 Letter) prior to April 20, 2010.

HFD 215844.4

**RESPONSE:**

**REQUEST NO. 120**

Please admit that neither Mr. Klein, nor any person known to him, ever responded to the April 12 Letter.

**RESPONSE:**

**REQUEST NO. 121**

Please admit that neither Mr. Klein, nor any person known to him, ever responded to the April 12 Letter in writing.

**RESPONSE:**

**REQUEST NO. 122**

Please admit that the April 22, 2010 email attached hereto as <u>Exhibit I</u> (the "April 22 Email") is a true and accurate copy of the original.

**RESPONSE:**

**REQUEST NO. 123**

Please admit that the April 22 Email was received by Samuel Klein.

**RESPONSE:**

**REQUEST NO. 124**

Please admit that the April 23, 2010 emails attached hereto as <u>Exhibit J</u> (the "April 23 Emails" are true and accurate copies of the original.

**RESPONSE:**


**REQUEST NO. 125**

Please admit that Jennifer Mickan was, on April 23, 2010, an authorized representative of Samuel Klein.

**RESPONSE:**


**REQUEST NO. 126**

Please admit that the April 26, 2010 email attached hereto as <u>Exhibit K</u> (the "April 26 Email") is a  true and accurate copy of the original.

**RESPONSE:**


**REQUEST NO. 127**

Please admit that the April 26 Email was received by Samuel Klein.

**RESPONSE:**


**REQUEST NO. 128**

Please admit that the April 26 Email was received by Kathleen Stack.

**RESPONSE:**


- 30 -

**REQUEST NO. 129**

Please admit that Kathleen Stack was, on April 26, 2010, an authorized representative of Samuel Klein.

**RESPONSE:**


**REQUEST NO. 130**

Please admit that the April 30, 2010 email attached hereto as <u>Exhibit L</u> (the "April 30 Email") is a true and accurate copy of the original.

**RESPONSE:**


**REQUEST NO. 131**

Please admit that the April 30 Email was received by Samuel Klein.

**RESPONSE:**


**REQUEST NO. 132**

Please admit that the May 6, 2010 letter attached hereto as <u>Exhibit M</u> (the May 6 Letter) is a true and accurate copy of the original.

**RESPONSE:**


**REQUEST NO. 133**

Please admit that the May 6 Letter accuses the Bank of consistently attempting to manufacture a default as regards Mr. Klein.

- 31 -

**RESPONSE:**


## REQUEST NO. 134

Please admit that May 12, 2010 letter attached hereto as <u>Exhibit N</u> (the May 12 Letter) is a true and accurate copy of the original.

**RESPONSE:**


## REQUEST NO. 135

Please admit that the May 12 Letter (with all enclosures) was received by Mr. Klein.

**RESPONSE:**


## REQUEST NO. 136

Please admit that the May 12 Letter was received by Mr. Klein.

**RESPONSE:**


## REQUEST NO. 137

Please admit that the May 12 Letter informed Mr. Klein that the Bank was unwilling to agree to any proposal with respect to the loans therein referenced "unless and until [Mr. Klein] provide[d] the Bank with satisfactory financial information, and facilitate[d] appraisals of [the Bank's] collateral."

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 138**

Please admit that, as of May 12, 2010, Mr. Klein had not provided the Bank with a personal financial statement.

**RESPONSE:**


**REQUEST NO. 139**

Please admit that, as of May 12, 2010, Mr. Klein had not facilitated an appraisal of the Connecticut Property (as defined in the May 12 Letter).

**RESPONSE:**


**REQUEST NO. 140**

Please admit that, as of May 12, 2010, Mr. Klein had not facilitated an appraisal of the New York Lease (as defined in the May 12 Letter).

**RESPONSE:**


**REQUEST NO. 141**

Please admit that, as of May 12, 2010, Mr. Klein had not facilitated an appraisal of the Wyoming Property (as defined in the May 12 Letter).

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 142**

Please admit that neither Klein, nor any authorized representative of Klein, authored any correspondence to the Bank, or any representative thereof, contradicting the assertion in the May 12 Letter that "the PLC Note continues to be past due for two payments."

**RESPONSE:**


**REQUEST NO. 143**

Please admit that neither Klein, nor any authorized representative of Klein, authored any letter to the Bank, or any representative thereof, contradicting the assertion in the May 12 Letter that Mr. Klein had informed the Bank that he had "no intention of bringing the [Wyoming Note] current, because in [his] view, no court would allow action to be taken against [him]."

**RESPONSE:**


**REQUEST NO. 144**

Please admit that neither PLC, nor any authorized representative of PLC, authored any letter to the Bank, or any representative thereof, contradicting the assertion in the May 12 Letter that PLC had informed the Bank that it had "no intention of bringing the loan [Wyoming Note] current, because in [its] view, no court would allow action to be taken against [it]."

**RESPONSE:**

- 34 -

**REQUEST NO. 145**

Please admit that the May 12 Letter informed Mr. Klein that the Bank would be unwilling and unable to entertain any proposal from him unless and until the Bank was provided with satisfactory financial information.

**RESPONSE:**

**REQUEST NO. 146**

Please admit that the May 12 Letter informed Mr. Klein that the Bank would be unwilling and unable to entertain any proposal from him unless and until Mr. Klein facilitated appraisal of the Bank's collateral.

**RESPONSE:**

**REQUEST NO. 147**

Please admit that neither Mr. Klein nor any authorized representative of Mr. Klein provided the Bank with Mr. Klein's personal financial statement subsequent to the May 12 Letter.

