# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | : | |
| | : | |
| Plaintiff-Counterclaim Defendant, | : | |
| | : | |
| v. | : | No. 3:10cv987 (MRK) |
| | : | |
| SAMUEL KLEIN | : | |
| | : | |
| Defendant-Counterclaimant | : | |

## RULING AND ORDER

Pending before the Court is Defendant-Counterclaimant Samuel Klein's Motion to Disqualify Counsel [doc. # 31]. Plaintiff-Counterclaim Defendant Bank of America, N.A. ("Bank of America") filed its Complaint [doc. # 1] in this action on June 23, 2010. Bank of America is represented by three attorneys from Edwards Angell Palmer & Dodge LLP ("Edwards Angell"), a national law firm based in Boston, Massachusetts. Certain Edwards Angell attorneys represented Mr. Klein from October 2007 until April 2008 in two cases before the Delaware Chancery Court. *See LJA (Danbury), LLC v. Klein*, No. 3314-VCS (Del. Ch. filed Oct. 26, 2007); *FHC Danbury, LLC v. LJA (Danbury), LLC*, No. 2855-VCS (Del. Ch. filed Apr. 2, 2007). Both of those actions were voluntarily dismissed more than two years before this action was filed. For the reasons set forth below, Mr. Klein's Motion to Disqualify Counsel is DENIED and Edwards Angell may continue to represent Bank of America in this action.

## I.

On April 2, 2007, FHC Danbury LLC and FHC Newark LLC (collectively, "the FHC Entities") filed an action against LJA (Danbury), LLC and LJA Newark, LLC (collectively, "the

LJA Entities") in the Delaware Chancery Court.  *See FHC Danbury, LLC v. LJA (Danbury), LLC*, No. 2855-VCS (Del. Ch. filed Apr. 2, 2007).  Samuel Klein, the manager and a part-owner of the LJA Entities, was also named as a defendant.  *See* Ex. C to Pl.'s Objection [doc. # 59-1] at 1.  At the time, the LJA Entities were the managing members of two other companies, KF (Danbury), LLC and KF Newark LLC (collectively, "the KF Entities").  *See id.*  Together, the FHC Entities, the LJA Entities, and the KF Entities co-owned and operated a number of hotels in Connecticut and in New Jersey.  *See id.*  In the first Delaware action, the FHC Entities sought access to the books and records of the KF Entities and accused the LJA Entities and Mr. Klein of mismanaging the KF Entities and misappropriating the KF Entities' funds.  *See id.* at 1-3.

On July 16, 2007, the FHC Entities filed a motion for sanctions against the LJA Entities for violating a court order that barred them from making payments to Mr. Klein out of the KF Entities' assets.  *See* Ex. E to Pl.'s Objection [doc. # 59-3] at 1-2.  The court held a hearing on the motion on July 20, 2008, and at the hearing, the LJA Entities' and Mr. Klein's attorney admitted that he had been surprised to learn that the LJA Entities made payments to Mr. Klein from the KF Entities' funds in violation of the court's order.  *See* Ex. G to Pl.'s Objection [doc. # 59-5] at 12 ("THE COURT:  It surprised me to read that your client violated my order. . . .  I am assuming it surprised you and Mr. Williford.  MR. DREISBACH:  It did.  There was certainly no knowledge of our firm about that.").  The court orally granted the motion for sanctions and ordered Mr. Klein immediately removed as the manager of the Connecticut and New Jersey hotels.  *See id.* at 32 ("And Mr. Klein is removed right now. . . .  I want you to send a letter immediately . . . indicating that . . . the management company that you are proposing can immediately begin to assert managerial control.").

Less than three weeks after the hearing, the original counsel for the LJA Entities and Mr. Klein filed a motion to withdraw, citing the LJA Entities' failure to communicate, the LJA Entities' failure to follow legal advice, and the LJA Entities' misrepresentation of the legal advice they received from their counsel. *See* Ex. H to Pl.'s Objection [doc. # 59-6] at 1-2. The court granted the motion to withdraw on August 24, 2007. *See* Ex. A to Pl.'s Objection [doc. # 58] at 8. Edwards Angell agreed to serve as the LJA Entities' and Mr. Klein's counsel in the first Delaware action on August 23, 2007. *See* Ex. F to Pl.'s Objection [doc. # 59-4]. Edwards Angell partner Michael J. Maimone took primary responsibility for the first Delaware action. *See* Ex. M to Pl.'s Objection [doc. # 62-2] at 1.

