UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BANK OF AMERICA, N.A., | : |
| Plaintiff | : |
| v. | : No. 3:10cv987 (MRK) |
| SAMUEL KLEIN, | : |
| Defendant. | : |

## RULING AND ORDER

Pending before the Court is Plaintiff Bank of America, N.A.'s ("Bank of America's") Motion for Prejudgment Remedy [doc. # 32]. Although Defendant Samuel Klein at one time disputed whether there was probable cause for the Court to issue a prejudgment remedy pursuant to Connecticut General Statutes § 52-278d(a), *see* Mem. in Objection to Mot. for Prejudgment Remedy [doc. # 90] at 1-2, Mr. Klein now concedes that there is indeed probable cause for the Court to issue a prejudgment remedy in the amount of $3,000,000.00. *See* Corrected Stipulation [doc. # 111] at 3-4. For that reason, and for the additional reasons set forth below, the Court GRANTS Bank of America's Motion for Prejudgment Remedy against Mr. Klein in the amount of $3,000,000.00.

This case concerns a $3,200,000.00 loan that Agrippa, LLC ("Agrippa") borrowed from United States Trust Co., N.A. ("United States Trust"). The loan was secured by Agrippa's interest in a luxury apartment in Manhattan, which was recently valued at over $3,500,000.00. However, despite the fact that the loan was secured by an interest in a valuable residential property in a highly desirable real estate market, United States Trust made doubly certain that the loan would

be repaid by having Mr. Klein – the sole member of Agrippa – sign a personal guarantee promising repayment of the full amount of the loan. Bank of America subsequently acquired United States Trust's interests in the repayment of the loan and the guarantee.

Agrippa recently filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York, and it is currently attempting to sell the Manhattan apartment in order to pay the debt it still owes to Bank of America. According to Mr. Klein, Bank of America is Agrippa's only secured creditor, and the eventual sale of the Manhattan apartment will allow Agrippa to fully repay its debt to Bank of America. However, Bank of America still wishes to proceed with its action against Mr. Klein in this Court to collect on his personal guarantee.

The parties agree that the Connecticut laws governing the availability of prejudgment remedies, *see* Conn. Gen. Stat. § 52-278a, *et seq.*, govern the availability of a prejudgment remedy against Mr. Klein in this case. Connecticut General Statutes § 52-278d provides that before issuing a prejudgment remedy, a court must hold a hearing "limited to a determination of" the following issues:

> (1) [W]hether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff, (2) whether the payment of any judgment that may be rendered against the defendant is adequately secured by insurance, (3) whether the property sought to be subjected to the prejudgment remedy is exempt from execution, and (3) if the court finds that the application for the prejudgment remedy should be granted, whether the plaintiff should be required to post a bond to secure the defendant against damages that may result from the prejudgment remedy or whether the defendant should be allowed to substitute a bond for the prejudgment remedy.

*Id.* "If the court . . . finds that the plaintiff has shown probable cause that such judgment will be rendered in the matter in the plaintiff's favor in the amount . . . sought and finds that a

prejudgment remedy securing the judgment should be granted, the prejudgment remedy . . . *shall be granted* as requested or as modified by the court." *Id.* (emphasis added).

The Court held a hearing on Bank of America's Motion for Prejudgment remedy on March 23, 2011. As the Court has already mentioned, Mr. Klein now concedes "that probable cause exists to support to issuance of a prejudgment remedy in the amount of $3,000.000.00." Corrected Stipulation [doc. # 111] at 3. Indeed, Mr. Klein could hardly argue otherwise, as he has already agreed to the entry of summary judgment in favor of Bank of America as to the issue of liability, *see id.* at 3, and as he has provided no evidence that *any* amount of the $3,200,000.00 loan has been repaid to Bank of America. While Bank of America still seeks to recover the full amount of the loan from Mr. Klein, it has agreed to seek no more than $3,000,000.00 as a prejudgment remedy before this Court while the parties fight about the amount that remains due on the loan in the Bankruptcy Court. The Court therefore finds probable cause that a judgment in the amount of at least $3,000,000.00 will eventually be rendered in Bank of America's favor in this case. *See* Conn. Gen.Stat. § 52-278d.