**RESPONSE:**

**REQUEST NO. 148**

Please admit that neither Mr. Klein nor any authorized representative of Mr. Klein facilitated appraisals of the Bank's collateral subsequent to the May 12 Letter.

**RESPONSE:**

- 35 -

**REQUEST NO. 149**

Please admit that the May 17, 2010 letter attached hereto as <u>Exhibit O</u> (the "May 17 Letter") is a true and accurate copy of the original.

**RESPONSE:**

**REQUEST NO. 150**

Please admit that the May 17 Letter claims that "the loan documents you drafted and had me execute were not consistent" with a certain March 30, 2006 commitment letter executed by Gary Todd Pancoast on behalf of U.S. Trust.

**RESPONSE:**

**REQUEST NO. 151**

Please admit that Mr. Andrew Maidman was not involved in any way with the execution of the New York Note, as all defined in the May 17 Letter.

**RESPONSE:**

**REQUEST NO. 152**

Please admit that Mr. Andrew Maidman was not involved in any way with the closing of the New York Loan, as all defined in the May 17 Letter.

**RESPONSE:**

- 36 -

## REQUEST NO. 153

Please admit that the Bank was not involved in any way with the execution of the New York Note, as all defined in the May 17 Letter.

**RESPONSE:**

## REQUEST NO. 154

Please admit that the Bank was not involved in any way with the closing of the New York loan, as all defined in the May 17 Letter.

**RESPONSE:**

## REQUEST NO. 155

Please admit that Agrippa was represented by counsel in connection with execution of the New York Note (as defined in the May 17 Letter).

**RESPONSE:**

## REQUEST NO. 156

Please admit that Agrippa was represented by counsel in connection with closing of the New York Loan (as defined in the May 17 Letter).

**RESPONSE:**

- 37 -

**REQUEST NO. 157**

Please admit that Mr. Klein was represented by counsel in connection execution of the New York Note (as defined in the May 17 Letter)

**RESPONSE:**

**REQUEST NO. 158**

Please admit that Mr. Klein was represented by counsel in connection with closing of the New York Loan (as defined in the May 17 Letter).

**RESPONSE:**

**REQUEST NO. 159**

Please admit that the May 20, 2010 letter attached hereto as Exhibit P (the "May 20 Letter") is a true and accurate copy of the original.

**RESPONSE:**

**REQUEST NO. 160**

Please admit that the May 20 Letter was received by Klein.

**RESPONSE:**

**REQUEST NO. 161**

Please admit that the May 20 Letter was received by PLC.

**RESPONSE:**

**REQUEST NO. 162**

Please admit that the May 20 Letter was received by Agrippa.

**RESPONSE:**


**REQUEST NO. 163**

Please admit that neither Mr. Klein nor any authorized representative of him authored, subsequent to the May 20 Letter, any correspondence to the Bank, or any representative thereof, disputing the assertion in the May 20 Letter that the Wyoming Note (as therein defined) was presently three payments in arrears.

**RESPONSE:**


**REQUEST NO. 164**

Please admit that neither Mr. Klein nor any authorized representative of him authored, subsequent to the May 20 Letter,  any correspondence to the Bank, or any representative thereof, disputing the assertion in the May 20 Letter that the PLC Note (as therein defined) was presently three payments in arrears.

**RESPONSE:**


**REQUEST NO. 165**

Please admit that neither Mr. Klein nor any authorized representative of him authored, subsequent to the May 20 Letter, any correspondence to the Bank, or any representative thereof,

- 39 -

disputing the assertion in the May 20 Letter that the New York Note (as therein defined) was in default.

**RESPONSE:**


**REQUEST NO. 166**

Please admit that neither Mr. Klein nor any authorized representative of Mr. Klein ever responded to the May 20 Letter.

**RESPONSE:**


**REQUEST NO. 167**

Please admit that, as of May 20, 2010, neither Mr. Klein, nor any person known to him, had provided the Bank with evidence that property insurance had been obtained with respect to the Connecticut Property (as defined in the May 20 Letter) naming the Bank as "mortgagee."

**RESPONSE:**


**REQUEST NO. 168**

Please admit that the June 4, 2010 letter attached hereto as <u>Exhibit Q</u> (the "June 4 Letter") is a true and accurate copy of the original.

**RESPONSE:**


**REQUEST NO. 169**

Please admit that the June 4 Letter was received by PLC.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 170**

Please admit that the June 4 Letter was received by Klein.

**RESPONSE:**


**REQUEST NO. 171**

Please admit that neither Mr. Klein nor any representative of him has authored any correspondence to the Bank, or to any representative thereof, disputing the assertions contained within the June 4 Letter that the Loan (as therein defined) is in default.

**RESPONSE:**


**REQUEST NO. 172**

Please admit that neither PLC nor any representative of PLC has authored any correspondence to the Bank, or to any representative thereof, disputing the assertions contained within the June 4 Letter that the Loan (as therein defined) is in default.

**RESPONSE:**


**REQUEST NO. 173**

Please admit that, subsequent to June 4, 2010, no payments have been made with respect to the Wyoming Note (as defined in the June 4 Letter).

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 174**

Please admit that the June 4 Letter attached hereto as <u>Exhibit R</u> (the "June 4 Agrippa Letter") is a true and accurate copy of the original.

**RESPONSE:**


**REQUEST NO. 175**

Please admit that the June 4 Agrippa Letter was received by Agrippa.

**RESPONSE:**


**REQUEST NO. 176**

Please admit that the June 4 Agrippa Letter was received by Mr. Klein.