On October 26, 2007, the LJA Entities filed a second action in the Delaware Chancery Court against Mr. Klein's then-wife, Leslie Klein. *See LJA (Danbury), LLC v. Klein*, No. 3314-VCS (Del. Ch. filed Oct. 26, 2007). In the second Delaware action, the LJA Entities accused Ms. Klein – who was also a part-owner of the LJA Entities – of improperly refusing to consent to a settlement agreement in the first Delaware action in order to gain leverage in her then-pending divorce from Mr. Klein. Edwards Angell also served as counsel for the LJA Entities in the second Delaware action. *See* Ex. B to Pl.'s Objection [doc. # 59] at 1. Attorney Maimone also took primary responsibility for the second Delaware action. *See id.*

On December 31, 2007, Edwards Angell moved to withdraw as counsel for the LJA Entities and Mr. Klein in the first Delaware action. *See* Ex. L to Pl.'s Objection [doc. # 62-1] at 1. Edwards Angell sought to withdraw because the LJA Entities and Mr. Klein failed to pay bills, failed to maintain regular communications with Edwards Angell, and failed to follow Edwards Angell's legal advice. *See id.* at 2-6. In its motion to withdraw in the first Delaware action, Edwards Angell also announced its intent to withdraw as counsel for the LJA Entities in the

second Delaware action.  *See id.* at 6.  Edwards Angell filed a motion to withdraw as counsel for the LJA Entities in the second Delaware action on January 22, 2008.  *See* Ex. B to Pl.'s Objection [doc. # 59] at 1.  Attorney Maimone – the Edwards Angell partner with primary responsibility for both Delaware actions – left Edwards Angell on May 7, 2008 and took the firm's Klein-related files with him.  *See* Paul D. Brown Aff. [doc. # 53] ¶ 4.

Bank of America filed its Complaint [doc. # 1] in this case on June 23, 2010, and filed an Amended Complaint [doc. # 18] on August 24, 2010.  Bank of America's Amended Complaint alleges the following.  On May 23, 2006, Agrippa, LLA ("Agrippa") borrowed $3,200,000.00 from United States Trust Co., N.A. ("United States Trust").  Mr. Klein personally guaranteed payment of all liabilities owed in connection with the Agrippa loan.  On February 26, 2007, PLC Partners, LLC ("PLC") borrowed $1,350,000 from United States Trust, secured by a mortgage on property in Wyoming.  Mr. Klein personally guaranteed payment of all liabilities owed in connection with that second loan.  Bank of America acquired United States Trusts' interests in the notes and guarantees from the Agrippa and PLC loan transactions.  Mr. Klein failed to comply with the terms of the PLC loan, and the property securing the PLC loan was sold at a foreclosure sale on August 10, 2010.[1]  According to Bank of America, PLC's default of the second loan is evidence that Mr. Klein and his businesses are insolvent.  Bank of America therefore seeks a judgment from the Court against Mr. Klein for the full amount remaining due under the Agrippa loan.  Bank of America is represented by Edwards Angell before this Court; Edwards Angell partner Donald E. Frechette has primary responsibility for the case.

Just three weeks after Bank of America filed its original Complaint in this case, PLC instituted a civil action against Bank of America in the United States District Court for the

---

[1]  When Bank of America filed its original Complaint on June 23, 2010, the foreclosure sale had not yet occurred.

4

District of Wyoming.  *See PLC Partners, LLC v. Bank of America, N.A.*, No. 2:10cv141 (WFD) (filed July 15, 2010).  In the Wyoming action, PLC alleged that it had not defaulted on its loan agreement with United States Trust; PLC also alleged that as a matter of Wyoming law, Bank of America could not simultaneously foreclose on the Wyoming property while also seeking to recover damages "related to the same debt," and PLC thus sought an order enjoining Bank of America from foreclosing on the Wyoming property.  Ex. AA to Pl.'s Objection [doc. # 64] at 3. PLC filed an amended complaint in the Wyoming action on September 27, 2010.  *See* Ex. BB to Pl.'s Objection [doc. # 64-1].   On October 21, 2010 PLC filed a motion for a preliminary injunction in the Wyoming action seeking to prevent Bank of America from taking any further action on the foreclosure of the Wyoming property.  *See* Ex. CC to Pl.'s Objection [doc. # 64-2].