Mr. Klein has not argued that payment of any judgment that may be rendered against him is adequately secured by insurance. *See id.* Nor has he argued that any property sought to be subjected to a prejudgment remedy is exempt from execution. *See id.* Nor has he argued that Bank of America should be required to post a bond to secure Mr. Klein against possible damages that may result from a prejudgment remedy or sought to substitute a bond for the prejudgment remedy. *See id.* Even if he had raised the last of those arguments, the Court would have rejected it, as Mr. Klein's concession as to the issue of liability means that there is essentially *no* likelihood that he will suffer damages from the issuance of a prejudgment remedy.

Mr. Klein raises only one real argument in opposition to Bank of America's Motion for Prejudgment Remedy. According to Mr. Klein, there is no need for this Court to issue a prejudgment remedy against him because Bank of America already has adequate security on the total amount of the loan in the form of its interest in the Manhattan apartment. *See Blakeslee Arpaia Chapman, Inc. v. E.I. Constructors, Inc.*, 32 Conn. App. 118, 132 (1993) (holding that, even when a plaintiff would otherwise be entitled to a prejudgment remedy, a court may still deny a prejudgment remedy if the plaintiff's "interest is already secured"). The Court is not at all persuaded by that argument.

The guarantee that Mr. Klein signed explicitly gives Bank of America, as the successor to United States Trust's interest in repayment of the guarantee, the right to enforce the guarantee against Mr. Klein *without first resorting to any other remedy*. *See* Ex. B to Am Compl. [doc. # 18] at 13 ("Lender can enforce this Guarantee against me even when Lender has not exhausted Lender's remedies against anyone else obliged to pay the indebtedness or against any collateral securing the indebtedness . . . . I will make any payments to Lender . . . without set-off or deduction . . . ."); *Bank of Boston Connecticut v. Schlesinger*, 220 Conn. 152, 157-58 (1991). State and federal court judges in Connecticut have uniformly rejected the argument that when a loan is adequately secured by an interest in property from a borrower, a creditor cannot seek a prejudgment remedy against a different individual who personally guaranteed repayment of the amount the creditor loaned to the borrower. *See CapitalSource Finance LLC v. Autorino*, No. 3:09cv2148 (RNC), slip op. at 6 (D. Conn. Mar. 11, 2011); *Wachovia Bank, N.A. v. Cummings*, No. 3:09cv957 (SRU), 2010 WL 466160, at *8-*9 (D. Conn. Feb. 8, 2010) ("[T]he Guarantee permits a cause of action separate and independent from the mortgages executed. Thus, Wachovia is not required to proceed first against the Property and the entity that executed the

4

mortgages, regardless of the value of that property as security for the notes. . . . The parties could have required the lender to exhaust the collateral security the notes before pursuing its available remedy under the [Guarantee], *but they did not*." (emphasis added, quotation marks and citations omitted)). *Cf. Bank of Boston Connecticut v. Chumnanvech*, No. 0104367, 1992 WL 32648, at *2 (Conn. Super. Feb. 11, 1992) ("The defendants have urged us to subtract the value of the mortgage held by the Bank from Sackett Point [Senior Homes] . . . from any PJR relief issued here. Since this is . . . litigation to enforce personal guarantees given by [individuals] to the Bank in connection with the Sackett Point note, we decline." (citing *Schlesinger*, 220 Conn. at 159)). This Court is persuaded by those other courts' decisions and follows them here.