**RESPONSE:**


**REQUEST NO. 177**

Please admit that neither Mr. Klein nor any representative of him has authored any correspondence to the Bank, or to any representative thereof, disputing the assertions contained within the June 4 Agrippa Letter that the Agrippa Loan (as therein defined) is in default

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 178**

Please admit that neither Agrippa nor any representative of Agrippa has authored any correspondence to the Bank, or to any representative thereof, disputing the assertions contained within the June 4 Agrippa Letter that the Loan (as therein defined is in default)

**RESPONSE:**


**REQUEST NO. 179**

Please admit that, subsequent to June 4, 2010, no payments have been made with respect to the Agrippa Note (as defined in the June 4 Agrippa Letter).

**RESPONSE:**


**REQUEST NO. 180**

Please admit that, as of June 4, 2010, Mr. Klein was, in accordance with generally accepted accounting principles, insolvent because he was failing to pay his debts as they became due in the ordinary course of business.

**RESPONSE:**


**REQUEST NO. 181**

Please admit that Mr. Klein is not in possession of, and does not have knowledge of the existence of, any writing evidencing that the Bank ever agreed to a payment forbearance with respect to any Note executed by PLC.

- 43 -

HFD 215844.4

RESPONSE:


## REQUEST NO. 182

Please admit that Mr. Klein is not in possession of, and does not have knowledge of the existence of, any writing evidencing that the Bank ever agreed to a payment forbearance with respect to any Note executed by Agrippa.

RESPONSE:


## REQUEST NO. 183

Please admit that Mr. Klein is not in possession of, and does not have knowledge of the existence of, any writing evidencing that the Bank ever agreed to a payment forbearance with respect to any Note executed by Mr. Klein.

RESPONSE:


## REQUEST NO. 184

Please admit that Mr. Klein is not in possession of, and does not have knowledge of the existence of, any written document authored by the Bank, or any authorized representative thereof, which evidences that the Bank agreed to a payment forbearance with respect to any Note made by PLC.

RESPONSE:

**REQUEST NO. 185**

Please admit that Mr. Klein is not in possession of, and does not have knowledge of the existence of, any written document authored by the Bank, or any authorized representative thereof, which evidences that the Bank agreed to a payment forbearance with respect to any Note made by Agrippa.

**RESPONSE:**


**REQUEST NO. 186**

Please admit that Mr. Klein is not in possession of, and does not have knowledge of the existence of, any written document authored by the Bank, or any authorized representative thereof, which evidences that the Bank agreed to a payment forbearance with respect to any Note made by Mr. Klein.

**RESPONSE:**


**REQUEST NO. 187**

Please admit that Mr. Klein granted a mortgage to Signature Bank in the original principal amount of $12,875,000.00, dated June 1, 2009 (the "Signature Bank Mortgage").

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 188**

Please admit that the Signature Bank Mortgage was recorded at Volume 5782, Page 208 of the Greenwich Land Records, and re-recorded on September 23, 2009, at Volume 5842, Page 59 of said Land Records.

**RESPONSE:**


**REQUEST NO. 189**

Please admit that the Signature Bank Mortgage encumbers and affects title to Mr. Klein's real property at 131 Pecksland Road, Greenwich, Connecticut.

**RESPONSE:**


**REQUEST NO. 190**

Please admit that John R. Hawthorne and/or Hawthorne Brothers Tree Service, Inc. recorded a lien with respect to Mr. Klein's real property at 131 Pecksland Road, Greenwich, Connecticut in the original principal amount of $28,835.33, and that said lien is recorded in Book 5980, Page 120 of the Greenwich Land Records.

**RESPONSE:**


**REQUEST NO. 191**

Please admit that New Alliance Bank caused an attachment in the amount of $1 million to be recorded with respect to Mr. Klein's 131 Pecksland Road, Greenwich real property in the amount of $1 million (the "New Alliance Lien").

HFD 215844.4

**RESPONSE:**


## REQUEST NO. 192

Please admit that New Alliance Lien is recorded at Book 6005, Page 216 of the Greenwich Land Records.

**RESPONSE:**


## REQUEST NO. 193

Please admit that New Alliance Bank has sued Mr. Klein in the Connecticut Superior Court, Judicial District of Fairfield at Bridgeport, in connection with a certain commercial loan agreement dated August 29, 2008 from Mr. Klein to New Alliance Bank in the amount of $979,999.99.

**RESPONSE:**


## REQUEST NO. 194

Please admit that Mr. Klein has been sued by Sentient Flight Group, LLC in the United States District Court for the Southern District of New York for amounts allegedly due and owing totaling $249,132.02.

**RESPONSE:**


## REQUEST NO. 195

Please admit that Mr. Klein was or is a shareholder of Briarcrest Nursing Home, Inc.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 196**

Please admit that Mr. Klein was or is a majority shareholder of Briarcrest Nursing Home, Inc.

**RESPONSE:**


**REQUEST NO. 197**

Please admit that Mr. Klein was or is the holder of at least 25% of the stock of Briarcrest Nursing Home, Inc.

**RESPONSE:**


**REQUEST NO. 198**

Please admit that Mr. Klein was or is an officer of Briarcrest Nursing Home, Inc.

**RESPONSE:**


**REQUEST NO. 199**

Please admit that Mr. Klein was or is a member of the board of directors of Briarcrest Nursing Home, Inc.

**RESPONSE:**


**REQUEST NO. 200**

Please admit that, at sometime prior to January 1, 2003, Briarcrest Nursing Home, Inc. pled guilty to a Class C felony.

HFD 215844.4

**RESPONSE:**


## REQUEST NO. 201

Please admit that, sometime prior to January 1, 2003, Briarcrest Nursing Home, Inc.

pled guilty to a Class C Felony in the Westchester County Court.