The Wyoming court held a hearing on PLC's preliminary injunction motion on November 5, 2010.  *See* Ex. N to Pl.'s Objection [doc. # 62-2].  At the hearing, Mr. Klein's counsel informed the Wyoming court that the previous week, he had learned for the first time about Edwards Angell's prior representation of Mr. Klein.  *See* Ex. N to Pl.'s Objection [doc. # 62-3] at 9-11; *see also* Ex. E to Def.'s Mem. in Supp [doc. # 31-2] at 69 (letter dated November 3, 2010 informing Attorney Frechette that Edwards Angell had represented Mr. Klein before the Delaware Chancery Court as recently as January 2008).  Mr. Klein's counsel informed the court that he intended to file a motion to disqualify Edwards Angell; he also informed the court of the basis for such a motion:

> I have serious problems about this firm.  First of all, as the Court knows, maybe the argument is it's not a substantially related matter.  But they've served requests for admissions in the Connecticut action specifically, presumably, because they think these requests for admissions are somehow relevant to the Connecticut actions.  The requests for admissions are about court orders adverse to Mr. Klein in the Delaware action two years ago where their firm represented Mr. Klein.

*Id.* at 9.  At the same hearing, Attorney Frechette – who also represents Bank of America before this Court as well as before the Wyoming court – argued that the pending federal court actions in Wyoming and Connecticut were not substantially related to the two Delaware state court actions. *See id.* at 13.  Attorney Frechette also insisted that the fact that Bank of America served requests for admission from Mr. Klein in the Connecticut case regarding orders adverse to Mr. Klein in the two Delaware actions could not "create[] the substantial relationship after the fact."  *Id.* at 14.

Mr. Klein filed the pending Motion to Disqualify Counsel on November 18, 2010.  On December 2, 2010, the Court stayed discovery as well as briefing on a number of other motions in this case pending resolution of the disqualification motion.  *See* Order [doc. # 43].  Bank of America filed a thorough, detailed Objection [doc. # 52] to the disqualification motion on December 8, 2010, and Mr. Klein filed a Reply [doc. # 79] on December 22, 2010.  The Court appreciates the parties' compliance with a relatively tight briefing schedule before the holidays.

## II.

The Second Circuit most recently summarized the standard for reviewing a motion to disqualify counsel in *GSI Commerce Solutions, Inc. v. Babycenter, LLC*, 618 F.3d 204, 209 (2d Cir. 2010):

> In deciding whether to disqualify an attorney, a district court must balance "a client's right freely to choose his counsel" against "the need to maintain the highest standards of the profession."  Although the American Bar Association ("ABA") and state disciplinary codes provide valuable guidance, a violation of those rules may not warrant disqualification.  Instead, disqualification is warranted only if "an attorney's conduct tends to taint the underlying trial."

*Id.* (citations omitted); *see also Norris v. City of New Haven*, No. 3:04cv543 (MRK), 2006 WL 2567866, at *1 (discussing the Second Circuit's standard for reviewing a motion to disqualify counsel).  Under that standard, there is a virtual *per se* bar on concurrent representation in this Circuit.  *See GSI Commerce Solutions*, 618 F.3d at 209 ("[C]oncurrent representation is '*prima*

6

*facie* improper,' [and] it is incumbent upon the attorney to 'show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of representation.'  We have noted that this is 'a burden so heavy that it will rarely be met.'" (citations omitted)).

A different balance prevails when a party moves for disqualification based on successive representation.  *See Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005) ("The standard for disqualification varies depending on whether the representation is concurrent or successive.").  The Court must apply the following three-part standard when a party seeks to disqualify counsel based on successive representation:

> In cases of successive representation . . . an attorney may be disqualified if: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject mater of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Id.*  As this Court has previously recognized, "[t]he key inquiry is whether the present and former matters are 'substantially related.'"  *Norris*, 2006 WL 2567866, at *1 (citing *Evans v. Artek Sys. Corp.*, 417 F.2d 788, 791 (2d Cir. 1983); *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 737 (2d Cir. 1978).  "[D]espite the seeming breadth of that phrase . . . [it] 'has been honed in its practical application to grant disqualification only upon a showing that the relationship between the issues in the prior and present cases is 'patently clear' or where the issues are 'identical' or 'essentially the same.'"  *Id.* (citing, among others, *Bergeron v. Mackler*, 225 Conn. 391, 399 (1993)).  "That inquiry requires a careful comparison of the similarities between the issues raised in the former and present representation."  *Id.* (citing *Prisco v. Westgate Entm't, Inc.*, 799 F. Supp. 266, 270 (D. Conn. 1992)).