Mr. Klein's argument, like the arguments of other litigants in similar positions before other Connecticut courts, is based on a misunderstanding of the Connecticut Appellate Court's decision in *Blakeslee*. *See* 32 Conn. App. at 132. The *Blakeslee* decision restates the uncontroversial, common sense rule that when a borrower has already pledged property as security to a creditor, a court issuing a prejudgment remedy against that borrower must subtract the amount of the security from the amount of any prejudgment remedy that it issues *against the borrower*. *See id.*; *Colonia Properties, Inc. v. International Real Estate Associates, LP*, No. CV 980061105S, 1998 WL 211942, at *1 (Conn. Super. Apr. 23, 1998); *Bank of Boston of Connecticut v. Garofalo*, No. CV 970340355S, 1997 WL 255102, at *1 (Conn. Super. May 6, 1997). Again, as every other court that has considered the issue currently before this Court has concluded, the rule restated by the Connecticut Appellate Court in *Blakeslee* has no application where the creditor has bargained for and obtained a *separate* right to collect from a guarantor whose obligation to pay the creditor is *not* secured by any property. *See Autorino*, slip op. at 6; *Cummings*, 2010 WL 466160, at *9. Indeed, the Connecticut Supreme Court arguably

5

recognized as much in *Schlesinger* when it reasoned that whether there was sufficient collateral securing a mortgage was irrelevant to the enforceability of a personal guarantee to pay back the amount owed on the mortgage. *See* 220 Conn. at 158.

At oral argument on the Motion for Prejudgment Remedy, Mr. Klein's counsel argued for the first time that *CapitalSource Finance LLC v. Autorino*, No. 3:09cv2148 (RNC), and *Cummings*, 2010 WL 466160, are distinguishable from the case currently before this Court. In those cases, Mr. Klein's counsel suggested, the creditor *only* sought repayment from the guarantor, and not from the borrower. It is not actually entirely clear from those two decisions whether the creditors in those cases attempted to pursue the borrowers as well as the guarantors – the decisions do not say one way or the other. But even if Mr. Klein's counsel is right that the creditors did not seek to recover from the borrowers in those cases, his argument is still unpersuasive. Bank of America's predecessor-in-interest bargained for and obtained separate rights to collect from Agrippa and from Mr. Klein. There is no reason why Bank of America cannot proceed against *both* Agrippa and Mr. Klein at the same time, and collect part or all of the the amount it is owed from whichever of the two it can prevail against first.[1]

In today's real estate market, selling an expensive residential property like the apartment Agrippa currently owns may take a long time. The appraisal value of the apartment value may also be greater than what Agrippa is ultimately able to obtain from an actual purchaser. In other words, even though Bank of America has *begun* the process of collecting from Agrippa, there is still a great deal of uncertainty surrounding the outcome of that process. *Cf. Cummings*, 2010 WL 466160, at *8 ("The appraisal value of the Property [securing the loan] . . . does not reflect

---

[1] The Court again notes that Bank of America and Agrippa dispute the amount that Agrippa still owes to Bank of America on the loan. As the Court has already indicated, the parties agree that it will be left to the Bankruptcy Court to decide what amount is still owed on the loan. After that issue has been fully litigated in the Bankruptcy Court, Agrippa may be able to take an appeal from the bankruptcy court's eventual decision on that issue.

the transaction costs . . . of obtaining legal title to the Property . . . nor the value the Property will actually realize upon sale . . . ."). In the Court's view, it would make very little sense to compel Bank of America to complete the long, drawn-out, and potentially costly process of obtaining relief from Agrippa, and prohibit it from even attempting to obtain potentially more expeditious relief from Mr. Klein based on his separate personal guarantee.

Mr. Klein's argument would, of course, be availing if his *personal guarantee* was secured by an interest in the Manhattan apartment. But Mr. Klein apparently has no personal interest in the Manhattan apartment, and his personal debt to Bank of America, by way of the guarantee, is not secured by any property whatsoever. Mr. Klein concedes that there is probable cause for the Court to issue a prejudgment remedy against him in the amount of $3,000,000.00, and the Court finds that a prejudgment remedy in that amount should issue against Mr. Klein. *See* Conn. Gen. Stat. § 52-278d(a). Mr. Klein shall fully disclose his personal assets to Bank of America no later than April 18, 2011, and if necessary, shall also make himself available for a deposition.

                                      IT IS SO ORDERED.

                      /s/           Mark R. Kravitz
                                United States District Judge

**Dated at New Haven, Connecticut: March 30, 2011.**