**RESPONSE:**


## REQUEST NO. 202

Please admit that, sometime prior to January 1, 2003, Briarcrest Nursing Home, Inc.

pled guilty to the crime of Grand Larceny in the 2nd Degree in the Westchester County Court.

**RESPONSE:**


## REQUEST NO. 203

Please admit that, sometime prior to January 1, 2003, Samuel Klein pled guilty in

Ossining Village Court to the crime of Willful Violation of the Public Health Laws.

**RESPONSE:**


## REQUEST NO. 204

Please admit that, sometime prior to January 1, 2003, Briarcrest Nursing Home, Inc.

and/or Samuel Klein agreed to pay restitution in the amount of $400,000.00 to the State of New

York and/or to Medicaid.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 205**

Please admit that, during the month of June, 2005, Briarcrest Nursing Home, Inc. was barred by the United States Department of Health and Human Services from receiving Medicare and/or Medicaid Program payments.

**RESPONSE:**


**REQUEST NO. 206**

Please admit that Agrippa first became aware that the Agrippa Note (as defined in the Complaint) had not been adjusted in accordance with its terms as a result of a communication from the Bank.

**RESPONSE:**


**REQUEST NO. 207**

Please admit that  Mr. Klein first became aware that the Agrippa Note (as defined in the Complaint) had not been adjusted in accordance with its terms as a result of a communication from the Bank.

**RESPONSE:**


**REQUEST NO. 208**

Please admit that the Bank has never attempted to charge or levy any late fee as regards the PLC Note (as defined in the Complaint) with respect to the January, 2010 payment that was assertedly not timely applied by the Bank (as referenced in paragraph 14 of defendant's counterclaim).

HFD 215844.4

**RESPONSE:**


**REQUEST NO. 209**

Please admit that the Bank has never, as a consequence of the Bank's alleged failure to timely credit a payment with respect to the PLC Note (as defined in the Complaint) attempted to apply additional interest with respect to the January, 2010 payment, over and above that which would have ordinarily been due, as a consequence of such alleged failure to timely credit, as referenced in paragraph 14 of defendant's counterclaim.

**RESPONSE:**


**REQUEST NO. 210**

Please admit that the Bank has never attempted to charge or levy any late fee as regards the Agrippa Note (as defined in the Complaint) with respect to the January, 2010 payment that was assertedly not timely applied by the Bank (as referenced in paragraph 14 of defendant's counterclaim).

**RESPONSE:**


**REQUEST NO. 211**

Please admit that the Bank has never, as a consequence of the Bank's alleged failure to timely credit a payment with respect to the Agrippa Note (as defined in the Complaint) attempted to apply additional interest with respect to the January, 2010 payment, over and above that which would have ordinarily been due, as a consequence of such alleged failure to timely credit, all as referenced in paragraph 14 of defendant's counterclaim.

HFD 215844.4

**RESPONSE:**

## REQUEST NO. 212

Please admit that, subsequent to being advised of the "timely credit" issue referenced in paragraph 14 of defendant's counterclaim, the Bank immediately undertook to properly credit the Agrippa Note (as therein defined).

**RESPONSE:**

## REQUEST NO. 213

Please admit that, subsequent to being advised of the "timely credit" issue referenced in paragraph 14 of defendant's counterclaim, the Bank immediately undertook to properly credit the PLC Note (as therein defined).

**RESPONSE:**

## REQUEST NO. 214

Please admit that the Bank's declaration that the Agrippa Note (as defined in the Complaint) was in default, all as referenced in paragraph 14 of defendant's counterclaim, did not in any way reference or assert that the said default was premised upon any non-payment or late payment of the January, 2010 payment due pursuant to such note.

**RESPONSE:**

**REQUEST NO. 215**

Please admit that the Bank's declaration that the PLC Note (as defined in the Complaint) was in default, all as referenced in paragraph 14 of defendant's counterclaim, did not in any way reference or assert that the said default was premised upon any non-payment or late payment of the January, 2010 payment due pursuant to such note.

**RESPONSE:**

**REQUEST NO. 216**

Please admit that admit that the Connecticut Mortgage (as defined in the March 23 Letter) specifically required that any insurance maintained with respect to the Connecticut Property (as defined in the March 23 Letter) contain a "standard mortgage clause," and that the same should also name the Bank as "mortgagee and/or as an additional loss payee."

**RESPONSE:**

**REQUEST NO. 217**

Please admit that no declaration of default issued in connection with the Klein Note (as defined in defendant's counterclaim) in any way referenced or asserted that the said default was premised upon any nonpayment of property taxes.

**RESPONSE:**

- 53 -

**REQUEST NO. 218**

Please admit that no declaration of default issued in connection with the Klein Note (as defined in defendant's counterclaim) in any way referenced or asserted that the said default was premised upon any failure to maintain property insurance.

**RESPONSE:**


**REQUEST NO. 219**

Please admit that the Klein Note has not, as of the date hereof, been declared in default.

**RESPONSE:**


**REQUEST NO. 220**

Please admit that a debtor-creditor relationship exists between PLC and the Bank.

**RESPONSE:**


**REQUEST NO. 221**

Please admit that a debtor-creditor relationship exists between Mr. Klein and the Bank.

**RESPONSE:**


**REQUEST NO. 222**

Please admit that prior to filing its counterclaim, defendant had the ability, both factually and as a matter of law, to obtain a credit report with respect to himself.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 223**

Please admit that, subsequent to filing of the Complaint, but prior to the filing by defendant of his counterclaim, defendant failed to obtain any credit reports with respect to himself.

**RESPONSE:**

**REQUEST NO. 224**

Please admit that, subsequent to the filing of the Complaint, defendant has not sought to obtain credit from any lenders.