### III.

There is no dispute in this case that Mr. Klein is a former client of Edwards Angell. Thus, under the Second Circuit's standard, the first issue the Court must consider is whether there is a "substantial relationship" between the subject matter of the two Delaware actions in which Edwards Angell represented Mr. Klein and the issues in this case. *See Hempstead Video*, 409 F.3d at 133. Despite Mr. Klein's assertions to the contrary, *see, e.g.*, Def.'s Mem. in Support [doc. # 31-1] at 7 ("[T]he Plaintiff's own conduct in this case demonstrates the Plaintiff's belief that the matters are substantially related."), neither Bank of America nor Edwards Angell concedes any relationship between this case and the two Delaware actions. In fact, both have consistently maintained in this Court as well as in the Wyoming federal court that Bank of America's efforts to collect on the Agrippa and PLC loans have nothing whatsoever to do with the two Delaware actions. *See, e.g.*, Stuart M. Brown Aff. [doc. # 54] at 2 ("Based upon the obvious factual and legal differences between the cases . . . and after consultation with [Edwards Angell's] in-house ethics specialists, I believed (and I continue to believe), that there was no 'substantial relationship' between [Edwards Angell's] former representation of [Mr.] Klein and its potential representation of [Bank of America].").

The Court agrees with Bank of America and Edwards Angell that there is virtually no relationship between the subject matter of the two Delaware actions and the issues in this case, let alone a substantial relationship. According to Mr. Klein, there is a substantial relationship between this case and those two actions because all three involve allegations about Mr. Klein "fail[ing] to meet . . . financial obligations." Def.'s Mem. in Supp. [doc. # 31-1] at 6. But in this Court's view, to accept the argument that every case involving a person or company's financial obligations is substantially related to every other case involving the same person or company's

8

financial obligations would be to eviscerate the substantial relationship requirement. Almost every civil case involving businesses includes an allegation that one party or another failed to comply with some sort of financial obligation. Under the rule Mr. Klein favors, a law firm that represented a client in almost any business-related case would be virtually barred from subsequently representing any other client against the first client in any other business-related case, no matter how distinct the issues in the second case might be.

As this Court has previously had occasion to observe, a motion to disqualify based on subsequent representation may be granted only when the relationship between the issues in the prior and present cases is patently clear, or where the issues are identical or essentially the same. *See Norris*, 2006 WL 2567866, at *1. Put simply, Mr. Klein's obligation to comply with his personal guarantees on the Agrippa and PLC loans has no obvious connection with the obligations that were at issue in the two Delaware actions – namely, the LJA Entities' and Mr. Klein's fiduciary duties toward the KF Entities. Indeed, Mr. Klein has wisely refrained from arguing that there is a relationship between the financial obligations at issue in this case and the financial obligations that were at issue in the two Delaware cases.

Mr. Klein's argument that Bank of America and Edwards Angell created a substantial relationship between this case and the two Delaware actions by seeking admissions from Mr. Klein about those two actions is clever, but ultimately unconvincing. In Bank of America's Second Set of Requests for Admissions in this case, *see* Ex. I to Def.'s Mem. in Supp. [doc. # 31-3] at 77-82, it sought various admissions from Mr. Klein about the Delaware actions. *See, e.g.*, *id.* at 77 ("Please admit that in connection with [the first Delaware action] the Court determined that [Mr. Klein] willfully violated an order of the Court."). It is not clear to the Court why Bank of America sought those admissions from Mr. Klein. The central issue – and perhaps

the only contested issue – in this case is whether PLC and Mr. Klein defaulted on the PLC loan. Perhaps Bank of America believes that Mr. Klein's failure to comply with court orders in the past indicates that he is the sort of person who is likely to default on a loan.  But if that is Bank of America's theory, Bank of America could not possibly hope to offer Mr. Klein's past failure to comply with court orders as evidence of default here.  *See* Fed. R. Evid. 404(a) ("Evidence of person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . .").  Beyond that, Mr. Klein's past failure to comply with another court's orders has nothing whatsoever to do with whether PLC or Mr. Klein defaulted on the loan at issue here, and it may well be the case that Bank of America's request for information about the Delaware cases exceeded the permissible bounds of discovery.  *See* Fed. R. Civ. P. 26(b)(1).  But Mr. Klein does not cite a single case that supports his argument for disqualification based solely upon a discovery request, nor is the Court aware of any precedent which permit it to disqualify a law firm for making an improper request for an admission about a party's conduct during the course of otherwise unrelated litigation.