**RESPONSE:**

**REQUEST NO. 225**

Please admit that, as of the date hereof, defendant has no factual evidence whatsoever to substantiate any assertion that the Bank has notified various credit agencies that the Agrippa Guaranty (as defined in the Complaint) is in default.

**RESPONSE:**

**REQUEST NO. 226**

Please admit that, as of the date hereof, defendant has no factual evidence whatsoever to substantiate any assertion that the Bank has notified various credit agencies that the Agrippa Note (as defined in the Complaint) is in default.

**RESPONSE:**

- 55 -

**REQUEST NO. 227**

Please admit that, as of the date hereof, defendant has no factual evidence whatsoever to substantiate any assertion that the Bank has notified various credit agencies that the PLC Note (as defined in the Complaint) is in default.

**RESPONSE:**


**REQUEST NO. 228**

Please admit that, as of the date hereof, defendant has no factual evidence whatsoever to substantiate any assertion that the Bank has notified various credit agencies that the Klein Note (as defined in the Complaint) is in default.

**RESPONSE:**


**REQUEST NO. 229**

Please admit that defendant has not sought any medical treatment as a result of the "severe emotional distress" he alleges he has suffered.

**RESPONSE:**


**REQUEST NO. 230**

Please admit that defendant has not sought any psychological treatment as a result of the "severe emotional distress" he alleges he has suffered.

**RESPONSE:**

HFD 215844.4

**REQUEST NO. 231**

Please admit that defendant has not sought any psychiatric treatment as a result of the "severe emotional distress" he alleges he has suffered.

**RESPONSE:**


**REQUEST NO. 232**

Please admit that defendant has not sought any counseling as a result of the "severe emotional distress" he alleges he has suffered.

**RESPONSE:**


                                        BANK OF AMERICA, N.A.

                                        Donald E. Frechette, Esq. (ct08930)
                                        Edwards Angell Palmer & Dodge LLP
                                        20 Church Street, 20th Floor
                                        Hartford, CT 06103
                                        Tel:  (860) 525-5065
                                        Fax: (860) 527-4198
                                        Email: dfrechette@eapdlaw.com

- 57 -

HFD 215844.4

## CERTIFICATION OF SERVICE

This is to certify that on this 12th day of October 2010, a copy of the foregoing

was mailed, via first class mail, postage prepaid on the following:

Andrew B. Nevas, Esq.
Levett Rockwood
33 Riverside Avenue
Westport, CT 06881

Donald E. Frechette, Esq. (ct08930)
Edwards Angell Palmer & Dodge LLP
20 Church Street, 20th Floor
Hartford, CT 06103
Tel: (860) 525-5065
Fax: (860) 527-4198
Email: dfrechette@eapdlaw.com

- 58 -

HFD 215844.4

# **EXHIBIT H**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO: |
| | : | 3:10-cv-987 (MRK) |
| v. | : | |
| | : | |
| SAMUEL KLEIN, | : | |
| | : | |
| Defendant. | : | OCTOBER *l*, 2010 |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION

Pursuant to *Fed. R. Civ. P.* 26, 33 and 34, Plaintiff, Bank of America, N.A. ("BOA"), by and through its undersigned counsel, hereby propounds the following interrogatories and request for production (collectively the "Discovery Requests") to be answered by defendant Samuel Klein ("Mr. Klein" or "Defendant") in accordance with the instructions and definitions provided herein within thirty (30) days of the date hereof:

### INSTRUCTIONS

1.      Defendant is requested to answer each Interrogatory and Request for Production set forth below separately and fully in writing and under oath. Defendant's responses are to be signed and verified by Mr. Klein.

2.      Each discovery request not only calls for information known to Defendant, but also for information available to him through reasonable inquiry, including inquiry of his attorneys, representatives, relatives and agents.

3.      These Discovery Requests are continuing, and if additional information is received or discovered after responses are served, supplemental answers should be made, providing such additional information as promptly as possible.

4.      Whenever appropriate, the singular form of a word shall be interpreted in the plural, or vice versa; use of the masculine shall include the feminine and neuter; verb tenses shall be interpreted to include past, present, and future tenses as necessary to bring within the scope of these requests any information that might otherwise be construed as outside its scope.

5.      If your response to any part of these Discovery Requests is that the documents are not in your possession or custody, describe in detail the unsuccessful efforts you made to locate the records.

6.      If your response is that the documents are not in your control, identify who has control and the location of the records.

7.      If a request for production seeks specific documents or any itemized category which are not in your possession, custody or control, provide any documents you have that contain all or part of the information contained in the requested document or category.

8.      If any request for documents is deemed to call for the production of privileged or work product materials and such privilege or work product is asserted, provide the following information:

a.      the reason for withholding the document;

b.      a statement of the basis for the claim of privilege, work product or other ground of non-disclosure;

c.      a brief description of the document including:

- 2 -

(i)      the date of the document;

(ii)     number of pages, attachments and appendices;

(iii)    the names of its author, authors or the individual(s) who prepared the document and an identification by employment and title of each such person;

(iv)    the name of each person who was sent, shown or given blind or carbon copies of the document, or has had access or custody of the document, together with an identification of each such person;

(v)     the present custodian; and

(vi)    the subject matter of the document, and in the case of any document relating or referring to a meeting or conversation, an identification of such meeting or conversation.

9.      If any document requested herein was at one time in existence, but has been lost, discarded or destroyed, identify each such document and provide the following:

a.      the date or approximate date it was lost, discarded or destroyed;

b.      the circumstances and manner in which it was lost, discarded or destroyed;

c.      the reason or reasons for disposing of the document (if discarded or destroyed);

d.      the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document;

e.      the identity of the person(s) who lost, discarded or destroyed the document; and

f.      the identity of all persons having knowledge of the contents thereof.