Because there is no relationship whatsoever between this case and the two Delaware actions, the Court need not reach Mr. Klein's arguments about the third and final prong of the standard for disqualification based on subsequent representation.  *See Hempstead Video*, 409 F.3d at 133 (permitting disqualification only if there is *both* a substantial relationship between the pending and prior actions *and* reason to believe that counsel had access to relevant privilege information in the prior action).  However, Mr. Klein argues at length in his filings about the third prong of the standard.  The Court will therefore address those arguments very briefly here.

In the Court's view, there are two fatal flaws in Mr. Klein's arguments regarding the third prong of the standard.  First, Mr. Klein overlooks the requirement that counsel must have been

likely to have access to information that was both privileged and relevant.  Mr. Klein has made no effort to show that Edwards Angell has access to privileged or relevant information beyond a vague, sweeping claim that Edwards Angell "gained access to a great deal of Mr. Klein's personal financial and business data."  Def.'s Mem. in Supp. [doc. # 31-1] at 9-10.  The Court is not satisfied by that mere allegation, particularly in light of Bank of America's assertion that Mr. Klein's relevant financial information was already in Bank of America's files before Bank of America retained Edwards Angell as its counsel.  *Cf. Nordwind v. Rowland*, 584 F.3d 420, 435 (2009) (finding no error in a district court's conclusion that all of the relevant information was "generally known" to the adverse party).  Second, while it is true that "[a]n attorney's conflicts are ordinarily imputed to his firm," the "presumption that confidences are shared within a law firm" is rebuttable.  *Hempstead Video*, 409 F.3d at 133.  The Court is satisfied that Edwards Angell has rebutted the assumption that information known to Attorney Maimone was passed on to other Edwards Angell attorneys by showing that Attorney Maimone left the firm shortly after he represented Mr. Klein and took all of the firm's Klein-related files with him.  *See* Paul D. Brown Aff. [doc. # 53] ¶ 4.  There is thus no reason to believe that the Edwards Angell attorneys who represent Bank of America before this Court currently possess any information about Mr. Klein that could unfairly advance Bank of America's position in this case.  *Cf.* Conn. R. Prof. Conduct 1.9 cmt. ("Matters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation *would materially advance* the client's position in the subsequent matter." (emphasis added)).

Finally, Mr. Klein cannot prevail based on his alternative argument that Edwards Angell violated the Connecticut Rules of Professional Conduct.  *See* Conn. R. Prof. Conduct 1.8(b) ("A

lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules."); Conn. R. Prof. Conduct 1.9(c) ("A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client."); Conn R. Prof. Conduct 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.").  It seems highly doubtful that Edwards Angell violated any of those provisions, as the only information Mr. Klein suggests the firm has sought to use against him thus far is the publicly available information that Mr. Klein violated a Delaware court order.  *See* Conn. R. Prof. Conduct 1.9(c)(1).  But the Court ultimately need not resolve that issue since "state disciplinary codes provide valuable guidance" only, and since "a violation of [state disciplinary] rules may not warrant disqualification." *GSI Commerce Solutions*, 618 F.3d at 209.  The Second Circuit has carefully articulated a three-part standard for disqualification based on subsequent representation.  *See Hempstead Video*, 409 F.3d at 133.  Unless that standard is satisfied, this Court will not disqualify counsel for violating a state rule regarding subsequent representation.

## IV.

In sum, the Court concludes that this action is not substantially related to either of the two Delaware Chancery Court actions cases in which Edwards Angell attorneys represented Mr. Klein.  The Court therefore DENIES Mr. Klein's Motion to Disqualify Counsel [doc. # 31].  The Court also VACATES its Order [doc. # 43] staying briefing on Bank of America's Motion for Prejudgment Remedy [doc. # 32] and staying discovery in this case.  The parties may proceed with discovery immediately.  The Court will shortly issue a separate order setting a new deadline for Mr. Klein to respond to Bank of America's Motion for Prejudgment Remedy.

**IT IS SO ORDERED.**

/s/       Mark R. Kravitz
                United States District Judge

**Dated at New Haven, Connecticut: January 3, 2011.**