- 3 -

10.   Each request for production of a document or documents shall be deemed to call for the production of the original document or documents, to the extent that they are in or subject to, directly or indirectly, your control.  In addition, each request should be considered to include all copies and to the extent the content of any document differs from draft to draft or from each other, include each such version (e.g., by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereto).

## **DEFINITIONS**

1.   **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.   **Document.** The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34 (a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

3.   **Parties.** The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates, as well as any person acting in concert with them or subject to their control. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

4.   **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

5.   **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

HFD 214129.2

6. **Statement.** The term "statement" means (A) a written statement in the handwriting of the person making it, or signed, or initialed, or otherwise in writing adopted or approved by the person making it; or (B) a stenographic, mechanical, electrical or other recording or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and which is contemporaneously recorded.

7. The **"New York Note"** means the Promissory Note executed by Agrippa LLC and dated May 23, 2006 in the original principal amount of $3,200,000.00.

8. The **"New York Security Agreement"** shall mean the Security Agreement dated May 23, 2006 securing the New York Note.

9. The **"New York Lease"** means a certain proprietary lease in and to Apartment 12A, 445 Lafayette Street, New York, New York to which the New York Security Agreement pertains.

10. The **"New York Guaranty"** means the Consumer Guaranty dated May 23, 2006 executed by Samuel Klein, guaranteeing the New York Note.

11. The **"Agrippa Loan"** means the loan evidenced by the New York Note, the New York Security Agreement, and the New York Guaranty.

12. The **"Wyoming Note"** means the Promissory Note executed by PLC Partners LLC and dated February 26, 2007 in the original principal amount of $1,350,000.00.

13. The **"Wyoming Mortgage"** means the Mortgage dated February 26, 2007 securing the Wyoming Note.

14. The **"Wyoming Property"** means certain real property known as 2480 North Harvest Dance Road, Jackson, Wyoming which is encumbered by the Wyoming Mortgage.

HFD 214129.2

15.     **The "Wyoming Guaranty"** means the Commercial Guaranty dated February 26, 2007 executed by Samuel Klein, guaranteeing the Wyoming Note.

16.     **The "PLC Loan"** means the loan evidenced by the Wyoming Note, the Wyoming Mortgage, and the Wyoming Guaranty.

17.     **The "Counterclaim"** means the Counterclaim (and the thirteen counterclaims set forth therein) filed by Mr. Klein in the above-captioned action on or about September 24, 2010.

## RULES OF CONSTRUCTION

1.     **All/Each.** The terms "all" and "each" shall be construed as all and each.

2.     **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.     **Number.** The use of the singular form of any word includes the plural and vice versa.

## INTERROGATORIES

1.     Please state any and all facts relating to, upon which you relied to support, or which you contend support your statement in paragraph 16 of the First Counterclaim that Mr. Klein "maintained property insurance and paid all taxes in full on time" at all times with respect to the real property securing the Klein Note (as therein defined)..

**ANSWER:**

2.     Please state any and all facts relating to, upon which you relied to support, or which you contend support your statement in paragraph 21 of Fourth Counterclaim that the alleged actions of BOA "have resulted in the Defendant's credit ratings being lowered."

- 6 -

**ANSWER:**

      3.      Please state any and all facts relating to, upon which you relied to support, or which you contend support your statement in paragraph 21 of Fourth Counterclaim that the alleged actions of BOA have "negatively impact[ed] [Mr. Klein's] relationships with various lenders and potential lenders and hinder[ed] his ability to fund his business activities."

**ANSWER:**

      4.      Please state any and all facts relating to, upon which you relied to support, or which you contend support your statement in paragraph 23 of Fourth Counterclaim that Mr. Klein has suffered "actual loss."

**ANSWER:**

      5.      Please state any and all facts relating to, upon which you relied to support, or which you contend support your statement in paragraph 21 of Fifth Counterclaim that "Plaintiff's actions and inactions have interfered with [Mr. Klein's] pursuit of prospective economic advantages and business pursuits involving other investments and uses of his money."

**ANSWER:**

      6.      Please state any and all facts relating to, upon which you relied to support, or which you contend support your statement in paragraph 21 of Eleventh Counterclaim that Mr. Klein suffered "severe emotional distress."

**ANSWER:**

      7.      Identify each and every hospital and/or health care provider (including, but not limited to, psychologists, psychiatrists, social workers, psychotherapists, counselors, medical doctors, chiropractors, osteopathic physicians, massage therapists, physical therapists,

HFD 214129.2

rehabilitation therapists, pharmacists, ambulance companies and/or acupuncturists) from which

you sought or received treatment for emotional or mental injuries or distress at any time from

January 1, 2000 to the present date.

**ANSWER:**

8.     Please describe in detail the damages Mr. Klein allegedly sustained as a direct and

proximate result of the actions of BOA.

**ANSWER:**

9.     Please identify each and every demand for payment that has been made upon you

by creditors and/or third parties in the last ten years.

**ANSWER:**

10.    Please identify every person that you intend to utilize as an expert witness in this

matter and, with respect to such person, state fully all opinions to be expressed by such person in

this matter and the basis and reasons therefor; the information considered by such person(s) in

forming the opinion(s); any exhibits to be used as a summary of or support for such opinion(s);

the qualifications of such persons(s), including a list of all publications authored by such

person(s) within the preceding ten years; the compensation being paid for the study and

testimony; and a listing of any other cases in which such person(s) has testified as an expert at

trial or by deposition within the preceding four years.

**ANSWER:**

11.    Except as it relates to impeachment evidence, state the names and addresses of all

person(s) that you expect to call to testify as witnesses (other than expert witnesses) on your

behalf at trial in this action and, generally, what you expect each such witness will testify to at the time of such trial.

**ANSWER:**

12.    Identify all other lawsuits, criminal proceedings, administrative proceedings, arbitrations or mediations in which you have been named a party or participated at any time since June 1, 2000 by stating the following:

      (a)    The case or matter name;

      (b)    The docket or other reference number;

      (c)    The authority before which said case or matter was pending;

      (d)    The identity of all parties to said case or matter; and

      (e)    The outcome or resolution of said case or matter.

**ANSWER:**

13.    Identify any communications you had with BOA relating to, upon which you relied to support, or which you contend support the allegations in the Counterclaim.

**ANSWER:**

14.    Identify any communications you had with any third parties (other than your attorney(s)) relating to, upon which you relied to support, or which you contend support the allegations in the Counterclaim.

**ANSWER:**

15.    If you answer any of the accompanying requests to admit with anything other han an unqualified, "Admitted," please: (a) describe in detail the basis for your denial, qualification or equivocation; (b) identify any communications which relate to, or which you contend provide

- 9 -

factual support for such denial, qualification or equivocation; and (c) identify any documents that relate to, or which you contend provide factual support for such denial, qualification or equivocation.

**ANSWER:**

## REQUEST FOR PRODUCTION

1.     Any and all documents identified by you in response to any of the interrogatories propounded upon you in this action and/or which you used, referred to, which concern, or upon which you relied in responding to any interrogatory propounded upon you by BOA in this action.

**RESPONSE:**

2.     Any and all documents concerning the damages you claim to have incurred as a result of BOA's acts or omissions, including without limitation any and all documents concerning the "severe emotional distress" and "actual loss" alleged in the Counterclaim.

**RESPONSE:**

3.     Any and all documents prepared by, for, or at the direction of any and every hospital and/or health care provider (including, but not limited to, psychologists, psychiatrists, social workers, psychotherapists, counselors, medical doctors, chiropractors, osteopathic physicians, massage therapists, physical therapists, rehabilitation therapists, pharmacists, ambulance companies and/or acupuncturists) concerning your treatment for emotional or mental injuries or distress at any time from January 1, 2000 to the present date. In addition, please provide executed and fully completed copies of the authorizations attached hereto as Exhibit A

and <u>Exhibit B</u> with respect to each such hospital and/or health care provider from which you

sought or received treatment for emotional or mental injuries or distress from January 1, 2000 to

the present date.

**RESPONSE:**

4.    All documents filed in any other lawsuit, criminal proceeding, administrative

proceeding, arbitration or mediation in which you have been named a party or participated at any

time since June 1, 2000, including without limitation any divorce proceeding in which you were

a party.

**RESPONSE:**

5.    Copies of your federal and state tax returns for the years 2004 through 2009.

**RESPONSE:**

6.    All documents concerning the Agrippa Loan.

**RESPONSE:**

7.    All documents concerning the PLC Loan.

**RESPONSE:**

8.    All documents concerning your allegation that BOA, or any other bank, failed to

properly apply payments concerning the Agrippa Loan.

**RESPONSE:**

9.    All documents concerning your allegation that BOA, or any other bank, failed to

properly apply payments concerning the PLC Loan.

**RESPONSE:**

- 11 -

HFD 214129.2

10.     All documents concerning your allegation that BOA, or any other bank, failed to adjust the interest rate concerning the Agrippa Loan.

**RESPONSE:**

11.     All documents that support, refer to, or upon which you relied to assert any of your defenses to the above-captioned lawsuit.

**RESPONSE:**

12.     All documents concerning any claimed or alleged non-compliance by Agrippa with the terms of the New York Lease.

**RESPONSE:**

13.     All documents authored or transmitted to or for the benefit of third parties regarding the Agrippa Loan or the PLC Loan, as well as any documents reviewed or consulted by you in preparing or authoring the same.

**RESPONSE:**

14.     All documents concerning communications between you and BOA at any time from January 1, 2006 through the present date.

**RESPONSE:**

15.     All documents you received from BOA at any time from January 1, 2006 through the present date.

**RESPONSE:**

16.     Copies of bank statements and account records for any account drawn upon to make payments with respect to the Agrippa Loan for the period commencing on May 23, 2006, and continuing through to the present.

- 12 -

HFD 214129.2

**RESPONSE:**

17.     Copies of bank statements and account records for any account drawn upon to make payments with respect to the PLC Loan for the period commencing on February 26, 2007, and continuing through to the present.

**RESPONSE:**

18.     Copies of bank statements and account records for any account drawn upon to make payments with respect to the Klein Note (as defined in the Counterclaim) for the period commencing on April 28, 2008, and continuing through to the present.

**RESPONSE:**

19.     Any and all documents identified by you in response to any of the accompanying requests to admit propounded upon you in this action and/or which you used, referred to, which concern, or upon which you relied to respond thereto.

**RESPONSE:**

- 13 -

Dated at Hartford, Connecticut this 12th day of October, 2010.

PLAINTIFF,
BANK OF AMERICA, N.A.

By _____

Donald E. Frechette (ct08930)
Edwards, Angell, Palmer & Dodge LLP
20 Church Street
Hartford, CT  06103
Phone:(860) 525-5065
Facsimile: (860) 527-4198

Its Attorneys

- 14 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2010, the foregoing was served via electronic mail

and mailed, postage prepaid first class mail to the following:

Andrew B. Nevas, Esq.
Levett Rockwood P.C.
33 Riverside Avenue
Westport CT 06880

Donald E. Frechette (ct08930)

- 15 -

HFD 214129.2

# EXHIBIT I

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BANK OF AMERICA, N.A.,      :
                                   :

           Plaintiff,        :      CIVIL ACTION NO:
                                   :      3:10-cv-987 (MRK)

v.                           :

                                   :

SAMUEL KLEIN,              :

                                   :

           Defendant.     :      OCTOBER 14, 2010

## SECOND SET OF REQUESTS FOR ADMISSIONS TO DEFENDANT
## SAMUEL KLEIN BY PLAINTIFF BANK OF AMERICA, N.A.

Pursuant to Fed. R. Civ. P. 36, plaintiff, Bank of America, N.A. through its undersigned

counsel, hereby request that the defendant, Samuel Klein, admit the following:

### REQUEST NO. 1

Please admit that, in connection with a certain cause entitled *FHC Danbury, LLC and*

*FHC Newark, LLC v. LJA (Danbury), LLC, LJA Newark, LLC and Samuel Klein*, Delaware

Chancery Court, New Castle County, Docket No. 2855-VCS (hereinafter, the "Action"), the

Court determined that Samuel Klein ("Mr. Klein") willfully violated an order of the Court.

### RESPONSE:



### REQUEST NO. 2

Please admit that, in connection with the Action, the Court determined that Mr. Klein

had made a representation to the court in bad faith.

### RESPONSE:

**REQUEST NO. 3**

Please admit that, in connection with the Action, the Court determined that Mr. Klein had, over the advice of counsel, taken $180,000.00 in "clear violation" of a court order.

**RESPONSE:**

**REQUEST NO. 4**

Please admit that, in connection with the Action, the Court determined that Mr. Klein "flouted" an order of the court.

**RESPONSE:**

**REQUEST NO. 5**

Please admit that, in connection with the Action, the Court characterized Mr. Klein's actions as "theft in violation of a Court Order."

**RESPONSE:**

**REQUEST NO. 6**

Please admit that, in connection with the Action, the Court characterized Mr. Klein as having "fraudulently procured contract rights."

**RESPONSE:**

**REQUEST NO. 7**

Please admit that, in connection with the Action, the Court characterized Mr. Klein's violation of its order as "egregious."

**RESPONSE:**

HFD 216215.1

**REQUEST NO. 8**

Please admit that, in connection with the Action, the Court characterized Mr. Klein's violation of its order as "outrageous."

**RESPONSE:**

**REQUEST NO. 9**

Please admit that, in connection with the Action, the Court characterized Mr. Klein's violation of its order as "ridiculous."

**RESPONSE:**

**REQUEST NO. 10**

Please admit that, in connection with the Action, the Court characterized Mr. Klein as having "misused" the "good offices of this Court."

**RESPONSE:**

**REQUEST NO. 11**

Please admit that, in connection with the Action, the Court determined that Mr. Klein had obtained additional time from the Court only to then use the time gained in order to "secrete funds."

**RESPONSE:**

**REQUEST NO. 12**

Please admit that, in connection with the Action, the Court determined that Mr. Klein "flouted" discovery obligations.

**RESPONSE:**


**REQUEST NO. 13**

Please admit that, in connection with the Action, the Court determined that Mr. Klein had made "[p]hony excuses" in order to delay the production of documents which he was contractually obligated to allow the plaintiff in the Action free access to.

**RESPONSE:**


**REQUEST NO. 14**

Please admit that, in connection with the Action, the Court determined that Mr. Klein had taken funds in direct contravention of a representation by his counsel to contrary effect.

**RESPONSE:**


**REQUEST NO. 15**

Please admit that, in connection with the Action, the Court found that Mr. Klein had engaged in an "intentional violation of a Court Order."

**RESPONSE:**

**REQUEST NO. 16**

Please admit that, in connection with the Action, the Court determined that Mr. Klein "stole" funds.

**RESPONSE:**

**REQUEST NO. 17**

Please admit that, in connection with the Action, the Court determined that Mr. Klein had made "false representations in [a] settlement agreement."

**RESPONSE:**

**REQUEST NO. 18**

Please admit that, in connection with the Action, the Court determined that it was "clear" Mr. Klein "can't be trusted."

**RESPONSE:**

**REQUEST NO. 19**

Please admit that, in connection with the Action, the Court removed Mr. Klein from his position as a fiduciary.

**RESPONSE:**

**REQUEST NO. 20**

Please admit that, in connection with the Action, the Court determined that Mr. Klein had "fraudulently procured a contract."

- 5 -

RESPONSE:

**REQUEST NO. 21**

Please admit that, in connection with the Action, the Court determined that Mr. Klein

had made a representation to plaintiff in bad faith.

RESPONSE:

BANK OF AMERICA, N.A.

Donald E. Frechette, Esq. (ct08930)
Edwards Angell Palmer & Dodge LLP
20 Church Street, 20th Floor
Hartford, CT 06103
Tel:  (860) 525-5065
Fax: (860) 527-4198
Email: dfrechette@eapdlaw.com

- 6 -

## CERTIFICATION OF SERVICE

This is to certify that on this 14th day of October 2010, a copy of the foregoing

was mailed, via first class mail, postage prepaid on the following:

Andrew B. Nevas, Esq.
Levett Rockwood
33 Riverside Avenue
Westport, CT 06881

Donald E. Frechette, Esq. (ct08930)
Edwards Angell Palmer & Dodge LLP
20 Church Street, 20th Floor
Hartford, CT 06103
Tel:  (860) 525-5065
Fax: (860) 527-4198
Email: dfrechette@eapdlaw.com

- 7 -